# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Deborah Cross f.k.a. Deborah Cross-Farron | § | |
| v. | § | Case No. 4:20-cv-01322 |
| The Bank of N.Y. Mellon f.k.a. The Bank | § | |
| of New York, as trustee, et al. | § | |

## DEFENDANTS SHELLPOINT AND BONYM'S SUMMARY JUDGMENT MOTION

Date: March 9, 2021

Respectfully submitted,

 *s/ Walter McInnis*
C. Charles Townsend
SBN: 24028053, FBN: 1018722
charles.townsend@akerman.com
Walter McInnis
SBN: 24046394, FBN: 588724
walter.mcinnis@akerman.com
  --*Attorney in Charge*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile:  214.981.9339

Monica Summers
SBN: 24083594, FBN: 1760115
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231
monica.summers@akerman.com

**ATTORNEYS FOR SHELLPOINT
AND BONYM, AS TRUSTEE**

# TABLE OF CONTENTS

I. ARGUMENT SUMMARY ............................................................................................... 1

II. NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

III. STATEMENT OF THE ISSUE AND STANDARD OF REVIEW ..................................... 1

IV. SUMMARY JUDGMENT EVIDENCE ............................................................................ 3

V. FACTUAL BACKGROUND ............................................................................................ 4

A. Ms. Cross borrowed money and granted a lien ................................................... 4

B. Ms. Cross defaulted on the loan .......................................................................... 4

C. Ms. Cross sued to stop foreclosure. .................................................................... 5

D. Ms. Cross filed a second lawsuit to stop foreclosure ......................................... 5

E. The loan transferred to Shellpoint, and Shellpoint decelerated. ......................... 6

F. Ms. Cross filed this third lawsuit. ....................................................................... 7

G. Ms. Cross owes $438,631.84. ............................................................................. 7

VI. ARGUMENTS & AUTHORITIES .................................................................................. 8

A. Shellpoint and BoNYM are entitled to summary judgment on Ms. Cross's claims. .......... 8

    1. Quiet title claim fails because Shellpoint decelerated. .......................................... 8

        a. No quiet title claim against Shellpoint, the mortgage servicer. ....................... 9

        b. TROs tolled limitations to March 12, 2020. ................................................... 9

        c. BoNYM decelerated before limitations expired. ........................................... 10

            i. Shellpoint decelerated the maturity of the loan on February 13, 2020. ..... 11

            ii. Shellpoint's hello letter evidenced deceleration. ...................................... 12

            iii. Shellpoint's mortgage statement evidenced deceleration. ......................... 12

            iv. Additional Shellpoint correspondence evidenced deceleration. ............... 13

    2. Declaratory judgment claim is redundant of quiet title claim and also fails. ....... 14

B. BoNYM is entitled to summary judgment on its counterclaims ...................................... 15

    1. Counterclaim savings statute allows BoNYM's contract and foreclosure claims. 15

    2. BoNYM is entitled to summary judgment on its breach of contract claim. ......... 17

    3. BoNYM is entitled to a foreclosure judgment. ................................................... 18

    4. BoNYM is entitled to equitable subrogation in the alternative. ......................... 19

    5. BoNYM is entitled to contractual subrogation in the alternative. ....................... 20

VII. CONCLUSION ............................................................................................................ 20

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937)............................................................................................14

*Alexander v. Verizon Wireless Servs., L.L.C.*,
  875 F.3d 243 (5th Cir. 2017) ...........................................................................4, 5

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..........................................................................................2, 3

*Boren v. U.S. Nat. Bank Ass'n*,
  807 F.3d 99 (5th Cir. 2015) .............................................................................9, 10

*Bracken v. Wells Fargo Bank, N.A.*,
  No. 05-16-01334-CV, 2018 WL 1026268 (Tex. App.—Dallas Feb. 23, 2018, pet. denied),
  reh'g denied (Apr. 12, 2018) ...............................................................................18

*Breitling v. LNV Corp.*,
  No. CV 3:15-CV-0703-B, 2015 WL 5896131 (N.D. Tex. Oct. 5, 2015) ..................8

*Brown v. Lippard*,
  350 Fed. Appx. 879 (5th Cir. 2009)...................................................................4, 5

*Bumstead v. Jasper Cty.*,
  931 F. Supp. 1323 (E.D. Tex. 1996) ......................................................................2

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................2, 3

*Clawson v. Ocwen Loan Servicing, LLC*,
  No. 3:18-CV-00080, 2019 WL 1141526 (S.D. Tex. Feb. 21, 2019) ......................10

*Crescent Towing & Salvage Co. v. M/V ANAX*,
  40 F.3d 741 (5th Cir. 1994) ...................................................................................2

*Day Cruises Mar., LLC v. Christus Spohn Health Sys.*,
  267 S.W.3d 42 (Tex. App.—Corpus Christi 2008, pet. denied)............................19

*Diversified Mortg. Inv'rs v. Lloyd Blalock Gen. Contractor, Inc.*,
  576 S.W.2d 794 (Tex. 1978)..................................................................................19

*Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*,
  No. 04–09–00256–CV, 2010 WL 2679997
  (Tex. App.—San Antonio July 7, 2010, no pet.) ..................................................15

*Fontenot v. Up-john Co.*,
   780 F.2d 1190 (5th Cir. 1986) ............................................................2

*Freeman v. Cherokee Water Co.*,
   11 S.W.3d 480 (Tex. App.—Texarkana 2000, pet. denied) ....................15

*Hacienda Records, L.P. v. Ramos*,
   718 Fed. Appx. 223 (5th Cir. 2018)......................................................15

*Hacienda Records, LP v. Ramos*,
   No. 2:14-CV-19, 2015 WL 6680597 (S.D. Tex. Nov. 2, 2015) ............15

*Holy Cross Church of God in Christ v. Wolf*,
   44 S.W.3d 562 (Tex. 2001)................................................................5, 9

*Jorrie v. Bank of N.Y. Mellon Tr. Co., N.A.*,
   No. 5:16-CV-490-DAE, 2017 WL 6403054 (W.D. Tex. Sept. 11, 2017), aff'd, 740 Fed.
   Appx. 809 (5th Cir. 2018)......................................................................9

*Kansa Reinsurance Co. v. Cong. Mortg. Corp.*,
   20 F.3d 1362 (5th Cir. 1994) ................................................................2

*LaSalle Bank Nat'l Assoc. v. White*,
   246 S.W.3d 616 (Tex. 2007).................................................................19

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ................................................................3

*May v. Ticor Title Ins.*,
   422 S.W.3d 93 (Tex. App.—Houston [14th Dist.] 2014, no pet.).........17

*McBroome Bennett Plumbing, Inc. v. Villa France, Inc.*,
   515 S.W.2d 32 (Tex. Civ. App.—Dallas 1974, writ ref'd, n.r.e.) .........19

*Morris v. Covan World Wide Moving, Inc.*,
   144 F.3d 377 (5th Cir. 1998) ................................................................3

*Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*,
   755 Fed. Appx. 354 (5th Cir. 2018).....................................................10

*Pitts v. Bank of N.Y. Mellon Tr. Co.*,
   583 S.W.3d 258 (Tex. App.—Dallas 2018, no pet.).............................14

*Redwood Resort Props., LLC v. Holmes Co. Ltd.*,
   No. CIV.A.3:06CV1022-D, 2007 WL 1266060 (N.D. Tex. Apr. 30, 2007)...........................14

*Rodriguez v. CitiMortgage, Inc.*,
   No. 5-14-CV-380 RP, 2015 WL 12552026 (W.D. Tex. Feb. 4, 2015) ...................16

*Salas v. Carpenter*,
   980 F.2d 299 (5th Cir. 1992) ...................................................................3

*Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 Fed. Appx. 302 (5th Cir. 2018) ......................................10

*State Farm Mut. Auto Ins. Co. v. Perkins*,
   216 S.W.3d 396 (Tex. App.—Eastland 2006, no pet.) ...........................................19

*Swoboda v. Ocwen Loan Servicing, LLC*,
   579 S.W.3d 628, 633-37 (Tex. App.—Houston [14th Dist.] 2019, no pet.)...........................12

*Townsend v. Barrett Daffin Frappier Turner & Engel, LLP*,
   No. 09-12-00564-CV, 2013 WL 5874607
   (Tex. App.—Beaumont Oct. 31, 2013, pet. denied) ...............................................8

*Tu Nguyen v. Bank of Am., N.A.*,
   728 Fed. Appx. 387 (5th Cir. 2018).............................................................4

*U.S. Nat'l Bank Assoc. v. Johnson*,
   No. 01-10-00837-CV, 2011 WL 6938507 (Tex. App.—Houston [1st Dist.] 2011, no pet.).....8

*Vernon v. Perrien*,
   390 S.W.3d 47 (Tex. App.—El Paso 2012, pet. denied) ..........................................8

*Vogel v. Veneman*,
   276 F.3d 729 (5th Cir. 2002) .................................................................19

*Wigginton v. Bank of N.Y. Mellon*,
   No. 3:10-CV-2128-G, 2011 WL 2669071 (N.D. Tex. July 7, 2011)......................................14

**Statutes**

Tex. Civ. Prac. & Rem. Code 16.035..................................................................9

Tex. Civ. Prac. & Rem. Code § 16.069 .............................................................15, 16

Tex. Civ. Prac. & Rem. Code § 38.001 ...............................................................20

**Rules**

Fed. R. Civ. P 56...................................................................................1, 2, 3

Fed. R. Civ. P 201 .................................................................................4, 5

# I.  ARGUMENT SUMMARY

Deborah Cross sued her mortgage lender and servicer to obtain a free house.  This is her third lawsuit to avoid foreclosure since she last made a mortgage payment over five years ago. She litigated her previous lawsuits, including two appeals, for almost two years arguing a myriad of typical foreclosure-stall claims.  After those lawsuits and appeals failed, she sued this third time to declare the mortgage lien void and unenforceable claiming the statute of limitations to foreclose allegedly expired.

Ms. Cross's claims fail as a matter of law because the mortgage servicer timely decelerated the maturity of the loan.  Even if the statute of limitations expired, the court should grant The Bank of New York Mellon, as Trustee (**BoNYM**) summary judgment on its counterclaims for breach of contract and foreclosure under Texas's counterclaim savings statute. In the event Ms. Cross seeks summary judgment on her claims and prevails, the court should grant BoNYM summary judgment on its alternative subrogation counterclaims in the amounts it has paid on Ms. Cross's behalf over the past five years for property taxes.

# II.  NATURE AND STAGE OF THE PROCEEDINGS

BoNYM and NewRez LLC dba Shellpoint Mortgage Servicing move for summary judgment pursuant to rule 56 on Ms. Cross's claims for declaratory relief and quiet title and on BoNYM's counterclaims for breach of contract, foreclosure and equitable and contractual subrogation.  The parties mediated on November 9, 2020, discovery closed February 25, 2021 and the case is set for docket call on August 13, 2021.

# III.  STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

The issues before the court are: (**1**) whether the summary judgment evidence negates an essential element of Ms. Cross's claims, there is no evidence to support an essential element of

Ms. Cross's claims, or there is no genuine issue of material fact as to BoNYM's defenses and each element of its defenses are established as a matter of law, and (**2**) whether there is no genuine issue of material fact on BoNYM's counterclaims, and it can establish each element of its claims as a matter of law. Summary judgment is proper when the pleadings and evidence show no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. It is particularly appropriate when the questions to be decided are issues of law. *See Bumstead v. Jasper Cty.*, 931 F. Supp. 1323, 1328 (E.D. Tex. 1996).

When a defendant moves for summary judgment on a plaintiff's claim, it may satisfy its summary judgment burden by: (**1**) submitting evidence negating the existence of an essential element of the plaintiff's claim, or (**2**) showing there is no evidence to support an essential element of the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). A defendant may move for summary judgment on its affirmative defense by showing the absence of a genuine issue of material fact and establishing each element of its defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir. 1994). Once the defendant meets its burden, the plaintiff must produce significant probative evidence demonstrating the existence of a triable dispute of fact on at least one element of the defendant's defense. *Kansa Reinsurance Co. v. Cong. Mortg. Corp.*, 20 F.3d 1362, 1371 (5th Cir. 1994).

When a counter-plaintiff moves for summary judgment on its claim, it must show there is no genuine dispute of material fact and establish each element of its claims as a matter of law. *Fontenot v. Up-john Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Evidence that "is merely colorable, or is not significantly probative," is not

"sufficient evidence" to prevent summary judgment. *Id.* (citations omitted); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Vague allegations and legal conclusions are insufficient. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). The movant's motion must be granted if it satisfies its burden, and the non-movant fails to show a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322.

## IV.    SUMMARY JUDGMENT EVIDENCE

Shellpoint and BoNYM rely upon and incorporate by reference the following evidence:

| | |
|---|---|
| Exhibit A: | Cross deposition excerpts |
| Exhibit A-3: | note |
| Exhibit A-4: | deed of trust |
| Exhibit A-5: | modification |
| Exhibit B: | Knowles deposition excerpts |
| Exhibit B-4: | Shellpoint hello letter |
| Exhibit B-7: | default notice |
| Exhibit B-8: | acceleration notice |
| Exhibit B-12: | Shellpoint letter |
| Exhibit B-13: | Shellpoint mortgage statement |
| Exhibit B-14: | Bayview mortgage statement |
| Exhibit C: | Knowles declaration |
| Exhibit C-1: | Shellpoint letter |
| Exhibit C-2: | Shellpoint mortgage statement |
| Exhibit D: | assignment |
| Exhibit E: | 2018 TRO |
| Exhibit F: | 2019 petition and TRO |
| Exhibit G: | order extending 2019 TRO |
| Exhibit H: | nonsuit |
| Exhibit I: | Summers declaration |
| Exhibit I-1: | Shellpoint's discovery requests |
| Exhibit I-2: | BoNYM's discovery requests |
| Exhibit I-3: | responses to Shellpoint's discovery |
| Exhibit I-4: | responses to BoNYM's discovery |
| Exhibit I-5: | rescission letter |

# V. FACTUAL BACKGROUND

## A. Ms. Cross borrowed money and granted a lien.

On November 2, 2004, Ms. Cross executed a note promising to repay the original principal amount of $255,440, plus interest. (Ex. A at 35:19-36:19, Cross dep.; Ex. A-3, note.) She also executed a deed of trust granting a lien against the property at 16515 Obsidian Drive, Houston, Texas with a power of sale to secure her obligation to repay the note. (Ex. A at 36:20-38:1, Cross dep.; Ex. A-4, deed of trust.) The note requires Ms. Cross pay monthly installments beginning December 1, 2004 and continuing until November 1, 2034. (Ex. A-3, note.) Ms. Cross received a loan modification effective June 1, 2013. (Ex. A at 38:2-39:5, Cross dep.; Ex. C at ¶ 7, Knowles decl.; Ex. A-5, modification.) BoNYM is the current beneficiary of the deed of trust. (Ex. C at ¶ 6, Knowles decl.; Ex. D, assignment.[1]; Ex. I-3 at nos. 9-10[2].)

## B. Ms. Cross defaulted on the loan.

Ms. Cross defaulted by failing to make the January 1, 2015 monthly payment. (Ex. C at ¶ 8, Knowles decl.; *see* Ex. I-3 at nos. 35-36.) On October 21, 2015, Bayview Loan Servicing, LLC, as prior servicer, sent Ms. Cross a notice of default and intent to accelerate and warned if she did not cure the default by November 20, 2015, it would accelerate the maturity of the loan. (Ex. B at 59:19-60:17, Knowles dep.; Ex. B-7, default notice; Ex. I-1 at nos. 24-28 and ex. E; Ex. I-3 at nos. 24-28). Ms. Cross did not cure the default. (Ex. C at ¶ 8, Knowles decl.; *see* Ex. I-3 at nos. 35-36.)

---

[1] Per federal rule of evidence 201(b)(2), Shellpoint and BoNYM request the court take judicial notice of exhibits D-H, which are documents recorded in the official public records of Harris County (ex. D) and filed in Ms. Cross's previous lawsuits related to her loan and property (exs. E-H). *See Tu Nguyen v. Bank of Am., N.A.*, 728 Fed. Appx. 387, 387-88 (5th Cir. 2018); *see also Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 n.8 (5th Cir. 2017), *Brown v. Lippard*, 350 Fed. Appx. 879, 883 n.2 (5th Cir. 2009).

[2] BoNYM served similar discovery requests Ms. Cross. (*See* Ex. I-2.) For brevity's sake defendants cite Ms. Cross's responses to Shellpoint's discovery requests (Ex. I-3). Ms. Cross gave almost identical responses to BoNYM's same numbered requests. (*See* Ex. I-4.)

On February 11, 2016, Bayview, through its attorney, sent Ms. Cross notices it accelerated the maturity of the loan and notices of foreclosure sale. (Ex. B at 63:7-64:8, Knowles dep.; EX. B-8, acceleration notice; EX. I-1 at nos. 39-40, ex. F; EX. I-3 at nos. 39-40.)

## C. Ms. Cross sued to stop foreclosure.

On May 31, 2018, Ms. Cross sued BoNYM and Bayview to stop a June 5, 2018 foreclosure sale. *See* pl.'s original pet., *Deborah Cross aka Deborah Cross-Farron v. The Bank of N.Y. Mellon, et al.*, No. 4:18-cv-02274 (S.D. Tex. June 17, 2019), ECF No. 1-5.[3] That same day, the court entered a TRO enjoining BoNYM and Bayview from foreclosing. (Ex. E, 2018 TRO[4].) The TRO expired twelve days later, on June 11, 2018. (*Id.*) On June 17, 2019, the court granted defendants' dismissal motion and dismissed the claims with prejudice. *Cross*, No. 4:18-cv-02274 at ECF No. 40. On February 13, 2020, the Fifth Circuit Court of Appeals upheld the judgment. *Id.* at ECF Nos. 45-46.

## D. Ms. Cross filed a second lawsuit to stop foreclosure.

On August 29, 2019, while the appeal of the 2018 suit was pending, Ms. Cross sued Bayview's foreclosure counsel to stop a September 3, 2019 foreclosure sale. (Ex. F, 2019 pet. and TRO[5].) On August 30, 2019, the court entered a TRO, which it extended to September 18, 2019. (Ex. F, 2019 pet. and TRO; EX. G, order extending TRO[6].) Ms. Cross non-suited her claims without prejudice on September 23, 2019. (Ex. H, nonsuit[7].)

---

[3] Per federal rule of evidence 201(b)(2), Shellpoint and BoNYM request the court take judicial notice of the filings in Ms. Cross's previous lawsuit related to her loan and property. *See Alexander*, 875 F.3d at 248 n.8, *Lippard*, 350 Fed. Appx. at 883 n.2.

[4] *See* n.1.

[5] *See* n.1.

[6] *See* n.1.

[7] *See* n.1.

**E. The loan transferred to Shellpoint, and Shellpoint decelerated.**

Servicing of the loan transferred from Bayview to Shellpoint effective February 1, 2020. (EX. B at 39:24-40:8, Knowles dep.; EX. B-4, Shellpoint hello letter; EX. C at ¶ 10, Knowles decl.; EX. I-1 at nos. 12-14.)  On February 13, 2020, Shellpoint's litigation department reviewed Ms. Cross's loan and changed the coding from foreclosure to litigation.  (EX. B at 17:20-18:2, 18:14-23, 28:15-30:8, 48:10-49:3, Knowles dep.)  This coding stopped the foreclosure process and prevented Shellpoint from sending foreclosure letters or making calls to Ms. Cross related to foreclosure.  (EX. B at 18:14-23, Knowles dep.)

The day after the coding was changed, Shellpoint sent Ms. Cross a welcome letter enclosing a payment coupon requesting she "[p]lease use the attached coupon to mail us a check for your first payment."  (EX. B at 39:25-40:8, Knowles dep.; EX. B-4, Shellpoint hello letter.)  The coupon listed $2,238.51 as the monthly payment amount.  (EX. B-4, Shellpoint hello letter.)

Two days later, Shellpoint sent Ms. Cross a mortgage statement, which stated the total amount due was $231,949.74.  (EX. B at 97:11-24, Knowles dep.; EX. B-13, Shellpoint mortg. statement.)  Unlike Bayview's previous monthly statement, Shellpoint's statement did not state the accelerated amount owed.  (EX. B at 103:19-104:1, Knowles dep.; EX. B-14, Bayview mortg. statement (listing $389,846.52 as accelerated amount).)  Bayview's mortgage statement also warned "[p]lease be advised, we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process[.]"  (EX. B-14, Bayview mortg. statement.)  This warning was not included in Shellpoint's statement.  (EX. B-13, Shellpoint mortg. statement.)  Shellpoint confirmed the accelerated data point for Ms. Cross's loan is not selected and has never been selected in Shellpoint's servicing platform.  (EX. B at 20:1-8, 43:11-44:11, 54:7-15, Knowles dep.)  Had Shellpoint identified Ms. Cross's loan as accelerated, its mortgage

statement would have stated an accelerated amount similar to Bayview's statement. (Ex. B at 107:1-18, Knowles dep.; *see* EX. C-2, Shellpoint mortg. statement.)

The next day, Shellpoint sent Ms. Cross two letters. A loss mitigation solicitation letter notified her of available assistance given her default. (Ex. C at ¶ 12, Knowles decl.; EX. C-1, Shellpoint letter.) It states the "total amount due is $229,184.76[,]" and "[w]e have a right to invoke foreclosure based on the terms of your mortgage contract." (Ex. C-1, Shellpoint letter.) A second letter warned Ms. Cross her loan was in default and "[b]ecause you have not taken steps to resolve the delinquency, we have been instructed by the owner or your mortgage loan to commence foreclosure." (Ex. B at 87:18-88:17, Knowles dep.; EX. B-12, Shellpoint letter.)

**F. Ms. Cross filed this third lawsuit.**

On March 19, 2020, Ms. Cross filed this lawsuit. (ECF No. 1-2.) On April 7, 2020, Shellpoint and BoNYM's counsel sent Ms. Cross a formal rescission of acceleration letter. (Ex. B at 58:7-21, Knowles dep.; EX. I at ¶ 5, Summers decl.; EX. I-5, rescission letter.) On April 13, 2020, BoNYM and Shellpoint answered, BoNYM counterclaimed against Ms. Cross for breach of contract and foreclosure, and BoNYM and Shellpoint removed the case. (ECF No. 1, 1-5.) BoNYM amended its counterclaim to add alternative subrogation claims related to property taxes BoNYM's servicers have paid on Ms. Cross's behalf. (ECF No. 21.)

**G. Ms. Cross owes $438,631.84.**

Ms. Cross's loan is due for the January 1, 2015 payment and all subsequent payments. (Ex. C at ¶ 13, Knowles decl.) As of March 9, 2021, Ms. Cross owes $438,631.84.

Since December 2014, Ms. Cross has failed to pay taxes assessed against the property pursuant to the deed of trust terms. (Ex. C at ¶ 14, Knowles decl.) As of March 9, 2021, BoNYM, through its servicers, has advanced approximately $60,673.94 to satisfy Ms. Cross's tax obligations and obtain releases of tax liens against the property. (Ex. C at ¶ 14, Knowles decl.)

# VI.    ARGUMENTS & AUTHORITIES

## A.  Shellpoint and BoNYM are entitled to summary judgment on Ms. Cross's claims.

Ms. Cross sues for quiet title and declaratory relief.  She claims the deed of trust is void and unenforceable because the statute of limitations to foreclose expired.  Her claims fail because Shellpoint decelerated the maturity of the loan within the statute of limitations.

### 1.  Quiet title claim fails because Shellpoint decelerated.

To quiet title Ms. Cross must show: (**1**) an interest in a property, (**2**) defendants' claim affects title to the property, and (**3**) the claim, although facially valid, is invalid or unenforceable. *U.S. Nat'l Bank Assoc. v. Johnson*, No. 01-10-00837-CV, 2011 WL 6938507 at *3 (Tex. App.— Houston [1st Dist.] 2011, no pet.).  A suit to quiet title relies on the invalidity of the defendant's claim to the property.  *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied) (citing *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).  The plaintiff must prove he has an ownership right, and the adverse claim is a cloud on title that equity will remove.  *Id.*  To plead a suit to quiet title, Ms. Cross must base her claim solely on the strength of her own title and not on defendants' alleged weakness of title.  *See Breitling v. LNV Corp.*, No. CV 3:15-CV-0703-B, 2015 WL 5896131, at *9 (N.D. Tex. Oct. 5, 2015) (citing *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.)).  Ms. Cross argues defendants' secured monetary interests in the property represented by the deed of trust and assignment appear valid on their face but are invalid due to the expiration of the statute of limitations to foreclose.  (ECF No. 1-2 at ¶¶ 28-29.)  She requests a declaration any foreclosure sale under the deed of trust would be void as time-barred, the deed of trust is void and removed from the title record, and title be quieted in her name.  (*Id.* at ¶ 31.)

### a. No quiet title claim against Shellpoint, the mortgage servicer.

Ms. Cross's quiet title claim fails against Shellpoint because it must be made against a party who claims right to title or ownership of the property. *See Townsend v. Barrett Daffin Frappier Turner & Engel, LLP*, No. 09-12-00564-CV, 2013 WL 5874607, at *8 (Tex. App.—Beaumont Oct. 31, 2013, pet. denied). Shellpoint does not claim right to title or ownership of the property. BoNYM is the lienholder, and Shellpoint is its loan servicer.

### b. TROs tolled limitations to March 12, 2020.

Ms. Cross alleges because Bayview accelerated the maturity of the loan on February 11, 2016 and there was no abandonment or rescission of acceleration, limitations to foreclose expired February 11, 2020. (ECF No. 1-2 at ¶¶ 21-24.) She ignores the 2018 and 2019 TROs, which tolled limitations. *See Jorrie v. Bank of N.Y. Mellon Tr. Co., N.A.*, No. 5:16-CV-490-DAE, 2017 WL 6403054, at *7 (W.D. Tex. Sept. 11, 2017), aff'd, 740 Fed. Appx. 809 (5th Cir. 2018) (Texas courts consistently apply rule "where the exercise of a lawful right is restrained by an injunction, the statute of limitations is tolled during the period of such restraint").

Bayview accelerated the maturity of the loan on February 11, 2016. (Ex. B at 63:7-64:8, Knowles dep.; EX. B-8, acceleration notice; EX. I-1 at nos. 39-40, ex. E; EX. I-3 at nos. 39-40.) Without any tolling or abandonment, limitations would have expired four years later on February 11, 2020. TEX. CIV. PRAC. & REM. CODE 16.035. The 2018 TRO tolled limitations for 11 days (May 31 to June 11, 2018), and the 2019 TRO tolled limitations an additional 19 days (August 30 to September 18, 2019). (Ex. E, 2018 TRO; EX. F, 2019 pet. and TRO; EX. G, order extending TRO.) Adding 30 days to February 11, 2020 extends the four-year limitations deadline to March 12, 2020.

### c. **BoNYM decelerated before limitations expired.**

A four-year statute of limitations applies to judicial and non-judicial foreclosures. TEX. CIV. PRAC. & REM. CODE § 16.035(a); *Boren v. U.S. Nat. Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015). If a note or deed of trust secured by real property contains an optional acceleration clause, the action accrues when the holder exercises its option to accelerate. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). A lender can abandon acceleration unilaterally or by agreement, decelerating the debt and restoring the note's installment status and original maturity. *Boren*, 807 F.3d at 104. A lender can abandon its earlier acceleration by putting the borrower on notice of its abandonment by requesting payment on less than the full amount of the accelerated loan. *Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*, 755 Fed. Appx. 354, 356 (5th Cir. 2018); *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortg. Pass-Through Certificates, Series 2007-FM2*, 731 Fed. Appx. 302, 307 (5th Cir. 2018) ("[b]ecause the [monthly] statements sought less than the accelerated balance of the loan and would permit the Sextons to cure their default by providing sufficient payment to bring the note current under its original terms, the statements can show abandonment under our precedent.") (internal quotations omitted); *Clawson v. Ocwen Loan Servicing, LLC*, No. 3:18-CV-00080, 2019 WL 1141526, at *3 (S.D. Tex. Feb. 21, 2019) (citing to ECF No. 18 at 5 (citing to ECF No. 1-1 at 144-145)) (mortgage statements requesting only the past-due amounts and not the full balance of the accelerated loan reset the statute of limitations for foreclosure).

Texas courts have framed the issue of abandonment of acceleration by reference to traditional principals of waiver, the elements of which include: (**1**) an existing right, benefit, or advantage held by a party; (**2**) the party's actual knowledge of its existence; and (**3**) the party's

actual intent to relinquish the right, or intentional conduct inconsistent with the right. *See Boren*, 807 F.3d at 105 (citing *Thompson v. Bank of Am., N.A.*, 783 F.3d 1022, 1025 (5th Cir. 2015).

Shellpoint decelerated the maturity of the loan on February 13, 2020, before limitations expired on March 12, 2020. The deceleration restored the note's installment status and original maturity. After it decelerated, Shellpoint sent Ms. Cross correspondence reflecting the original maturity date, demanding less than the total accelerated amount, and indicating the loan was not in foreclosure. (EX. B-5, Shellpoint hello letter; EX. B-12, Shellpoint letter; EX. B-13, Shellpoint mortg. statement; EX. C-1, Shellpoint letter.)

### i. Shellpoint decelerated the maturity of the loan on February 13, 2020.

On February 13, 2020, Shellpoint decelerated the maturity of the loan when its litigation department reviewed the loan and changed its coding from foreclosure to litigation. (EX. B at 17:20-18:2, 18:14-23, 28:15-30:8, 48:10-49:3, Knowles dep.) This coding stopped the foreclosure process and prevented Shellpoint from sending foreclosure letters or making calls to Ms. Cross related to foreclosure. (EX. B at 18:12-23, Knowles dep.) Shellpoint confirmed this is not an accelerated loan because the acceleration data point is not selected for this loan and has never been selected. (EX. B at 20:1-8, 43:11-44:11, 54:7-15, Knowles dep.) Because this is not an accelerated loan, Shellpoint has not sent Ms. Cross communications normally sent to borrowers of accelerated loans. (EX. B at 20:1-8, 107:1-108:22 Knowles dep.) Shellpoint's conduct in reviewing the loan, changing the coding from foreclosure to litigation, and not selecting the accelerated data point to categorize this loan as accelerated is consistent with traditional waiver principles. Shellpoint had actual knowledge Bayview characterized the loan as accelerated, intentionally decelerated the loan, and intentionally acted inconsistent with the prior acceleration.

### ii. Shellpoint's hello letter evidenced deceleration.

The day after Shellpoint decelerated the loan, it sent Ms. Cross a welcome letter. (Ex. B-5, Shellpoint hello letter.) The welcome letter requested Ms. Cross "use the attached coupon to mail [Shellpoint] a check for your first payment." (*Id.*) The attached payment coupon was for $2,238.51 and evidences Shellpoint demanded and was willing to accept less than the accelerated amount. (*Id.*) The third page of the welcome letter included terms of the mortgage, which state the maturity date is the original maturity date, "11/01/2034", rather than the accelerated date of February 11, 2016. (*Id.*) In *Swoboda v. Ocwen Loan Servicing, LLC*, the court analyzed four categories of evidence supporting abandonment of acceleration. 579 S.W.3d 628, 633-37 (Tex. App.—Houston [14th Dist.] 2019, no pet.). One piece of evidence was a post-acceleration mortgage statement. *Id.* at 635. The court found the statement (which appeared to be an incomplete copy) was not enough to establish abandonment as a matter of law because "nothing in the statement actually requests a payment from [borrower], which is the basis of the Fifth Circuit's rule." *Id.* The court explained the statement did not include "the detachable 'Mortgage Payment Coupon' that is supposed to be mailed back with the monthly installment payment. That coupon is where the 'Total Amount Due' and request for payment would be located[.]" *Id.* Unlike *Swoboda*, Shellpoint's welcome letter requested payment and included a payment coupon for a monthly payment of $2,238.51. (Ex. B-5, Shellpoint hello letter.) The welcome letter also listed the original maturity date and not the accelerated maturity date. (*Id.*)

### iii. Shellpoint's mortgage statement evidenced deceleration.

Three days after Shellpoint decelerated the loan, it sent Ms. Cross a monthly mortgage statement. (Ex. B-13, Shellpoint mortg. statement.) The statement included a payment coupon listing the "total amount due" as $231,949.74, which was less than the accelerated amount. (*Id.*;

*see* EX. C at ¶ 13, Knowles decl.)  In contrast, Bayview's last mortgage statement before servicing transferred to Shellpoint indicated the accelerated amount was $389,846.52.  (EX. B-14, Bayview mortg. statement.)  Bayview's statement also included a warning "we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process."  (*Id.*)  Shellpoint's statement did not state it had made the first step to foreclosing or give any indication the loan was in foreclosure, because it was not.  (*See* EX. B-13, Shellpoint mortg. statement.)  This is because when Shellpoint decelerated the loan, it dictated the type of correspondence sent (and not sent) to Ms. Cross.  (*See* EX. B at 18:12-23, 20:1-8, 107:1-108:22, Knowles dep.)  Had Shellpoint not decelerated the loan, its mortgage statement would have included the accelerated amount with a disclosure "[a]s of the date of this letter, this is the amount that is now due in full."  (*See* EX. B at 107:1-108:22, Knowles dep.; EX. C at ¶ 11, Knowles decl.; EX. C-2, Shellpoint mortg. statement.)  The statement would have also included a warning "[y]ou are late on your loan payments and the foreclosure process has been initiated."  (EX. C at ¶ 11, Knowles decl.; EX. C-2, Shellpoint mortg. statement.)

### iv. Additional Shellpoint correspondence evidenced deceleration.

Four days after Shellpoint decelerated Ms. Cross's loan, it sent her two letters evidencing deceleration.  One letter states "the total amount due is $229,184.76", which is less than the accelerated amount.  (EX. C-1, Shellpoint letter.)  It also states, "we have a right to ***invoke*** foreclosure", implying foreclosure has not yet started.  (EX. C-1, Shellpoint letter (emphasis added).)  The second letter states "foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to ***commence foreclosure***."  (EX. B-12, Shellpoint letter (emphasis added).)  This language implies foreclosure has not yet commenced and the loan has not yet been

accelerated. These letters contradict Bayview's last monthly statement stating it had made the first notice or filing required to start the foreclosure process. (*See* EX. B-14, Bayview mortg. statement.) The language in these letters is inconsistent with continued reliance on an earlier acceleration. Examples of language indicating reliance on an earlier acceleration includes "our records indicate your loan is in foreclosure," and "your account has been referred to an attorney for foreclosure; the first step in this process, the first filing was completed." This is similar to the language in Bayview's mortgage statement: "we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process." *See e.g.*, *Pitts v. Bank of N.Y. Mellon Tr. Co.*, 583 S.W.3d 258, 267 (Tex. App.—Dallas 2018, no pet.); (EX. B-14, Bayview mortg. statement.)

### 2. Declaratory judgment claim is redundant of quiet title claim and also fails.

Ms. Cross seeks a declaration "any foreclosure sale under the Deed of Trust would be void as time-barred and that the Deed of Trust is void and removed from the title record for the Property." (ECF No. 1-2 at ¶ 25.) She bases this claim on the same statute of limitations argument. (*Id.* at ¶¶ 17-25.)

Ms. Cross's declaratory judgment action was converted to one brought under the federal declaratory judgment act when defendants removed. *See e.g., Redwood Resort Props., LLC v. Holmes Co. Ltd.*, No. CIV.A.3:06CV1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (citing *i2 Techs. US, Inc. v. Lanell*, No. CIV.A. 302CV0134G, 2002 WL 1461929, at *7 n. 5 (N.D. Tex. Jul. 2, 2002)). The declaratory judgment act does not create an independent cause of action. *See e.g.*, *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). It only provides a form of relief. *Id.*

A court should not exercise discretion to grant declaratory relief redundant of pending claims. *Wigginton v. Bank of N.Y. Mellon*, No. 3:10-CV-2128-G, 2011 WL 2669071, at *5 (N.D. Tex. July 7, 2011) (citing *Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573, *10 (N.D. Tex. Feb. 19, 2002). The declaratory relief Ms. Cross seeks is redundant of her quiet title claim and fails for the same reasons—Shellpoint decelerated the loan before the statute of limitations expired.

## B. BoNYM is entitled to summary judgment on its counterclaims.

BoNYM countersues for breach of contract and foreclosure. Even if the statute of limitations to bring these counterclaims has expired, BoNYM can assert the claims under Texas's counterclaims savings statute. In the event the court finds the deed of trust is void, BoNYM should be awarded summary judgment on its equitable and contractual subrogation claims.

### 1. Counterclaim savings statute allows BoNYM's contract and foreclosure claims.

Texas Civil Practice and Remedies Code section 16.069 allows a defendant to assert a time-barred counterclaim if it arises out of the same transaction or occurrence the basis of the action, and if it is filed not later than the 30th day after the date on which the party's answer is required. TEX. CIV. PRAC. & REM. CODE § 16.069. For the counterclaim to have arisen out of the same transaction or occurrence, the claim must have a logical relationship to the dispute involved in plaintiff's petition. *See Freeman v. Cherokee Water Co.*, 11 S.W.3d 480, 483 (Tex. App.—Texarkana 2000, pet. denied). To be logically related, the essential facts on which the counterclaim bases should be significantly and logically relevant to both claims. *Id*. In the context of considering whether section 16.069 applies, courts have construed the term "transaction" as flexible and involving a series of multiple occurrences logically related to one another. *See, e.g., Fallis v. River Mountain Ranch Prop. Owners Ass'n, Inc.*, No. 04–09–00256–

CV, 2010 WL 2679997, at *8 (Tex. App.—San Antonio July 7, 2010, no pet.).  Courts allow counterclaims to proceed under the statute where the plaintiff seeks attorneys' fees in addition to a declaratory judgment.  *Hacienda Records, LP v. Ramos*, No. 2:14-CV-19, 2015 WL 6680597, at *4 (S.D. Tex. Nov. 2, 2015), aff'd sub nom. *Hacienda Records, L.P. v. Ramos*, 718 Fed. Appx. 223 (5th Cir. 2018).

The essential facts on which BoNYM's counterclaims base are significantly and logically relevant to both its counterclaims and Ms. Cross's claims.  Ms. Cross's claims rest on BoNYM and Shellpoint's attempt to enforce the deed of trust and involve the same facts underlying BoNYM's counterclaims—Ms. Cross failed to make payments required under the note, and BoNYM is entitled to invoke the power of sale provision in the deed of trust.  *See Rodriguez v. CitiMortgage, Inc.*, No. 5-14-CV-380 RP, 2015 WL 12552026, at *4 (W.D. Tex. Feb. 4, 2015). BoNYM's counterclaims for breach of contract and foreclosure were timely because Ms. Cross served BoNYM on April 3, 2020 (ECF No. 1-3), and BoNYM asserted its counterclaims on April 13, 2020 (ECF No. 1-5), well before the statutory deadline to counterclaim within 30 days after the answer is required.  *See* TEX. CIV. PRAC. & REM. CODE § 16.069(b).

In *Rodriguez*, the plaintiff asserted a single cause of action for declaratory judgment quieting title in her name.  *Rodriguez*, 2015 WL 12552026 at *1.  She based her claim on allegations the statute of limitations barred the lender from enforcing her indebtedness.  *Id*.  Like BoNYM, the lender counterclaimed for breach of contract and foreclosure.  *Id*.  The court held the lender could assert its counterclaims under Texas's counterclaims savings statute because the plaintiff's claim rested on the lender's attempt to collect on the note and involved the same facts underlying the lender's counterclaim that plaintiff failed to make required payments.  *Id*. at *3-*4.  The court dismissed plaintiff's claim with prejudice and awarded the lender summary

judgment on its counterclaims for breach of contract claim and foreclosure. *Id*. at *5. Even if the court were to find the statute of limitations to foreclose passed, BoNYM is entitled to summary judgment on its counterclaims just like the lender in *Rodriguez*.

## 2. BoNYM is entitled to summary judgment on its breach of contract claim.

To maintain a claim for breach of contract, BoNYM must show: (**1**) a valid contract exists, (**2**) it performed or tendered performance, (**3**) Ms. Cross breached the contract, and (**4**) BoNYM sustained damages as a result of the breach. *See May v. Ticor Title Ins*., 422 S.W.3d 93, 100 (Tex. App.—Houston [14th Dist.] 2014, no pet.). The note, deed of trust and modification constitute a valid and enforceable contract, which require, among other things, Ms. Cross pay monthly installments. (EX. A-3, note; EX. A-4, deed of trust; EX. A-5, modification.) BoNYM performed its obligations under the loan, but Ms. Cross did not—she breached by failing to make all monthly installments due and owing. (EX. C at ¶ 13, Knowles decl.; *see* EX. I-3 at nos. 35-36.)

Pursuant to the loan terms, in the event Ms. Cross breaches, and after she has been given an opportunity to cure the breach, BoNYM is entitled to accelerate the maturity of the loan, foreclose the deed of trust, and sell the property, among other remedies available to it. (EX. A-4 at ¶ 22, deed of trust.) Bayview provided Ms. Cross notice of default, but she has not cured it. (EX. B at 59:19-60:17, Knowles dep.; EX. B-7, default notice; EX. C at ¶¶ 8, 13, Knowles decl.; EX. I-1 at nos. 24-28, 35-36, ex. E; EX. I-3 at nos. 24-28, 35-36.) Ms. Cross's breach damaged BoNYM, and BoNYM is entitled to a judgment to recover all amounts due and owing under the loan, as well as all attorneys' fees and expenses incurred in enforcing the loan, and to specifically enforce its right to foreclose the deed of trust and sell the property in satisfaction of the judgment. (EX. A-4 at ¶ 22, deed of trust.) As of March 9, 2021, the total amount due under the

loan is $438,631.84, which includes interest continuing to accrue at 3.625% and costs and expenses of enforcing the deed of trust.  (Ex. C at ¶ 13, Knowles decl.)

### 3. BoNYM is entitled to a foreclosure judgment.

"To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate: (**1**) a debt exists; (**2**) the debt is secured by a lien created under Art. 16, § 50(a)(6) of the Texas Constitution; (**3**) [the borrowers] are in default under the note and security instrument; and (**4**) [the borrowers] received notice of default and acceleration."  *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *5 (Tex. App.—Dallas Feb. 23, 2018, pet. denied), reh'g denied (Apr. 12, 2018) (citing *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 Fed.Appx. 306 (5th Cir. 2014)).

Ms. Cross executed the note promising to repay the original principal amount of $255,440, plus interest and the deed of trust granting a lien against the property to secure the obligation to repay the note.  (EX. A at 35:19-38:1, Cross dep.; EX. A-3, note; EX. A-4, deed of trust.)  Ms. Cross defaulted on the note by failing to make required payments.  (EX. C at ¶¶ 8, 13, Knowles decl.; *see* EX. I-3 at nos. 35-36.)  Bayview sent Ms. Cross notice of the default with an opportunity to cure and warned if she did not cure the default by November 20, 2015, it would accelerate the maturity of the loan.  (Ex. B at 59:19-60:17, Knowles dep.; EX. B-7, default notice; EX. I-1 at nos. 24-28, ex. E; EX. I-3 at nos. 24-28.)  Bayview sent Ms. Cross notice of acceleration after she failed to cure the default.  (Ex. B at 63:7-64:8, Knowles dep.; ex. B-8, notice of acceleration; EX. I-1 at nos. 39-40, ex. F; EX. I-3 at nos. 39-40.)

BoNYM, as the current legal owner and holder of the note and deed of trust, has the right to enforce the note and deed of trust.  (Ex. C at ¶ 6, Knowles decl.; EX. D, assignment.)  It is entitled to a judgment allowing it to foreclose its lien on the property in accordance with the deed

of trust and Texas property code section 51.002, or alternatively, a judgment for judicial foreclosure. The foreclosure sale shall satisfy its judgment for all amounts due and owing under the loan, as well as attorneys' fees and expenses incurred enforcing the loan.

### 4. BoNYM is entitled to equitable subrogation in the alternative.

Should the court find BoNYM's deed of trust is void, it is entitled to a declaration it has a valid and enforceable equitable first lien on the property equal to the amount it has paid on Ms. Cross's behalf to obtain the release of tax liens, plus interest accruing at the rate of 6%. When one party pays the debt of another, the paying party is subrogated to the rights of the creditor paid. "Equitable subrogation is the legal fiction whereby an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *See Day Cruises Mar., LLC v. Christus Spohn Health Sys.*, 267 S.W.3d 42, 61 (Tex. App.—Corpus Christi 2008, pet. denied). Equitable subrogation is a theory based in restitution that originated to prevent unjust enrichment, such as double recoveries. *See State Farm Mut. Auto Ins. Co. v. Perkins*, 216 S.W.3d 396, 401 (Tex. App.—Eastland 2006, no pet.). Texas courts have repeatedly accepted and applied the doctrine of equitable subrogation and have been in the forefront of doing so. *Diversified Mortg. Inv'rs v. Lloyd Blalock Gen. Contractor, Inc.*, 576 S.W.2d 794, 807 (Tex. 1978).

The doctrine of subrogation is always given liberal interpretation and is broad enough to include every instance in which one person, not acting voluntarily, has paid another's debt, and which in equity and good conscience should have been discharged by the primary obligor. *McBroome Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex. Civ. App.—Dallas 1974, writ ref'd, n.r.e.). Equitable subrogation is instituted to guard the investment of a

lender who pays another's debt by granting the lender rights and security held by the previous creditor. *Vogel v. Veneman*, 276 F.3d 729, 735 (5th Cir. 2002).

In the event this court finds the deed of trust is void, equitable subrogation grants BoNYM the rights and security held by the liens it discharged by paying Ms. Cross's obligations. *LaSalle Bank Nat'l Assoc. v. White*, 246 S.W.3d 616 (Tex. 2007) (claim home equity lien was void "does not abrogate [] this longstanding common law principle or preclude [lender]'s entitlement to equitable subrogation for the refinance portion of the loan proceeds that were used to extinguish [borrower]'s constitutionally permissible purchase-money and property-tax liens.") As of March 9, 2021, BoNYM, through its servicers, has paid approximately $60,673.94 on Ms. Cross's behalf for taxes assessed against the property. (Ex. C at ¶ 14, Knowles decl.) BoNYM is entitled to a declaration it has an equitable lien against the property in the amount of $60,673.94 plus 6% interest.

**5. BoNYM is entitled to contractual subrogation in the alternative.**

Should the court find BoNYM's deed of trust is void, BoNYM is entitled to specifically enforce its rights under the contractual subrogation clause in the deed of trust to a valid and enforceable first lien on the property. (Ex. A-4 at ¶ 25, deed of trust.) The lien is equal to $60,673.94, the amount BoNYM paid on Ms. Cross's behalf to obtain the release of tax liens, plus interest accruing at 6%. (Ex. C at ¶ 14, Knowles decl.) BoNYM is also entitled to recover from its reasonable and necessary costs and expenses, including attorneys' fees, incurred in bringing this claim to enforce the deed of trust. Tex. Civ. Prac. & Rem. Code § 38.001(8).

## VII.   CONCLUSION

Ms. Cross's claims fail as a matter of law because Shellpoint timely decelerated the maturity of the loan when it moved her loan out of foreclosure and sent correspondence

requesting payment for less than the accelerated amount and indicating the loan was not in foreclosure. Even if the statute of limitations expired, the court should grant BoNYM summary judgment on its counterclaims for breach of contract and foreclosure under Texas's counterclaims savings statute. If Ms. Cross seeks summary judgment on her claims and prevails, the court should grant BoNYM summary judgment on its alternative subrogation counterclaims because it has paid property taxes on Ms. Cross's behalf for the past five years.

Date: March 9, 2021                                          Respectfully submitted,

 *s/ Walter McInnis*
C. Charles Townsend
SBN: 24028053, FBN: 1018722
charles.townsend@akerman.com
Walter McInnis
SBN: 24046394, FBN: 588724
walter.mcinnis@akerman.com
 *--Attorney in Charge*
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile: 214.981.9339

Monica Summers
SBN: 24083594, FBN: 1760115
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231
monica.summers@akerman.com

**ATTORNEYS FOR SHELLPOINT
AND BONYM, AS TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I certify I served this document on March 9, 2021 as follows:

**<u>VIA CM/ECF:</u>**
Jeffrey C. Jackson
Jeffrey Jackson & Associates, PLLC
2200 North Loop West, Suite 108
Houston, Texas 77018

*Attorney for plaintiff*

_s/ Monica Summers_
Monica Summers

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBORAH CROSS F.K.A.       )
DEBORAH CROSS-FARRON       )
                           )
v.                         )    CASE NO. 4:20-cv-01322
                           )
THE BANK OF NY MELLON      )    **CERTIFIED TRANSCRIPT**
F.K.A. THE BANK OF NEW     )
YORK, AS TRUSTEE, ET AL    )

ORAL DEPOSITION OF

DEBORAH CROSS

November 10, 2020


ORAL VIDEOTAPED DEPOSITION OF DEBORAH CROSS, produced as a witness at the instance of the Defendant and duly sworn, was taken in the above-styled and numbered cause on the 10th day of November, 2020, from 10:32 a.m. to 12:51 p.m., before Tamra M. Parks, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of Jeffrey Jackson, 2200 North Loop West, Suite 108, Houston, Texas, 77018, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.



AdvancedONE
LEGAL
(866) 715-7770
advancedONE.com

EXHIBIT A

1                        DEBORAH CROSS,

2    having been first duly sworn, testified as follows:

3                        EXAMINATION

4        Q.   (BY MS. SUMMERS)  Good morning.  Can you state

5    your name -- your full name for the record?

6        A.   Deborah Cross.

7        Q.   Do you have a middle name?

8        A.   Lynn, L-Y-N-N.

9        Q.   Okay.  Thank you, Ms Cross.

10                  My name is Monica Summers.  I represent

11   the Bank of New York Mellon.  I was trustee.  And I also

12   represent Shellpoint Mortgage Servicing in the lawsuit

13   that you have filed against them.

14                  Today you are represented by counsel,

15   right?

16       A.   Yes.

17       Q.   And that is Mr. Jeff Jackson?

18       A.   Yes.

19       Q.   Have you ever given your deposition before?

20       A.   Yes, I have.

21       Q.   When was that?

22       A.   Years ago.  In a lawsuit years ago.

23       Q.   Were you the plaintiff in the lawsuit?

24       A.   Yes.

25       Q.   Was it the lawsuit against Bayview Loan

1  they look at?  A follow-up question would be --

2       A.  I would -- I would believe -- I would think

3  that it would be this document.

4       Q.  Okay.

5       A.  But I'm not completely sure how -- how the law

6  works, so I can't say for certain.

7       Q.  No problem.  Can you tell me, what is your

8  understanding of the claims you're asserting against my

9  clients?

10       A.  That there is a statute of limitations lawsuit

11  against them and that they have the statute of

12  limitations -- they have -- they have let it -- they

13  have -- I'm not -- it's a statute of limitations

14  lawsuit, I believe.  And, I mean, I don't know how to

15  elaborate more than that.

16       Q.  That's fine.  Okay.  We are going to look at

17  some other documents.

18                    (Marked Exhibit 3.)

19                    MS. SUMMERS:  This one will be marked as

20  Exhibit 3.

21       Q.  (BY MS. SUMMERS)  I'm going to zoom out with

22  it.  Is that okay there?

23       A.  Uh-huh.  Yes.

24       Q.  Okay.  And this one, I'm going to point you to

25  the bottom right-hand corner here.  We've got these

1   numbers.  Oops.  I don't know if you can see that down
2   here at the bottom right?
3        A.   Right.
4        Q.   Those are what we refer to as an attorney's
5   Bates label.  And so this one document is labeled
6   Shellpoint/Cross 243, and it's a couple of pages long,
7   245.  So I'm on page Shellpoint/Cross 245, and my
8   question is:  Is that your signature?
9        A.   Yes.
10       Q.   Okay.  And then, also there were initials at
11  the bottom of this page 244?
12       A.   Yes.
13       Q.   And the bottom of this page, are those your
14  initials?
15       A.   Yes, they are.
16       Q.   Okay.  And do you agree that by signing this
17  document titled "Note," you were agreeing to the terms
18  stated in this document?
19       A.   I do.
20                 (Marked Exhibit 4.)
21       Q.   (BY MS. SUMMERS)  Let me pull up the next one.
22  It's titled "Deed of Trust."
23                 MS. SUMMERS:  We are going to mark this
24  one as Exhibit 4.
25       Q.   (BY MS. SUMMERS)  And I have similar questions

1  for you.  On each of these pages there is an initial at

2  the bottom.  Can you confirm that those are your

3  initials?

4       A.   Yes, they are.

5       Q.   Let me go through all of them.  And what about

6  on this page, Shellpoint/Cross 14, is that your

7  signature?

8       A.   Yes, it is.

9       Q.   Is that your initial here on page 15?  That's

10  yours?

11       A.   Yes, it is.

12       Q.   And the same on 16?

13       A.   Yes.

14       Q.   17?

15       A.   Yes.

16       Q.   And a signature on 18?

17       A.   Yes.

18       Q.   I think there is one more.  Initials on 19,

19  those are yours?

20       A.   Yes.

21       Q.   And a signature on 20.  Is that your signature?

22       A.   Yes, it is.

23       Q.   Thank you.  And so do you agree that by signing

24  this deed of trust, you agreed to the terms laid out in

25  the deed of trust?

1    A.    I do.

2              MS. SUMMERS:  I'm going to skip this one.

3    To the court reporter, I'm skipping the one I had marked

4    as 5, and the one I have as 6 will be 5.  It's called

5    "Affordable Modification Agreement," if you can label

6    that one as 5.

7              (Marked Exhibit 5.)

8    Q.    (BY MS. SUMMERS)  So Ms. -- excuse me.  Is that

9    okay?  Can you view it like that, Ms. Cross?

10   A.    I can't see it very well.  I see redacted items

11   on it.

12   Q.    Those are just some typical -- so if you see

13   the loan numbers redacted --

14   A.    Okay.

15   Q.    -- we redact them in case we use them in court.

16   That way there is no accidents and some personal

17   information is then filed with a public document in

18   court.  It's for, you know, for purposes of the lawsuit.

19             So, Ms. Cross, this exhibit is Exhibit 5.

20   It's titled "Home Affordable Modification Agreement,"

21   and I'm going to have a similar question for you about

22   your signature --

23   A.    Okay.

24   Q.    -- on the last page.  Right there.  This is

25   labeled Shellpoint/Cross 241.  Is that your signature?

1     A.    It is.

2     Q.    And you understand that by signing this home

3  affordable modification agreement, you agreed to the

4  terms in the modification agreement?

5     A.    I do.

6     Q.    And so when I refer to "the loan," can we just

7  have an understanding, I'm referring to the note, the

8  deed of trust, and this modification agreement, the

9  three exhibits we just went through?

10    A.    Yes.

11    Q.    Okay.  Now, Ms. Cross, you have not repaid the

12 loan; is that correct?

13    A.    No.  I'm in a lawsuit over the payment.

14    Q.    Okay.  And is it right that you have not made a

15 payment on the loan since the monthly payment that

16 satisfied the December 2014 monthly obligation?

17    A.    I was told not to make a payment.

18    Q.    What do you mean?

19    A.    Bayview Loan Servicing told me I could not make

20 a payment as soon as I had the loan modification

21 process.

22    Q.    Okay.  So do you know if your last payment --

23 monthly payment obligation that was satisfied was the

24 one in December of 2014?

25    A.    I don't know for sure.

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
 2                       HOUSTON DIVISION

 3   DEBORAH CROSS F.K.A.                                    )
     DEBORAH CROSS-FARRON        )
 4                               )
     vs.                         )  CASE NO. 4:20-CV-01322
 5                               )
     THE BANK OF NY MELLON                                   )
 6   F.K.A. THE BANK OF NEW      )
     YORK, AS TRUSTEE, ET AL     )
 7

 8

 9                    REPORTER'S CERTIFICATE

10        ORAL VIDEOTAPED DEPOSITION OF DEBORAH CROSS

11                     November 10, 2020

12

13        I, Tamra M. Parks, Certified Shorthand Reporter in

14   and for the State of Texas, hereby certify to the

15   following:

16        That the witness, DEBORAH CROSS, was duly sworn and

17   that the transcript of the deposition is a true record

18   of the testimony given by the witness;

19        That the deposition transcript was duly submitted on

20   _____ to the witness or to the attorney for

21   the witness for examination, signature, and return to me

22   by _____.

23        That pursuant to information given to the deposition

24   officer at the time said testimony was taken, the

25   following includes all parties of record and the amount
```



1    of time used by each party at the time of the

2    deposition:

3         Mr. Jeffrey Jackson (0h0m)
              Attorney for Plaintiff
4         Ms. Monica Summers (2h4m)
              Attorney for Defendant
5

6         That a copy of this certificate was served on all

7    parties shown herein on _____ and filed

8    with the Clerk.

9         I further certify that I am neither counsel for,

10   related to, nor employed by any of the parties in the

11   action in which this proceeding was taken, and further

12   that I am not financially or otherwise interested in the

13   outcome of this action.

14        Further certification requirements pursuant to

15   Rule 203 of the Texas Code of Civil Procedure will be

16   complied with after they have occurred.

17        Certified to by me on this 18th day of

18   November, 2020.

19                        _____

20                        Tamra M. Parks, Texas CSR #167
                          Expiration:  04/30/2022
21                        AdvancedONE
                          2777 N. Stemmons Freeway, Suite 1
22                        Dallas, Texas 75207
                          Telephone: 888-656-DEPO
23                        Texas Firm No. 69

24

25

EXHIBIT
3

Tamra Parks, CSR, CRR, RDR

9599-7
MIN: XXXXXXXXXXXXXXXXXX

# NOTE

Loan Number: 9599

0487

NOVEMBER 2, 2004                     HOUSTON                          TEXAS
[Date]                          CROSS-FARRCK [City]                    [State]

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 255,440.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is NEW HORIZON FINANCIAL LTD.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.000 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A)  Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on  DECEMBER 1          ,
2004    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  NOVEMBER 1, 2034        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043
                                        or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,531.49          .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____  _____  _____  _____  _____

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                        Page 1 of 3

DocMagic eForms  800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000243

EXHIBIT A-3

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000244

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DEBORAH CROSS-FARRON          -Borrower                                                        -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                                        -Borrower

_____ (Seal)          _____ (Seal)
                                       -Borrower                                                        -Borrower

PAY TO THE ORDER OF:
COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF
TREASURY BANK N.A. WITHOUT RECOURSE

NEW HORIZON FINANCIAL LTD.

BY: _____                    [Sign Original Only]
                JOHN SCOTT
                CONTROLLER
ITS: _____

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                                    Page 3 of 3

DocMagic eFarms 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000245

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY _____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

SHELLPOINT/CROSS 000246

TX04 13651 5AH

Y058359
11/12/04  200696692          $52.00

After Recording Return To:
NEW HORIZON FINANCIAL LTD.
11931 WICKCHESTER #400J
HOUSTON, TEXAS 77043
Loan Number:        9599

**FILED FOR RECORD**
**8:00 AM**

**EXHIBIT**
**4**

Tamra Parks, CSR, CRR, RDR

**AFTER RECORDING RETURN TO:**
**ALLEGIANCE TITLE COMPANY** ✓✓
**14201 MEMORIAL DRIVE**
**SUITE 101**
**HOUSTON, TEXAS 77079**

NOV 1 2 2004

*Beverly L. Kaufman*

**County Clerk, Harris County, Texas**

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

MIN: XXXXXXXXXXXXXXXXXXXXXXX
9599-7

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated NOVEMBER 2, 2004       , together
with all Riders to this document.
(B)  "Borrower" is  DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE
AND SEPARATE PROPERTY

Borrower is the grantor under this Security Instrument.
(C)  "Lender" is  NEW HORIZON FINANCIAL LTD.

Lender is a  LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of  TEXAS
Lender's address is  11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D)  "Trustee" is  ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON,
2611 JONES ROAD, SUITE 200 HOUSTON, TEXAS 77070

Trustee's address is

Borrower Initials: _____



TEXAS--Single Family--Fannie Mae/Freddi
Form 3044 1/01

0487  D2  001  001

*DOCMAGIC 800-649-1362*
*rw.docmagic.com*

EXHIBIT A-4
SHELLPOINT/CROSS 000001

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated NOVEMBER 2, 2004 . The Note states that Borrower owes Lender TWO HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY AND 00/100 Dollars (U.S. $255,440.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2034 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials:

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000002

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY    of HARRIS    :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of 16515 OBSIDIAN DRIVE
                                                                  [Street]

HOUSTON                          , Texas       77095      ("Property Address");
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Borrower Initials: _____  _____  _____  _____  _____  _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                          Page 3 of 15

DocMagic *eFdvrms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000003

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Borrower Initials: _____ _____ _____ _____ _____ _____

SHELLPOINT/CROSS 000004

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

Borrower Initials:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 5 of 15

DocMagic *eFerms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000005

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

Borrower Initials: _____

SHELLPOINT/CROSS 000006

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Borrower Initials: _____ _____ _____ _____ _____

*DocMagic eFarms 800-649-1362*
*www.docmagic.com*

SHELLPOINT/CROSS 000007

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

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Borrower Initials: _____ _____ _____ _____ _____

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000008

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower Initials: _____ _____ _____ _____ _____ _____

DocMagic eForms  800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000009

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Borrower Initials: _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000010

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic eForms* *800-649-1362*
*www.docmagic.com*

SHELLPOINT/CROSS 000011

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

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not less than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

Borrower Initials: _____   _____   _____   _____   _____

SHELLPOINT/CROSS 000012

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒ **Purchase Money.**
The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

Borrower Initials:

SHELLPOINT/CROSS 000013

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DEBORAH CROSS-FARRON          -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                       -Borrower

Witness:                                       Witness:

_____                  _____

DocMagic *eFarms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000014

The State of Texas
County of HARRIS

Before me, *A Notary Public* 
on this day personally appeared DEBORAH CROSS-FARRON

known to me (or proved to me on the oath of
or through *Texas*
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this *2* day of *NOVEMBER, 2004*

J. K. HOROWITZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
JUNE 26, 2006

Notary Public Signature

(Seal)                          My commission expires:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                          Page 15 of 15

*DocMagic* eForms 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000015

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 2nd day of NOVEMBER, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NEW HORIZON FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

STONE GATE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower Initials: _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000016

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: 

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                             Page 2 of 3

*DocMagic* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000017

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DEBORAH CROSS-FARRON     -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000018

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd day of NOVEMBER 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to NEW HORIZON
FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.


DocMagic℮Forms 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DEBORAH CROSS-FARRON     -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

NOV 12 2004



Beverly B. Kaufman
COUNTY CLERK
HARRIS COUNTY, TEXAS

SHELLPOINT/CROSS 000020



**EXHIBIT 5**

Tamra Parks, CSR, CRR, RDR

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.877.422.1761

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] DEBORAH CROSS-FARRON

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
November 01, 2004
Loan Number: ▓▓▓▓▓▓▓7095
Property Address *(See Exhibit A for Legal Description if applicable) "Property":*
16515 Obsidian Drive, Houston, TX 77095
*See Exhibit B for assignments of record if applicable*       ;

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

(Page 2 of 13)

C3_5154-3

SHELLPOINT/CROSS 000231

EXHIBIT A-5

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.  Either I have not been displaced and one of the borrowers signing this Agreement lives in the Property as a principal residence or lived in the Property as a principal residence immediately prior to being displaced; or I am currently displaced and (i) I intend to re-occupy the Property as a principal residence in the future, (ii) I do not own any single-family real estate other than the subject Property, and (iii) the Property has not been condemned.

   C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.  I have made or will make all payments required under a trial period plan.

(Page 3 of 13)

C3_5154-3

SHELLPOINT/CROSS 000232

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on June 01, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on June 01, 2013.

    A.    The Maturity Date will be: November 01, 2084.

    B.    The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $238,299.22 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C.    Interest at the rate of 3.625% will begin to accrue on the New Principal Balance as of May 01, 2013 and the first new monthly payment on the New Principal Balance will be due on June 01, 2013. My payment schedule for the modified Loan is as follows:

C3_5154-3

SHELLPOINT/CROSS 000233

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| Years 1-22 | 3.625% | 5/01/2013 | $1,331.18 | $787.41 May adjust periodically | $2,118.59 May adjust periodically | 6/01/2013 | 258 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3C.

4.    **Additional Agreements.** I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one

(Page 5 of 13)

C3_5154-3

SHELLPOINT/CROSS 000234

spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such

(Page 6 of 13)

C3_5154-3

SHELLPOINT/CROSS 000235

revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be

C3_5154-3

SHELLPOINT/CROSS 000236

understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

(Page 8 of 13)

C3_5154-3

SHELLPOINT/CROSS 000237

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances

C3_5154-3

SHELLPOINT/CROSS 000238

may be obtained.)

O.    BORROWERS PROTECTION PLAN If I have a Loan with Borrowers Protection Plan® ("BPP") under my Loan Documents, then I understand and agree that, unless I notify Lender of my request to cancel BPP or my BPP has already been cancelled or terminated in accordance with its terms, my BPP will remain on my Loan, as modified in accordance with this Agreement, and will continue to be governed by the terms of my Borrowers Protection Plan Addendum, which is the contract containing the terms and conditions of BPP that I received at the closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the Lender of my request to cancel BPP within sixty (60) days after the Modification Effective Date, I will receive a refund of any BPP fees I pay with respect to any period after the Modification Effective Date. I further understand that BPP on my Loan may have already been cancelled or terminated by its terms, such as if any monthly fee for BPP has remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers Protection Plan Addendum will be the monthly payment of principal and/or interest as modified under this Agreement. With the exception of BPP benefits based on the outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will be calculated based on this new Monthly Payment amount, subject to the terms of the Borrowers Protection Plan Addendum.

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount charged to me for BPP, will be recalculated based on the percentage set forth in my Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter, as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly payment of principal and/or interest as modified under this Agreement, may be higher if the monthly payment under my modified Loan is or becomes higher than the monthly payment that was due on my Loan prior to modification under this Agreement. The monthly fee for BPP will be payable at the same time and place as payments of principal and/or interest under my modified Loan. The "Protection Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP became effective, and the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date upon which my BPP will automatically expire, will not be changed by this Agreement. I will refer to my Borrowers Protection Plan Addendum for complete terms and conditions of my BPP.

C3_5154-3

SHELLPOINT/CROSS 000239

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

P.    OPTIONAL PRODUCTS PURCHASED AFTER CLOSING I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 1.800.641.5298.

C3_5154-3

SHELLPOINT/CROSS 000240

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

_Deborah Cross-Farron_ (signature)
Borrower Deborah Cross-Farron
(Must Be Signed Exactly As Printed)

_May 10, 2013_
Date

_____
Borrower
(Must Be Signed Exactly As Printed)

_____
Date

C3_5154-3

SHELLPOINT/CROSS 000241

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBORAH CROSS F.K.A. DEBORAH )
CROSS-FARRON                  )
                             )
vs.                          ) CA NO. 4:20-CV-01322
                             )
THE BANK OF NEW YORK MELLON   )
F.K.A.THE BANK OF NEW YORK,   )
AS TRUSTEE FOR THE            )
CERTIFICATEHOLDERS OF CWALT,  )
INC., ALTERNATIVE LOAN TRUST  )
2004-30CB; AND NEWREZ LLC     )
D.B.A. SHELLPOINT MORTGAGE    )
SERVICING                     )

**********************************************************

VIDEOCONFERENCING DEPOSITION OF

JEAN KNOWLES,

CORPORATE REPRESENTATIVE OF BONY-MELLON

January 5, 2021

(REPORTED REMOTELY)

**********************************************************


    VIDEOCONFERENCING DEPOSITION OF JEAN KNOWLES,
Corporate Representative, as a witness at the instance
of the Plaintiff and duly sworn, was taken in the
above-styled and numbered cause on the 5th day of
January, 2021, from 9:08 a.m. to 2:44 p.m., before Cindi
L. Bench, Certified Shorthand Reporter in and for the
State of Texas, reported by computerized stenotype
machine, wherein all parties were present via Zoom
Videoconferencing WebCas, pursuant to the Federal Rules
of Civil Procedure and the provisions stated on the
record or attached hereto.

EXHIBIT B

5

1          THE COURT REPORTER:  Would all parties

2    please identify themselves and who they represent for

3    the record.

4          MR. JACKSON:  Jeffrey Jackson for the

5    plaintiff, Deborah Cross.

6          MR. MCINNIS:  Walter McInnis for

7    defendants.

8          MS. KNOWLES:  Jean Knowles representing

9    Shellpoint.

10              JEAN KNOWLES,

11    having been first duly sworn, testified as follows:

12                  EXAMINATION

13    BY MR. JACKSON:

14      Q.   Good morning, Ms. Knowles.

15      A.   Good morning.

16      Q.   So as you've heard, my name's Jeff Jackson.  I

17    represent the plaintiff in this action, Deborah Cross.

18              You understand today that you're here as

19    the corporate representative of -- and already I want to

20    make sure I get this name right so that we can agree to

21    a shorter name right off the bat.

22              You understand today that you're here as

23    a representative of the Bank of New York Mellon, FKA,

24    the Bank of New York, as Trustee for the Certificate

25    Holders of C-W-A-L-T Inc., Alternative Loan Trust

1  could the -- if you don't remember, I could have the

2  court reporter read it back.

3            MR. MCINNIS:  Objection to form.  What

4  was the question?

5            MR. JACKSON:  Could the reporter read

6  back the witness's answer to the last question?  The

7  part where she identifies the topic letters.

8            (The requested portion of the record was

9  read.)

10    Q    (By Mr. Jackson) Okay.  So on M, the factual

11  basis of any argument BONY has that any limitations

12  period related to the loan was tolled.  Who did you

13  speak with about that particular topic?

14    A    Yeah, I was mistaken on that one.  I didn't

15  speak with anyone at Shellpoint regarding that topic.

16  Sorry.

17    Q    Did you speak with anyone in general not just

18  at Shellpoint about Topic M?

19    A    My attorney.

20    Q    Okay.  Topic L, the factual basis of any

21  argument BONY has that BONY waived, rescinded or

22  abandoned any acceleration.  Who did you talk with about

23  that topic?

24    A    The director of foreclosure, the intake person

25  in the litigation department at our office, Cheryl

1   Radke.  That was the -- most of my conversations were

2   with those two people.

3        Q.   Okay.  And what did the director of

4   foreclosure tell you about Topic L?

5                MR. MCINNIS:  Objection to form.

6        A.   He gave me more detailed information that I

7   wasn't aware of regarding how to see if a loan is

8   accelerated, how to see if it has ever been accelerated

9   in our system, what would happen if it had been

10  accelerated, why -- what happened so that it was not

11  accelerated.  I believe that may have been it.

12       Q    (By Mr. Jackson) Okay.  And what did Cheryl

13  Radke tell you about Topic L?

14       A.   That she had reviewed the loan of when we

15  initially received it from Bayview, the servicing

16  rights, and that she had determined the loan needed to

17  go into the litigation department as opposed to the

18  foreclosure department, that she had coded it in that

19  way so that foreclosure letters and phone calls, et

20  cetera, would not go out on this loan.  And the -- and

21  that she had placed the loan on hold and the foreclosure

22  system so that it -- nothing would go forward in that

23  department.

24       Q.   Okay.  Other than the director of

25  foreclosure -- well, let me ask you this before we move

1      Q.   Okay.  And what did Phillip Phuister tell you

2   about Topic J?

3      A.   That the loan was not accelerated, that the

4   accelerated data point in our system was not checked,

5   that the -- the communications that go out to the

6   borrower in the case of the accelerated loan have not

7   gone out and are not going out, and that the loan is now

8   on hold and is not proceeding as far as foreclosure.

9      Q.   Okay.  So, other than Topics M, L and J, are

10  there any other topics that you spoke with someone at

11  Shellpoint about in preparation for today?

12              And I have tried to put A through -- I

13  put A through S in front of you, and there's T, U, B and

14  W that I can scroll down for you.

15              Can you say one more time just to make

16  sure that you've given me all of the topic letters that

17  you spoke to someone about?

18              MR. MCINNIS:  Objection to form.

19      A.   Phillip and I touched on P, the written

20  communications that went out because, you know, he was

21  explaining how the accelerated data point controls what

22  goes out.  So at some level, P.

23      Q.   Okay.  Let me know and I can scroll down.

24      A.   Okay.  The -- that same point with R.  Phillip

25  and I touched on that as well.  We also touched on S, T,

1     A.   I audited loans after boarding in the day.  I

2 don't have experience in the boarding department but I

3 have been trained, and I've sat beside someone while

4 they boarded loans and I've been trained by the -- an

5 employee of the boarding department.

6     Q.   Okay.  When you audited loans after a

7 servicing transfer, what was involved, if anything, in

8 auditing whether or not the loan was accelerated or not?

9          MR. MCINNIS:  Objection to form.

10     A.   I don't believe that I personally ever did

11 that detailed of an audit.  Mine was more, did the

12 interest rate accidentally go into the due date spot or

13 did Mr. Smith's mortgage get loaded in Mrs. Jones' file

14 or, you know, that type of thing.

15     Q    (By Mr. Jackson) Does Shellpoint have a

16 procedure when boarding loans after a servicing transfer

17 for determining whether the loan was accelerated at the

18 time of the servicing transfer?

19     A.   So, generally, when a pool of loans is

20 boarded, which can be one loan regularly or it can be

21 many thousands of loans, we will get a heads up, if you

22 will, from the prior servicer or from the investor or

23 both to say you're getting, for example, 2,000 loans,

24 five hundred of them are in foreclosure status, 300 of

25 them are in -- are active, 150 -- I don't know how to

1    count that but anyway, 150 are in bankruptcy, you have

2    50 in-flight modifications and 25 litigated.  You know,

3    they tell us we're getting X, Y, Z.  When we did the --

4        Q.    And -- I'm sorry, go ahead.

5        A.    Well, you know, as we get the transfer of

6    information, we compare that information to the initial

7    information to see if we're getting what we were told we

8    would be getting, and that can be tweaked back and

9    forth; oh, this one's not supposed to be in foreclosure,

10   it's supposed to be in litigation or this one is not a

11   completed mod, it's in an in-flight mod.  You know,

12   there's tweaks every once in awhile.  And that all

13   gets -- or initially gets figured out in the boarding

14   process.

15             There's several different transfers of

16   information entered and each transfer's compared to the

17   original -- or the previous transfer to see if the

18   information matches.

19             After the loans go wide and the

20   foreclosure loans go to foreclosure, there's a team that

21   looks at them and says, oh, wait, this needs a notice of

22   default or this needs a -- or whatever.  You know, this

23   needs to be referred or this is going to trial next week

24   or, you know, they assess the status of the loan.

25             In this case for this loan, it went to

1  foreclosure for a minute.  And on February 13, Cheryl

2  Radke looked at it and said, oh, this is in litigation,

3  this does not need to proceed to foreclosure, it needs

4  to stay in litigation.  And she --

5      Q.   I'm sorry.

6      A.   -- she changed the code in servicing director

7  to put it in litigation.  She assigned it to Paula and

8  she put the loan on hold in the foreclosure system.

9      Q.   Did she assign it to Paula?

10     A.   Paula Gonzales.

11     Q.   Paula Gonzales?

12     A.   Yes.  And then Paula starts reviewing it and

13  determining the next step and speaks to litigation

14  counsel about it and et cetera.

15     Q.   Okay.  On -- you said that the -- that --

16  well, before we go on, since you got into the loan

17  itself, I want to get in a couple of exhibits so that we

18  can all make sure we are on the same page and we are

19  talking about this loan or that loan.  So, let's just --

20  oh, before I move on, I need to make sure I start

21  marking these, otherwise --

22          MR. MCINNIS:  Jeff, we've been going

23  almost an hour.  In the next 15 minutes or so, would it

24  be okay to take a break?

25          MR. JACKSON:  Yeah, yeah.  That's no

1   checked by boarding or by someone at Shellpoint.  That,

2   I don't know.  I know the information -- all the

3   information from the Cross loan comes over in the data

4   transfer.  I'm just not sure if that box in that system

5   gets checked by the boarding department or by the

6   foreclosure or someone at Shellpoint.

7       Q.   And by that box, you're referring to what we

8   talked about earlier the accelerated data point?

9       A.   Correct.

10      Q.   Okay.

11              MR. JACKSON:  Why don't we take a break,

12  Walter?

13              MR. MCINNIS:  Sure.

14              THE COURT REPORTER:  We're off the record

15  at 10:04 a.m.

16              (Short break held.)

17              THE COURT REPORTER:  We're on the record

18  at 10:17 a.m.

19      Q    (By Mr. Jackson) Okay.  So, we're back from a

20  brief break, Ms. Knowles.  So, I've got three exhibits

21  entered.  I think I want to go ahead and get another one

22  in.

23              MR. JACKSON:  This will be 4.

24              (Exhibit Number 4 marked.)

25      Q    (By Mr. Jackson) And let me get my screen

1  sharing going.  Oh, here's how I can do a single one.

2  Okay.  Have you seen this before?

3      A.   I have.

4      Q.   Okay.  And what is this document?

5      A.   It's a welcome letter or a hello letter that

6  goes out to the borrower.  This one was dated the day

7  after Cheryl decelerated the loan and sent to

8  litigation.

9            MR. MCINNIS:  Can you refer to the Bates

10  number on that?

11            MR. JACKSON:  Yes.  Sorry, Walter.

12            MR. MCINNIS:  Thank you.

13            MR. JACKSON:  210, it looks like.

14      Q    (By Mr. Jackson) Okay.  Let me unwrap your

15  answer just a little bit.

16            So, first of all, what is a hello -- or I

17  believe you said it's called a hello or a welcome

18  letter.  Can you tell me what that is in the mortgaging

19  servicing industry?

20      A.   It's just Shellpoint notifying the borrower

21  that they have taken over the servicing of the loan that

22  they view will no longer be servicing their loan.  It

23  gives them the payment amount, a paid -- a coupon, I

24  believe, is attached on the next page, and it provides

25  the address to send the payment should they choose to do

1   dated -- I can't remember before or after something

2   related to the acceleration data point.  Can you repeat

3   that?  Do you know what I'm talking about?

4           MR. MCINNIS:  Objection to form.

5       A.   They were sent out February 14th, and Cheryl

6   moved the loan to litigation on February 13th, which

7   accelerated.

8       Q.   (By Mr. Jackson) February 13th.  Okay.

9       A.   So this was sent out the next day after Cheryl

10  moved the litigation and started it.

11      Q.   So, between the time the loan went live and

12  February 13th, 2020, you're telling me Shellpoint

13  considered the loan accelerated?

14          MR. MCINNIS:  Objection to form.

15      A.   No.  I don't believe that Shellpoint ever

16  considered it accelerated.  I understand -- I can see

17  that Bayview considered it accelerated but I don't

18  believe Shellpoint ever did.  But Cheryl, making the

19  decision that the loan did not need to be in the

20  foreclosure department, that it needed to be in the

21  litigation department, effectively decelerated.  It

22  just --

23      Q.   (By Mr. Jackson) But --

24      A.   With that switch, no matter who considered

25  what, we have to review every loan to see what's needed

1  and what's the status and how we need to proceed and so

2  forth, and that takes a long time sometimes.  But in

3  this case, she reviewed it on February 13th and moved it

4  to the litigation department, so it was no longer with

5  foreclosure, it was not accelerated.

6         Before that, it wasn't necessarily

7  either.  In this case it was not, because I looked at

8  that -- I had a query ran regarding that acceleration

9  tab and they had never been accelerated as long as it

10  was with Shellpoint.  But her moving it to litigation

11  kind of toggled that switch in our system.

12     Q.   When Cheryl Radke moved it from foreclosure

13  status to litigation status, can you explain why in BONY

14  and Shellpoint's view that de-accelerated the loan?

15     A.   Because when a loan is moved to litigation

16  status, in Shellpoint's system, the foreclosure firm is

17  to stand down; every single time, they stand down, they

18  cannot do anything.  No foreclosure can proceed in any

19  way unless or until the case manager in the litigation

20  department or the paralegal performs several different

21  tasks that allows it to do so.

22         We can change the status in servicing

23  director back to CBU, and we also saw it have to open a

24  task, to say, this may proceed to foreclosure, despite

25  the litigation, if that's the case.  Yeah.  There are

1  goes live.

2      Q.   Right.  So my recollection of your earlier

3  testimony was that you said that you weren't sure at

4  what point in the boarding process that somebody -- and

5  I have here written down, checks the box.

6      A.   I don't know if that even happens during the

7  boarding process or if it happens by the department

8  after the boarding process.  I'm not sure of that answer

9  at all.  I'm not sure when that happens at all.

10     Q.   Okay.  And I believe -- and correct me if I'm

11  wrong, but it's your testimony that you don't know with

12  regard to the Cross loan if Bayview communicated with

13  Shellpoint the accelerated status of the loan when

14  Bayview transferred the loan to Shellpoint?

15               MR. MCINNIS:  Objection to form.

16     A.   I don't think you've asked me that.  But I had

17  no way of knowing what Bayview thought.  From the

18  evidence in the -- the documents in the file, it's

19  apparent that they accelerated the loan and it came over

20  in foreclosure status or with a foreclosure code.

21               So, I believe that in the initial

22  transfers, they listed that loan -- or they counted that

23  loan as one of the loans that were in foreclosure

24  status.

25               When Cheryl Radke looked at it, she made

1 the decision that that does not need to be in

2 foreclosure status, it needs to be in litigation status

3 and changed the codes accordingly.

4     Q     (By Mr. Jackson)  Okay.  So, let's talk about

5 this foreclosure status and Shellpoint's policies and

6 procedures related to putting a loan into foreclosure

7 status and what happens in foreclosure status.

8               So earlier you testified that a loan does

9 not have to be accelerated to go to foreclosure status;

10 am I correct?

11     A.    Correct.

12     Q.    Okay.  At some point after a loan goes into

13 foreclosure status, would it get accelerated while in

14 foreclosure status?

15     A.    If that's what needs to happen, it would.

16     Q.    Okay.  What event or events would trigger if

17 the loan being -- a loan being accelerated after it went

18 into foreclosure status?

19     A.    It's a state specific.  Different states have

20 different criteria and each foreclosure representative

21 that assigns loans is assigned by a state.  So, with

22 people that are assigned loans in Texas know the

23 criteria for Texas, which is different from Florida, for

24 example.

25     Q.    Okay.  So when -- and you were still speaking

1  correct me if I'm wrong was she ran a query about

2  whether that tab -- or whether that check had ever

3  changed.  I believe her testimony was that her research

4  reflected that had never changed so that the screen shot

5  we give you today would be the status ever to Shellpoint

6  to that end.

7       Q    (By Mr. Jackson) Ms. Knowles, so I'll go ahead

8  and ask that, did you run a query with regard to the

9  history of the acceleration data point?

10      A.   I requested someone in IT to run it, yes.

11      Q.   And were you given the results of that query?

12      A.   I was.

13      Q.   And what were the results?

14      A.   That the acceleration tab had been unchecked

15  since the transfer of servicing.

16      Q.   Despite the fact that you admit that Bayview

17  had accelerated the loan and that it -- despite that you

18  admit Bayview had accelerated the loan?

19               MR. MCINNIS:  Objection to form.

20      A.   Yes.

21      Q    (By Mr. Jackson) Okay.  And it's true, right,

22  that when the loan was service transferred to Shellpoint

23  from Bayview that it was accelerated, correct?

24               MR. MCINNIS:  Objection to form.

25      A.   It was accelerated prior to Shellpoint

1    were 5.  Okay.

2                    THE COURT REPORTER:  Yes.

3                    MR. JACKSON:  How did I save -- save two

4    5s?

5        Q    (By Mr. Jackson) Okay.  So, formal rescission.

6    Let's look at this which we'll call 6.

7                    (Exhibit Number 6 was marked.)

8        Q    (By Mr. Jackson) Okay.  Have you seen this

9    before, Ms. Knowles?

10        A.    I have.

11        Q.    Okay.  And you looked at it in preparation for

12    today?

13        A.    Yes, sir.

14        Q.    Okay.  You would agree with me that this is a

15    letter sent on behalf of Shellpoint and BONY by the

16    Akerman Law Firm, correct?

17        A.    Correct.

18        Q.    Okay.  And would you agree with me that this

19    is an explicit notice that BONY and Shellpoint no longer

20    considered the loan accelerated, correct?

21        A.    Correct.

22        Q.    Okay.  Between the time the loan went live,

23    which I think we have agreed is on or about

24    February 1st, 2020, that between the time the loan went

25    live and April 7th of 2020, that neither BONY nor

1  Shellpoint or any of its lawyers or agents sent

2  Mrs. Cross an explicit notice that BONY and Shellpoint

3  no longer considered her loan accelerated?

4            MR. MCINNIS:  Objection to form.

5       A.   True.  But we did send -- we also didn't send

6  the letters that would have gone out had the loan been

7  accelerated.  And the letters that we did send out did

8  not show that the loan was accelerated.  We were acting

9  as it wasn't accelerated.

10           MR. JACKSON:  Objection to nonresponsive

11  after true.

12           Okay.  So this is 6.

13      Q    (By Mr. Jackson) Okay.  All right.  Let's take

14  a look at -- let's just see if we can jump in and out.

15  Where do I want to go from here?  All right.  Let's go

16  back in time, we're going to try to go chronologically

17  here and talk about some documents.  Let's start with

18  the N-O-D.

19           MR. JACKSON:  This will be Exhibit 7?

20  Exhibit 7?

21           THE COURT REPORTER:  Yes.

22           (Exhibit 7 marked)

23      Q    (By Mr. Jackson) And I want to give you the

24  chance to take a look at this document, so I'm just

25  going to slowly scroll through it.  If you want me to

1   slow down, just let me know.

2                Okay.  So I'm going to go back up to the

3   main first page.  And have you seen this document

4   before?

5        A.   I have.

6        Q.   Okay.  Did you review it in preparation for

7   today?

8        A.   I did.

9        Q.   Okay.  What's your understanding of the

10  significance of this document as it relates to the Cross

11  loan?

12       A.   That it is the notice of default sent by

13  Bayview Loan Servicing in October of 2015.

14       Q.   Okay.  And this is a document that was

15  transferred over to you to Shellpoint from Bayview,

16  correct?

17       A.   That's correct.

18       Q.   Okay.  And so this is the document that

19  would -- that Shellpoint and BONY would consider, you

20  know, to have significance, have legal significance with

21  regard to the Cross loan, correct?

22       A.   Correct.

23                MR. MCINNIS:  Objection to form.  Legal

24  significance?

25       Q    (By Mr. Jackson) Okay.  And -- okay.  I lost my

63

1        A.    Correct.

2        Q.    Okay.

3               MR. JACKSON:  All right.  I'm going to

4    save this.

5        Q    (By Mr. Jackson) Next, we're going to open a

6    new exhibit which will be 8.

7               (Exhibit Number 8 is marked)

8        Q    (By Mr. Jackson) Okay.  Do you see this?

9        A.    Yes.

10       Q.    I'm going to give you a chance to review the

11   document like I did on the other one, and just let me

12   know if you need me to zoom in or slow down.

13       A.    Slow down.

14       Q.    Sure.  Sorry.

15       A.    (Reviewing.)

16              MR. MCINNIS:  We're at two hours, Jeff,

17   any time in the next ten or 15, you want to take a quick

18   break is fine.

19              MR. JACKSON:  Okay.  Sounds good.

20              MR. MCINNIS:  Thank you.

21       A.    Okay.  You can go down.  Okay.

22       Q    (By Mr. Jackson) So going back up to the top

23   here.  This particular document, do you know or have you

24   seen it before?

25       A.    I have.

64

1     Q.   Okay.  Is this -- was this document

2  transferred to Shellpoint at the time of the servicing

3  transfer from Bayview to Shellpoint?

4     A.   Yes, I believe so.

5     Q.   Okay.  And having reviewed the document and

6  looked at the document, would you agree that this is a

7  notice of acceleration of the Cross loan?

8     A.   Yes.

9     Q.   Okay.  You would agree with me that this

10  letter was -- this notice of acceleration was sent to

11  Mrs. Cross after Bayview had sent Mrs. Cross a notice of

12  default and intent to accelerate, correct?

13     A.   Correct.

14     Q.   So that as of February 11, 2016, the Cross

15  loan was accelerated, correct?

16     A.   Correct.

17     Q.   Okay.  And we'll look at this in a second, but

18  this letter -- and I'll highlight it the best I can --

19  references a nonjudicial sale of the property to take

20  place on April 5th, 2016.  Do you see that reference?

21     A.   Yes.

22     Q.   Okay.  And we'll take a look at that notice of

23  sale real quick.

24             MR. MCINNIS:  Isn't it attached to that

25  letter, Jeff, isn't it the last couple of pages?

1  sure I mark 11, which 11 was this document. That

2  makes sense. Now I want to go back to --

3          I want to go back to 10. I forgot to ask

4  about the sale on that one. So I have got 10 back in

5  front of you. I'll scroll down to the notice. Sale was

6  to take place July 2, 2019. Do you see that, Ms.

7  Knowles?

8      A.   I do.

9      Q.   That sale did not take place, right?

10     A.   Correct.

11     Q.   Okay. So, go through some of these now, and

12  will try to stay in chronological order, the last

13  document was August 1st, 2019. So the next document I

14  want to look at is this, to the 2/17/20 letter. All

15  right. Look at the servicing transfer which was 228.

16  So look at this.

17          MR. JACKSON: This will be marked 12.

18          (Exhibit 12 marked)

19     Q.   Take a few minutes to familiarize yourself as

20  before. Let me know when you're ready to scroll down

21  and answer questions.

22     A.   (Reviewing).

23          MR. MCINNIS: What Bates number are you

24  on?

25          MR. JACKSON: Sorry, Walter, 228.

88

1      A.   Okay.  Ask you to scroll down.

2      Q.   (By Mr. Jackson) Uh-huh.

3      A.   (Review)  Okay.  (Review)  Ready.

4      Q.   Okay.  You have possibly seen these before?

5      A.   I have.

6      Q.   Have you seen this particular loan before?

7      A.   I have.

8      Q.   In preparation for today?

9      A.   Yes, sir.

10     Q.   Okay.  What is this letter called or referred

11  to at Shellpoint, if anything?

12     A.   Different people refer to it as different

13  things.  This letter is solicitation for loss

14  mitigation.

15     Q.   Solicitation letter for loss mitigation; is

16  that what you said.

17     A.   Correct.

18     Q.   So earlier you said that Cheryl Rackne on

19  February 13, 2020 took the loan out of foreclosure

20  status and put it in the litigation status.

21     A.   Correct.

22     Q.   Okay.  We can agree this letter was sent out

23  four days later?

24     A.   Correct.

25     Q.   Okay.  That letter says:  The above referenced

1        Okay.  I think I'm done with this one.

2   Let's move onto -- I'm trying to keep, at the time being

3   at least, going in chronological order.

4        Let's take a look at some of the mortgage

5   statements.  And we're going to look -- go a little bit

6   out of order on the mortgage statements just to try to

7   stay within Shellpoint's mortgage statements.  So we're

8   going to start here with the January 16th, 2020

9   statement.

10       MR. JACKSON:  And this is going to be 13.

11       (Exhibit Number 13 marked)

12   Q    (By Mr. Jackson) I'm sorry, let's just go into

13   this Shellpoint statement here from February.  Have you

14   seen this before?

15       A.   I have.

16       Q.   Okay.  Was this the first mortgage statement

17   Shellpoint sent to Deborah Cross?

18       A.   I believe it may have been, yes.

19       Q.   Okay.  And the reason I -- I never want to

20   assume anything, but the reason I ask is because it's

21   the first -- it would seem to me to be the first

22   statement after the notice of the servicing transfer

23   effective date of February 1st, 2020.

24       A.   Correct.

25       Q.   Okay.  And on this particular statement, we

103

1        MR. JACKSON:  That's a tough proposition

2   to disagree with.

3        MR. MCINNIS:  Sometimes it just says what

4   it says.

5        MR. JACKSON:  That is that it's -- that

6   is true.  It's undeniably profound.

7        MR. MCINNIS:  We went to law school to

8   get there.

9        MR. JACKSON:  I mean, there's a lot of

10  stuff on here.

11       Q    (By Mr. Jackson) Okay.  So, let's go take a

12  look at something else.  I think I'm done with this one.

13       MR. JACKSON:  Oh, I didn't.  Let me save

14  it.  This is 13.

15       Q    (By Mr. Jackson) I'm going to have to read it

16  if we need to touch on this.  Well, let's look at this

17  one.

18       MR. JACKSON:  This will be 14.

19       (Exhibit Number 14 marked)

20       Q    (By Mr. Jackson) Okay.  So this is a Bayview

21  statement.  Have you seen this before, Ms. Knowles?

22       A.    Yes.

23       Q.    Okay.  This is a document that was transferred

24  to Shellpoint from Bayview at the time of the servicing

25  transfer?

1      A.   Yes, sir.

2      Q.   Okay.  And so, I'm going to do sort of a

3   side-by-side -- let's see if we can -- can you see both

4   of these okay?

5      A.   No.  The Shellpoint one, part of it is covered

6   up with your -- all of you guys' pictures.

7      Q.   Oh, yeah.  Okay.  That makes sense.  Let me --

8   let me just move it over.

9           MR. MCINNIS:  I don't know about you,

10  Jeff, but that's really small.

11     Q    (By Mr. Jackson) Okay.  Well, let's just look

12  at them one at a time then.  So, let me expand this one

13  back and I can click over.  All right.  Is that better?

14          MR. MCINNIS:  Yes, sir.

15     A.   That's fine.

16     Q    (By Mr. Jackson) Okay.  Great.  So, this was

17  the Shellpoint one.  We can agree that in two places, I

18  think, right, it has the amount due right there where

19  I'm highlighting at the top right, and then a little bit

20  lower right, again, we have total amount due.

21              It's the same amount on the box at the

22  top right, and then the box below the box at the top

23  right.  If we look over here at Bayview, we've got a

24  statement of the total amount due here in the top right

25  box as well.  Do you see that?

1    Q    (By Mr. Jackson) Well -- so, there's nothing

2  that requires -- well -- and you may not be able to

3  answer for Bayview but I'll ask it anyway.  As far as

4  Bayview is concerned, there's nothing that required

5  Bayview to put the accelerated amount of the loan on a

6  mortgage statement in order for the loan to be

7  accelerated, right?

8             MR. MCINNIS:  Objection to form.

9       A.   I can't speak to Bayview.  I don't know.

10            On our statements, we have Logic that

11  runs through our system, that when A, B and C boxes are

12  checked, these letters go out with this information on

13  it.  When D, E, F boxes are checked, the separate

14  letters go out with this information on it.  If the

15  correct boxes had been checked, such as the accelerated

16  box, the letter statement you're looking at right now

17  would have had accelerated amount just like Bayview's

18  had.

19            THE COURT REPORTER:  I think we lost

20  Jeff.  So we're off the record at 1:25 p.m.

21            (Short pause.)

22            THE COURT REPORTER:  Okay.  We're back on

23  the record at 1:29.

24            MR. JACKSON:  Okay.  I'm back.  Let me

25  get my e-mail back up and let me get my screen share

1    back up.

2        Q    (By Mr. Jackson) Okay.  Sorry about that,

3    Ms. Knowles.  And I was in the middle of a question, I

4    think, when I dropped out, and I'm pretty sure that

5    question was:  Are you aware of any requirement that in

6    order for a loan to be accelerated, that the accelerated

7    amount has to be stated on the mortgage statement?

8                MR. MCINNIS:  Objection to form.

9        A.    No.  I think that their Logic made the

10   accelerated amount show on the statement because it was

11   accelerated and our Logic didn't show the accelerated

12   amount because it wasn't accelerated.

13       Q    (By Mr. Jackson) Okay.  And when you say Logic,

14   can you explain what you mean by that?

15       A.    The way the system runs, for instance, the

16   fact that this loan is litigation coded, that code keeps

17   certain letters from going out or certain phone calls

18   from being made.  And then the Logic determines, you

19   know, that we don't try to collect the debt on someone

20   in bankruptcy or we don't call a person that's

21   represented by counsel.  The Logic -- and the Logic also

22   determines what goes into our letters.

23       Q.    Do you recall any time that Shellpoint's Logic

24   did not put the accelerated amount of a loan on a

25   mortgage statement even if it was accelerated?

1      IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF TEXAS
2                HOUSTON DIVISION

3  DEBORAH CROSS F.K.A. DEBORAH )
   CROSS-FARRON                 )
4                               )
   vs.                          ) CA NO. 4:20-CV-01322
5                               )
   THE BANK OF NEW YORK MELLON  )
6  F.K.A.THE BANK OF NEW YORK,  )
   AS TRUSTEE FOR THE           )
7  CERTIFICATEHOLDERS OF CWALT, )
   INC., ALTERNATIVE LOAN TRUST )
8  2004-30CB; AND NEWREZ LLC    )
   D.B.A. Shellpoint MORTGAGE   )
9  SERVICING                    )

10     ****************************************************

11            REPORTER'S CERTIFICATION OF THE
              VIDEOCONFERENCING DEPOSITION OF
12                    JEAN KNOWLES,

13     CORPORATE REPRESENTATIVE OF BONY-MELLON

14            (REPORTED REMOTELY)

15            JANUARY 5, 2021

16     ****************************************************

17     I, Cindi L. Bench, a Certified Shorthand Reporter in

18  and for the State of Texas, hereby certify to the

19  following:

20     That the witness, Jean Knowles, Corp Rep, was duly

21  sworn by the officer and that the transcript of the oral

22  deposition is a true record of the testimony given by

23  the witness;

24     I further certify that pursuant to FRCP Rule

25  30(f)(i) that the signature of the deponent:

146

1    ✓____was requested by the deponent or a party

2    before the completion of the deposition and that the

3    signature is to be before any notary public and returned

4    within 30 days from the date of receipt of the

5    transcript.  If returned, the attached Changes and

6    Signature Page contains any changes and the reasons

7    therefore;

8    _____was not requested by the deponent or a party

9    before the completion of the deposition.

10   I further certify that I am neither counsel for,

11   related to, nor employed by any of the parties or

12   attorneys in the action in which this proceeding was

13   taken, and further that I am not financially or

14   otherwise interested in the outcome of the action.

15   Certified to by me on this, the _13_ day of

16   _January_, 2021.

17

18   _____

19   Cindi L. Bench, CSR
     Texas CSR 752
20   Expiration:  06/30/21
     CINDI BENCH REPORTING
21   10701 Corporate Drive, # 172
     Stafford, Texas 77477
22   281 565-8222
     Firm Registration No. 56

23

24

25

1    COUNTY OF FORT BEND )

2    STATE OF TEXAS        )

3        I hereby certify that the witness was notified on
     _1/13/21_____ that the witness had 30 days or

4    (_____days per agreement of counsel) after being
     notified by the officer that the transcript is available

5    for review by the witness and if there are changes in
     the form or substance to be made, then the witness shall

6    sign a statement reciting such changes and the reasons
     give by the witness for mailing them;

7
         That the witness' signature was/was not returned as

8    of _2/4/21_____.

9        That a copy of this certificate was served on all
     parties and/or the witness shown herein on

10    _2/4/21_;

11       That the original deposition was delivered to

12   Jeff Jackson

13       I further certify that I am neither attorney or
     counsel for, related to, nor employed by any parties to

14   the action in which this testimony is taken and,
     further, that I am not a relative or employee of any

15   counsel employed by the parties hereto or financially
     interested in the action.

16

17       SUBSCRIBED AND SWORN TO under my hand and seal of

18   office on this the ___10 day of ___February

19   2021.

20

21                          Cindi L. Bench, CSR
                            Texas CSR 752

22                          Expiration:  6/30/21
                            CINDI BENCH REPORTING

23                          10701 Corporate Drive, # 172
                            Stafford, Texas 77477

24                          281 565-8222
                            Firm Registration No. 56

25

143

1    JEAN KNOWLES,CORP REP(BONY) 1/5/21 CHANGES AND SIGNATURE

2    PAGE LINE  CHANGE                    REASON

3      See Exhibit A

4    _____

5    _____

6    _____

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____

144

1      I declare under penalty of perjury that the

2  foregoing is true and correct.

3

4  _____

5                    JEAN KNOWLES

6

7      SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned

8  authority, by the witness, JEAN KNOWLES, on this the

9  3rd day of _____February_____, 2021.

10

11 _____

12                NOTARY PUBLIC IN AND FOR

13                THE STATE OF _SC_____

14

15 My Commission Expires: 06/11/2023

16

17

18

19

20

21

22

23

24

25

## EXHIBIT A

| Page(s):Line(s) | Change | Reason |
|---|---|---|
| 10:9 | Revise "logs" to "loans" | Typographical error |
| 10:24 | Revise "have" to "had" | Typographical error |
| 11:6-7 | Revise "law said I am responsible for now or" to "loans I am responsible for now are" | Typographical error |
| 11:10 | Revise "community" to "company" | Typographical error |
| 18:1 | Revise "Radke" to "Rathke" | Misspelling |
| 19:11 | Revise "Radke" to "Rathke" | Misspelling |
| 22:2 | Revise "their" to "no" | Typographical error |
| 24:7-8 | Revise "properties, inspections" to "property inspections" | Typographical error |
| 28:20 | Delete "regularly" | Typographical error |
| 29:19 | Revise "wide" to "live" | Typographical error |
| 30:2 | Revise "Radke" to "Rathke" | Misspelling |
| 36:5 | Revise "question of" to "questionnaire" | Typographical error |
| 36:10 | Revise "before me" to "performing" | Typographical error |
| 36:21 | Revise "date of" to "data" | Typographical error |
| 36:23 | Revise "date of" to "data" | Typographical error |
| 37:20 | Revise "handed" to "hounded" | Typographical error |
| 40:22 | Revise "they view" to "Bayview" | Typographical error |
| 43:7 | Revise "accelerated" to "decelerated" | Typographical error |
| 44:9 | Revise "they" to "it" | Typographical error |
| 44:12 | Revise "Radke" to "Rathke" | Misspelling |

| 44:23 | Revise "CBU" to "FCBU" | Typographical error |
|---|---|---|
| 44:23 | Delete "saw it" | Typographical error |
| 45:3 | Revise "Radke" to "Rathke" | Misspelling |
| 45:10 | Revise "that had" to "that would have" | Typographical error |
| 46:5 | Revise "Radke" to "Rathke" | Misspelling |
| 48:25 | Revise "Radke" to "Rathke" | Misspelling |
| 49:21 | Revise "assigns" to "is assigned" | Typographical error |
| 55:11 | Revise "MAT" to "mapped" | Typographical error |
| 74:18 | Revise "can" to "that we" | Typographical error |
| 79:10 | Revise "is that" to "it's the" | Typographical error |
| 80:8 | Revise "loan" to "lots of" | Typographical error |
| 82:9 | Revise "It's not to transfer" to "It is transferred" | Typographical error |
| 84:20-21 | Revise "Maybe Paula recollects, maybe Paula recollects 20,000 loans" to "Maybe Paula recollects." | Clarification |
| 85:1 | Revise "did not" to "don't" | Typographical error |
| 85:3 | Revise "had" to "have had" | Typographical error |
| 85:4 | Revise ", and that boarders" to "when boarded" | Typographical error |
| 86:3 | Revise "MAT" to "mapped" | Typographical error |
| 86:6 | Revise "then they UPB" to "and the UPB" | Typographical error |
| 88:18 | Revise "Rackne" to "Rathke" | Misspelling |
| 89:8-9 | Revise "as – or post-accelerate an" to "put an accelerated" | Typographical error |
| 90:5-6 | Revise "has a -- does not have enough" to "it does not have an" | Typographical error |
| 90:18 | Revise "?" to "." (sentence should end with a period, | Typographical error |

| | not a question mark) | |
|---|---|---|
| 91:4 | Revise "being" to "the" | Typographical error |
| 91:6 | Revise "for" to "with" | Typographical error |
| 91:19 | Insert "we" before "possibly" | Typographical error |
| 100:11 | Revise "bound" to "bottom" | Typographical error |
| 101:21 | Revise "not the accelerated" to "not accelerated" | Typographical error |
| 105:05 | Revise "I can't. You can see Bayview's" to "I can't see Bayview's." | Typographical error |
| 109:23 | Add "not" before "have an accelerated amount" | Typographical error |
| 118:21 | Revise "Radke" to "Rathke" | Misspelling |
| 119:4 | Revise "Radke" to "Rathke" | Misspelling |
| 119:12 | Revise "when it had" to "which had" | Typographical error |
| 119:20 | Revise "Radke" to "Rathke" | Misspelling |
| 120:22 | Revise "Bates stamped" to "dated" | Misspoke |
| 125:24 | Revise "Radke" to "Rathke" | Misspelling |
| 126:10 | Revise "which" to "with" | Typographical error |
| 127:6 | Revise "But" to "But because she" | Typographical error |
| 130:20 | Revise "force" to "enforce" | Typographical error |
| 136:15 | Revise "us to account" to "a count" | Typographical error |
| 134:1 | Revise "to go" to "to give the go" | Typographical error |
| 141:4 | Revise "wouldn't" to "would've" | Typographical error |

 **Shellpoint**
Mortgage Servicing



P.O. Box 10826
Greenville, SC 29603-0826

Phone: 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com

Hours of operation
Mon - Thur: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

February 14, 2020

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

Account Number: ■■■■5158
Principal Balance: $222,613.72
Property Address: 16515 OBSIDIAN DR
HOUSTON, TX 77095

Dear Homeowner:

**Shellpoint Mortgage Servicing ("Shellpoint")** welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

**The servicing of your mortgage is being transferred.** Effective 02/01/2020, the **servicing** of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Bayview Loan Servicing, LLC to Shellpoint.

**Making your payments.** Starting on 02/01/2020, make your mortgage payments payable to **Shellpoint Mortgage Servicing** at the address shown on the attached payment coupon. Your prior servicer, Bayview Loan Servicing, LLC, will stop accepting payments on 02/01/2020. Shellpoint will start accepting mortgage payments on 02/01/2020. **Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.**

**Other payment options.** Don't want to write monthly checks? Our other payment options include:

- **Free automatic withdrawal** from your bank account (also called "ACH").
- **Online payments** (via our website).
- **Pay by phone** (using either our automated phone system or by speaking with a live Customer Care representative).

**Manage your mortgage online.** To help you manage your mortgage account, we've created a set of easy-to-use online **tools**. Just use your computer, tablet, or phone to visit our website at **www.shellpointmtg.com**. If you haven't already done so, select the **Setup Your Account** option from the **Tools** menu and create an account with us. After you've set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

L-10-M

P I000002  A-0579475158  020830000

✂ Detach Temporary Payment Coupon And Return With Payment ✂

## PAYMENT COUPON

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

| Loan Number | ■■■5158 |
|---|---|
| First Payment Due Date: | 01/01/2015 |
| Monthly Payment Amount | $ 2,238.51 |
| **Amount Enclosed:** | **$** |

**Enter the amount enclosed, and mail your payment check with this coupon to:**

�III·II·I|II·III|II·II|I|II·II|II·III·II·II·II|II·III·II|II|III·

SHELLPOINT MORTGAGE SERVICING
P.O. BOX 740039
CINCINNATI, OH 45274-0039

EXHIBIT B-4

NT/CROSS 000210
5158

**Call us if you need to** at **866-316-4706**. Our **automated phone system** gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available Monday through Friday 8:00AM-10:00PM, and Saturday 8:00AM-3:00PM EST.

**Were you working on a loss mitigation plan?** If you were engaged in a loss mitigation plan or evaluation with your previous servicer – or if you applied for such a plan – please call us right away. Dial 866-825-2174 so we can make sure your plan information has been properly transferred to us. If necessary, we will contact your previous servicer to obtain missing documents.

**¿Hablas Español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero **866-316-4706**.

*Welcome to Shellpoint!* We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

Sincerely,

*Customer Care Team*
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603-0826
**866-316-4706**



# Helping You Manage Your Mortgage

Please review the following important information regarding your loan payments. Our records indicate that your 01/01/2015 payment is due. As of the date of this letter, the principal balance is $222,613.72 and your escrow balance is $-73,728.80. You will receive a billing statement from Shellpoint each month. Effective 02/01/2020, please begin sending your mortgage payments to Shellpoint using one of the options below.

## Easy Ways to Pay

**FREE Automatic Withdrawal (ACH):** Sign up online at www.shellpointmtg.com. Our ACH options are:
- **Monthly** – Choose your date (1st - 15th)
- **Bi-weekly** – Draft half every other Monday

**Online:** You can make one-time payments using our website when you sign up at www.shellpointmtg.com.

**Mail:**

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**Phone:** You can make payments over the phone using our automated system or with a Customer Care representative at 866-316-4706.

## Loan Information

To help simplify the management of your mortgage, we have provided the following information.

| Terms of Your Mortgage | |
| --- | --- |
| Loan Number | ■■■■5158 |
| Loan Origination Date | 11/02/2004 |
| Original Loan Amount | $255,440.00 |
| Current Interest Rate | 3.625% |
| Term | 360 months |
| Maturity Date | 11/01/2034 |

| Current Balances | |
| --- | --- |
| Principal Balance | $222,613.72 |
| Escrow Balance | $-73,728.80 |

| Payment Details | |
| --- | --- |
| Contractual Due Date | 01/01/2015 |
| Principal and Interest | $1,331.18 |
| Escrow | $907.33 |
| Total Monthly Payment | $2,238.51 |

## *Reach Out to Us*


Call
866-316-4706


Live Chat
www.shellpointmtg.com


Secure Email
www.shellpointmtg.com

SHELLPOINT/CROSS 000212

# *FAQs*



| | |
|---|---|
| **Will my previous servicer still accept my payments?** | The date that your previous servicer will stop accepting payments from you is 1/31/2020. We will begin accepting payments from you on 02/01/2020. Please send all payments due on or after that date. |
| **What if I make a payment to my previous servicer?** | Your previous servicer will forward your payment to us and it will be applied towards the date due. |
| **How can I make payments to you?** | You can pay by check, online, with a Customer Care representative, through our automated IVR (phone system), wire transfer, or by setting up a monthly or bi-weekly ACH. |
| **What if my payment is due during this transfer?** | Continue to make your payments during the first 60 days of transfer. During the first 60 days we will not treat your payments as late and will not apply late fees. |
| **Will the terms of my mortgage loan be affected by this servicing transfer?** | No. The terms of your mortgage are not affected by this transfer, other than those directly related to the servicing of your loan. |
| **What if I have more than one loan?** | This letter refers only to loan number 0579475158. If more than one loan is transferring to Shellpoint, we will send you a Welcome Letter and information for each loan. When making payments, please send the correct loan amounts separately, referencing each account. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

If you pay by check, you are authorizing Shellpoint Mortgage Servicing to use the check information to make a one-time electronic debit for each check presented from the account at the financial institution designated on the check. This electronic debit will be for the exact amount indicated on the check.

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan. Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is explained in more detail in Section 6 and Section 12 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605, 12 CFR Sections 1024.35 and 1024.36).

RESPA Section 6 and Section 12 give you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within five (5) business days of receiving your request. A "qualified written request" is a written correspondence—other than writing on a payment coupon or other payment-related documents supplied by your servicer—that includes your name, account number, and reasons for the request. Send all qualified written requests to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826; or you can call 866-316-4706.

No later than thirty (30) days (not including weekends and legal public holidays) after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a consumer-reporting agency concerning any overdue payment related to the 30-day period or your qualified written request. However, the servicer may still begin foreclosure proceedings if proper grounds exist under the mortgage documents.

SHELLPOINT/CROSS 000213

00488040408J0000

A "business day" is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals if servicers are shown to have violated the requirements of that Section. Seek legal advice if you believe your rights have been violated.

If you have any questions for your previous servicer, Bayview Loan Servicing, LLC, about your mortgage loan or this transfer, please contact their Customer Service department:

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th floor
Coral Gables, FL 33146
(855) 813-6597

**Please read the following important notices as they may affect your rights.**

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013. 

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-316-4706 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-316-4706，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:

COMPLAINTS REGARDING A LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:

QUEJAS ACERCA DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES DEBEN ENVIARSE AL TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. UNA LÍNEA TELEFÓNICA AL CONSUMIDOR GRATUITA ESTÁ DISPONIBLE EN 1-877-276-5550.
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.

SHELLPOINT/CROSS 000216

# FEE SCHEDULE

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for the processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.

[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.

[3] Recording fees vary by state and county. Shellpoint will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.



| FACTS | **WHAT DOES SHELLPOINT MORTGAGE SERVICING DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| WHY? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| WHAT? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• credit history and credit scores<br>• account balances and payment history |
|---|---|

| HOW? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Shellpoint Mortgage Servicing chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Shellpoint Mortgage Servicing share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes -** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We do not share |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | No | We do not share |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | No | We do not share |
| **For our affiliates to market to you** | No | We do not share |
| **For nonaffiliates to market to you** | No | We do not share |

| Questions? | Call toll-free 866-316-4706 or visit to www.shellpointmtg.com |
|---|---|

004880708D0000

| What we do | |
|---|---|
| **How does Shellpoint Mortgage Servicing protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Shellpoint Mortgage Servicing collect my personal information?** | We collect your personal information, for example, when you<br>• apply for a loan or give us your income information<br>• provide account information or provide employment information<br>• show your driver's license<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. Our affiliates include:<br>• NewRez LLC<br>• Shellpoint Partners, LLC<br>• Avenue 365 Lender Services, LLC<br>• Rate 30<br>• eStreet Appraisal Management Company |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *We do not share your information with nonaffiliates* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *We do not have any joint marketing agreements with nonaffiliated companies* |

| Other important information |
|---|

Shellpoint Mortgage Servicing is a division of NewRez LLC

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

Toll Free Phone:866-316-4706
Toll Free Fax: 866-467-1137
Contact us online: www.shellpointmtg.com

Main Office NMLS ID#3013
Houston TX Branch Office NMLS ID#1105392

Hours: Monday - Friday: 8:00AM-10:00PM EST
Saturday: 8:00AM-3:00PM EST

This privacy notice was provided to our customer with account number ████5158 on 02/14/2020.

# AUTOMATIC PAYMENT ENROLLMENT FORM

Your monthly payments can be automatically drafted from your checking or savings account. Proof of payment will appear on your bank statement. To take advantage of this offer, visit our website at **www.shellpointmtg.com** and click on *Sign Up for Automatic Payments*. This method is quick, easy, and more secure. You may also complete the form below, attach a voided check, and mail it to our office:



Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

**Borrower Information**

| Account Number | ████5158 |
|---|---|
| Borrower | DEBORAH CROSS-FARRON |
| Mailing Street Address | 3454 IRWIN AVE |
| Mailing City, State, Zip | MIMS FL 32754 |
| Home/Cell Phone Number | |
| Work Phone Number | |
| Email Address | |

**Payment Information**

| Automatic Draft Start Date (mm/dd/yyyy) (must be between the 1st and 15th) | _____/_____/_____ |
|---|---|

**Note: Your payment will be drafted on the same day every month.**

| Current Monthly Payment Amount (Principal, Interest, Taxes and Insurance)* | $2,238.51 |
|---|---|
| Additional Draft Amount** | $ |
| **Total Monthly Draft Amount** | $ |

**Banking Information**

| ABA Transit Number (Routing Number) | |
|---|---|
| Bank Account Number | |
| Bank Name | |
| Account Type | ☐ CHECKING      ☐ SAVINGS |

\* Your Current Monthly Payment Amount may vary due to interest rate and/or escrow changes, if applicable. You will be notified of any change in payment amount.

\*\* Funds drafted in excess of your regular payment amount will first be used to satisfy amounts that are past due.  If no amounts are past due, excess funds will be posted to reduce your principal balance. Any funds  remaining on your account after loan is paid off will be returned to your bank account.

### Authorization to Begin Automated Payment Option

I/We authorize Shellpoint Mortgage Servicing ("Shellpoint") to debit my/our account each month. I/We understand that if the drafting day should fall on a non-business day, the draft will take place on the next business day. In order to cancel the draft, I/we must make a request in writing to Shellpoint 14 days in advance of the scheduled drafting date.  Insufficient funds ("NSF") charges will apply to my/our account if the funds are not available at the time of debit. If my/our regularly scheduled draft is returned, a second draft may be attempted.  In the event three of my/our scheduled drafts are returned, the automated payment service will be terminated.  Each NSF transaction will result in an NSF fee. I/We further authorize Shellpoint to adjust the amount debited from my/our account to correspond to periodic changes in my/our payment due each month under the terms of my/our loan.

I/We acknowledge that I/we have read, understand, and agree to the terms set forth for the automated payment service.


Signature: _____
**DEBORAH CROSS-FARRON**

Date: _____

**Please don't forget to attach a voided check when returning this form.**

SHELLPOINT/CROSS 000221

Bayview Loan Servicing
P. O. Box # 9112
Temecula, CA 92589



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 7100 1170 0835 8785 97

Send Payments to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL  33146

20151023-187

Send Correspondence to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL  33146

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



EXHIBIT B-7

SHELLPOINT/CROSS 000022

SHELLPOINT/CROSS 000023



10/21/2015

Sent Via Certified Mail
9314 7100 1170 0835 8785 97

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981

Loan Number: ████ 5846
Property Address: 16515 OBSIDIAN DR
HOUSTON, TX 77095

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear DEBORAH CROSS-FARRON:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 01/01/2015 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $22,885.06 which consists of the following:

| | | |
|---|---|---:|
| Next Payment Due Date: | | 01/01/2015 |
| Total Monthly Payments Due: | | $22,776.06 |
| Late Charges: | | $0.00 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $109.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$22,885.06** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $22,885.06. If the default, together with additional payments that subsequently become due, is not cured by 11/20/2015, BLS will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.



BR024

9314 7100 1170 0835 8785 97
SHELLPOINT/CROSS 000024

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at 1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 11/20/2015. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. You may contact our Loan Counseling Department at 1-800-771-0299 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

BLS is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting BLS authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, BLS is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, BLS, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of BLS at 4425 Ponce De Leon Blvd, 5th Floor, Miami, FL 33146.

**Attention Servicemembers and dependents**: Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. The Federal Servicemembers' Civil Relief Act ("SCRA") and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last nine (9) months, **AND** joined after signing the Note and Security Instrument now in default, please notify BLS immediately. When contacting BLS as to your military service, you must provide positive proof as to your

SHELLPOINT/CROSS 000025
4314 7100 1170 0835 6785 97

military status. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: 1-888-995-HOPE(4673). If you wish, you may also contact us directly at 1-800-771-0299 and ask to discuss possible options.

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.

Sincerely,

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL  33146

1-800-771-0299

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BAYVIEW LOAN SERVICING, LLC IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



Hughes Watters Askanase L.L.P.
PO Box 9064
Temecula, CA 92589-9064

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

2306137701

Send Correspondence to:
Hughes Watters Askanase L.L.P.
Total Plaza
1201 Louisiana 28th Floor
Houston, TX  77002

20160216-227

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



EXHIBIT B-8

SHELLPOINT/CROSS 000030

# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

**NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND
ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE**

February 11, 2016

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095

Re:    File No: 2016-010341

Property Address: 16515 OBSIDIAN DR HOUSTON, TX 77095

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

1.      The undersigned represents BAYVIEW LOAN SERVICING, LLC., A DELAWARE
LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or
mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2,
2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2,
2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to
deliver this letter on its behalf.

You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN
SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is
representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500,
Coral Gables, FL 33134. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a
servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the
above referenced loan.

2.      Our client has informed us that despite the sending of written notice of default and
notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a
consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire
balance of the Loan due and payable in full

3.      In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a
copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the
Property authorized by the Deed of Trust will take place on April 5, 2016, at the place designated
by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will



be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM. **The earliest time the foreclosure sale will begin will be 10:00 AM**.

4.    The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818. Payment must be in certified funds or other form of payment acceptable to our client.

5.    A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

6.    Except as otherwise set out herein under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7.    This letter constitutes notice required by law and the terms of the applicable Loan documents. To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law. If you receive this notice and you are not a debtor, this notice is for informational purposes only.

Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED



SHELLPOINT/CROSS 000032

<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**HARRIS County**

      **Deed of Trust Dated:** November 2, 2004
      **Amount:** $255,440.00
      **Grantor(s):** DEBORAH CROSS-FARRON
      **Original Mortgagee:** NEW HORIZON FINANCIAL LTD.

      **Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

      **Mortgagee Servicer and Address:** c/o  BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL  33134
      Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

      **Recording Information:** Document No. Y058359
      **Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISON IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** April 5, 2016 between the hours of 10:00 AM and 1:00 PM.

**Earliest Time Sale Will Begin: 10:00 AM**
**Place of Sale:**  The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID POSTON, MEGAN RANDLE-BENDER, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

<u>A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code.</u> **<u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.</u>**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**



SHELLPOINT/CROSS 000033

SARAH ROBBINS, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2016-010341

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY
SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY
ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE
WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG
WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID
POSTON, MEGAN RANDLE-BENDER, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL,
HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER
c/o AUCTION.COM, LLC.
1 Mauchly
Irvine, California 92618



SHELLPOINT/CROSS 000034

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



# Shellpoint
## Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM

ևիկիկիկիզիկՈւՈւՈւՈւՈւՈւՈւՈւՈւ
S-SFRECS20  L-1303  R-106
PBMQR300206638 - 612578972 I26550
DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

| Loan Number: | ▮▮▮▮5158 |
|---|---|
| Principal Balance: | $222,613.72 |
| Property: | 16515 OBSIDIAN DR HOUSTON, TX 77095 |

02/17/2020

 Dear DEBORAH CROSS-FARRON:

The above referenced  mortgage loan, serviced by Shellpoint Mortgage Servicing ("Shellpoint"), on the above referenced property is in default and foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to commence foreclosure.

In addition to foreclosing on the property, the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan.

**Foreclosure Alternatives**

If you are unable to pay your mortgage loan  because of a financial hardship, there are options that may be available to you such as a loan modification, short sale, deed-in-lieu of foreclosure or another  foreclosure alternative.

EXHIBIT B-12

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

SHELLPOINT/CROSS 000228

P I000001  A-0579475158 0102J0400

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| **Reinstatement** | Pay the total delinquent amount you owe, both in a lump sum payment and by a specific date, or pay less than the total amount owed followed by a forbearance plan as described below. | Allows you to avoid foreclosure by bringing your mortgage current if you can show you have funds that will become available at a specific date in the future. |
| **Repayment Plan** | Pay back your past-due payments together with your regular payments over an extended period of time. | Allows you time to catch up on late payments without having to come up with a lump sum. |
| **Forbearance Plan** | Make reduced mortgage payments or no mortgage payments for a specific period of time. | Gives you time to improve your financial situation and possibly qualify for a better option than would be available right now. |
| **Modification** | Receive modified mortgage terms to make it more affordable or manageable after successfully making payments during a "trial period" (e.g., completing a three-month trial period plan) that requires payment of the approximate amount of the modified payment. | Permanently modifies your mortgage so that your payments or terms are more manageable as a permanent solution to a long-term or permanent hardship. |
| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
| **Short Sale** | Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |
| **Deed-in-Lieu of Foreclosure** | Transfer the ownership of your property to us. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |

You may have received a Solicitation Package. It is not too late for you to be evaluated for an alternative to foreclosure even if you previously expressed that you were not interested in a workout. Please contact your Single Point of Contact, Diana Baez , at 844-265-8876 to request a copy of the Solicitation Package and to discuss workout options that may be available.

Your Borrower Response Package must be completed and sent to Shellpoint in order to be considered for alternatives to foreclosure. Shellpoint's contact information for submitting a complete Borrower Response Package is below:

Shellpoint Mortgage Servicing
ATTN: Loss Mitigation Department
P.O. Box 10826
MS: 157
Greenville, SC 29603-0826
Telephone: 844-265-8876 ext. 4907

For your convenience, a Borrower Portal is available at www.shellpointmtg.com to help you access your workout status in real time, download forms, make payments, upload documents, and even conduct a self-evaluation.

If you have been previously denied a loan modification, and you are contemplating an appeal or have a pending appeal of this denial, you may submit a loan modification application in lieu of this appeal within 30 days after the date of this notice.

Contact HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ and https://www.consumerfinance.gov/find-a-housing-counselor/ or call 1-800-569-4287 to find a counseling agency in your area. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment. Certified counselors can be reached by calling 888-995-HOPE ™ (4673) or 800-877-8339 with TTY device.

Sincerely,
Shellpoint Mortgage Servicing

**Please read the following important notices as they may affect your rights.**



NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-825-2174，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.



## Shellpoint
### Mortgage Servicing

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 · Dallas, TX 75261-9063

8-811-09406-0144125-015-100-010-000-000

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

# MORTGAGE STATEMENT
Statement Date: 02/16/2020

| | |
|---|---|
| Account Number | ▉5158 |
| Next Due Date | 03/01/2020 |
| **Amount Due** | **$231,949.74** |

*If payment is received after 03/16/2020, $0.00 late fee may be assessed.*

| | |
|---|---|
| Phone: | 866-316-4706 |
| Website: | www.shellpointmtg.com |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $794.16 |
| Interest | $537.02 |
| Escrow (Taxes and Insurance) | $1,433.80 |
| **Regular Monthly Payment** | **$2,764.98** |
| Total Fees and Charges | $1,566.40 |
| Overdue Payment | $227,618.36 |
| **Total Amount Due** | **$231,949.74** |

### Account Information

| | |
|---|---|
| Outstanding Principal | $222,613.72 |
| Interest Rate | 3.6250% |
| Prepayment Penalty | None |
| Property Address: | 16515 OBSIDIAN DR |
| | HOUSTON TX 77095 |
| Contractual Due Date: | January 1, 2015 |
| Current Escrow Balance: | -$73,728.80 |

### Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $865.28 | $865.28 |
| **Total** | **$865.28** | **$865.28** |

### Transaction Activity (01/18/2020 - 02/15/2020)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 01/20/2020 | Attorney Cost Assess | $1,261.00 | $0.00 |
| 01/28/2020 | Register Vacant Prop Assess | $12.40 | $0.00 |
| 01/28/2020 | Attorney Cost Assess | $293.00 | $0.00 |
| 02/03/2020 | Late Charge Payment | $0.00 | $865.28 |

### Important Messages

**\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

### Additional Messages

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 866-316-4706.

**For questions regarding the servicing of your loan, please contact customer care at 866-316-4706.**

Repayment options may be available to you. **Call 866-316-4706** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

005-0814-1100F

### \*\*Delinquency Notice\*\*

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 02/16/2020, you are 1,872 days delinquent on your mortgage loan.

**Recent Account History**
o Payment due 09/01/19:  unpaid balance of $186,941.54
o Payment due 10/01/19:  unpaid balance of $4,131.28
o Payment due 11/01/19:  unpaid balance of $2,764.98
o Payment due 12/01/19:  unpaid balance of $7,904.28
o Payment due 01/01/20:  unpaid balance of $24,677.70
o Payment due 02/01/20:  unpaid balance of $2,764.98
o Payment due 03/01/20:  current payment due

o **Total: $231,949.74 due. You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this statement for additional messages about mortgage counseling and assistance.

---

Detach and return with payment.

---

## Shellpoint
### Mortgage Servicing

Loan Number: ▉5158
DEBORAH CROSS-FARRON

Property Address:
16515 OBSIDIAN DR
HOUSTON TX 77095

SHELLPOINT MORTGAGE SERVICING
PO BOX 740039
CINCINNATI OH 45274-0039

### Amount Due

| | |
|---|---|
| Payment Due Date | 03/01/2020 |
| Total Amount Due | $231,949.74 |

*$0.00 late fee may be charged after 03/16/2020*

Please write clearly inside space provided

| | |
|---|---|
| Payment Amount | $ |
| Additional Principal | $ |
| Late / Other Charges | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** (Please do not send cash) | $ |

SHELLPOINT/CROSS 000224

# EXHIBIT B-13

**Important Notice:** NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

**Amount Due on Accounts in Foreclosure or Bankruptcy:** If your account is in foreclosure or bankruptcy the amount listed as the Amount Due may not be the full amount necessary to bring your account current. To obtain up-to-date amount due information, please contact us at the number listed on the statement.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

For budget advice and credit counseling assistance please call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287 or at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Amounts paid in excess of your payment amount will first be used to satisfy any delinquency. If there are no past due amounts then excess funds paid will be posted to your principal balance. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Shellpoint Mortgage Servicing may assess a returned check fee consistent with the laws for your state and your loan documents on all checks returned by your financial institution. Additionally, Shellpoint may charge a fee for processing payoff requests.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al número 866-316-4706.

If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

--- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- ---

## Address, Phone, and Name Changes

Type of change (check all that apply)

\*\*Please remember:
Name changes require a signature and a copy of a legal document noting the new name. Examples of legal documents are marriage licenses and divorce decrees.

_____ Address _____Phone _____Name\*\* _____Email Address

Your Account # _____    Social Security Number: _____

Old Borrower Name: _____    New Borrower Name: _____

Old Co-Borrower Name: _____    New Co-Borrower Name: _____

Borrower Signature: _____    Co-Borrower Signature: _____

New Mailing Address: _____

_____

_____

_____

New Phone Number: Day (___) ___-____   Evening (___) ___-____   Email Address _____



**Shellpoint**
Mortgage Servicing

## FEE SCHEDULE

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee (Does not apply to Hawaii) | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Payoff Fee (Hawaii only) | Payoff requests of any type will not incur a fee. | $0 | $0 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.
[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.
[3] Recording fees vary by state and county. Current Servicer will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is for informational purposes only. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

811-4026-0519F

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.
Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de  Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes**: La Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio.  Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource <u>www.militaryonesource.mil/.</u>

BT1-4027-0519B



**BAYVIEW** LOAN SERVICING

Bayview Loan Servicing, LLC
P.O. Box 740410
Cincinnati, OH 45274-0410
www.bayviewloanservicing.com

1.877.251.0990

## Mortgage Statement
Statement Date: 01/16/20

| | |
|---|---|
| Account Number | 5846 |
| Payment Date | 02/01/20 |
| **Total Amount** | **$204,507.06** |

*If payment is received after 2/16/20, a $66.56 late fee will be charged.*

*Please note, after 01/16/2020 this amount may not be sufficient to bring your loan current as additional fees, late fee, or attorney fees/costs may have been incurred but not yet invoiced or processed as of the Statement Date, or may have been incurred after the Statement Date. Please contact us at the number above to obtain the current amount due.*

11059

Deborah Cross-Farron
C/O Sahar Shirazi
Locke Lord Llp
2800 Jp Morgan Chase
600 Travis
Houston, TX 77002

### Account Information

| | |
|---|---|
| Outstanding Principal Balance †‡ | $222,613.72 |
| Interest Rate | 3.625% |
| Escrow Balance | -$73,728.80 |
| Late Charge Balance | $865.28 |
| Rec Corp Advance Balance | $51,285.81 |
| Prepayment Penalty | N |
| Property Address | 16515 OBSIDIAN DR |
| | HOUSTON TX 77095 |

### Explanation of Payment Amount

| | |
|---|---|
| Fees & Charges Assessed* | $3,272.00 |
| Unpaid Past Payments** | $201,235.06 |
| **Reinstatement Amount** | **$204,507.06** |
| (as of 01/16/2020) | |
| **Accelerated Amount** | **$389,846.52** |
| (as of 01/16/2020) | |

‡Payments will be applied in order that they become due (oldest first) unless bankruptcy or other court ordered payment plan is in place.
*Fees and Charges Assessed are comprised of Recoverable Corporate Advances, Late Fee and NSF Fees assessed since the last billing cycle.
**Unpaid Past Payments is the sum of the unpaid balances for Principal and Interest, Escrow and Fees & Charges.

### Transaction Activity (12/17/19 to 01/16/20)

| Date | Description | DEBITS | CREDITS |
|---|---|---|---|
| 12/30 | Litigation Fees | 2044.00 | |
| 12/30 | Litigation Fees | 1228.00 | |

### Past Payments Breakdown

| | Paid Last Bill | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Fees & Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)‡‡ | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### **Account History**

The payments on this mortgage are late. Failure to bring the loan current may result in fees and foreclosure & the loss of the home. As of 01/16/20 the loan is 1841 days delinquent on the mortgage.

*Recent Account History:*
  Payment due: 08/01/19: Unpaid balance of $2,607.25
  Payment due: 09/01/19: Unpaid balance of $2,607.25
  Payment due: 10/01/19: Unpaid balance of $2,764.98
  Payment due: 11/01/19: Unpaid balance of $2,764.98
  Payment due: 12/01/19: Unpaid balance of $2,764.98
  Payment due: 01/01/20: Unpaid balance of $2,764.98
  Current payment due 02/01/20: $2,764.98
  **Total: $204,507.06 due. This is the amount needed to bring the loan current.**

**If you are experiencing Financial Difficulty: See Back for information about mortgage counseling or assistance.**

Please be advised, we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process.

### Important Messages

‡‡ **Partial Payments:** Any partial payment that is made is not applied to the mortgage payment, but instead is held in a separate suspense account. If the balance of a partial payment is paid, the funds will then be applied to your mortgage.

Your Point of Contact is ERICA ROSS and can be reached on 1.833.656.7411.

†This is your Principal Balance only, not the amount required to pay your loan in full. Please contact Customer Service for your exact payoff balance. In the event you are in default or foreclosure, you must contact 1.877.251.0990 for payoff information.

The 2019 year end forms will be mailed by January 31, 2020. If you have not received the year end form by February 9, 2020, then please log onto www.bayviewloanservicing.com to obtain a copy.

Our records indicate your Supplemental Modification Program status is Eligible.

Texas Property Owners- COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - FPO - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please include the loan number on your check. If we cannot clearly associate the check with a single loan, it may delay or prohibit us from crediting your account.

**Borrower** DEBORAH CROSS-FARRON

**Loan Number** 5846

**Reinstatement Amount** $204,507.06

**Due By: 02/01/20**          **Accelerated Amount: 389,846.52**

*If payment is received after 2/16/20, a $66.56 late fee will be charged.*

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please indicate additional funds. Excess funds received by BLS without explicit application instructions, will be posted based on BLS internal payment hierarchy, which is driven by your loan documents and/or applicable law.

| | | |
|---|---|---|
| Additional Principal | $ | · |
| Additional Escrow | $ | · |
| Other _____ | $ | · |
| Total Amount Sent (Please do not send cash) | $ | · |

Make check payable to Bayview Loan Servicing.

☐ Check here if your address/telephone number has changed and fill out form on reverse side.

Please do not write below this line.    Servicing Code: MSP

5846 MSP 0020450706 0038898552 SHELLPOINT/CROSS 000222

**EXHIBIT B-14**

## How to contact us

www.bayviewloanservicing.com

**The below mailing address must be used for all Error Notices and Information Requests:**

Bayview Loan Servicing, LLC
ATTN:  Customer Support
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL  33146

**Customer Service**
Mon – Fri 8:00 am to 9:00 pm ET
Telephone: 1.877.251.0990
**Fax: 305.631.5660**

**Mail payments to:**
Bayview Loan Servicing, LLC
PO Box 740410
Cincinnati, Ohio 45274-0410

**Payoff Request:**
Bayview Loan Servicing
Payoff Department
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL  33146
Fax: 305.644.8102

**Real Estate Tax Bills:**
Bayview Loan Servicing, LLC
Tax Department
P.O. Box 331409
Miami, FL  33233-1409
Fax: 305.644.8104

**Bayview Loan Servicing LLC**
Billing Statement Opt In/Opt Out
PO BOX 331409
MIAMI FL 33233-1409

**Customer Relations**
Mon – Fri 8:00 am to 9:00 pm ET
Telephone: 1.888.326.7191

**Homeowner's Insurance Inquiries**
Mon – Fri 8:00 AM – 7:00 PM ET
**Telephone: 877-826-4419**
**Fax: 248-824-7960**

**Insurance or Binder:**
Bayview Loan Servicing, LLC, its successors and/or assigns
PO Box 5933
Troy, MI  48007-5933
Telephone: 877.826.4419
Fax: 248.824.7960

**For hearing/speech impaired accessibility (TTY):**
Mon – Fri 8:00 am to 9:00 pm ET
Toll Free #877-676-1565
DID #305-646-6440

**Loss Mitigation or Workout Documents:**
Email:
LossMitDocs@bayviewloanservicing.com
**Fax: 855.330.8077**

**When Making Calls from Outside the U.S.:**
Mon – Fri 8:00 am to 9:00 pm ET
**Phone Number: 305.646.3980**

## Additional Payment Methods

Please include the Bayview Loan number on all remittances.

**\*Western Union Quick Collect:**
Code City: BFTG Code State: FL
(Locate the agent nearest you by calling
1.800.525.6313, or visiting www.westernunion.com)

**\*MoneyGram:**
Receive Code: 13910
1-800-555-3133; 7 days a week, 24 hours a day

**\*Wire:**
JP Morgan Chase New York, NY
ABA #: 021000021 Account No.: 447450847

**Overnight Payment or Certified Payoff Funds:**
Bayview Loan Servicing LLC
ATTN: Cashiering
4425 Ponce de Leon Blvd. 5th Floor
Coral Gables, FL 33145

**\*\*By Phone:**
1.877.251.0990

**\*\*Online:**
www.bayviewloanservicing.com

*\*Fees may be imposed by money transmitter.*
*\*\*Fees may be imposed by money transmitter;  to the extent a fee is imposed, the fee will be $0.25.*

For your convenience, you may have the payment automatically debited every month from the checking or savings account of your choice.  To participate in Auto Pay, Bayview's automatic debit program, visit www.bayviewloanservicing.com/**autopay.**

**Payment Handling**

We reserve the right to electronically collect your eligible payment checks, at first presentment and any additional presentment, from the bank account on which the check was drawn.  Our receipt of your payment check is authorization for us to collect the amount of the check electronically, or if needed by draft drawn against the bank account. Checks will be collected electronically by sending the check amount along with the check, routing and account numbers to your bank.  Your bank account may be debited as early as the same day we receive your payment.  The original check will be destroyed and an image maintained for our records.

**Housing Counselor Information**

If you would like counseling or assistance, for a list of homeownership counselors or counseling organizations in your area, you can contact the following: U.S. Department of Housing and Urban Development (HUD), go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

If you are a confirmed successor in interest of the account, unless you assume the mortgage loan obligation under state law, you are not personally liable for the mortgage debt and cannot be required to use your own assets to pay the mortgage debt.

© 2011 Bayview Loan Servicing, LLC all rights reserved

---

### National Schedule of Fees

| FEE DESCRIPTION | FEE AMOUNT |
|---|---|
| **Appraisal** – An expense charged to the loan to determine the value of the property, which includes an interior inspection of the property. | $400.00 – $675.00, unless prohibited by state law. |
| **Assumption** – Charge for the work involved with processing a new buyer that is assuming the terms of an existing loan. | $0.00 – 1% of the UPB or $250, whichever is greater. |
| **Bankruptcy Fees and Costs\*** | $0 – $5,000 |
| **Bankruptcy Attorney Fees\*** – Fees charged by local counsel as a result of a bankruptcy.  Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **BPO** – An expense charged to the loan in which a broker's price opinion will be used to determine the value of a property on a delinquent loan. | $81.00 – $160.00, unless prohibited by state law. |
| **Foreclosure Attorney Fees\*** – Fees charged by local counsel as a result of a foreclosure.  Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **Foreclosure Fees and Costs\*** | $0 – $5,000 |
| **Late Charge** – Assessed for payments received after the due date and expiration of any applicable grace period per the loan documents. | As stated in the loan documents, subject to state law requirements. |
| **Litigation Fees and Costs\*** – Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000.00 |
| **Non-Sufficient Funds Fee** – Fee assessed on payments/checks received that are not honored due to insufficient funds. | $0 – $50, or maximum permitted by state law. |
| **Partial Release** – Charge for the processing the release of a portion of the mortgaged property. | Loan balance $300,000 or less – $0; loan balances between $300,000 and $750,000 – $500; loan balance greater than $750,000 – $1,000 |
| **Pay-by-Phone, Web and IVR Payment Fee** | $0 – $0.25, subject to state law and requirements. |
| **Pre-Foreclosure Notice Registration Fee** | $0 – $75, subject to state law requirements. |
| **Priority Processing (Overnight Delivery)** – Fee charged if customer requests expedited service. | $0 – $15 |
| **Property Inspection** | $10 – $15 |
| **Property Preservation Fee** – An expense charged to the loan to ensure that the condition an appearance of the property are maintained satisfactorily. | $0 – $2,500 and $0 – $110 for grass cuts. |
| **Title Search** – An expense charged to the loan for a detailed examination of the historical records concerning the property. | $0 – $500 |

**Other Fees Charged (And fees not included above)**
Currently, no fees are assessed for the following: Amortization Schedule, Deed of Trust Copy, Document Copy, Loan History, Release Recording-Residential, Subordination and Verification of Mortgage for Third Party Requests. A prepayment penalty may be assessed against your loan under the terms of the Note.

The above contains a list of common servicing fees. You may incur additional fees if, for example, your loan becomes delinquent or is subject to litigation (e.g. condemnation proceeding).

**\*These fees will vary depending on the circumstances and is not charged to the customer's loan if not permitted by contract or applicable law.** Such fees may include, but are not limited to, court costs and attorney fees. These fees will vary with the circumstances of the case and the nature of the work performed.
**Bayview Loan Servicing, LLC. NMLS #2469**

**Mortgage Scams Relief Programs**
Be cautious of any notices you receive that advise you that you have been approved for a loan modification or trial plan. These may be deceptive scams from persons pretending to be us. For your protection, please verify any such information received by contacting your assigned Asset Manager or Customer Service immediately to confirm that any offer or decision comes from us.

**Mortgage Loan Scam Alert**
Beware of home loan rescue scams. Facing the possibility of not being able to make your mortgage payments is an unsettling time. Unfortunately, con artists often attempt to take advantage of vulnerable homeowners and may try deceptive scams where they pretend to represent Bayview Loan Servicing, LLC ("Bayview") and allege to have your best interest in mind. You should know that loss mitigation options and counseling do not require fees when working directly with Bayview or a HUD approved housing counselor. For your protection, if you are unsure if the person communicating with you about a modification or other deferment agreement or requiring you to make payments is from Bayview or a legitimate counseling resource, please contact the Customer Relations Department at 1.877.251.0990 or at customerservice@bayviewloanservicing.com and tell us about your situation.

**Know your Rights**
The FTC's Mortgage Assistance Relief Services (MARS) Rule is establish to protect distressed homeowners from mortgage relief scams that have sprung up during the mortgage crisis. Bogus operations falsely claim that, for a fee, they will negotiate with the consumer's mortgage lender or servicer to obtain a loan modification, a short sale, or other relief from foreclosure.

**Servicemembers Civil Relief Act**
The Service members Civil Relief Act (SCRA) may offer protection or relief to members of the military who have been called to active duty. If either you have been called to active duty, or you are the spouse, registered domestic partner, partner in a civil union, or financial dependent of a person who has been called to active duty, and you haven't yet made us aware of your status, please contact our Customer Relations Department toll-free at 1.877.251.0990, Monday – Friday 8am – 5pm ET. As your loan servicer, we are here to help you understand your options.

**Credit Reporting**
We may report information about your account to credit bureaus.  Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

Bayview Loan Servicing, LLC. is a debt collector. This letter is an attempt to collect a debt, and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay in bankruptcy this notice is for information purposes only and does not constitute a demand of payment or any attempt to collect such obligation.

---

**Has any of your contact information changed?**
If so, please complete this and check the box on the front of the coupon.

Mailing Address: _____

City: _____ State: _____ Zip: _____

Home Phone: ( __ ) _____  Business Phone: ( __ ) _____

Customer Name: _____  Email Address: _____
*Please Print*

Customer Name: _____  Email Address: _____
*Please Print*

Customer Signature: _____  Customer Signature: _____

Date: _____  Date: _____

Please be advised that Bayview Loan Servicing, LLC, ("Bayview"), may employ the use of automated technology to place calls, prerecorded messages and text messages to any wireless numbers provided by you in regards to the servicing of your mortgage loan.  This is not a condition to obtain credit. You may withdraw your consent to this form of contact at any time by notifying Bayview.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Deborah Cross f.k.a. Deborah Cross-Farron | § | |
| v. | § | Case No. 4:20-cv-01322 |
| The Bank of N.Y. Mellon f.k.a. The Bank | § | |
| of New York, as trustee, et al. | § | |

## DECLARATION OF JEAN KNOWLES

I, Jean Knowles, pursuant to 28 U.S.C. § 1746, make this declaration in support of NewRez LLC dba Shellpoint Mortgage Servicing and The Bank of New York Mellon, as Trustee's summary judgment motion.

1.      My name is Jean Knowles.  I am over the age of 21, am of sound mind, suffer from no legal or mental disabilities, and am fully competent to testify on the matters stated herein.  I have personal knowledge of the facts stated herein and they are true and correct.

2.      I am an authorized representative for NewRez LLC dba Shellpoint Mortgage Servicing.  In my capacity with Shellpoint, my duties include the review of the servicing of loans in which the borrower is in default and in which litigation is contemplated or pending.  I am personally familiar with the standard business practices of Shellpoint with respect to mortgage servicing.  The facts in this affidavit base on my personal knowledge after a substantive review of Shellpoint's business records in its capacity as servicer of the loan.

3.      Shellpoint services the loan at issue in this lawsuit with a loan number ending in 5158 for The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB (**BoNYM**).  Shellpoint began servicing the loan effective February 1, 2020.  When Shellpoint began servicing the loan, the prior servicers' records for the loan were integrated, boarded and incorporated into Shellpoint's systems, such that all their records, including payment histories, communication logs, loan

documents, correspondence, and other loan information are now integrated into Shellpoint's records. It is Shellpoint's regular business practice to access and integrate prior servicers' records into its business records and to rely upon those third-party records in day-to-day operations. The prior servicers' records have been accessed, obtained, integrated, and relied upon by Shellpoint as part of Shellpoint's business records. Shellpoint maintains quality control and verification procedures as part of the onboarding process to ensure the accuracy of boarded records. These records were verified for accuracy during the onboarding process and have been deemed by Shellpoint to have been kept in accordance with generally accepted loan servicing practices and are trustworthy.

4.      Attached are exhibits C-1 and C-2, and attached to Shellpoint and BoNYM's summary judgment motion are exhibits A-3, A-4, A-5, B-4, B-7, B-8, B-12, B-13 and B-14. These records are **(1)** documents incorporated and kept in the course of Shellpoint's business, and Shellpoint relies upon the accuracy of the documents' contents in the course of its business; or **(2)** were made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; kept in the course of Shellpoint's regularly conducted business activities; and it is the regular practice of Shellpoint to make such records.

5.      The loan is evidenced by a note Deborah Cross-Farron executed and dated November 2, 2004, promising to repay the original principal amount of $255,440 plus interest, and a deed of trust Ms. Cross executed and dated November 2, 2004, securing repayment by granting a lien against the property at 16515 Obsidian Drive, Houston, Texas. True and correct copies of the note and deed of trust are attached to the summary judgment motion as exhibits A-3 and A-4, respectively.

6.      BoNYM is the current legal owner and holder of the note and deed of trust and beneficiary of the deed of trust, and Shellpoint is the mortgage servicer of the loan.

7.      Ms. Cross received a loan modification effective June 1, 2013.  A true and correct copy of the loan modification agreement is attached to the summary judgment motion as exhibit A-5.

8.      Ms. Cross defaulted by failing to make the January 1, 2015 monthly payment.  On October 21, 2015, the prior servicer, Bayview Loan Servicing, LLC ,sent Ms. Cross notice of default.  A true and correct copy of the notice of default is attached to the summary judgment motion as exhibit B-7.  Ms. Cross did not timely cure the default.

9.      On February 11, 2016, Bayview, through its counsel, sent Ms. Cross a notice of acceleration and notice of foreclosure sale.  A true and correct copy of the notice of acceleration and sale is attached to the summary judgment motion as exhibit B-8.

10.     Effective February 1, 2020, Shellpoint began servicing the loan and is the current servicer.  On February 14, 2020, Shellpoint sent Ms. Cross a welcome letter, which enclosed a payment coupon.  A true and correct copy of the notice of service transfer is attached to the summary judgment motion as exhibit B-4.

11.     On February 16, 2020, Shellpoint sent Ms. Cross a mortgage statement for the monthly payment due March 1, 2020.  A true and correct copy of Shellpoint's mortgage statement is attached to the summary judgment motion as exhibit B-13.  This mortgage statement is the form statement for non-accelerated loans.  Had Ms. Cross's loan been accelerated, Shellpoint's mortgage statement would have included the accelerated amount along with a disclosure "[a]s of the date of this letter, this is the amount that is now due in full."  The statement would have also included a warning "[y]ou are late on your loan payments and the foreclosure process has been initiated."

Bayview had sent the last mortgage statement before the servicing transferred on January 16, 2020 for the monthly payment due February 1, 2020. A true and correct copy of Bayview's mortgage statement is attached to the summary judgment motion as exhibit B-14. A true and correct copy of a Shellpoint mortgage statement for accelerated loans is attached as exhibit C-2.

12. On February 17, 2020, Shellpoint sent Ms. Cross two letters. One was a loss mitigation solicitation letter and the other warned Ms. Cross her loan was in default. A true and correct copy of the loss mitigation solicitation is attached as exhibit C-1. A true and correct copy of the second Shellpoint letter is attached to the summary judgment motion as exhibit B-12.

13. Ms. Cross's loan is due for the January 1, 2015 payment and all subsequent payments. As of March 9, 2021, the total amount due under the loan is $438,631.84, which includes interest continuing to accrue at 3.625% and costs and expenses of enforcing the deed of trust.

14. Since December 2014, Ms. Cross has failed to pay taxes assessed against the property. As of March 9, 2021, BoNYM, through its servicers, has advanced approximately $60,673.94 to pay property taxes.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 4, 2021.

_____
Jean Knowles







**Shellpoint**
Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM

S-SFRECS20  L-1031  R-106
PBMSF500500421 - 612627388 I09550
DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

| Loan Number: | ████5158 |
|---|---|
| Property: | 16515 OBSIDIAN DR HOUSTON, TX 77095 |

02/17/2020

Dear Homeowner,

We understand that financial circumstances may change from time to time, which can affect your ability to meet your obligations.  We're concerned about your recently missed mortgage payment(s) and want to offer our assistance in case you are unable to catch up.

This is a legally required notice. We are sending this notice to you because you are behind on your mortgage payment(s). As of the date of this letter, the total amount due is $229,184.76. Because interest, late charges, and other fees vary from day to day, the amount you owe may change. We want to notify you of possible ways to avoid losing your home. We have a right to invoke foreclosure based on the terms of your mortgage contract. Please read this letter carefully.

**Important note:** We have assigned a Single Point of Contact (SPOC) to assist you through the loss mitigation process concerning your mortgage loan. We will perform an evaluation of your financial condition and determine your qualifications for all alternatives that may be applicable for this account. Should you have any questions, you may contact Diana Baez directly at 844-265-8876 ext. 4907 Monday through Thursday 8:00AM-6:00PM and Friday 8:00AM-5:00PM, Eastern Standard Time. Alternatively, you may visit our Borrower Web Portal at www.shellpointmtg.com or email your SPOC directly at dbaez@shellpointmtg.com.  Documents can be faxed to us at 866-467-1187.

If your loan was transferred from another servicer and you have entered into an approved loss mitigation plan with your prior loan servicer or if you had a loss mitigation application in process with your prior servicer, please contact us to confirm that the loss mitigation plan information, or application and documentation, were properly transferred to Shellpoint Mortgage Servicing. We will follow up with your prior servicer to receive the documents you provided them or they provided you in response.

---

### We Are Here to Help - Call Us at 866-825-2174
Let us work with you to understand the issues affecting your mortgage payments. We'll explore what assistance may be available to you and discuss the forms and documentation needed to determine if you qualify for an option to avoid foreclosure.

---

## Options May Be Available
The right option for you depends on your individual circumstances. When you provide the required information and documentation about your situation, we can determine if you qualify for temporary or long-term relief, including mortgage options that may allow you to stay in your home or leave your home while avoiding foreclosure.  Review the **Information on Avoiding Foreclosure** page for an overview of these options.

**Act now and call us at 866-825-2174.  The sooner you respond, the quicker we can determine whether you qualify for an option to avoid foreclosure.**

## Getting Started
**Remember, you need to take action by calling us at 866-825-2174 right away or get started by completing and returning the attached Uniform Borrower Assistance Form along with other required documents by 3/18/2020. Please note that packages received within 37 days of a foreclosure sale may not be evaluated.**

EXHIBIT C-1

SHELLPOINT/CROSS 002631

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

**Additional Resources**

**For additional information about preventing foreclosure, avoiding fraud scams, and accessing approved counseling at no cost to you**

- Visit Shellpoint's web site at www.shellpointmtg.com.
- Contact HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ and https://www.consumerfinance.gov/find-a-housing-counselor/ or call 1-800-569-4287 to find a counseling agency in your area. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment. Certified counselors can be reached by calling 888-995-HOPE ™ (4673) or 800-877-8339 with TTY device.
- Contact the Consumer Financial Protection Bureau (CFPB) at (855) 411-2372 or www.consumerfinance.gov/mortgagehelp

Sincerely,

Diana Baez
844-265-8876  ext 4907
Shellpoint Mortgage Servicing

SHELLPOINT/CROSS 002632

Representation of Printed Document



# Shellpoint
## Mortgage Servicing

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 • Dallas, TX 75261-9063

5-811-11726-0017096-002-000-010-000-000

# MORTGAGE STATEMENT

Statement Date: ⬛ 2020

| Account Number | |
| --- | --- |
| Next Due Date | |
| Reinstatement Amount | $⬛ |

Phone: 800-365-7107
Website: www.shellpointmtg.com

## Explanation of Amount Due

**Accelerated Amount** $⬛

The loan is in default for failure to pay amounts due, and the sums evidenced by the Note and security instruments are now due and payable in full. As of this date of this letter, this is the amount that is now due in full. Please note that this is not a payoff statement and the amounts due may change due to outstanding or unrealized costs or fees. Contact Shellpoint Mortgage Servicing for a payoff or reinstatement amount.

**Reinstatement Amount** $⬛

As of the date of this letter, Shellpoint Mortgage Servicing is willing to accept this amount to reinstate your loan. Please note that the amounts due may change due to outstanding or unrealized costs or fees. Contact Shellpoint Mortgage Servicing for an accurate reinstatement amount.

## Account Information

| | |
| --- | --- |
| Outstanding Principal | $⬛ |
| Deferred Balance | $⬛ |
| Interest Rate | ⬛% |
| Prepayment Penalty | |
| Property Address: | ⬛ |
| Contractual Due Date: | ⬛ |
| Current Escrow Balance: | -$⬛ |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
| --- | --- | --- |
| Principal | $⬛ | $⬛ |
| Interest | $⬛ | $⬛ |
| Escrow | $⬛ | $⬛ |
| Fees/Late Charges | $⬛ | $⬛ |
| Unapplied Partial Payment | $⬛ | $⬛ |
| Total | $⬛ | $⬛ |

## Transaction Activity (08/23/2020 - 09/21/2020)

| Date | Description | Charges | Payments |
| --- | --- | --- | --- |
| ⬛ | ⬛ | ⬛ | |

## Important Messages

*Partial Payments: Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages

**Affected by COVID-19? Assistance may be available. We offer relief options, such as a forbearance - a temporary suspension of payments and payment deferment. Visit our website www.shellpointmtg.com or call us at 866-825-2174 to see if you qualify.**

**For questions regarding the servicing of your loan, please contact us at 800-365-7107 Monday-Friday 8:00AM-10:00PM, and Saturday 8:00AM-3:00PM.**

Repayment options may be available to you. **Call 800-365-7107** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 800-365-7107.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

## **Delinquency Notice**

**You are late on your loan payments and the foreclosure process has been initiated.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of ⬛ 2020, you are ⬛ days delinquent on your mortgage loan.

**Recent Account History**

⬛

o **Total: $⬛ due. You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this statement for additional messages about mortgage counseling and assistance.

005-0814-1100F

Detach and return with payment.

- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --



# Shellpoint
## Mortgage Servicing

Loan Number: ⬛

Property Address: ⬛

SHELLPOINT MORTGAGE SERVICING
PO BOX 740039
CINCINNATI OH 45274-0039

| Amount Due | |
| --- | --- |
| Payment Due Date | ⬛ 2020 |
| Reinstatement Amount | $⬛ |
| *$0.00 late fee may be charged after ⬛ 2020* | |
| Please write clearly inside space provided | |
| Payment Amount | $ |
| Additional Principal | $ |
| Late / Other Charges | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** (Please do not send cash) | $ |

# EXHIBIT C-2

SHELLPOINT/CROSS 002945

INTERNET REPRINT

**Important Notice:** NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

**Amount Due on Accounts in Foreclosure or Bankruptcy:** If your account is in foreclosure or bankruptcy the amount listed as the Amount Due may not be the full amount necessary to bring your account current. To obtain up-to-date amount due information, please contact us at the number listed on the statement.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

For budget advice and credit counseling assistance please call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287 or at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Amounts paid in excess of your payment amount will first be used to satisfy any delinquency. If there are no past due amounts then excess funds paid will be posted to your principal balance. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Shellpoint Mortgage Servicing may assess a returned check fee consistent with the laws for your state and your loan documents on all checks returned by your financial institution. Additionally, Shellpoint may charge a fee for processing payoff requests.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al número 800-365-7107.

If you prefer to receive communication in a language other than English, please contact us at 800-365-7107 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

Please be advised that Shellpoint utilizes third-party providers in connection with the servicing of your loan, but Shellpoint remains responsible for all actions taken by third-party providers.

-- -- -- -- --- --- --- --- --- --- --- --- --- --- --- -- -- --- --- --- --- --- --- --- --- --- --- -- --

## Address, Phone, and Name Changes

**\*\*Please remember:**
Name changes require a signature and a copy of a legal document noting the new name. Examples of legal documents are marriage licenses and divorce decrees.

Type of change (check all that apply)

_____ Address _____Phone _____Name** _____Email Address

Your Account # _____    Social Security Number: _____

Old Borrower Name: _____    New Borrower Name: _____

Old Co-Borrower Name: _____    New Co-Borrower Name: _____

Borrower Signature: _____    Co-Borrower Signature: _____

New Mailing Address: _____

_____

_____

_____

New Phone Number: Day ( _ _ ) _ _ _ - _ _ _ _    Evening ( _ _ ) _ _ _ - _ _ _ _    Email Address    SHELLPOINT/CROSS 002946

INTERNET REPRINT



# ASSIGNMENT OF DEED OF TRUST

DocID# 2577834048717291

| | Recording Requested By: | When recorded mail to: |
|---|---|---|
| | Bank of America | CoreLogic |
| | Prepared By: | 450 E. Boundary St. |
| | Danilo Cuenca | Attn: Release Dept. |
| | 888-603-9011 | Chapin, SC 29036 |
| | 450 E. Boundary St. | |
| | Chapin, SC 29036 | |

Property Address:
16515 Obsidian Dr
Houston, TX 77095-4981
TXO-ADT 14252271          9/12/2011

MIN #: 1002123-0005009599-7          MERS Phone #: 888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-30CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-30CB whose address is 101 BARCLAY ST - 4W, NEW YORK, NY 10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          NEW HORIZON FINANCIAL LTD.
Borrower(s):             DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE AND
                          SEPARATE PROPERTY
Original Trustee:        ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON
Date of Deed of Trust:   11/2/2004
Original Loan Amount:    $255,440.00

Recorded in Harris County, TX on: 11/12/2004, book 59558, page 2232 and instrument number Y058359

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9/15/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Jane Martorana, Assistant Secretary

State of California
County of Ventura

On 09/15/11 before me, Lillian J. Ellison, Notary Public, personally appeared Jane Martorana
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015

Notary Public: _____
My Commission Expires: _____          (Seal)

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED In File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, In the Official Public Records of Real Property of Harris County, Texas

FILED FOR RECORD
8:00 AM

NOV 23 2011

Stan Stanart
County Clerk, Harris County, Texas

NOV 23 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

EXHIBIT D

5/31/2018 11:17 AM
Chris Daniel - District Clerk Harris County
Envelope No. 24962330
By: Justin Fitzgerald
Filed: 5/31/2018 11:17 AM

CAUSE NO. 2018-36182

P-2
TRORX
STBNX
CASO.

| | | |
|---|---|---|
| **DEBORAH CROSS a/k/a** | § | **IN THE DISTRICT COURT OF** |
| **DEBORAH CROSS-FARRON** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **THE BANK OF NEW YORK MELLON** | § | |
| **F/K/A THE BANK OF NEW YORK, AS** | § | |
| **TRUSTEE CWALT 2004-30CB and** | § | |
| **BAYVIEW LOAN SERVICING, LLC** | § | |
| | § | |
| *Defendants.* | § | <u>55th</u>   **JUDICIAL DISTRICT** |

---

## TEMPORARY RESTRAINING ORDER AND ORDER SETTING HEARING FOR TEMPORARY INJUNCTION

---

After considering Plaintiff's Application for Temporary Restraining Order, the verification

arguments of counsel, the Court finds there is evidence that harm is imminent.   If the Court does

not issue the temporary restraining order, Deborah Cross ("Plaintiff") will be irreparably injured

if the Bank of New York Mellon f/k/a the Bank of New York, as Trustee CWALT 2004-30CB,

Bayview Loan Servicing, LLC (collectively "Defendants"), and those working in concert with

them cause 16515 Obsidian Drive, Houston, TX 77095, recorded as LOT THIRTY-SEVEN (37),

IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), AN ADDITION IN HARRIS

COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF IN VOLUME 73,

PAGE 14 OF THE MAP RECOERDS OF HARRIS COUNTY, TEXAS to be sold at June 5, 2018

foreclosure.  Specifically, <u>the injury to the Plaintiff will be the loss of the property.</u>

The Court hereby ADJUDGES that an *ex parte* order, with limited notice to Defendant,

was necessary because there was not enough time to give notice to Defendant to hold a hearing

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

**EXHIBIT E**

SHELLPOINT/CROSS 002929

and issue a restraining order before the irreparable injury and other loss or damage occurred. Specifically, Defendants have sought to foreclose on the home Tuesday, June 5, 2018.

It is hereby ORDERED that Defendants or any person, agent, or entity acting in concert with them, including but not limited to its servicers, attorneys, servants, employees, successors, trustees, heirs and assigns are commanded forthwith to desist and refrain from:

A.  foreclosing on the Plaintiff's property;

B.  evicting anyone from the residence;

C.  entering and taking possession of the home or otherwise interfering with Plaintiff's right to the quiet enjoyment and use of the home;

D.  proceeding with or attempting to sell or foreclose upon the home; and

E.  attempting to purchase, transfer, assign, or collect on the mortgage.

The clerk shall issue notice to Defendants and any counsel or substitute trustee hired by the Defendants for the purpose of foreclosure that the hearing on Plaintiff's application for a temporary injunction is set for _June  11_ 2018, at _1:30_ a.m./(p.m.) The purpose of the hearing shall be to determine whether this temporary restraining order should be made a temporary injunction pending a full trial on the merits.  This restraining order is effective and binding on Defendants and any person or entity acting in concert with them, including but not limited to its attorneys, servicers, agents, servants, employees, successors, heirs and assigns until the hearing on the application for temporary injunction or until further order of the court.  Bond is set at $~~100.00~~ 500. This order expires on _June  11_, 2018.

Signed on _May 31_, 2018, at _3:08_ a.m./(p.m.)

_____
PRESIDING JUDGE

SHELLPOINT/CROSS 002930

8/29/2019 1:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36391732
By: Shaniece Richardson
Filed: 8/29/2019 1:08 PM

CAUSE NO. _____

| | | |
|---|---|---|
| DEBORAH CROSS fka DEBORAH CROSS FARRON, | § § § | IN THE DISTRICT COURT OF |
| **Plaintiffs,** | § | |
| vs. | § | |
| | § | |
| HUGHES, WATTERS & ASKANSE, LLP, | § | |
| INDIVIDUALLY AND ON BEHALF OF THE | § | _____ST  JUDICIAL DISTRICT |
| SUBSTITUTE TRUSTEES AND ON BEHALF | § | |
| OF BAYVIEW  LOAN SERVICING, LLC. | § | |
| **Defendants** | § | HARRIS COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION,
### APPLICATION FOR EMERGENCY EXPARTE TEMPORARY INJUNCTION AND RESTRAING ORDER

COMES NOW, **DEBORAH CROSS fka DEBORAH CROSS- FARRON**, and files this her Original Petition, Application for Emergency Exparte Temporary Injunction and Restraining Order as against **HUGHES, WATTERS & ASKANSE, LLP, INDIVIDUALLY AND ON BEHALF OF BAYVIEW  LOAN SERVICING, LLC. ,** Defendants and for cause of action requesting an Exparte Emergency Temporary Injunction and Restraining Order and for the cause as set forth below would respectfully show the following:

### I. DISCOVERY CONTROL PLAN

1. Discovery shall be conducted under Level 3, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure.

### II. PARTIES

2.  Plaintiff, **DEBORAH CROSS fka DEBORAH CROSS- FARRON**, ("hereinafter "Cross") owns property located in Harris County, which is made the basis of this lawsuit and

EXHIBIT F

located at 16515 Obsidian Drive, Houston, Texas 77095.

3. Defendant, **HUGHES, WATTERS & ASKANSE, LLP,** is an entity operating and licensed to do business in the State of Texas served by serving Hughes, Watters & Askanse, LLP at 1201 Louisiana, Suite 2800, Houston, Texas 77002. Citation is requested at this time.

### III. VENUE AND JURISDICTION

4. This Court has jurisdiction over this matter, as the amount of the dispute is within the jurisdictional limits of this Court. Pursuant to section 15.002(a)(1) of the Texas Civil Practices and Remedies Code, venue is property in Harris County, Texas, because all or a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas.

### IV. FACTS

Nature of the Action:

5. This suit is to enjoin and restrain a foreclosure sale posted under an unlawful declaration of default and acceleration of maturity of a promissory note.

Execution of Note and Deed of Trust

6. On or about November 12, 2004 Cross purchased a certain tract of real property in Harris County, Texas with the address of 16515 Obsidian Drive, Houston, Texas 77095 and legal description of LOT THIRTY0SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), AN ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF IN VOLUME 73, PAGE 14 OF THE MAP RECORDS OF HARRIS COUNTY TEXAS.

7. On or around November 12, 2004, cross executed a Deed of Trust in favor of New Horizon Financial, Ltd. (See Exhibit A attached hereto). Plaintiff also executed a promissory note in purchasing the property on November 12, 2004 in favor of New Horizon Financial, Ltd.

8. At some time after the execution of the note, Bayview began sending mortgage statements, saying that Cross was to pay them. Bayview was not an "original party" to the original negotiable instrument which borrowers negotiated. Bayview is a 3rd party debt collector, pretending to be the Lender. Bayview failed to adhere to the Fair Debt Collection Practices Act, as is required for all 3rd party debt collectors.

9. Hughes, Watters & Askanase, LLP, agents for Bayview Loan Servicing and the substitute trustees (See Exhibit "B"), whose address is 1201 Louisiana, Suite 2800, Houston, Texas 77002, sent Cross a Notice of Substitute Trustee's Sale (Exhibit "B") dated August 1, 2019 attached hereto and incorporated herein as if set forth fully, stating that a foreclosure sale is scheduled for September 3, 2019 in Harris County, Texas.

10 On August 28, 2019, Cross had hand delivered the attached letter (Exhibit "C") requesting that Defendant produce a valid perfected security instrument, copies of all letters noticing the default and intent to accelerate the maturity of the loan (referenced in the Notice of Substitute trustee's sale, and certified copies of Cross' promissory note, all assignments of the loan and original deed of trust. No documents have been received.

## IV. CAUSES OF ACTION

### Count 1: Fraud and Misrepresentation

11. Plaintiff incorporates by reference all paragraphs above as if set forth fully herein.

12. On or about August 1, 2019, Defendant Hughes, Watters & Askanse sent a notice of foreclosure to Cross setting forth facts that were not true, not checked and verified by the Defendant and presented as the truth in order to deprive Cross of her property rights. The address the notice was sent to was not the correct address, as noticed and provided by Cross to Bayview, (See Exhibit "D") there was no evidence but rather assumptions and assertions

that Cross had received notice of acceleration, notice of alleged delinquent amounts, but did not verify the truth of the assertion, nor did they have proof of said notice.  (See Exhibits, "B"-"E")

13. Bayview has not provided acceleration notice giving Cross any formal notice of the amounts, including escrow payments, insurance payments, along with proof of the arrearages that are being claimed she is behind on the account.

14.  Defendants have requested a forensic account, but no response to the accounting has ever been made.   The notice letter provided by Defendant does not show any arrearages only the amount of the original loan for the property.  (See Exhibit "B"-"E")   Defendants are representing in this foreclosure that there has been notice provided as required by Texas Property Code:

> **Section 51.002 (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)**

15.  The Defendants in representing that she was provided notice which in fact she was not is fraud and clear misrepresentation.

## a. VALIDITY OF FRAUDULENTLY CREATED DOCUMENTS

16.   Plaintiff incorporates by reference all paragraphs above as if set forth fully herein.

17.   As noted in the transcript of the Meeting of the Task Force on Judicial Foreclosure Rules dated November 7, 2007, (note pages 27, 28,and 33) as found on the Supreme Court of Texas website (http://www.supreme.courts.state.tx.us/jfrtf/pdf/110707transcript.pdf), makes issue with, address and disclosures the same fraudulent practices, Defendants alleged to

documents, namely prior notices of acceleration, *which do not exist* as alleged in the Foreclosure notice.

18.     The Defendant has not produced the certified documents to show the proper chain of command to allow the foreclosure to move forward.  A broken chain of assignments, rendered the deed of trust void and unenforceable, under the UCC 3+-201, 3-204 & 3-302, therefore no activation of the "Power of Sale" clause in the "Deed of Trust" was allowed or was lawful according to Texas laws.

**BIFURCATION OF THE ORIGINAL LENDERS SECURED DEBT-LOSS OF PERFECTION OF THE SECURITY INSTRUMENT**

19.     Plaintiff incorporates by reference all paragraphs above as if set forth fully herein.

20.     The original lender to Cross' note was New Horizon Financial Ltd.  Defendants in proceeding forward with said foreclosure, has not produced any documents to show that a proper negotiation of the note to Bayview Loan Servicing LLC and their claim of ownership of the security instrument has been provided.

21.     As Defendant has not provided certified copies of the documents showing the chain of transfer, there is no evidence to show that the proper negotiations of the note to was accomplished and that the claim of ownership interest as represented by Defendants of Bayview Loan Servicing and Mellon Bank is proper and with merit. The assignment of the mortgage, which was already bifurcated by the original lender back to the note must be in compliance with lien perfection according to Texas Local Government Code, Chapter 192, section .007 which states:

> *Section 192.007. RECORDS OF RELEASES AND OTHER ACTIONS.  (a) To release, transfer, assign or take another action relating to an instrument that is filed, registered,*

*or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded. s attempted to gain control of the security instrument without the proper negotiations.*

## *Count Two: Violations of the Texas Fair Debt Collections Act*

22.     Plaintiff  incorporates by reference all paragraphs above as if set forth fully herein.

23.    Defendant is a debt collector.

24.   Defendant violated the Texas Debt Collection Act when defendant as stated above, instituted a foreclosure proceeding against Cross' home when it clearly did not send the notice to the correct address as provided to counsel for Bayview Loan Servicing, did not provide the required notice of acceleration stating the amounts delinquent, breakdown of the amounts delinquent providing statutory notice of the details and affording Cross the opportunity to cure.

25.   Defendant is instituting an action that is prohibited by TDCA Section 392.303(a) and violating the statue by:

a.  using other false representations or deceptive means to collect a debt, as prohibited by TDCA Section 392.304(19); and,

b.  misrepresenting the amount of the debt judicial status; failing to identify who holds the debt; and,

c.  attempting to collect on a debt that is not expressly authorized by the agreement or creating the obligation or legally chargeable to the consumer, as prohibited by TDCA Section 392.303(2)

d. misrepresenting the character, extent, or amount of a consumer debt, as prohibited by TDC by TDCA Section 393.304(9);

e. using other false representations or deceptive means to collect a debt, as prohibited by TDCA section 392.304(19)

### *Count Two: Violations of Texas DTPA*

26. Plaintiff incorporates by reference all paragraphs above as if set forth fully herein.

27. Plaintiff sues defendant under the Texas Deceptive Trade Practices Act (DTPA), Subchapter E, Chapter 17, Texas Business & Commerce Code pursuant to Texas Finance Code Section 392.404(a).

28. Defendant violated the DTPA when it engage in the institution and prosecution of foreclosure proceedings against plaintiff's homestead by using the false representation that it had authority to institute and prosecute a foreclosure proceeding when it did not have such authority as stated herein above in the violation of Texas Finance Code.

29. Cross will show that Defendant engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices – Consumer Protection Act (Texas Business and Commerce Code, Chapter 17.41, et seq.) as alleged herein below.

### V. APPLICATION FOR TEMPORARY RESTRAINING ORDER

30. Plaintiffs incorporate by reference all paragraphs above as if set forth fully herein.

31. The purpose of a temporary restraining order is to preserve the status quo – the last peaceable, non-contested status that preceded the controversy. The issuance of the restraining order will preserve the status quo in this matter. Furthermore, Plaintiff will suffer

immediate and irreparable injury if Defendant is allowed to continue with the foreclosure sale of Plaintiff's home.

**Elements of Action to Enjoin Sale**

32.   This petition contains all the essential elements of an application for temporary restraining order and a temporary injunction required under Texas law.  This petition sets out the factual background of the dispute, alleging the underlying obligation and describing the collateral covered by the deed of trust.

33.   This petition and application has not been brought merely for delay, but so that justice may be done.  See <u>Lewis v. Investors Sav. Ass'n</u>, 411 S.W. 2d 794, 798 (Civ.App.-Fort Worth 1967, no writ).    The increase to the principal balance of the mortgage is unconscionable and does not accurately reflect the correct principal balance owed on the property.

**Bond Requirement**

34.   When a court grants a temporary restraining order or temporary injunction, it will require the applicant to execute a bond as security in an amount determined by the court.  Tx. R. CIv. P. 684.  Since the purpose of a restraining order is not to prevent the collection of the debt but merely to prevent the collection of the debt but merely to prevent a foreclosure sale, the bond that must be provided by the applicant need not be in the amount of the debt. See *Lee v. Howard Broadcasting Corp.*, 305 S.W. 2d 629, 636 (Civ. App.-Houston 1957, dis.).  Nor must the bond be equal to the value of the property or the interest that will accrue while the injunction remains in force.  See *Metropolitan Life Ins. V. La Mansion Hotels*, 762 S.W. 2d 646, 653 (Tex.App. – San Antonio 1988, dis. Moot).   If the debtor is indigent and the property

subject to foreclosure is his or her homestead, the debtor may file an affidavit seeking relief from the requirement of filing a bond.   See Tex.Civ.Prac. &Rem. Code §65.041 et. seq.

## VI. REMEDIES REQUESTED

35.     Plaintiff respectfully requests that this Honorable Court enter an Order immediately restraining the Defendants and any of their agents, assigns, or beneficiaries, from the following:

(a)   A temporary restraining order be issued without notice to the Defendant, restraining the defendants, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property on Tuesday September 3, 2019, the first Tuesday of September 2019, under the power of sale contained in the deed of trust.

(b)   The Defendant  be cited to appear and show cause, and that on hearing, a temporary injunction be issued enjoining Defendant , their agents, substitute trustees, servants, and employees, from directly or indirectly selling or attempting to sell the trust property under the power of sale contained in the deed of trust, on conditions as this Honorable Court deems equitable.

(c)   This Honorable Court find that the proper notice of acceleration was not sent to Cross.

(d)  This Honorable Court find that there is not clear title transfers on the property.

## VII. APPLICATION FOR TEMPORARY INJUNCTION

36.     For the reasons described above, Plaintiff also requests that the Court set a hearing on a Preliminary Injunction at the earliest possible date.

## ATTORNEY'S FEES

37.    Plaintiff pled for and is entitled to recover of its reasonable and necessary attorney's fees through settlement, trial, and/or appeal, as a result of Defendants' breach of contract, pursuant to Tex. Civ. Prac. & Rem. Code Ch. 38.

## VIII.   PRAYER

Plaintiff prays that Defendants be cited to appear and answer the allegations contained in this Petition and that Plaintiff have the following relief:

(a)    A temporary restraining order be issued without notice to the Defendant, restraining the defendants, their agents, servants, and employees, form directly or indirectly selling or attempting to sell the trust property on February 5, 2013, the first Tuesday of February 2013, under the power of sale contained in the deed of trust.

(b)    The Defendants be cited to appear and show cause, and that on hearing, a temporary injunction be issued enjoining Defendant, their agents, servants, and employees, from directly or indirectly selling or attempting to sell the trust property under the power of sale contained in the deed of trust until such time as a forensic accounting and statutory notice of acceleration, providing Cross with the amounts owed, and the source of the amounts owed or on other conditions as this Honorable Court deems equitable.

(c)    Plaintiff recover costs of suit.

(d)    Plaintiff be awarded other and further relief that is necessary and property in the premises.


Respectfully submitted,

**COLLEEN M. MCCLURE**

**ATTORNEY AT LAW**

By: /s/ Colleen M. McClure

**COLLEEN M. McCLURE**
SBN:  24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas 77068
Telephone:     (281)     440-1625
Facsimile:     (281)     946-5627

**ATTORNEYS FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT "A'

DEED OF TRUST

Unofficial Copy Office of Marilyn Burgess District Clerk

TX04 06515711

Unofficial Copy Office of Harris County District Clerk

OT
52
SG

After Recording Return To:
NEW HORIZON FINANCIAL LTD.
11931 WICKCHESTER #400J
HOUSTON, TEXAS 77043
Loan Number: 00050-09599

Y058359
11/12/04 20049487.2      $92.00

FILED FOR RECORD
8:00 AM

AFTER RECORDING RETURN TO:
ALLEGIANCE TITLE COMPANY
14201 MEMORIAL DRIVE
SUITE 101
HOUSTON, TEXAS 77079

NOV 1 2 2004

County Clerk, Harris County, Texas

------[Space Above This Line For Recording Data]------

## DEED OF TRUST

MIN: 1002123-0005009599-7

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 2, 2004 , together
with all Riders to this document.
(B) "Borrower" is DEBORAH CROSS-FARMON, A MARRIED WOMAN AS HER SOLE
AND SEPARATE PROPERTY

Borrower is the grantor under this Security Instrument.
(C) "Lender" is NEW HORIZON FINANCIAL LTD.

Lender is a LIMITED LIABILITY COMPANY                                    organized
and existing under the laws of TEXAS
Lender's address is 11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is ROBERT K. ADAM, STEVEN N. BING OR LEIGH ANN THOMPSON,
2611 JONES ROAD, SUITE 260 HOUSTON, TEXAS 77070

Trustee's address is

Borrower Initials:

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic ☎ 800-649-1362
Form 3044 1/01                          Page 1 of 15                        www.docmagic.com

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated NOVEMBER 3, 2004. The Note states that Borrower owes Lender TWO HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY AND 00/100 Dollars (U.S. $255,440.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2034.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] 1-4 Family Rider
- [ ] Condominium Rider
- [x] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [x] Second Home Rider
- [ ] Other(s) [specify]

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 2 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

                                        COUNTY          of HARRIS
                [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION
NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE
MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE
MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of   16515 OBSIDIAN DRIVE
                                                    [Street]

        HOUSTON                      , Texas      77095     ("Property Address"):
          [City]                                   [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1.  Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Borrower Initials: _____  _____  _____  _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                          Page 3 of 18

Unofficial copy of Harris County District Clerk

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

*Unofficial Copy*

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 4 of 18                    DocMagic eForms  800-649-1362
                                                                                  www.docmagic.com

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

Borrower Initials: _____

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.  Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

Borrower Initials: _____

Unofficial Copy

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 2nd day of NOVEMBER, 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NEW HORIZON FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

STONE GATE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

B. Property Insurance. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower Initials: _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

Page 1 of 3

DocMagic eForms 800-649-1362
www.docmagic.com

Unofficial Copy - Charles Bacarisse - Harris County District Clerk

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

C. **Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

D. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

E. **Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

F. **Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01
Page 2 of 3

GreatDocs™ 800-968-5775
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DEBORAH CROSS-FARRON            -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

Unofficial Copy / Office of Marilyn Burgess District Clerk

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                         Page 3 of 3                 DocMagic eForms  800-649-1362
                                                                  www.docmagic.com

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd day of NOVEMBER 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to NEW HORIZON FINANCIAL, LTD.

(the "Lender") of the same date and covering the Property described in the Security Instrument (the "Property"), which is located at:

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by the following:

6. **Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at all times, and shall not subject the Property to any timesharing or other shared ownership arrangement or to any rental pool or agreement that requires Borrower either to rent the Property or give a management firm or any other person any control over the occupancy or use of the Property.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's second home.

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                                    Page 1 of 2

DocMagic eFroms 800-649-1362
www.docmagic.com

Unofficial Copy Office of Marilyn Burgess Harris County District Clerk

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DEBORAH CROSS-FARNON  -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

_____ (Seal)
                       -Borrower

Unofficial Copy, Office of Marilyn Burgess District Clerk

THE STATE OF TEXAS
COUNTY OF HARRIS

NOV 12 2004

DEPUTY CLERK
HARRIS COUNTY, TEXAS

STAN STANART, COUNTY CLERK, HARRIS COUNTY, TEXAS

FILED 4/12/2018 12:52:09 PM     FRCL-2018-3129

Unofficial document from Stan Stanart Harris County Clerk

NOTICE OF SUBSTITUTE TRUSTEE'S SALE

HARRIS County
Deed of Trust Dated: November 2, 2004
Amount: $255,440.00
Grantor(s): DEBORAH CROSS-FARBON

Original Mortgagee: NEW HORIZON FINANCIAL LTD.
Current Mortgagee: THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

Mortgagee Servicer and Address: c/o BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33146
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property.

Recording Information: Document No. Y958358

Legal Description: LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

Date of Sale: June 5, 2018 between the hours of 10:00 AM and 1:00 PM.

Earliest Time Sale Will Begin: 10:00 AM

Place of Sale: The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS OR LEB KEMP, MARK SULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, RICK KRUGH, WES WHEAT, EVAN PRESS, FREDERICK BRITTON, DOUGLAS WOODARD, KRISTIE ALVAREZ, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSKOHL, HELEN HENDERSON, PATRICIA POSTON, JEFF LEVA, SANDY DASGENIS, LILLIAN POELKER, DAVID POSTON, MEGAN L. RANDLE, EBBIE MURPHY, NATHAN SANCHEZ, REX KESLER OR THOMAS REDER OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

NOTICE IS FURTHER GIVEN that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. §§ 3901 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE.    THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.

Auction or Sewart

_Trustee_

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                    Page 7 of 15                    DocMagic eForms 800-649-1362
                                                                 www.docmagic.com

Unofficial copy

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Borrower Initials: _____

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                    Page 8 of 16                      DocMagic eForms 800-649-1362
                                                                                              www.docmagic.com

Unofficial Copy @ www.dallasweb.co.uk

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                        Page 9 of 15                        DocMagic eForms 800-649-1362
                                                                         www.docmagic.com

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Borrower Initials _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                    Page 10 of 16                    DocMagic Forms 800-649-1362
                                                                   www.docmagic.com

Unofficial Copy

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 11 of 16
DocMagic eForms 800-649-1362
www.docmagic.com

Unofficial Copy Official Public Records ... Clerk

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee; Trustee Liability. All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

25. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

Borrower Initials: _____

Unofficial copy. Do not use for official purposes. OCR

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

26. **Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

27. **Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.** Check box as applicable:

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

28. **Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

Borrower Initials: _____

TEXAS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
Page 13 of 15

DocMagic Direct 800-649-1362
www.docmagic.com

Unofficial Copy Office of Mary Angeles, Tarrant County Clerk

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
DEBORAH CROSS - FARRON          -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Witness:                        Witness:

_____         _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01
                    Page 14 of 15

DocMagic eForms 800-649-1362
www.docmagic.com

The State of Texas
County of HARRIS

Before me, _A Notary Public_
on this day personally appeared DEBORAH CROSS-FARRON

known to me (or proved to me on the oath of
or through _TXDL_
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _2_ day of _November_, _2007_

J. K. BOROWITZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES
JUNE 25, 2008

_____
Notary Public Signature

{Seal}                          My commission expires:

TEXAS–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT – MERS
Form 3044  1/01                                    Page 15 of 15
DocMagic eForms  800-649-1362
www.docmagic.com

Unofficial Copy Office of Marilyn Burgess District Clerk

EXHIBIT "B"

Hughes, Watters & Askanase, LLP

Unofficial Copy Office of Marilyn Burgess District Clerk

# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

August 1, 2019

DEBORAH CROSS-FARRON
19 S WILLIAMS AVE
TITUSVILLE, FL 32796

Re:     File No: 2016-010341

Property Address: 16515 OBSIDIAN DR. HOUSTON, TX 77095

**THIS LAW FIRM MAY BE DEEMED TO BE A DEBT COLLECTOR ATTEMPTING TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

1.     The undersigned represents BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2, 2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2, 2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to deliver this letter on its behalf.

You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL  33146. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

2.     Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire balance of the Loan due and payable in full

3.     In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on September 3, 2019, at the place designated by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM. **The earliest time the foreclosure sale will begin will be 10:00 AM.**

Unofficial Copy Office of Harris County Barbara District Clerk

<u>NOTICE OF SUBSTITUTE TRUSTEES SALE</u>

**HARRIS County**
**Deed of Trust Dated:** November 2, 2004
**Amount:** $255,440.00
**Grantor(s):** DEBORAH CROSS-FARRON
**Original Mortgagee:** NEW HORIZON FINANCIAL LTD.
**Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)
**Mortgagee Servicer and Address:** c/o BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY , 4425
Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33146
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the
Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized
to collect the debt and to administer any resulting foreclosure of the referenced property
**Recording Information:** Document No. Y058359
**Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISION IN
HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE
MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** September 3, 2019 between the hours of 10:00 AM and 1:00 PM.
**Earliest Time Sale Will Begin:** 10:00 AM
**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County
Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take
place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's
Sale was posted.

CARL MEYERS OR STEPHEN MAYERS, LEB KEMP, VINCE ROSS, TRACI YEAMAN, KELLY MCDANIEL, ISRAEL CURTIS,
CLAY GOLDEN, KENNY SHIREY, CARY CORENBLUM, MATTHEW HANSEN, EVAN PRESS, AMY BOWMAN, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, PATRICIA POSTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, DAVID POSTON, MEGAN L. RANDLE, EBBIE MURPHY, NATHAN SANCHEZ, REX KESLER,
THOMAS REDER OR CHAD RAUSCHER have been appointed as Substitute Trustee(s). ('Substitute Trustee') each empowered to
act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.
The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale
will begin at the earliest time stated above or within three (3) hours after that time.  If the sale is set aside for any reason, the
Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the
Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to
warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS'
without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the
Property.

<u>A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law , including the
Servicemembers Civil Relief Act (50 U.S.C. §§ 3901 et seq.), and state law , including Section 51.015 Texas Property Code. **Assert
and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on
active military duty, including active military duty as a member of the Texas National Guard or the National Guard of
another state or as a member of a reserve component of the armed forces of the United States, please send written notice
of the active duty military service to the sender of this notice.**</u>

THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE
SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE.  THE PERSON SIGNING THIS NOTICE IS THE
ATTORNEY OR AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.



# EXHIBIT "C"

Demand letter

Unofficial Copy Office of Marilyn Burgess District Clerk

# COLLEEN M. McCLURE
## ATTORNEY AT LAW

Houston Office:
4201 CYPRESS CREEK PARKWAY, SUITE 565
HOUSTON, TEXAS 77068
colleen.mcclure@att.net

Williamson/Travis County Office:
1 CHISHOLM TRAIL ROAD Suite 450
ROUND ROCK, TEXAS 78681
https://www.colleen-m-mcclure-attorney.net/

TELEPHONE (281) 440-1625
FAX (281) 946-5627

August 28, 2019
Via Facsimile (713) 759-0818

Carly Meyers
Hughes, Watters & Askanase, LLP
1201 Louisiana, Suite 2800
Houston, Texas 770002

Re:     File NO.: 2016-010341
        Property Address:  16515 Obsidian Drive, Houston, Texas 77095
        My Client:  Deborah Cross-Farron

Dear Mr. Meyers,

This letter is served upon you as a request for documentation and proof of written notices of default and of intent to accelerate that were served upon Deborah Cross-Farron which formed the basis of your notice of Foreclosure dated August 1, 2019. Such notice is required pursuant to the Texas Property Code:

Section 51.002 (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)

No such notice has been provided to Deborah Cross-Farron, providing her with the time to adequately respond. As clearly stated in your letter of August 1, 2019, you claim in paragraph number 2 that your client informed you that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. This letter is demand upon you to produce said notices with verification that they were received by Deborah Cross-Farron at her address in Titusville, Florida.

Second, Deborah Cross-Farron has reason to believe that Bayview Loan Servicing, LLC and The Bank of New York Mellon fka The Bank of New York is not a holder in due course of the promissory note as is required by Texas Law. (Texas Finance Code Section 392.303 and 392.3054.) This letter is demand upon you to produce certified copies of Deborah Cross-Farron's promissory note for this property and all assignments and transfers of said promissory note and Original Deed of Trust.

This letter also serves as notice pursuant to Texas Deceptive Trade Practices Act, Texas Business and Commerce Code Section 17.41, et seq. The actions as set forth in the August 1, 2019 letter are false, misleading, or deceptive acts or practices in the conduct of Bayview in failing to provide any reinstatement letter, notice of arrears and comply with Texas Statutes.

This letter is also a demand for an accounting of the amounts claimed to be delinquent, including all fees, mortgage shortage fees, and any other fees that are included in the total amount alleged to be owed. Deborah Cross-Farron is requesting proof the alleged amounts owed via a forensic accounting as she is unaware of the amounts alleged to be owed. The notice of substitutes trustee sale states an amount of $255,440.00. There are no other amounts listed. This amount appears to the be the amount the loan was initially started. Further, pursuant to the Making Home Affordable Program, Deborah Cross-Farron is entitled to have all past due late fees and fees waived when she was accepted to participate in the modification program. This letter is demand for said accounting to show said fees have been waived.

Please provide certified copies of all requested documentation herein no later than 5:00 p.m. today. If you have any questions, please do not hesitate to contact me at your convenience.

Very truly yours,

Colleen M. McClure
Attorney at Law

Unofficial Copy Office of Melvin B. Riggs District Clerk

8/29/2019 1:08:11 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 36391732
By: RICHARDSON, SHANIECE J
Filed: 8/29/2019 1:08:11 PM

# EXHIBIT "E"

## Affidavit of Deborah Cross

Unofficial Copy Office of Marilyn Burgess District Clerk

## AFFIDAVIT OF DEBORAH CROSS

I, DEBORAH CROSS, am over the age of eighteen years of age and capable of making this affidavit. I state that the following is true and correct:

I have not received a notice of acceleration of my loan. I have asked for a breakdown of all fees incurred on my loan and have not received the forensic accounting: I do not know what the balance is that I owe.

I have also not received any notice of the transfer of my loan or documents showing who is the holder of due course is of my promissory note or deed of trust.

Further your affiant sayeth not.

DEBORAH CROSS

Subscribed and sworn to before me this 29 th day of June, 2019 by DEBORAH
CROSS.

August

Notary Public

My Commission Expires:

10/13/20

Miguel Rodriguez
My Commission Expires
October 13, 2020
Commission No. GG 38453

Unofficial Copy Office of Marilyn Burgess District Clerk

# EXHIBIT "D"

Demand letter 8.29.19

Unofficial Copy Office of Marilyn Burgess District Clerk

# COLLEEN M. McCLURE
## ATTORNEY AT LAW

Houston Office:
4201 CYPRESS CREEK PARKWAY, SUITE 565
HOUSTON, TEXAS 77068
colleen.mcclure@att.net

TELEPHONE (281) 440-1625
FAX (281) 946-5627

Williamson/Travis County Office:
1 CHISHOLM TRAIL ROAD Suite 450
ROUND ROCK, TEXAS 78681
https://www.colleen-m-mcclure-attorney.net/

August 29, 2019
Via Facsimile (713) 759-0818

Hughes, Watters & Askanase, LLP
1201 Louisiana, Suite 2800
Houston, Texas 770002

Re:    File NO.: 2016-010341
       **Property Address:  16515 Obsidian Drive, Houston, Texas 77095**
       **My Client:  Deborah Cross**

To Whom it May Concern,

This letter is served upon you as representative for Bayview Loan Servicing LLC and the substitute trustees, representing that Texas laws have been complied with prior to proceeding forward with foreclosure, and is a request for documentation and proof of written notices of default and of intent to accelerate that were served upon Deborah Cross, fka Cross-Farron which formed the basis of your notice of Foreclosure dated August 1, 2019. Such notice is required pursuant to the Texas Property Code:

**Section 51.002 (d) Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b)**

No such notice has been provided to Deborah Cross, providing her with the time to adequately respond.    As clearly stated in your letter of August 1, 2019, you claim in paragraph number 2 that your client informed you that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured.   This letter is demand upon you to produce said notices with verification that they were received by Deborah Cross but the address you have mailed the letter to is not the address that has been provided to Bayview and is not her current address. As such does not exist to assert that it has

and use it as a basis for compliance with Texas Property Code regarding foreclosure is fraud. As of the attached email correspondence providing that her address is 3454 Irwin Ave, Mins, Florida 32754. Please advise as to why the proper notification was sent to the wrong address and not the address on file with counsel for Bayview Loan Servicing, LLC?

Second, Deborah Cross-Farron has reason to believe that Bayview Loan Servicing, LLC and The Bank of New York Mellon fka The Bank of New York is not a holder in due course of the promissory note as is required by Texas Law. (Texas Finance Code Section 392.303 and 392.3054.) This letter is demand upon you to produce certified copies of Deborah Cross-Farron's promissory note for this property and all assignments and transfers of said promissory note and Original Deed of Trust.

This letter also serves as notice pursuant to Texas Deceptive Trade Practices Act, Texas Business and Commerce Code Section 17.41, et seq. The actions as set forth in the August 1, 2019 letter are false, misleading, or deceptive acts or practices in the conduct of Bayview in failing to provide any reinstatement letter, notice of arrears and comply with Texas Statutes.

This letter is also a demand for an accounting of the amounts claimed to be delinquent, including all fees, mortgage shortage fees, and any other fees that are included in the total amount alleged to be owed. Deborah Cross-Farron is requesting proof the alleged amounts owed via a forensic accounting as she is unaware of the amounts alleged to be owed. The notice of substitutes trustee sale states an amount of $255,440.00. There are no other amounts listed. This amount appears to the be the amount the loan was initially started. Further, pursuant to the Making Home Affordable Program, Deborah Cross-Farron is entitled to have all past due late fees and fees waived when she was accepted to participate in the modification program. This letter is demand for said accounting to show said fees have been waived.

Please provide certified copies of all requested documentation herein no later than 5:00 p.m. today. If you have any questions, please do not hesitate to contact me at your convenience.

Very truly yours,

Colleen M. McClure
Attorney at Law

Unofficial Copy Office of Melinda Burgess District Clerk

Re: Cross, Deborah/Bayview

From: Colleen McClure (colleen.mcclure@att.net)
To: Sahar.Shirazi@lockelord.com
Cc: mcabrera@lockelord.com; mcclurelegalassistant@gmail.com
Date: Wednesday, June 26, 2019, 03:36 PM CDT

Sahar,

Deborah Cross
3454 Irwin Ave
Mins, Florida 32754

Do you have confirmation of the passing of the foreclosure for Tuesday 7/2?


*Colleen M. McClure*
Attorney at Law

*Houston Office:*

**4201 CYPRESS CREEK PARKWAY, SUITE 565, HOUSTON, TEXAS 77068**

*Williamson/Tavis County Office:*

**1 CHISHOLM TRAIL ROAD Suite 450 ROUND ROCK, TEXAS 78681**

Phone (281) 440-1625

Fax (281) 946-5627

Mark 11:22 "Have Faith of God"


## CONFIDENTIALITY NOTE

This e-mail and any attachments contain information from sender which may be confidential and/or legally privileged. This message and any attachments are intended for the individual or entity named above. If you are not the intended recipient, you are hereby notified that any unauthorized disclosure, copying, distribution or taking of any action in reliance on the contents of these materials is strictly prohibited and review by any individual other than the intended recipient shall not constitute waiver of the attorney client privilege for any of the attorney clients of Colleen McClure. If you are not the intended recipient, please do not read, copy, use or disclose this communication to others; also please notify the sender by replying to this message, and then delete it from your system. Dissemination, distribution, or copying of this communication, in whole or in part, by any unintended or unauthorized recipient is prohibited and may subject you to liability under 18 U.S.C. sec. 2511.

8/29/2019 1:08:11 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 36391732
By: RICHARDSON, SHANIECE J
Filed: 8/29/2019 1:08:11 PM

CAUSE NO. _____

| | | |
|---|---|---|
| DEBORAH CROSS fka DEBORAH CROSS FARRON, | § | IN THE DISTRICT COURT OF |
| **Plaintiffs,** | § | |
| vs. | § | |
| | § | |
| HUGHES, WATTERS & ASKANSE, LLP, | § | |
| INDIVIDUALLY AND ON BEHALF OF THE | § | _____ST  JUDICIAL DISTRICT |
| SUBSTITUTE TRUSTEES AND ON BEHALF | § | |
| OF BAYVIEW  LOAN SERVICING, LLC. | § | |
| **Defendants** | § | HARRIS COUNTY, TEXAS |

## TEMPORARY INJUNCTION AND RESTRAINING ORDER
## AND  ORDER SETTING HEARING FOR TEMPORARY ORDERS

The  application of Plaintiff, **DEBORAH CROSS**, for Emergency Exparte Temporary Injunction and Restraining Order was presented to the Court on this \_\_\_th day of August, 2019.  Defendant is **HUGHES, WATTERS & ASKANSE, LLP,**  The  Court examined the pleadings, affidavit and exhibits of Plaintiff **DEBORAH CROSS**, and finds that Plaintiff is entitled to a Temporary Injunction and Restraining Order forbidding the Defendant from selling the house located at 19603 Stillhouse Dr. Tomball Tx. 77375 at the foreclosure scheduled for September 4, 2018    and issue a restraining order be issued without notice to the Defendant **HUGHES, WATTERS & ASKANSE, LLP**, restraining the defendant, its agents, servants, and employees, form directly or indirectly foreclosing the property located at 16515 Obsidian Drive, Houston, Texas 77095 as the facts set forth in the Plaintiff's Original Petition and Injunction, the exhibits and sworn affidavit attached thereto, that unless Defendant is immediately restrained from the acts prohibited below, as Defendant will commit such acts before notice can be given and a hearing can be held on the Plaintiff's request for a Temporary Injunction.  Further, Defendant will cause the

loss of his property at a foreclosure sale when in fact there are no legal grounds for the foreclosure. Such injury would be irreparable to Plaintiff.

A. **IT IS THEREFORE ORDERED** that the clerk of this Court issue a Temporary Injunction and Restraining Order Stopping Defendant and his agents, assigns, employees and representatives, constables, sheriffs, etc., from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure sale noticed for scheduled for September 4, 2018 and restraining Defendant, his officers, agents, servants, any and all substitute trustees, employees, attorneys and any other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation subsidiary, division, or other devise, shall be restrained from engaging in the following acts or practices:

1. **Be and is hereby immediately restrained, from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019.**

B. **IT IS FURTHER ORDERED** that the Clerk of the above-entitled Court shall forthwith issue an temporary restraining **HUGHES, WATTERS & ASKANSE, LLP, and all substitute trustees** order in conformity with the law and the terms of this Order. This order shall be effective without/with the execution of a bond.

C. **IT IS FURTHER ORDERED** that the clerk shall issue notice to Defendant, to appear before this Court in the courthouse in Harris County, Texas, on _____ at ____ _____ ___. m The purpose of the hearing is to determine whether, while this case is pending:

1. The preceding temporary injunction and order restraining the constable or any other authority from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019.

2. Plaintiffs is to pay a bond in the amount of $_____ The bond is to be placed into the registry of the court and to be applied to the issuance of this temporary restraining order. This order will become effective upon the payment of this bond.

**IT IS FURTHER ORDERED** that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this case may serve any citation, notice, or process in this case.

SIGNED on _____ at \_\_\_\_ \_\_\_.M.

_____

JUDGE PRESIDING



COLLEEN M. McCLURE
ATTONREY AT LAW

By: _/s/ Colleen M. McClure_
    Colleen M. McClure
SBN: 24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas 77068
Telephone: (281) 440-1625
Facsimile: (281) 946-5627
**colleen.mcclure@att.net**
**ATTORNEY FOR PLAINTIFF**

Unofficial Copy Office of Marilyn Burgess District Clerk

Marilyn Burgess - District Clerk
Harris County
Envelope No: 36391732
By: RICHARDSON, SHANIECE J
Filed: 8/29/2019 1:08:11 PM

# 2019-61332 / Court: 164

CAUSE NO. _____

| | | |
|---|---|---|
| DEBORAH CROSS fka DEBORAH CROSS FARRON, | § | IN THE DISTRICT COURT OF |
| **Plaintiffs,** | § | |
| vs. | § | |
| | § | |
| **HUGHES, WATTERS & ASKANSE, LLP,** | § | |
| **INDIVIDUALLY AND ON BEHALF OF THE** | § | _____ST JUDICIAL DISTRICT |
| **SUBSTITUTE TRUSTEES AND ON BEHALF** | § | |
| **OF BAYVIEW LOAN SERVICING, LLC.** | § | |
| **Defendants** | § | HARRIS COUNTY, TEXAS |

## TEMPORARY INJUNCTION AND RESTRAINING ORDER
## AND ORDER SETTING HEARING FOR TEMPORARY ORDERS

The application of Plaintiff, **DEBORAH CROSS,** for Emergency Exparte

Temporary Injunction and Restraining Order was presented to the Court on this 30 th

day of August, 2019. Defendant is **HUGHES, WATTERS & ASKANSE, LLP,** The Court

examined the pleadings, affidavit and exhibits of Plaintiff **DEBORAH CROSS,** and finds

that Plaintiff is entitled to a Temporary Injunction and Restraining Order forbidding the

Defendant from selling the house located at 19603 Stillhouse Dr. Tomball Tx. 77375 at the

foreclosure scheduled for September 4, 2018 and issue a restraining order be issued

without notice to the Defendant **HUGHES, WATTERS & ASKANSE, LLP,** restraining the

defendant, its agents, servants, and employees, form directly or indirectly foreclosing the

property located at 16515 Obsidian Drive, Houston, Texas 77095 as the facts set forth in

the Plaintiff's Original Petition and Injunction, the exhibits and sworn affidavit attached

thereto, that unless Defendant is immediately restrained from the acts prohibited below,

as Defendant will commit such acts before notice can be given and a hearing can be held

on the Plaintiff's request for a Temporary Injunction. Further, Defendant will cause the

SHELLPOINT/CROSS 002931

loss of his property at a foreclosure sale when in fact there are no legal grounds for the foreclosure. Such injury would be irreparable to Plaintiff.

A. **IT IS THEREFORE ORDERED** that the clerk of this Court issue a Temporary Injunction and Restraining Order Stopping Defendant and his agents, assigns, employees and representatives, constables, sheriffs, etc., from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure sale noticed for scheduled for September 4, 2018 and restraining Defendant, his officers, agents, servants, any and all substitute trustees, employees, attorneys and any other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation subsidiary, division, or other devise, shall be restrained from engaging in the following acts or practices:

1. **Be and is hereby immediately restrained, from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019.**

B. **IT IS FURTHER ORDERED** that the Clerk of the above-entitled Court shall forthwith issue an temporary restraining **HUGHES, WATTERS & ASKANSE, LLP, and all substitute trustees** order in conformity with the law and the terms of this Order. This order shall be effective without/with the execution of a bond.

C. **IT IS FURTHER ORDERED** that the clerk shall issue notice to Defendant, to appear before this Court in the courthouse in Harris County, Texas, on _9/13_ at ____ _11 : OO A_ m The purpose of the hearing is to determine whether, while this case is pending:

SHELLPOINT/CROSS 002932

1. The preceding temporary injunction and order restraining the constable or any other authority from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019.

2. Plaintiffs is to pay a bond in the amount of $ _500.⁰⁰_ . The bond is to be placed into the registry of the court and to be applied to the issuance of this temporary restraining order. This order will become effective upon the payment of this bond.

**IT IS FURTHER ORDERED** that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this case may serve any citation, notice, or process in this case.

SIGNED on _August 30_ at _10 16_ A.M.

_____
JUDGE PRESIDING


COLLEEN M. McCLURE
ATTONREY AT LAW

By: _/s/ Colleen M. McClure_
    Colleen M. McClure
SBN: 24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas 77068
Telephone: (281) 440-1625
Facsimile: (281) 946-5627
**colleen.mcclure@att.net**
**ATTORNEY FOR PLAINTIFF**

SHELLPOINT/CROSS 002933

CAUSE NO. __2019-61332__

| | | |
|---|---|---|
| DEBORAH CROSS fka DEBORAH CROSS FARRON, | § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § | |
| vs. | § § | |
| HUGHES, WATTERS & ASKANSE, LLP, INDIVIDUALLY AND ON BEHALF OF THE SUBSTITUTE TRUSTEES AND ON BEHALF OF BAYVIEW LOAN SERVICING, LLC. | § § § § | 164th JUDICIAL DISTRICT |
| Defendants | § | HARRIS COUNTY, TEXAS |

## EXTENDED TEMPORARY INJUNCTION AND RESTRAINING ORDER AND ORDER SETTING HEARING FOR TEMPORARY ORDERS

The application of Plaintiff, **DEBORAH CROSS**, for Emergency Exparte Temporary Injunction and Restraining Order was presented to the Anncillary Court on the 30th day of August, 2019 examined the pleadings, affidavit and exhibits of Plaintiff **DEBORAH CROSS**, and finds that Plaintiff is entitled to a Temporary Injunction and Restraining Order forbidding the Defendant from selling the house located at 19603 Stillhouse Dr. Tomball Tx. 77375 at the foreclosure scheduled for September 4, 2018 and issue a restraining order be issued without notice to the Defendant **HUGHES, WATTERS & ASKANSE, LLP**, restraining the defendant, its agents, servants, and employees, form directly or indirectly foreclosing the property located at 16515 Obsidian Drive, Houston, Texas 77095 as the facts set forth in the Plaintiff's Original Petition and Injunction, the exhibits and sworn affidavit attached thereto, that unless Defendant is immediately restrained from the acts prohibited below, as Defendant will commit such acts before notice can be given and a hearing can be held on the Plaintiff's request for a Temporary Injunction and the court granted said restraining order, signing the temporary restraining

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging

EXHIBIT G

SHELLPOINT/CROSS 002934

order on August 20, 2019, setting the hearing on Friday September 13, 2019 at 11:00 a.m. The court is hereby extending the restraining order and resetting the hearing from Friday September 13, 2019 to Wednesday September 18th at 11:00 a.m.

IT IS THEREFORE ORDERED that the    Temporary Injunction and Restraining Order Stopping Defendant and his agents, assigns, employees and representatives, constables, sheriffs, etc., from  selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure sale noticed for scheduled for September 4, 2018 and restraining  Defendant, his officers, agents, servants, any and all substitute trustees, employees, attorneys and any other persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise, whether acting directly or through any trust, corporation subsidiary, division, or other devise, shall be restrained from engaging in the following acts or practices:

1. **Be and is hereby immediately restrained, from  selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019.**

Is hereby extended until Wednesday September 18, 2019 at 11:00 a.m.

B.  **IT IS FURTHER ORDERED** bond paid by Plaintiff in the amount of $500 is hereby still in effect until further order of the court.

C.  **IT IS FURTHER ORDERED** that the clerk shall issue notice to Defendant, to appear before this Court in the courthouse in Harris County, Texas, on Wednesday September 18, 2019 at 11:00 a. m The purpose of the hearing is to determine whether, while this case is pending:

*Extended Temporary Injunction*

SHELLPOINT/CROSS 002935

1. The preceding temporary injunction and order restraining the constable or any other authority from selling the house located at 16515 Obsidian Drive, Houston, Texas 77095 at the foreclosure scheduled for September 3, 2019 and any further foreclosure settings.

**IT IS FURTHER ORDERED** that any authorized person eighteen years of age or older who is not a party to or interested in the outcome of this case may serve any citation, notice, or process in this case.

SIGNED on ___9/11/19___ at ___3:15 p___.M.

Caroline Baker

JUDGE PRESIDING

**COLLEEN M. McCLURE**
**ATTONREY AT LAW**

By:_/s/ Colleen M. McClure_
    Colleen M. McClure
SBN: 24012121
4201 Cypress Creek Parkway, Suite 565
Houston, Texas 77068
Telephone:   (281) 440-1625
Facsimile:    (281) 946-5627
**colleen.mcclure@att.net**
**ATTORNEY FOR PLAINTIFF**

SHELLPOINT/CROSS 002936

## CAUSE NO. 2019-61332

| | | |
|---|---|---|
| DEBORAH CROSS f.k.a. DEBORAH CROSS FARRON | § § § | IN THE DISTRICT COURT |
| *Plaintiff,* | § § | |
| | § | 164TH JUDICIAL DISTRICT |
| v. | § § | |
| HUGHES, WATTERS & ASKANSE, LLP, INDIVIDUALLY AND ON BEHALF OF THE SUBSTITUTE TRUSTEES AND ON BEHALF OF BAYVIEW LOAN SERVICING, LLC | § § § § § § | OF HARRIS COUNTY, TEXAS |
| *Defendant.* | | |

## PLAINTIFF'S NOTICE OF NONSUIT WITHOUT PREJUDICE

**To the Honorable Judge of this Court:**

COMES NOW Plaintiff, Deborah Cross f.k.a. Deborah Cross Farron ("Plaintiff"), in the above-styled and numbered cause of action, and files this Notice of Nonsuit pursuant to Rule 162 of the Texas Rules of Civil Procedure. Notice is hereby given to all parties and attorneys of record that Plaintiff is nonsuiting, *without prejudice*, all of her causes of action against all parties. As of the filing of this motion, there is no counterclaims or motions for sanctions pending against Plaintiff.

Respectfully submitted,

**JEFFREY JACKSON & ASSOCIATES, PLLC**

*/s/ Jeffrey C. Jackson*
JEFFREY C. JACKSON
Texas Bar No. 24065485
2200 North Loop West, Suite 108
Houston, Texas 77018
713-861-8833 (P)
713-682-8866 (F)
jeff@jjacksonllp.com
ATTORNEY FOR PLAINTIFF

EXHIBIT H
SHELLPOINT/CROSS 002937

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served pursuant to the Texas Rules of Civil Procedure on this day September 23, 2019.

/s/      *Jeffrey C. Jackson*
JEFFREY C. JACKSON

SHELLPOINT/CROSS 002938

9/23/2019 4:56:47 PM
**Marilyn Burgess - District Clerk**
**Harris County**
**Envelope No: 37049546**
**By: JEFFERSON, TIFFANY S**
**Filed: 9/23/2019 4:56:47 PM**

CAUSE NO. 2019-61332

| | | |
|---|---|---|
| **DEBORAH CROSS f.k.a. DEBORAH CROSS FARRON** | § | **IN THE DISTRICT COURT** |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | **164TH JUDICIAL DISTRICT** |
| **v.** | § | |
| | § | |
| **HUGHES, WATTERS & ASKANSE, LLP, INDIVIDUALLY AND ON BEHALF OF THE SUBSTITUTE TRUSTEES AND ON BEHALF OF BAYVIEW LOAN SERVICING, LLC** | § | **OF HARRIS COUNTY, TEXAS** |
| *Defendant.* | | |

## ORDER OF DISMISSAL WITHOUT PREJUDICE ON PLAINTIFF'S NOTICE OF NONSUIT

On this day came on to be considered Plaintiff, Deborah Cross f.k.a. Deborah Cross Farron's ("Plaintiff"), Notice of Nonsuit *without prejudice* as to all causes of action against all defendants pursuant to Rule 162 of the Texas Rules of Civil Procedure. The Court, after considering the Notice, is of the opinion that the Plaintiff's claims against all defendants must be DISMISSED without prejudice.

It is therefore ORDERED that Plaintiff's claims against all defendants are dismissed without prejudice with all court costs taxed against the Plaintiff.

SIGNED on _____, 2019.


_____
Judge Presiding

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Deborah Cross f.k.a. Deborah Cross-Farron | § | |
| v. | § | Case No. 4:20-cv-01322 |
| The Bank of NY Mellon f.k.a. The Bank | § | |
| of New York, as trustee, et al. | § | |

## <u>DECLARATION OF MONICA SUMMERS</u>

I, Monica Summers, pursuant to 28 U.S.C. § 1746, make this declaration in support of NewRez LLC dba Shellpoint Mortgage Servicing and The Bank of New York Mellon, as Trustee's (**BoNYM**) summary judgment motion.

1. My name is Monica Summers. I am over the age of 21, am of sound mind, suffer from no legal or mental disabilities, and am fully competent to testify on the matters stated herein. I have personal knowledge of the facts stated herein, and they are true and correct.

2. I am an attorney licensed by the state bar of Texas to practice law in Texas. I am employed as an attorney by the law firm of Akerman LLP. I represent Shellpoint and BoNYM in the above-styled and -numbered cause.

3. On May 29, 2020, my firm served upon Deborah Cross's counsel of record, Jeffery Jackson, Shellpoint's and BoNYM's first discovery requests to Ms. Cross. True, correct and complete copies of Shellpoint's and BoNYM's first discovery requests are attached as exhibits I-1 and I-2, respectively.

4. On July 13, 2020, Mr. Jackson served Ms. Cross's responses to Shellpoint's and BoNYM's first discovery requests. True, correct and complete copies of Ms. Cross's discovery responses are attached as exhibits I-3 and I-4, respectively.

5.      On April 7, 2020, my firm served upon Ms. Cross, through her attorney Mr. Jackson, a rescission of acceleration of loan maturity.  A true, correct and complete copy of the rescission letter is attached as exhibit I-5.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 9, 2021.


_____
Monica Summers

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Deborah Cross f.k.a. Deborah Cross-Farron | § | |
| v. | § | Case No. 4:20-cv-01322 |
| The Bank of NY Mellon f.k.a. The Bank | § | |
| of New York, as trustee, et al. | § | |

## SHELLPOINT'S FIRST DISCOVERY REQUESTS TO DEBORAH CROSS

To:     Deborah Cross, through her counsel of record, Jeffrey C. Jackson and Scott Shearouse, Jeffrey Jackson & Associates, PLLC, 2200 North Loop West, Suite 108, Houston, Texas 77018.

NewRez LLC dba Shellpoint Mortgage Servicing (**Shellpoint**) serve these discovery requests on Deborah Cross. Shellpoint requests responses, answers and production of documents and tangible things be sent not more than thirty days after service of these requests to Walter McInnis, 2001 Ross Avenue, Suite 3600, Dallas, Texas 75201. Shellpoint requests production of electronic and magnetic data in the form maintained by Ms. Cross.

## I.     DEFINITIONS

The terms **you**, **your** and **Ms. Cross** refer to plaintiff Deborah Cross f.k.a. Deborah Cross-Farron.

The term **Shellpoint** refers to defendant NewRez LLC dba Shellpoint Mortgage Servicing.

The term **BoNYM** refers to defendant Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB.

The term **Bayview** refers to Bayview Loan Servicing, LLC.

The term **property** refers to the property at 16515 Obsidian Drive, Houston, Texas 77095.

The term **note** refers to the note you executed on or about November 2, 2004 promising to repay the original principal amount of $255,440, plus interest.

The term **deed of trust** refers to the deed of trust you executed on or about November 2, 2004 and recorded in the official records of Harris County, Texas on November 12, 2004 as document number 200696692.

EXHIBIT I-1

The term **loan modification** refers to the loan modification you executed on or about May 10, 2013 and effective June 1, 2013 modifying the terms of the loan.

The term **loan** refers collectively to the note, deed of trust and loan modification.

The term **lawsuit** refers to the suit you filed in the Harris county district court on or about March 19, 2020, cause number 2020-18274 and subsequent proceedings in the case including in federal court as cause number 4:30-cv-01322.

The term **petition** refers to plaintiff's original petition filed in the lawsuit on March 19, 2020 including any amendments and supplements through the course of the lawsuit.

The term **relevant time period** will refer to the period of time beginning November 12, 2004 through the date of trial unless otherwise stated in the individual request or interrogatory.

## II. DISCOVERY REQUESTS

1.     Request for admission.  Admit you have not been damaged by any act or omission of Shellpoint.

    Response:

2.     Interrogatory.  Unless you unequivocally admitted request 1, describe both the economic and non-economic damages you seek to recover from Shellpoint in detail.  Your description should state the total amount of both economic and non-economic damages you seek to recover from Shellpoint as well as each category, element or type of damage which is included in the total amount of economic and non-economic damages you seek to recover from Shellpoint, the dollar amount that you attribute for each category, element or type of both economic and non-economic damages you seek to recover from Shellpoint and how the dollar amount attributed to each category, element or type of both economic and non-economic damages was calculated.

    Response:

3.     Request for production.  Unless you unequivocally admitted request, please produce for inspection and copying all written documents and tangible things, including data or information that exists in electronic or magnetic form, which underlie or support the economic and non-economic damage calculations you set out in response to interrogatory 2, including, but not limited to, all economic and non-economic damage calculations or summaries which you prepared.  If you are claiming an economic or non-economic damage this request is designed to compel the production of documents evidencing the alleged economic or non-economic damage.

    Response:

4.     Request for admission.  Admit the document attached as **exhibit A** is a true, correct and complete copy of the note.

Response:

5.     Request for admission.  Admit the document attached as **exhibit B** is a true, correct and complete copy of the deed of trust.

Response:

6.     Request for admission.  Admit the document attached as **exhibit C** is a true, correct and complete copy of the assignment of deed of trust.

Response:

7.     Request for admission.  Admit the document attached as **exhibit D** is a true, correct and complete copy of the loan modification.

Response:

8.     Request for production.  Unless you unequivocally admitted requests 4-7 please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing the note, deed of trust, modifications or any other document executed by you, granting an interest in the property.

Response:

9.     Request for admission.  Admit BoNYM is the current mortgagee of the deed of trust.

Response:

10.    Request for admission.  Admit BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011.

Response:

11.    Request for production.  Unless you unequivocally admitted requests 9 and 10, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011 and/or is the current mortgagee of the deed of trust, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was a mortgagee of the deed of trust during the relevant time period and the dates on which each such person and/or entity was a mortgagee of the deed of trust, and for the person and/or entity you claim is a current mortgagee, documents identifying the date you contend the person and/or entity became a mortgagee of the deed of trust.

Response:

12.     Request for admission.  Admit Shellpoint is the current mortgage servicer of the loan.

        Response.

13.     Request for admission.  Admit Shellpoint has been the mortgage servicer of the loan at all times since February 1, 2020.

        Response:

14.     Request for admission.  Admit Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020.

        Response:

15.     Request for production.   Unless you unequivocally admitted requests 12-14, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting Shellpoint is the current mortgage servicer, has been the mortgage servicer of the loan at all times since February 1, 2020, and Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was or is a mortgage servicer of the loan during the relevant time period and the dates on which each such person and/or entity was a mortgage servicer of the loan, and for the person and/or entity you claim is the current mortgage servicer of the loan, documents identifying the date you contend the person and/or entity became the current mortgage servicer of the loan.

        Response:

16.     Request for admission.  Admit the loan is in default.

        Response:

17.     Request for production.  Unless you unequivocally admitted request 16, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan, including, but not limited to, the front and back of each payment and each bank statement for each financial account maintained by you or on which you have had access to funding during that period of time.

        Response:

18.     Request for admission.   Admit all payments tendered on the loan were applied in accordance with the terms of the loan.

        Response:

19.     Interrogatory.  Unless you unequivocally admitted request 18, please identify (by date, amount and payee) each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

        Response:

20.     Request for production.  Unless you unequivocally admitted request 18, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

        Response:

21.     Request for admission.  Admit all charges, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan were applied in accordance with the terms of the loan.

        Response:

22.     Interrogatory.  Unless you unequivocally admitted request 21, please identify, by date and amount, each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such charge should have been applied.

        Response:

23.     Request for production.  Unless you have unequivocally admitted request 21, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan.

        Response:

24.     Request for admission.  Admit you were sent notice the loan was in default.

        Response:

25.     Request for admission.  Admit you were sent notice you had at least thirty (30) days to cure the default of the loan.

        Response:

26. Request for admission. Admit you were sent notice that, if you did not cure the default, the maturity of the loan would be accelerated.

    Response:

27. Request for admission. Admit the document attached as **exhibit E** is a true, correct and complete copy of the notice Bayview sent you informing you the loan was in default, specifying the amount required to cure the default, giving you 30 days to cure the default and advising you that, if you did not cure the default within 30 days, the loan maturity would be accelerated.

    Response:

28. Request for admission. Admit the notice attached as **exhibit E** was mailed via certified mail.

    Response:

29. Request for admission. Admit the notice attached as **exhibit E** was deposited with the United States Postal Service, postage pre-paid.

    Response:

30. Request for admission. Admit the notices attached as **exhibit E** were addressed to you at your last known address according to Bayview's records.

    Response:

31. Interrogatory. Unless you unequivocally admitted requests 24-30, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notice attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

    Response:

32. Request for production. Unless you have unequivocally admitted requests 24-30, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notices attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

    Response:

33. Request for admission. Admit you did not cure the default of the loan in the time and manner specified in the notices attached as **exhibit E**.

Response:

34.     Request for production.   Unless you have unequivocally admitted request 33, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan in the time and manner specified in **exhibit E**.

        Response:

35.     Request for admission.   Admit the loan is due for January 1, 2015 payment.

        Response:

36.     Request for admission.  Admit no payments have been made on the loan after the payment satisfying the monthly obligation due December 1, 2014.

        Response:

37.     Request for admission.  Admit to date the default has not been cured.

        Response:

38.     Request for production.   Unless you have unequivocally admitted request 37, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan.

        Response:

39.     Request for admission.  Admit you were sent notice the maturity of the loan was accelerated on February 11, 2016.

        Response:

40.     Request for admission.  Please admit the notices attached as **exhibit F** are true, correct and complete copies of the February 11, 2016 notices advising you the maturity of the loan was accelerated.

        Response:

41.     Interrogatory.  Unless you unequivocally admitted requests 39 and 40, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting you were sent the notices attached as **exhibit F** advising you the maturity of the loan was accelerated.

        Response:

42. Requests for production.  Please produce all notices of default and notices of acceleration concerning the loan that you received after February 11, 2016.

Response:

43. Request for admission.  Admit the statute of limitations to foreclose the deed of trust has not expired.

Response:

44. Interrogatory.  Unless you unequivocally admitted request 43, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including identifying the date you allege limitations ran, each date you contend that the loan was accelerated and the factual bases supporting the identified acceleration date (i.e. the loan was accelerated on x date because a notice of default was sent on y date and a notice of acceleration was sent on z date).

Response:

45. Request for production.  Unless you unequivocally admitted request 43, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including documents identifying the date you allege limitations ran and each date you contend the loan was accelerated, including documents evidencing a notice of default and notice of acceleration.

Response:

46. Request for admission. Admit on May 31, 2018, the court entered a temporary restraining order (**TRO 1**) in the case styled *Deborah Cross v. The Bank of New York Mellon, as trustee, et al.*, No. 2018-36182 (55th Judicial Dist. Ct.).

Response:

47. Request for admission.  Admit TRO 1 expired on June 14, 2018.

Response:

48. Request for production.   Unless you unequivocally admitted requests 46-47, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 1 and it expired on June 14, 2018, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

Response:

49. Request for admission.  Admit on August 30, 2019, the court entered a temporary restraining order (**TRO 2**) in the case styled *Deborah Cross v Hughes, Watters & Askanse, LLP, et al.*, No. 2019-61332 (164th Judicial Dist. Ct.).

   Response:

50. Request for admission.  Admit on September 11, 2019, the court extended TRO 2.

   Response:

51. Request for admission.  Admit TRO 2 expired on September 25, 2019.

   Response:

52. Request for production.   Unless you unequivocally admitted requests 49-51, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 2, extended it and and it expired on September 25, 2019, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

   Response:

53. Request for admission.  Admit Shellpoint sent you the letter dated February 14, 2020 attached as **exhibit G**.

   Response:

54. Request for admission.  Admit Shellpoint sent you the February 17, 2020 letter attached as **exhibit H**.

   Response:

55. Request for production.  Unless you unequivocally admitted requests 53-54, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing correspondence you received from Shellpoint after February 1, 2020 related to the loan.

   Response:

56. Request for admission.  Admit Bayview sent you the mortgage statement dated January 16, 2020 attached as **exhibit I**.

   Response:

57.     Request for admission.  Admit Shellpoint sent you the mortgage statement dated February 16, 2020 attached as **exhibit J**.

        Response:

58.     Request for production.  Unless you unequivocally admitted requests 56-57, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all monthly mortgage statements Bayview and Shellpoint sent you after February 11, 2016.

        Response:

59.     Request for production. Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint and Bayview referencing foreclosure, commencing foreclosure or referring to foreclosure sent to you after February 11, 2016.

        Response:

60.     Request for production. Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint, Bayview, BoNYM, or their attorneys, rescinding or abandoning prior acceleration or acts of acceleration of the loan maturity sent to you after February 11, 2016.

        Response:

61.     Request for admission.  Admit in your petition you request to recover your attorneys' fees incurred in presenting and prosecuting your lawsuit.

        Response:

62.     Interrogatory.  In paragraph 23 of the petition, you allege "[n]o non-judicial foreclosure sale or suit for judicial foreclosure, including any applicable tolling, occurred within four years of February 11, 2016."  With respect to this allegation, please identify any "applicable tolling" you contend applies, including the tolling event, the dates it tolled limitations and the factual and legal basis supporting your contention the event tolled limitations.

        Response:

63.     Request for production.  Produce for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any "applicable tolling" you contend applies, including documents evidencing the tolling event, the dates it tolled limitations and supporting the factual and legal basis of your contention the event tolled limitations.

        Response:

64.    Request for admission.  In paragraph 24 of the petition, you allege "[t]he February 11, 2016 acceleration was never waived or abandoned."  With respect to this allegation, please admit the acceleration was waived or abandoned.

Response:

65.    Interrogatory.  Unless you unequivocally admitted request 64, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

Response:

66.    Request for production.  Unless you unequivocally admitted request 64, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

Response:

67.    Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Shellpoint during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

68.    Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Shellpoint you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

69.    Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with BoNYM during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

70.    Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement

or understanding you had with BoNYM you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

71. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Bayview during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

72. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Bayview you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

73. Request for production. If your claims rely, in whole or in part, upon any other promise that is not contained in the written loan agreement, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all of the terms and conditions of the agreement of which the promise is a part, including but not limited to, the consideration provided by you in exchange for the promise.

Response:

74. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all diaries, calendars and/or other lists or notes kept by you regarding or relating in any way to the incident made the basis of this lawsuit and/or events thereafter.

Response:

75. Request for production. If you contend you are entitled to recover attorneys' fees in this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all agreements you have with your attorney regarding how your attorney is to be compensated for the work performed by your attorney in this lawsuit.

Response:

76. Request for production. If you contend you are entitled to recover attorneys' fees this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all time incurred by your attorney(s) or other persons working at his or her direction, a description of the activities for which the time was incurred and the hourly rate charged for the time incurred.

    Response:

77. Request for production. If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing any manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

    Response:

78. Request for production. If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, then for each manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing all healthcare treatment you sought or received during the relevant time period due to mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

    Response:

79. Interrogatory: If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, identify the name, address and telephone number of each healthcare provider who examined you, provided you with a diagnosis, provided you with a prognosis, or provided you with prescribed treatment, including medicine, for the manifestation or symptom.

    Response:

Date: May 29, 2020                                      Respectfully submitted,

                                                        *s/ Walter McInnis*
                                                        C. Charles Townsend, SBN: 24028053
                                                        charles.townsend@akerman.com
                                                        Walter McInnis, SBN: 24046394
                                                        walter.mcinnis@akerman.com
                                                        *--Attorney in Charge*
                                                        AKERMAN LLP
                                                        2001 Ross Avenue, Suite 3600
                                                        Dallas, Texas 75201
                                                        Telephone: 214.720.4300
                                                        Facsimile: 214.981.9339

Monica Summers, SBN: 24083594
monica.summers@akerman.com
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231

**ATTORNEYS FOR SHELLPOINT
AND BONYM**

<u>**CERTIFICATE OF SERVICE**</u>

I certify I served this document on May 29, 2020 as follows:

<u>**VIA EMAIL**</u>
Jeffrey C. Jackson
Scott C. Shearouse
Jeffrey Jackson & Associates, PLLC
2200 North Loop West, Suite 108
Houston, Texas 77018
jeff@jjacksonllp.com
scott@jjacksonllp.com

*Attorney for plaintiff*

*s/ Monica Summers*
Monica Summers

# EXHIBIT A

7834087

# NOTE

Loan Number: ☐☐☐☐9599

NOVEMBER 2, 2004
[Date]

CROSS-FARKC HOUSTON [City]

7834087 TEXAS
[State]

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 255,440.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is NEW HORIZON FINANCIAL LTD.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on DECEMBER 1, 2004 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2034 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,531.49

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____ _____ _____ _____ _____ _____

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01
Page 1 of 3
DocMagic *eForms* 800-649-1362
www.docmagic.com

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
    5 . 0 0 0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: _____  _____  _____  _____  _____

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
DEBORAH CROSS-FARRON          -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                                              -Borrower                                          -Borrower

PAY TO THE ORDER OF:
COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF
TREASURY BANK N.A. WITHOUT RECOURSE

NEW HORIZON FINANCIAL LTD.

BY: _____                                    *[Sign Original Only]*
          JOHN SCOTT
          CONTROLLER
ITS: _____

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY _____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

# EXHIBIT B

TX04 1365157AH

Y058359
11/12/04   200696692        $52.00

After Recording Return To:
NEW HORIZON FINANCIAL LTD.
11931 WICKCHESTER #400J
HOUSTON, TEXAS 77043
Loan Number: ███████599

**FILED FOR RECORD**
**8:00 AM**

**AFTER RECORDING RETURN TO:**
**ALLEGIANCE TITLE COMPANY** √√
**14201 MEMORIAL DRIVE**
**SUITE 101**
**HOUSTON, TEXAS 77079**

NOV 1 2 2004

*Beverly L. Kaufman*

**County Clerk, Harris County, Texas**

———————— [Space Above This Line For Recording Data] ————————

# DEED OF TRUST

MIN XXXXXXXXXXXXXXXXXXXXXXX
████████9599-7

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)  "Security Instrument" means this document, which is dated NOVEMBER 2, 2004        , together
with all Riders to this document.
(B)  "Borrower" is  DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE
AND SEPARATE PROPERTY

Borrower is the grantor under this Security Instrument.
(C)  "Lender" is   NEW HORIZON FINANCIAL LTD.

Lender is a  LIMITED LIABILITY COMPANY                                          organized
and existing under the laws of   TEXAS
Lender's address is  11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D)  "Trustee" is  ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON,
2611 JONES ROAD, SUITE 200 HOUSTON, TEXAS 77070

Trustee's address is

Borrower Initials: _____

TEXAS--Single Family--Fannie Mae/Freddie
Form 3044 1/01



*DocMagic 800-649-1362*
*www.docmagic.com*

0487   D2   001   001

SHELLPOINT/CROSS 000001

(E)  "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this Security Instrument.**  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F)  "Note" means the promissory note signed by Borrower and dated  NOVEMBER 2, 2004                  .
The Note states that Borrower owes Lender   TWO HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY AND 00/100        Dollars (U.S. $255,440.00           ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2034          .

(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower.  The following Riders are to be executed by Borrower [check box as applicable]:  ·

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M)  "Escrow Items" means those items that are described in Section 3.

(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials: _____  _____  _____  _____  _____  _____

DocMagic *eFarms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000002

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of HARRIS                                               :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of  16515 OBSIDIAN DRIVE
                                                           [Street]

HOUSTON                                    , Texas      77095      ("Property Address"):
[City]                                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Borrower Initials: _____ _____ _____ _____ _____ _____

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                                   Page 3 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000003

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

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Borrower Initials: _____

SHELLPOINT/CROSS 000004

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

Borrower Initials:

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000005

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

Borrower Initials: _____

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000006

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Borrower Initials:

*DocMagic eFarms* 800-649-1362
*www.docmagic.com*

SHELLPOINT/CROSS 000007

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

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Borrower Initials: _____ _____ _____ _____ _____

SHELLPOINT/CROSS 000008

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

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower Initials: _____  _____  _____  _____  _____  _____

*DocMagic* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000009

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Borrower Initials: _____ _____ _____ _____ _____ _____

*DocMagic* ☎ 800-849-1362
www.docmagic.com

SHELLPOINT/CROSS 000010

595-59-224

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000011

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000012

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**

Check box as applicable:

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

Borrower Initials:

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000013

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DEBORAH CROSS-FARRON          -Borrower                                                      -Borrower


_____ (Seal)          _____ (Seal)
                                              -Borrower                                                      -Borrower


_____ (Seal)          _____ (Seal)
                                              -Borrower                                                      -Borrower


Witness:                                              Witness:


_____                 _____

SHELLPOINT/CROSS 000014

The State of Texas
County of HARRIS

Before me, *A Notary Public*
on this day personally appeared DEBORAH CROSS-FARRON

known to me (or proved to me on the oath of
or through *I.D.*
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.
Given under my hand and seal of office this *2* day of *NOVEMBER* , *2004*



J. K. HOROWITZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
JUNE 26, 2006

_____
Notary Public Signature

(Seal)                                   My commission expires:

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                        Page 15 of 15

DocMagic *eFonns* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000015

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      2nd     day of NOVEMBER, 2004             , and is incorporated into and shall be deemed to amend and · supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   NEW HORIZON FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

STONE GATE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower Initials: _____    _____    _____    _____    _____

SHELLPOINT/CROSS 000016

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____  _____  _____  _____  _____  _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 2 of 3

*DocMagic* *Rentors* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000017

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
DEBORAH CROSS-FARRON        -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000018

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd day of NOVEMBER 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to NEW HORIZON
FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

### 16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

SHELLPOINT/CROSS 000019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DEBORAH CROSS-FARRON    -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

NOV 12 2004



*Beverly B. Kaufman*
COUNTY CLERK
HARRIS COUNTY, TEXAS

MULTISTATE SECOND HOME RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3890 1/01                    Page 2 of 2

*DocMagic* ℰℱⓇⓄⓂⓈ 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000020

# EXHIBIT C



This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

DocID# 2577834048717291

Property Address:
16515 Obsidian Dr
Houston, TX 77095-4981
TXO-ADT 14252271        9/12/2011

| Recording Requested By: | When recorded mail to: |
|---|---|
| Bank of America | CoreLogic |
| Prepared By: | 450 E. Boundary St. |
| Danilo Cuenca | Attn: Release Dept. |
| 888-603-9011 | Chapin, SC 29036 |
| 450 E. Boundary St. | |
| Chapin, SC 29036 | |

MIN #: 1002123-0005009599-7        MERS Phone #: 888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2004-30CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-30CB** whose address is 101 BARCLAY ST - 4W, NEW YORK, NY  10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:       **NEW HORIZON FINANCIAL LTD.**
Borrower(s):           **DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
Original Trustee:      **ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON**
Date of Deed of Trust: **11/2/2004**
Original Loan Amount:  **$255,440.00**

Recorded in Harris County, TX on: 11/12/2004, book 59558, page 2232 and instrument number Y058359

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
9|15|11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By:
Jane Martorana, Assistant Secretary

State of California
County of Ventura

On 09|15|11 before me, Lillian J. Ellison, Notary Public, personally appeared Jane Martorana
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015

Notary Public:
My Commission Expires:                    (Seal)

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

NOV 23 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

FILED FOR RECORD
8:00 AM

NOV 23 2011

Stan Stanart
County Clerk, Harris County, Texas

SHELLPOINT/CROSS 000021

# EXHIBIT D

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.877.422.1761

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] DEBORAH CROSS-FARRON

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
November 01, 2004
Loan Number: ███████████7095
Property Address *(See Exhibit A for Legal Description if applicable) "Property"*:
16515 Obsidian Drive, Houston, TX 77095
*See Exhibit B for assignments of record if applicable*

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.


78340487+CHLGENHMF_05022013

C3_5154-3

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.   Either I have not been displaced and one of the borrowers signing this Agreement lives in the Property as a principal residence or lived in the Property as a principal residence immediately prior to being displaced; or I am currently displaced and (i) I intend to re-occupy the Property as a principal residence in the future, (ii) I do not own any single-family real estate other than the subject Property, and (iii) the Property has not been condemned.

   C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.   I have made or will make all payments required under a trial period plan.



78340487+CHLGENHMF_05022013

C3_5154-3

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on June 01, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on June 01, 2013.

A.   The Maturity Date will be: November 01, 2084.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $238,299.22 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   Interest at the rate of 3.625% will begin to accrue on the New Principal Balance as of May 01, 2013 and the first new monthly payment on the New Principal Balance will be due on June 01, 2013. My payment schedule for the modified Loan is as follows:



78340487+CHLGENHMF_05022013

C3_5154-3

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| Years 1-22 | 3.625% | 5/01/2013 | $1,331.18 | $787.41 May adjust periodically | $2,118.59 May adjust periodically | 6/01/2013 | 258 |

\* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.     I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.     If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3C.

4.     **Additional Agreements**. I agree to the following:

A.     That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one

(Page 5 of 13)



78340487+CHLGENHMF_05022013

C3_5154-3

spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such



C3_5154-3

revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.


If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be

understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.



I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances

(Page 9 of 13)



78340487*CHLGENHMF_05022013

C3_5154-3

may be obtained.)

O.  BORROWERS PROTECTION PLAN If I have a Loan with Borrowers Protection Plan®
("BPP") under my Loan Documents, then I understand and agree that, unless I notify
Lender of my request to cancel BPP or my BPP has already been cancelled or
terminated in accordance with its terms, my BPP will remain on my Loan, as modified in
accordance with this Agreement, and will continue to be governed by the terms of my
Borrowers Protection Plan Addendum, which is the contract containing the terms and
conditions of BPP that I received at the closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the
Lender of my request to cancel BPP within sixty (60) days after the Modification Effective
Date, I will receive a refund of any BPP fees I pay with respect to any period after the
Modification Effective Date. I further understand that BPP on my Loan may have already
been cancelled or terminated by its terms, such as if any monthly fee for BPP has
remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers
Protection Plan Addendum will be the monthly payment of principal and/or interest as
modified under this Agreement. With the exception of BPP benefits based on the
outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will
be calculated based on this new Monthly Payment amount, subject to the terms of the
Borrowers Protection Plan Addendum. 

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount
charged to me for BPP, will be recalculated based on the percentage set forth in my
Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter,
as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly
payment of principal and/or interest as modified under this Agreement, may be higher if
the monthly payment under my modified Loan is or becomes higher than the monthly
payment that was due on my Loan prior to modification under this Agreement. The
monthly fee for BPP will be payable at the same time and place as payments of principal
and/or interest under my modified Loan. The "Protection Date" under the Borrowers
Protection Plan Addendum, which is the date upon which my BPP became effective, and
the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date
upon which my BPP will automatically expire, will not be changed by this Agreement. I
will refer to my Borrowers Protection Plan Addendum for complete terms and conditions
of my BPP.

78340487+CHLGENHMF_05022013

C3_5154-3

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

P.    **OPTIONAL PRODUCTS PURCHASED AFTER CLOSING** I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 1.800.641.5298.



78340487+CHLGENHMF_05022013

C3_5154-3

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)



Borrower Deborah Cross-Farron
(Must Be Signed Exactly As Printed)

Date May 10, 2013

---

Borrower
(Must Be Signed Exactly As Printed)

Date

78340487+CHLGENHMF_05022013

C3_5154-3

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Stewart Lender Services, Inc., its attorney in fact

By: _____        _____

, Stewart Lender Services, Inc.

Date

78340487+CHLGENHMF_05022013

C3_5154-3

# EXHIBIT E

Bayview Loan Servicing
P. O. Box # 9112
Temecula, CA 92589



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 7100 1170 0835 8785 97

Send Payments to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL   33146

Send Correspondence to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL  33146

20151023-187

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



SHELLPOINT/CROSS 000022

SHELLPOINT/CROSS 000023



10/21/2015

Sent Via Certified Mail
9314 7100 1170 0835 8785 97

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981

Loan Number: ████5846
Property Address: 16515 OBSIDIAN DR
HOUSTON, TX 77095

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear DEBORAH CROSS-FARRON:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 01/01/2015 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $22,885.06 which consists of the following:

| | | |
|---|---|---|
| Next Payment Due Date: | | 01/01/2015 |
| Total Monthly Payments Due: | | $22,776.06 |
| Late Charges: | | $0.00 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $109.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$22,885.06** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $22,885.06. If the default, together with additional payments that subsequently become due, is not cured by 11/20/2015, BLS will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.



BR024

9314 7100 1170 0835 8785 97
SHELLPOINT/CROSS 000024

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 11/20/2015. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. You may contact our Loan Counseling Department at 1-800-771-0299 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

BLS is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting BLS authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, BLS is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, BLS, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of BLS at 4425 Ponce De Leon Blvd, 5th Floor, Miami, FL 33146.

**Attention Servicemembers and dependents**: Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately. The Federal Servicemembers' Civil Relief Act ("SCRA") and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last nine (9) months, **AND** joined after signing the Note and Security Instrument now in default, please notify BLS immediately. When contacting BLS as to your military service, you must provide positive proof as to your

SHELLPOINT/CROSS 000025

military status. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: 1-888-995-HOPE(4673). If you wish, you may also contact us directly at 1-800-771-0299 and ask to discuss possible options.

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.

Sincerely,

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146

1-800-771-0299

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BAYVIEW LOAN SERVICING, LLC IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



# EXHIBIT F

Hughes Watters Askanase L.L.P.
PO Box 9064
Temecula, CA 92589-9064



2306137701

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Correspondence to:
Hughes Watters Askanase L.L.P.
Total Plaza
1201 Louisiana 28th Floor
Houston, TX  77002

20160216-227

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

February 11, 2016

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095

Re:    File No: 2016-010341

       Property Address: 16515 OBSIDIAN DR HOUSTON, TX 77095

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

    1.    The undersigned represents BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2, 2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2, 2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to deliver this letter on its behalf.

    You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

    2.    Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire balance of the Loan due and payable in full

    3.    In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on April 5, 2016, at the place designated by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will



be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM. **The earliest time the foreclosure sale will begin will be 10:00 AM**.

4.    The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818.   Payment must be in certified funds or other form of payment acceptable to our client.

5.    A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. <u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>

6.    Except as otherwise set out herein under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7.    This letter constitutes notice required by law and the terms of the applicable Loan documents.   To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law.   If you receive this notice and you are not a debtor, this notice is for informational purposes only.

Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED



<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**HARRIS County**

    **Deed of Trust Dated:** November 2, 2004
    **Amount:** $255,440.00
    **Grantor(s):** DEBORAH CROSS-FARRON
    **Original Mortgagee:** NEW HORIZON FINANCIAL LTD.

    **Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

    **Mortgagee Servicer and Address:** c/o BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134
    Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

    **Recording Information:** Document No. Y058359
    **Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISON IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** April 5, 2016 between the hours of 10:00 AM and 1:00 PM.

**Earliest Time Sale Will Begin: 10:00 AM**
**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID POSTON, MEGAN RANDLE-BENDER, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**



SARAH ROBBINS, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2016-010341

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY
SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY
ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE
WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG
WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID
POSTON, MEGAN RANDLE-BENDER, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL,
HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER
c/o AUCTION.COM, LLC
1 Mauchly
Irvine, California 92618



SHELLPOINT/CROSS 000034

Hughes Watters Askanase L.L.P.
PO Box 9064
Temecula, CA 92589-9064



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 8100 1170 0854 5927 16

**RETURN RECEIPT (ELECTRONIC)**

20160216-227

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981

Send Correspondence to:
Hughes Watters Askanase L.L.P.
Total Plaza
1201 Louisiana 28th Floor
Houston, TX 77002



SHELLPOINT/CROSS 000035

# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

**NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND
ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE**

February 11, 2016

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095

Re:     File No: 2016-010341

Property Address: 16515 OBSIDIAN DR HOUSTON, TX 77095

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT
AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

1.      The undersigned represents BAYVIEW LOAN SERVICING, LLC., A DELAWARE
LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or
mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2,
2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2,
2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to
deliver this letter on its behalf.

You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF
NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN
SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is
representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500,
Coral Gables, FL 33134. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a
servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec.
51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the
above referenced loan.

2.      Our client has informed us that despite the sending of written notice of default and
notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a
consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire
balance of the Loan due and payable in full

3.      In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a
copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the
Property authorized by the Deed of Trust will take place on April 5, 2016, at the place designated
by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will



931481001170085459271 6 SHELLPOINT/CROSS 000036

be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM. **The earliest time the foreclosure sale will begin will be 10:00 AM**.

4.      The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818.  Payment must be in certified funds or other form of payment acceptable to our client.

5.      A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

6.      Except as otherwise set out herein under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7.      This letter constitutes notice required by law and the terms of the applicable Loan documents.  To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law.  If you receive this notice and you are not a debtor, this notice is for informational purposes only.


Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.


VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED



SHELLPOINT/CROSS 000037

<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**HARRIS County**

**Deed of Trust Dated:** November 2, 2004
**Amount:** $255,440.00
**Grantor(s):** DEBORAH CROSS-FARRON
**Original Mortgagee:** NEW HORIZON FINANCIAL LTD.

**Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

**Mortgagee Servicer and Address:** c/o BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

**Recording Information:** Document No. Y058359
**Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISON IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** April 5, 2016 between the hours of 10:00 AM and 1:00 PM.

**Earliest Time Sale Will Begin: 10:00 AM**
**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID POSTON, MEGAN RANDLE-BENDER, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**



SARAH ROBBINS, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2016-010341

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY
SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY
ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE
WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG
WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID
POSTON, MEGAN RANDLE-BENDER, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL,
HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER
c/o AUCTION.COM, LLC
1 Mauchly
Irvine, California 92618



SHELLPOINT/CROSS 000039

# EXHIBIT G





# Shellpoint
## Mortgage Servicing

P.O. Box 10826
Greenville, SC 29603-0826

Phone: 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com

Hours of operation
Mon - Thur: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

February 14, 2020

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

Account Number: ███5158
Principal Balance: $222,613.72
Property Address: 16515 OBSIDIAN DR
HOUSTON, TX 77095

Dear Homeowner:

**Shellpoint Mortgage Servicing ("Shellpoint")** welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

**The servicing of your mortgage is being transferred.** Effective 02/01/2020, the **servicing** of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Bayview Loan Servicing, LLC to Shellpoint.

**Making your payments.** Starting on 02/01/2020, make your mortgage payments payable to **Shellpoint Mortgage Servicing** at the address shown on the attached payment coupon. Your prior servicer, Bayview Loan Servicing, LLC, will stop accepting payments on 02/01/2020. Shellpoint will start accepting mortgage payments on 02/01/2020. **Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.**

**Other payment options.** Don't want to write monthly checks? Our other payment options include:

- **Free automatic withdrawal** from your bank account (also called "ACH").
- **Online payments** (via our website).
- **Pay by phone** (using either our automated phone system or by speaking with a live Customer Care representative).

**Manage your mortgage online.** To help you manage your mortgage account, we've created a set of easy-to-use online **tools**. Just use your computer, tablet, or phone to visit our website at **www.shellpointmtg.com**. If you haven't already done so, select the **Setup Your Account** option from the **Tools** menu and create an account with us. After you've set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

### SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.

L-10-M

P I000002   A-0579475158  020830000

✂  Detach Temporary Payment Coupon And Return With Payment  ✂

## PAYMENT COUPON

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

| Loan Number | ███5158 |
|---|---|
| First Payment Due Date: | 01/01/2015 |
| Monthly Payment Amount | $ 2,238.51 |
| **Amount Enclosed:** | $ |

**Enter the amount enclosed, and mail your payment check with this coupon to:**

⑆⑇⑈|⑉||||⑈||||⑈|⑉||⑇⑈||||⑆⑇⑈⑈|||⑆⑇|||⑈|
SHELLPOINT MORTGAGE SERVICING
P.O. BOX 740039
CINCINNATI, OH 45274-0039

NT/CROSS 000210
5158

**Call us if you need to** at **866-316-4706**. Our **automated phone system** gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available Monday through Friday 8:00AM-10:00PM, and Saturday 8:00AM-3:00PM EST.

**Were you working on a loss mitigation plan?** If you were engaged in a loss mitigation plan or evaluation with your previous servicer – or if you applied for such a plan – please call us right away. Dial 866-825-2174 so we can make sure your plan information has been properly transferred to us. If necessary, we will contact your previous servicer to obtain missing documents.

**¿Hablas Español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero **866-316-4706**.

*Welcome to Shellpoint!* We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

Sincerely,

*Customer Care Team*
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603-0826
**866-316-4706**



# Helping You Manage Your Mortgage

Please review the following important information regarding your loan payments. Our records indicate that your 01/01/2015 payment is due. As of the date of this letter, the principal balance is $222,613.72 and your escrow balance is $-73,728.80. You will receive a billing statement from Shellpoint each month. Effective 02/01/2020, please begin sending your mortgage payments to Shellpoint using one of the options below.

## Easy Ways to Pay

**FREE Automatic Withdrawal (ACH):** Sign up online at www.shellpointmtg.com. Our ACH options are:
- **Monthly** – Choose your date (1st - 15th)
- **Bi-weekly** – Draft half every other Monday

**Online:** You can make one-time payments using our website when you sign up at www.shellpointmtg.com.

**Mail:**

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**Phone:** You can make payments over the phone using our automated system or with a Customer Care representative at 866-316-4706.

## Loan Information

To help simplify the management of your mortgage, we have provided the following information.

| Terms of Your Mortgage | |
|---|---|
| Loan Number | ████5158 |
| Loan Origination Date | 11/02/2004 |
| Original Loan Amount | $255,440.00 |
| Current Interest Rate | 3.625% |
| Term | 360 months |
| Maturity Date | 11/01/2034 |

| Current Balances | |
|---|---|
| Principal Balance | $222,613.72 |
| Escrow Balance | $-73,728.80 |

| Payment Details | |
|---|---|
| Contractual Due Date | 01/01/2015 |
| Principal and Interest | $1,331.18 |
| Escrow | $907.33 |
| Total Monthly Payment | $2,238.51 |

## *Reach Out to Us*



Call
866-316-4706



Live Chat
www.shellpointmtg.com



Secure Email
www.shellpointmtg.com

SHELLPOINT/CROSS 000212

004880308B0000

# *FAQs*





| | |
|---|---|
| **Will my previous servicer still accept my payments?** | The date that your previous servicer will stop accepting payments from you is 1/31/2020. We will begin accepting payments from you on 02/01/2020. Please send all payments due on or after that date. |
| **What if I make a payment to my previous servicer?** | Your previous servicer will forward your payment to us and it will be applied towards the date due. |
| **How can I make payments to you?** | You can pay by check, online, with a Customer Care representative, through our automated IVR (phone system), wire transfer, or by setting up a monthly or bi-weekly ACH. |
| **What if my payment is due during this transfer?** | Continue to make your payments during the first 60 days of transfer. During the first 60 days we will not treat your payments as late and will not apply late fees. |
| **Will the terms of my mortgage loan be affected by this servicing transfer?** | No. The terms of your mortgage are not affected by this transfer, other than those directly related to the servicing of your loan. |
| **What if I have more than one loan?** | This letter refers only to loan number 0579475158. If more than one loan is transferring to Shellpoint, we will send you a Welcome Letter and information for each loan. When making payments, please send the correct loan amounts separately, referencing each account. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

If you pay by check, you are authorizing Shellpoint Mortgage Servicing to use the check information to make a one-time electronic debit for each check presented from the account at the financial institution designated on the check. This electronic debit will be for the exact amount indicated on the check.

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan. Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is explained in more detail in Section 6 and Section 12 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605, 12 CFR Sections 1024.35 and 1024.36).

RESPA Section 6 and Section 12 give you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within five (5) business days of receiving your request. A "qualified written request" is a written correspondence—other than writing on a payment coupon or other payment-related documents supplied by your servicer—that includes your name, account number, and reasons for the request. Send all qualified written requests to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826; or you can call 866-316-4706.

No later than thirty (30) days (not including weekends and legal public holidays) after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a consumer-reporting agency concerning any overdue payment related to the 30-day period or your qualified written request. However, the servicer may still begin foreclosure proceedings if proper grounds exist under the mortgage documents.

00488040408J0000

A "business day" is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals if servicers are shown to have violated the requirements of that Section. Seek legal advice if you believe your rights have been violated.

If you have any questions for your previous servicer, Bayview Loan Servicing, LLC, about your mortgage loan or this transfer, please contact their Customer Service department:

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th floor
Coral Gables, FL 33146
(855) 813-6597

**Please read the following important notices as they may affect your rights.**



NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-316-4706 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电 866-316-4706，我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:

COMPLAINTS REGARDING A LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:

QUEJAS ACERCA DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES DEBEN ENVIARSE AL TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. UNA LÍNEA TELEFÓNICA AL CONSUMIDOR GRATUITA ESTÁ DISPONIBLE EN 1-877-276-5550.
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.

SHELLPOINT/CROSS 000216

# FEE SCHEDULE

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for the processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.

[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.

[3] Recording fees vary by state and county. Shellpoint will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.



| FACTS | **WHAT DOES SHELLPOINT MORTGAGE SERVICING DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| WHY? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| WHAT? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• credit history and credit scores<br>• account balances and payment history |
|---|---|

| HOW? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Shellpoint Mortgage Servicing chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Shellpoint Mortgage Servicing share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes -** to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We do not share |
| **For our affiliates' everyday business purposes -** information about your transactions and experiences | No | We do not share |
| **For our affiliates' everyday business purposes -** information about your creditworthiness | No | We do not share |
| **For our affiliates to market to you** | No | We do not share |
| **For nonaffiliates to market to you** | No | We do not share |

| Questions? | Call toll-free 866-316-4706 or visit to www.shellpointmtg.com |
|---|---|

004880708D0000

| What we do | |
|---|---|
| **How does Shellpoint Mortgage Servicing protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Shellpoint Mortgage Servicing collect my personal information?** | We collect your personal information, for example, when you<br>• apply for a loan or give us your income information<br>• provide account information or provide employment information<br>• show your driver's license<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. Our affiliates include:<br>• NewRez LLC<br>• Shellpoint Partners, LLC<br>• Avenue 365 Lender Services, LLC<br>• Rate 30<br>• eStreet Appraisal Management Company |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *We do not share your information with nonaffiliates* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *We do not have any joint marketing agreements with nonaffiliated companies* |

| Other important information |
|---|
| Shellpoint Mortgage Servicing is a division of NewRez LLC |

Shellpoint Mortgage Servicing                                   Toll Free Phone:866-316-4706
P.O. Box 10826                                                          Toll Free Fax: 866-467-1137
Greenville, SC 29603-0826                          Contact us online: www.shellpointmtg.com

Main Office NMLS ID#3013                      Hours: Monday - Friday: 8:00AM-10:00PM EST
Houston TX Branch Office NMLS                         Saturday: 8:00AM-3:00PM EST
ID#1105392

This privacy notice was provided to our customer with account number ████5158 on 02/14/2020.

# AUTOMATIC PAYMENT ENROLLMENT FORM

Your monthly payments can be automatically drafted from your checking or savings account. Proof of payment will appear on your bank statement. To take advantage of this offer, visit our website at **www.shellpointmtg.com** and click on *Sign Up for Automatic Payments*. This method is quick, easy, and more secure. You may also complete the form below, attach a voided check, and mail it to our office:



Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

**Borrower Information**

| | |
|---|---|
| Account Number | ████5158 |
| Borrower | DEBORAH CROSS-FARRON |
| Mailing Street Address | 3454 IRWIN AVE |
| Mailing City, State, Zip | MIMS FL 32754 |
| Home/Cell Phone Number | |
| Work Phone Number | |
| Email Address | |

**Payment Information**

| | |
|---|---|
| Automatic Draft Start Date (mm/dd/yyyy) (must be between the 1st and 15th) | _____/_____/_____ |

**Note: Your payment will be drafted on the same day every month.**

| | |
|---|---|
| Current Monthly Payment Amount (Principal, Interest, Taxes and Insurance)* | $2,238.51 |
| Additional Draft Amount** | $ |
| **Total Monthly Draft Amount** | $ |

**Banking Information**

| | |
|---|---|
| ABA Transit Number (Routing Number) | |
| Bank Account Number | |
| Bank Name | |
| Account Type | ☐ CHECKING      ☐ SAVINGS |

\* Your Current Monthly Payment Amount may vary due to interest rate and/or escrow changes, if applicable. You will be notified of any change in payment amount.

\*\* Funds drafted in excess of your regular payment amount will first be used to satisfy amounts that are past due.  If no amounts are past due, excess funds will be posted to reduce your principal balance. Any funds  remaining on your account after loan is paid off will be returned to your bank account.

### Authorization to Begin Automated Payment Option

I/We authorize Shellpoint Mortgage Servicing ("Shellpoint") to debit my/our account each month. I/We understand that if the drafting day should fall on a non-business day, the draft will take place on the next business day. In order to cancel the draft, I/we must make a request in writing to Shellpoint 14 days in advance of the scheduled drafting date.  Insufficient funds ("NSF") charges will apply to my/our account if the funds are not available at the time of debit. If my/our regularly scheduled draft is returned, a second draft may be attempted.  In the event three of my/our scheduled drafts are returned, the automated payment service will be terminated.  Each NSF transaction will result in an NSF fee. I/We further authorize Shellpoint to adjust the amount debited from my/our account to correspond to periodic changes in my/our payment due each month under the terms of my/our loan.

I/We acknowledge that I/we have read, understand, and agree to the terms set forth for the automated payment service.

Signature: _____
**DEBORAH CROSS-FARRON**

Date: _____

**Please don't forget to attach a voided check when returning this form.**

SHELLPOINT/CROSS 000221

# EXHIBIT H

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED





# Shellpoint
## Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM

ͰͰͰͰlͰlͰlhͰllͰllllͰͰͰlͰllhͰllhͰlhͰlhͰͰllhͰlhͰl
S-SFRECS20  L-1303  R-106
PBMQR300206638 - 612578972 I26550
DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

| Loan Number: | ████5158 |
|---|---|
| Principal Balance: | $222,613.72 |
| Property: | 16515 OBSIDIAN DR HOUSTON, TX 77095 |

02/17/2020

 Dear DEBORAH CROSS-FARRON:

The above referenced  mortgage loan, serviced by Shellpoint Mortgage Servicing ("Shellpoint"), on the above referenced property is in default and foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to commence foreclosure.

In addition to foreclosing on the property, the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan.

**Foreclosure Alternatives**

If you are unable to pay your mortgage loan  because of a financial hardship, there are options that may be available to you such as a loan modification, short sale, deed-in-lieu of foreclosure or another  foreclosure alternative.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS**

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
| --- | --- | --- |
| **Reinstatement** | Pay the total delinquent amount you owe, both in a lump sum payment and by a specific date, or pay less than the total amount owed followed by a forbearance plan as described below. | Allows you to avoid foreclosure by bringing your mortgage current if you can show you have funds that will become available at a specific date in the future. |
| **Repayment Plan** | Pay back your past-due payments together with your regular payments over an extended period of time. | Allows you time to catch up on late payments without having to come up with a lump sum. |
| **Forbearance Plan** | Make reduced mortgage payments or no mortgage payments for a specific period of time. | Gives you time to improve your financial situation and possibly qualify for a better option than would be available right now. |
| **Modification** | Receive modified mortgage terms to make it more affordable or manageable after successfully making payments during a "trial period" (e.g., completing a three-month trial period plan) that requires payment of the approximate amount of the modified payment. | Permanently modifies your mortgage so that your payments or terms are more manageable as a permanent solution to a long-term or permanent hardship. |
| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
| **Short Sale** | Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |
| **Deed-in-Lieu of Foreclosure** | Transfer the ownership of your property to us. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |

You may have received a Solicitation Package. It is not too late for you to be evaluated for an alternative to foreclosure even if you previously expressed that you were not interested in a workout. Please contact your Single Point of Contact, Diana Baez , at 844-265-8876 to request a copy of the Solicitation Package and to discuss workout options that may be available.

Your Borrower Response Package must be completed and sent to Shellpoint in order to be considered for alternatives to foreclosure. Shellpoint's contact information for submitting a complete Borrower Response Package is below:

Shellpoint Mortgage Servicing
ATTN: Loss Mitigation Department
P.O. Box 10826
MS: 157
Greenville, SC 29603-0826
Telephone: 844-265-8876 ext. 4907

For your convenience, a Borrower Portal is available at www.shellpointmtg.com to help you access your workout status in real time, download forms, make payments, upload documents, and even conduct a self-evaluation.

If you have been previously denied a loan modification, and you are contemplating an appeal or have a pending appeal of this denial, you may submit a loan modification application in lieu of this appeal within 30 days after the date of this notice.

Contact HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ and https://www.consumerfinance.gov/find-a-housing-counselor/ or call 1-800-569-4287 to find a counseling agency in your area. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment. Certified counselors can be reached by calling 888-995-HOPE ™ (4673) or 800-877-8339 with TTY device.

Sincerely,
Shellpoint Mortgage Servicing

**Please read the following important notices as they may affect your rights.**

NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.



If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-825-2174，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.

# EXHIBIT I

SXJ6286671-00B


LOAN SERVICING

**Bayview Loan Servicing, LLC**
P.O. Box 740410
Cincinnati, OH 45274-0410
www.bayviewloanservicing.com

**Mortgage Statement**
Statement Date: 01/16/20

1.877.251.0990

| | |
|---|---|
| Account Number | ▉5846 |
| Payment Date | 02/01/20 |
| **Total Amount** | **$204,507.06** |

*If payment is received after 2/16/20, a $66.56 late fee will be charged. Please note, after 01/16/2020 this amount may not be sufficient to bring your loan current as additional fees, charges, or attorney fees/costs may have been incurred but not yet invoiced or processed as of the Statement Date, or may have been incurred after the Statement Date. Please contact us at the number above to obtain the current amount due.*

11059

Deborah Cross-Farron
C/O Sahar Shirazi
Locke Lord Llp
2800 Jp Morgan Chase
600 Travis
Houston, TX 77002

## Account Information

| | |
|---|---|
| Outstanding Principal Balance †‡ | $222,613.72 |
| Interest Rate | 3.625% |
| Escrow Balance | -$73,728.80 |
| Late Charge Balance | $865.28 |
| Rec Corp Advance Balance | $51,285.81 |
| Prepayment Penalty | N |
| Property Address | 16515 OBSIDIAN DR HOUSTON TX 77095 |

## Explanation of Payment Amount

| | |
|---|---|
| Fees & Charges Assessed* | $3,272.00 |
| Unpaid Past Payments** | $201,235.06 |
| **Reinstatement Amount** (as of 01/16/2020) | **$204,507.06** |
| **Accelerated Amount** (as of 01/16/2020) | **$389,846.52** |

‡Payments will be applied in order that they become due (oldest first) unless bankruptcy or other court ordered payment plan is in place.
*Fees and Charges Assessed are comprised of Recoverable Corporate Advances, Late Fee and NSF Fees assessed since the last billing cycle.
**Unpaid Past Payments is the sum of the unpaid balances for Principal and Interest, Escrow and Fees & Charges.

## Transaction Activity (12/17/19 to 01/16/20)

| Date | Description | DEBITS | CREDITS |
|---|---|---|---|
| 12/30 | Litigation Fees | 2044.00 | |
| 12/30 | Litigation Fees | 1228.00 | |

## Past Payments Breakdown

| | Paid Last Bill | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Fees & Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)‡‡ | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Important Messages

**‡‡ Partial Payments**: Any partial payment that is made is not applied to the mortgage payment, but instead is held in a separate suspense account. If the balance of a partial payment is paid, the funds will then be applied to your mortgage.

Your Point of Contact is ERICA ROSS and can be reached on 1.833.656.7411.

## **Account History**

The payments on this mortgage are late. Failure to bring the loan current may result in fees and foreclosure & the loss of the home. As of 01/16/20 the loan is 1841 days delinquent on the mortgage.

*Recent Account History:*
Payment due: 08/01/19: Unpaid balance of $2,607.25
Payment due: 09/01/19: Unpaid balance of $2,607.25
Payment due: 10/01/19: Unpaid balance of $2,764.98
Payment due: 11/01/19: Unpaid balance of $2,764.98
Payment due: 12/01/19: Unpaid balance of $2,764.98
Payment due: 01/01/20: Unpaid balance of $2,764.98
Current payment due 02/01/20: $2,764.98
**Total: $204,507.06 due. This is the amount needed to bring the loan current.**

**If you are experiencing Financial Difficulty: See Back for information about mortgage counseling or assistance.**

Please be advised, we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process.

†This is your Principal Balance only, not the amount required to pay your loan in full. Please contact Customer Service for your exact payoff balance. In the event you are in default or foreclosure, you must contact 1.877.251.0990 for payoff information.

The 2019 year end forms will be mailed by January 31, 2020. If you have not received the year end form by February 9, 2020, then please log onto www.bayviewloanservicing.com to obtain a copy.

Our records indicate your Supplemental Modification Program status is Eligible.

Texas Property Owners- COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - FPO - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please include the loan number on your check. If you cannot clearly associate the check with a single loan, it may delay or prohibit us from crediting your account.

| | |
|---|---|
| **Borrower** | **DEBORAH CROSS-FARRON** |
| Loan Number | ▉5846 |
| Reinstatement Amount | $204,507.06 |

| **Due By: 02/01/20** | **Accelerated Amount: 389,846.52** |
|---|---|

*If payment is received after 2/16/20, a $66.56 late fee will be charged.*

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please indicate additional funds. Excess funds received by BLS without explicit application instructions, will be posted based on BLS internal payment hierarchy, which is driven by your loan documents and/or applicable law.

| | |
|---|---|
| **Additional Principal** | $ . |
| **Additional Escrow** | $ . |
| **Other** | $ . |
| **Total Amount Sent** (Please do not send cash) | $ . |

☐ Check here if your address/telephone number has changed and fill out form on reverse side.

Please do not write below this line. Servicing Code: MSP

Make check payable to Bayview Loan Servicing.

▉5846 MSP 0020450706 0038898465SHELLPOINT/CROSS 000222

# How to contact us

www.bayviewloanservicing.com

**The below mailing address must be used for all
Error Notices and Information Requests:**

**Bayview Loan Servicing, LLC
ATTN: Customer Support
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146**

**Customer Service**
Mon – Fri 8:00 am to 9:00 pm ET
Telephone: 1.877.251.0990
**Fax: 305.631.5660**

**Customer Relations**
Mon – Fri 8:00 am to 9:00 pm ET
**Telephone: 1.888.326.7191**

**Mail payments to:**
Bayview Loan Servicing, LLC
PO Box 740410
Cincinnati, Ohio 45274-0410

**Homeowner's Insurance Inquiries**
Mon – Fri 8:00 AM – 7:00 PM ET
**Telephone: 877.826.4419
Fax: 248-824-7960**

**Payoff Request:**
Bayview Loan Servicing
Payoff Department
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL 33146
Fax: 305.644.8102

**Insurance or Binder:**
Bayview Loan Servicing, LLC, its successors
and/or assigns
PO Box 5933
Troy, MI 48007-5933
Telephone: 877.826.4419
Fax: 248.824.7960

**Real Estate Tax Bills:**
Bayview Loan Servicing, LLC
Tax Department
P.O. Box 331409
Miami, FL 33233-1409
Fax: 305.644.8104

**For hearing/speech impaired accessibility
(TTY):**
Mon – Fri 8:00 am to 9:00 pm ET
Toll Free #877-676-1565
DID #305-646-6440

**Bayview Loan Servicing LLC**
Billing Statement Opt In/Opt Out
PO BOX 331409
MIAMI FL 33233-1409

**Loss Mitigation or Workout Documents:**
Email:
LossMitDocs@bayviewloanservicing.com
**Fax: 855.330.8077**

**When Making Calls from Outside the U.S.:**
Mon – Fri 8:00 am to 9:00 pm ET
**Phone Number: 305.646.3980**

## Additional Payment Methods

Please include the Bayview Loan number on all remittances.

**\*Western Union Quick Collect:**
Code City: BFTG Code State: FL
(Locate the agent nearest you by calling
1.800.525.6313, or visiting www.westernunion.com)

**\*MoneyGram:**
Receive Code: 13910
1-800-555-3133; 7 days a week, 24 hours a day

**\*Wire:**
JP Morgan Chase New York, NY
ABA #: 021000021 Account No.: 447450847

**Overnight Payment or
Certified Payoff Funds:**
Bayview Loan Servicing LLC
ATTN: Cashiering
4425 Ponce De Leon Blvd. 5th Floor
Coral Gables, FL 33145

**\*\*By Phone:**
1.877.251.0990

**\*\*Online:**
www.bayviewloanservicing.com

*\*Fees may be imposed by money transmitter.
\*\*Fees may be imposed by money transmitter; to the extent a fee is imposed, the fee will
be $0.25.*

For your convenience, you may have the payment automatically debited every month
from the checking or savings account of your choice. To participate in Auto Pay,
Bayview's automatic debit program, visit www.bayviewloanservicing.com/autopay.

---

**Payment Handling**

We reserve the right to electronically collect your eligible payment checks, at first
presentment and any additional presentment, from the bank account on which the check
was drawn. Our receipt of your payment check is authorization for us to collect the
amount of the check electronically, or if needed by draft drawn against the bank account.
Checks will be collected electronically by sending the check amount along with the
check, routing and account numbers to your bank. Your bank account may be debited
as early as the same day we receive your payment. The original check will be destroyed
and an image maintained for our records.

**Housing Counselor Information**

If you would like counseling or assistance, for a list of homeownership counselors or
counseling organizations in your area, you can contact the following: U.S. Department of
Housing and Urban Development (HUD), go to
http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

If you are a confirmed successor in interest of the account, unless you assume the
mortgage loan obligation under state law, you are not personally liable for the mortgage
debt and cannot be required to use your own assets to pay the mortgage debt.

© 2011 Bayview Loan Servicing, LLC all rights reserved

---

## National Schedule of Fees

| FEE DESCRIPTION | FEE AMOUNT |
|---|---|
| **Appraisal** – An expense charged to the loan to determine the value of the property, which includes an interior inspection of the property. | $400.00 – $675.00, unless prohibited by state law. |
| **Assumption** – Charge for the work involved with processing a new buyer that is assuming the terms of an existing loan. | $0.00 – 1% of the UPB or $250, whichever is greater. |
| **Bankruptcy Fees and Costs\*** | $0 – $5,000 |
| **Bankruptcy Attorney Fees\*** – Fees charged by local counsel as a result of a bankruptcy. Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **BPO** – An expense charged to the loan in which a broker's price opinion will be used to determine the value of a property on a delinquent loan. | $81.00 – $160.00, unless prohibited by state law. |
| **Foreclosure Attorney Fees\*** – Fees charged by local counsel as a result of a foreclosure. Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **Foreclosure Fees and Costs\*** | $0 – $5,000 |
| **Late Charge** – Assessed for payments received after the due date and expiration of any applicable grace period per the loan documents. | As stated in the loan documents, subject to state law requirements. |
| **Litigation Fees and Costs\*** – Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000.00 |
| **Non-Sufficient Funds Fee** – Fee assessed on payments/checks received that are not honored due to insufficient funds. | $0 – $50, or maximum permitted by state law. |
| **Partial Release** – Charge for the processing the release of a portion of the mortgaged property. | Loan balance $300,000 or less – $0; loan balances between $300,000 and $750,000 – $500; loan balance greater than $750,000 – $1,000 |
| **Pay-by-Phone, Web and IVR Payment Fee** | $0 – $0.25, subject to state law and requirements. |
| **Pre-Foreclosure Notice Registration Fee** | $0 – $75, subject to state law requirements. |
| **Priority Processing (Overnight Delivery)** – Fee charged if customer requests expedited service. | $0 – $15 |
| **Property Inspection** | $10 – $15 |
| **Property Preservation Fee** – An expense charged to the loan to ensure that the condition an appearance of the property are maintained satisfactorily. | $0 – $2,500 and $0 – $110 for grass cuts. |
| **Title Search** – An expense charged to the loan for a detailed examination of the historical records concerning the property. | $0 – $500 |

**Other Fees Charged (And fees not included above)**

Currently, no fees are assessed for the following: Amortization Schedule, Deed of Trust Copy,
Document Copy, Loan History, Release Recording-Residential, Subordination and Verification
of Mortgage for Third Party Requests. A prepayment penalty may be assessed against your
loan under the terms of the Note.

The above contains a list of common servicing fees. You may incur additional fees if, for
example, your loan becomes delinquent or is subject to litigation (e.g. condemnation
proceeding).

**\*These fees will vary depending on the circumstances and is not charged to the
customer's loan if not permitted by contract or applicable law.** Such fees may include, but
are not limited to, court costs and attorney fees. These fees will vary with the circumstances of
the case and the nature of the work performed.
**Bayview Loan Servicing, LLC. NMLS #2469**

**Mortgage Scams Relief Programs**
Be cautious of any notices you receive that advise you that you have been approved for a loan
modification or trial plan. These may be deceptive scams from persons pretending to be us. For
your protection, please verify any such information received by contacting your assigned Asset
Manager or Customer Service immediately to confirm that any offer or decision comes from us.

**Mortgage Loan Scam Alert**
Beware of home loan rescue scams. Facing the possibility of not being able to make your
mortgage payments is an unsettling time. Unfortunately, con artists often attempt to take
advantage of vulnerable homeowners and may try deceptive scams where they pretend to
represent Bayview Loan Servicing, LLC ("Bayview") and allege to have your best interest in
mind. You should know that loss mitigation options and counseling do not require fees when
working directly with Bayview or a HUD approved housing counselor. For your protection, if you
are unsure if the person communicating with you about a modification or other different
agreement or requiring you to make payments is from Bayview or a legitimate counseling
resource, please contact the Customer Relations Department at 1.877.251.0990 or at
customerservice@bayviewloanservicing.com and tell us about your situation.

**Know your Rights**
The FTC's Mortgage Assistance Relief Services (MARS) Rule is establish to protect distressed
homeowners from mortgage relief scams that have sprung up during the mortgage crisis.
Bogus operations falsely claim that, for a fee, they will negotiate with the consumer's mortgage
lender or servicer to obtain a loan modification, a short sale, or other relief from foreclosure.

**Servicemembers Civil Relief Act**
The Service members Civil Relief Act (SCRA) may offer protection or relief to members of the
military who have been called to active duty. If either you have been called to active duty, or
you are the spouse, registered domestic partner, partner in a civil union, or financial dependent
of a person who has been called to active duty, and you haven't yet made us aware of your
status, please contact our Customer Relations Department toll-free at 1.877.251.0990, Monday
– Friday 8am – 5pm ET. As your loan servicer, we are here to help you understand your
options.

**Credit Reporting**
We may report information about your account to credit bureaus. Late payments, missed
payments, or other defaults on your account may be reflected in your credit report.

Bayview Loan Servicing, LLC. is a debt collector. This letter is an attempt to collect a debt, and
any information obtained will be used for that purpose. To the extent that your obligation has
been discharged or is subject to an automatic stay in bankruptcy this notice is for information
purposes only and does not constitute a demand of payment or any attempt to collect such
obligation.

---

**Has any of your contact information changed?**
If so, please complete this and check the box on the front of the coupon.

Mailing Address: _____

City: _____ State: _____ Zip: _____

Home Phone: ( ) _____ Business Phone: ( ) _____

Customer Name: _____
*Please Print*
Email Address: _____

Customer Name: _____
*Please Print*
Email Address: _____

Customer
Signature: _____
Customer
Signature: _____

Date: _____ Date: _____

Please be advised that Bayview Loan Servicing, LLC, ("Bayview"), may employ the use of automated technology to place calls or prerecorded messages and text messages to
any wireless numbers provided by you in regards to the servicing of your mortgage loan. This is not a condition for Bayview to service your account. You may revoke your
consent to this form of contact at any time by notifying Bayview.

# EXHIBIT J

Representation of Printed Document

# Shellpoint
## Mortgage Servicing

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 • Dallas, TX 75261-9063

8-811-09406-0144125-015-100-010-000-000

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

# MORTGAGE STATEMENT
Statement Date: 02/16/2020

| | |
|---|---|
| Account Number | ▊5158 |
| Next Due Date | 03/01/2020 |
| Amount Due | **$231,949.74** |

*If payment is received after 03/16/2020, $0.00 late fee may be assessed.*

Phone: 866-316-4706
Website: www.shellpointmtg.com

## Explanation of Amount Due
| | |
|---|---|
| Principal | $794.16 |
| Interest | $537.02 |
| Escrow (Taxes and Insurance) | $1,433.80 |
| **Regular Monthly Payment** | **$2,764.98** |
| Total Fees and Charges | $1,566.40 |
| Overdue Payment | $227,618.36 |
| **Total Amount Due** | **$231,949.74** |

## Account Information
| | |
|---|---|
| Outstanding Principal | $222,613.72 |
| Interest Rate | 3.6250% |
| Prepayment Penalty | None |
| Property Address: | 16515 OBSIDIAN DR |
| | HOUSTON TX 77095 |
| Contractual Due Date: | January 1, 2015 |
| Current Escrow Balance: | -$73,728.80 |

## Past Payments Breakdown
| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $865.28 | $865.28 |
| **Total** | **$865.28** | **$865.28** |

## Transaction Activity (01/18/2020 - 02/15/2020)
| Date | Description | Charges | Payments |
|---|---|---|---|
| 01/20/2020 | Attorney Cost Assess | $1,261.00 | $0.00 |
| 01/28/2020 | Register Vacant Prop Assess | $12.40 | $0.00 |
| 01/28/2020 | Attorney Cost Assess | $293.00 | $0.00 |
| 02/03/2020 | Late Charge Payment | $0.00 | $865.28 |

## Important Messages
**\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages
Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 866-316-4706.

**For questions regarding the servicing of your loan, please contact customer care at 866-316-4706.**

Repayment options may be available to you. **Call 866-316-4706** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

## \*\*Delinquency Notice\*\*
**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 02/16/2020, you are 1,872 days delinquent on your mortgage loan.

**Recent Account History**
o Payment due 09/01/19:  unpaid balance of $186,941.54
o Payment due 10/01/19:  unpaid balance of $4,131.28
o Payment due 11/01/19:  unpaid balance of $2,764.98
o Payment due 12/01/19:  unpaid balance of $7,904.28
o Payment due 01/01/20:  unpaid balance of $24,677.70
o Payment due 02/01/20:  unpaid balance of $2,764.98
o Payment due 03/01/20:  current payment due

o **Total: $231,949.74 due. You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this statement for additional messages about mortgage counseling and assistance.

005-0814-1100F

---

Detach and return with payment.



Loan Number: ▊5158
DEBORAH CROSS-FARRON

Property Address:
16515 OBSIDIAN DR
HOUSTON TX 77095

SHELLPOINT MORTGAGE SERVICING
PO BOX 740039
CINCINNATI OH 45274-0039

## Amount Due
| | |
|---|---|
| Payment Due Date | 03/01/2020 |
| Total Amount Due | $231,949.74 |

*$0.00 late fee may be charged after 03/16/2020*

Please write clearly inside space provided

| | |
|---|---|
| Payment Amount | $ |
| Additional Principal | $ |
| Late / Other Charges | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** (Please do not send cash) | $ |

INTERNET REPRINT

SHELLPOINT/CROSS 000224

**Important Notice:** NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

**Amount Due on Accounts in Foreclosure or Bankruptcy:** If your account is in foreclosure or bankruptcy the amount listed as the Amount Due may not be the full amount necessary to bring your account current. To obtain up-to-date amount due information, please contact us at the number listed on the statement.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

For budget advice and credit counseling assistance please call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287 or at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Amounts paid in excess of your payment amount will first be used to satisfy any delinquency. If there are no past due amounts then excess funds paid will be posted to your principal balance. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Shellpoint Mortgage Servicing may assess a returned check fee consistent with the laws for your state and your loan documents on all checks returned by your financial institution. Additionally, Shellpoint may charge a fee for processing payoff requests.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al número 866-316-4706.

If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

--- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- ---

## Address, Phone, and Name Changes

**\*\*Please remember:**
Name changes require a signature and a copy of a legal document noting the new name. Examples of legal documents are marriage licenses and divorce decrees.

Type of change (check all that apply)

_____ Address _____ Phone _____ Name** _____ Email Address

Your Account # _____     Social Security Number: _____

Old Borrower Name: _____     New Borrower Name: _____

Old Co-Borrower Name: _____     New Co-Borrower Name: _____

Borrower Signature: _____     Co-Borrower Signature: _____

New Mailing Address: _____

_____

_____

_____

New Phone Number: Day ( _ _ _ ) _ _ _ - _ _ _ _     Evening ( _ _ _ ) _ _ _ - _ _ _ _     Email Address _____

SHELLPOINT/CROSS 000225

INTERNET REPRINT



**FEE SCHEDULE**

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee (Does not apply to Hawaii) | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Payoff Fee (Hawaii only) | Payoff requests of any type will not incur a fee. | $0 | $0 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.
[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.
[3] Recording fees vary by state and county. Current Servicer will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is for informational purposes only. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

811-4026-0519F

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.
Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de  Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes**: La Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio.  Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

811-4027-0519B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| Deborah Cross f.k.a. Deborah Cross-Farron | § | |
| v. | § | Case No. 4:20-cv-01322 |
| The Bank of NY Mellon f.k.a. The Bank | § | |
| of New York, as trustee, et al. | § | |

## BONYM'S FIRST DISCOVERY REQUESTS TO DEBORAH CROSS

To:     Deborah Cross, through her counsel of record, Jeffrey C. Jackson and Scott Shearouse, Jeffrey Jackson & Associates, PLLC, 2200 North Loop West, Suite 108, Houston, Texas 77018.

Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB (**BoNYM**) serve these discovery requests on Deborah Cross.  BoNYM requests responses, answers and production of documents and tangible things be sent not more than thirty days after service of these requests to Walter McInnis, 2001 Ross Avenue, Suite 3600, Dallas, Texas 75201.  BoNYM requests production of electronic and magnetic data in the form maintained by Ms. Cross.

## I.     DEFINITIONS

The terms **you**, **your** and **Ms. Cross** refer to plaintiff Deborah Cross f.k.a. Deborah Cross-Farron.

The term **Shellpoint** refers to defendant NewRez LLC dba Shellpoint Mortgage Servicing.

The term **BoNYM** refers to defendant Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB.

The term **Bayview** refers to Bayview Loan Servicing, LLC.

The term **property** refers to the property at 16515 Obsidian Drive, Houston, Texas 77095.

The term **note** refers to the note you executed on or about November 2, 2004 promising to repay the original principal amount of $255,440, plus interest.

EXHIBIT I-2

The term **deed of trust** refers to the deed of trust you executed on or about November 2, 2004 and recorded in the official records of Harris County, Texas on November 12, 2004 as document number 200696692.

The term **loan modification** refers to the loan modification you executed on or about May 10, 2013 and effective June 1, 2013 modifying the terms of the loan.

The term **loan** refers collectively to the note, deed of trust and loan modification.

The term **lawsuit** refers to the suit you filed in the Harris county district court on or about March 19, 2020, cause number 2020-18274 and subsequent proceedings in the case including in federal court as cause number 4:30-cv-01322.

The term **petition** refers to plaintiff's original petition filed in the lawsuit on March 19, 2020 including any amendments and supplements through the course of the lawsuit.

The term **relevant time period** will refer to the period of time beginning November 12, 2004 through the date of trial unless otherwise stated in the individual request or interrogatory.

## II.    DISCOVERY REQUESTS

1.  Request for admission.  Admit you have not been damaged by any act or omission of BoNYM.

    Response:

2.  Interrogatory.  Unless you unequivocally admitted request 1, describe both the economic and non-economic damages you seek to recover from BoNYM in detail.  Your description should state the total amount of both economic and non-economic damages you seek to recover from BoNYM as well as each category, element or type of damage which is included in the total amount of economic and non-economic damages you seek to recover from BoNYM, the dollar amount that you attribute for each category, element or type of both economic and non-economic damages you seek to recover from BoNYM and how the dollar amount attributed to each category, element or type of both economic and non-economic damages was calculated.

    Response:

3.  Request for production.  Unless you unequivocally admitted request, please produce for inspection and copying all written documents and tangible things, including data or information that exists in electronic or magnetic form, which underlie or support the economic and non-economic damage calculations you set out in response to interrogatory 2, including, but not limited to, all economic and non-economic damage calculations or summaries which you prepared.  If you are claiming an economic or non-economic damage this request is designed to compel the production of documents evidencing the alleged economic or non-economic damage.

    Response:

4.  Request for admission.  Admit the document attached as **exhibit A** is a true, correct and complete copy of the note.

    Response:

5.  Request for admission.  Admit the document attached as **exhibit B** is a true, correct and complete copy of the deed of trust.

    Response:

6.  Request for admission.  Admit the document attached as **exhibit C** is a true, correct and complete copy of the assignment of deed of trust.

    Response:

7.  Request for admission.  Admit the document attached as **exhibit D** is a true, correct and complete copy of the loan modification.

    Response:

8.  Request for production.  Unless you unequivocally admitted requests 4-7 please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing the note, deed of trust, modifications or any other document executed by you, granting an interest in the property.

    Response:

9.  Request for admission.  Admit BoNYM is the current mortgagee of the deed of trust.

    Response:

10. Request for admission.  Admit BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011.

    Response:

11. Request for production.  Unless you unequivocally admitted requests 9 and 10, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011 and/or is the current mortgagee of the deed of trust, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was a mortgagee of the deed of trust during the relevant time period and the dates on which each such person and/or entity was a mortgagee of the deed of trust, and for the person and/or entity you claim is a current mortgagee, documents identifying the date you contend the person and/or entity became a mortgagee of the deed of

trust.

Response:

12. Request for admission.  Admit Shellpoint is the current mortgage servicer of the loan.

Response.

13. Request for admission.  Admit Shellpoint has been the mortgage servicer of the loan at all times since February 1, 2020.

Response:

14. Request for admission.  Admit Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020.

Response:

15. Request for production.  Unless you unequivocally admitted requests 12-14, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting Shellpoint is the current mortgage servicer, has been the mortgage servicer of the loan at all times since February 1, 2020, and Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was or is a mortgage servicer of the loan during the relevant time period and the dates on which each such person and/or entity was a mortgage servicer of the loan, and for the person and/or entity you claim is the current mortgage servicer of the loan, documents identifying the date you contend the person and/or entity became the current mortgage servicer of the loan.

Response:

16. Request for admission.  Admit the loan is in default.

Response:

17. Request for production.  Unless you unequivocally admitted request 16, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan, including, but not limited to, the front and back of each payment and each bank statement for each financial account maintained by you or on which you have had access to funding during that period of time.

Response:

18. Request for admission.  Admit all payments tendered on the loan were applied in accordance with the terms of the loan.

Response:

19. Interrogatory.  Unless you unequivocally admitted request 18, please identify (by date, amount and payee) each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

Response:

20. Request for production.  Unless you unequivocally admitted request 18, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

Response:

21. Request for admission.  Admit all charges, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan were applied in accordance with the terms of the loan.

Response:

22. Interrogatory.  Unless you unequivocally admitted request 21, please identify, by date and amount, each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such charge should have been applied.

Response:

23. Request for production.  Unless you have unequivocally admitted request 21, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan.

Response:

24. Request for admission.  Admit you were sent notice the loan was in default.

Response:

25. Request for admission.  Admit you were sent notice you had at least thirty (30) days to cure the default of the loan.

Response:

26. Request for admission.  Admit you were sent notice that, if you did not cure the default, the maturity of the loan would be accelerated.

Response:

27. Request for admission.  Admit the document attached as **exhibit E** is a true, correct and complete copy of the notice Bayview sent you informing you the loan was in default, specifying the amount required to cure the default, giving you 30 days to cure the default and advising you that, if you did not cure the default within 30 days, the loan maturity would be accelerated.

Response:

28. Request for admission.  Admit the notice attached as **exhibit E** was mailed via certified mail.

Response:

29. Request for admission.  Admit the notice attached as **exhibit E** was deposited with the United States Postal Service, postage pre-paid.

Response:

30. Request for admission.  Admit the notices attached as **exhibit E** were addressed to you at your last known address according to Bayview's records.

Response:

31. Interrogatory.  Unless you unequivocally admitted requests 24-30, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notice attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

Response:

32. Request for production. Unless you have unequivocally admitted requests 24-30, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notices attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

Response:

33. Request for admission.  Admit you did not cure the default of the loan in the time and manner specified in the notices attached as **exhibit E**.

    Response:

34. Request for production.  Unless you have unequivocally admitted request 33, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan in the time and manner specified in **exhibit E**.

    Response:

35. Request for admission.   Admit the loan is due for January 1, 2015 payment.

    Response:

36. Request for admission.  Admit no payments have been made on the loan after the payment satisfying the monthly obligation due December 1, 2014.

    Response:

37. Request for admission.  Admit to date the default has not been cured.

    Response:

38. Request for production.  Unless you have unequivocally admitted request 37, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan.

    Response:

39. Request for admission.  Admit you were sent notice the maturity of the loan was accelerated on February 11, 2016.

    Response:

40. Request for admission.  Please admit the notices attached as **exhibit F** are true, correct and complete copies of the February 11, 2016 notices advising you the maturity of the loan was accelerated.

    Response:

41. Interrogatory.  Unless you unequivocally admitted requests 39 and 40, please state the legal theories and describe, in general, the factual bases supporting your reasons for not

unequivocally admitting you were sent the notices attached as **exhibit F** advising you the maturity of the loan was accelerated.

Response:

42. Requests for production.  Please produce all notices of default and notices of acceleration concerning the loan that you received after February 11, 2016.

    Response:

43. Request for admission.  Admit the statute of limitations to foreclose the deed of trust has not expired.

    Response:

44. Interrogatory.  Unless you unequivocally admitted request 43, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including identifying the date you allege limitations ran, each date you contend that the loan was accelerated and the factual bases supporting the identified acceleration date (i.e. the loan was accelerated on x date because a notice of default was sent on y date and a notice of acceleration was sent on z date).

    Response:

45. Request for production.  Unless you unequivocally admitted request 43, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including documents identifying the date you allege limitations ran and each date you contend the loan was accelerated, including documents evidencing a notice of default and notice of acceleration.

    Response:

46. Request for admission. Admit on May 31, 2018, the court entered a temporary restraining order (**TRO 1**) in the case styled *Deborah Cross v. The Bank of New York Mellon, as trustee, et al.*, No. 2018-36182 (55th Judicial Dist. Ct.).

    Response:

47. Request for admission.  Admit TRO 1 expired on June 14, 2018.

    Response:

48. Request for production.  Unless you unequivocally admitted requests 46-47, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or

magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 1 and it expired on June 14, 2018, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

Response:

49. Request for admission.  Admit on August 30, 2019, the court entered a temporary restraining order (**TRO 2**) in the case styled *Deborah Cross v Hughes, Watters & Askanse, LLP, et al.*, No. 2019-61332 (164th Judicial Dist. Ct.).

Response:

50. Request for admission.  Admit on September 11, 2019, the court extended TRO 2.

Response:

51. Request for admission.  Admit TRO 2 expired on September 25, 2019.

Response:

52. Request for production.  Unless you unequivocally admitted requests 49-51, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 2, extended it and and it expired on September 25, 2019, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

Response:

53. Request for admission.  Admit Shellpoint sent you the letter dated February 14, 2020 attached as **exhibit G**.

Response:

54. Request for admission.  Admit Shellpoint sent you the February 17, 2020 letter attached as **exhibit H**.

Response:

55. Request for production. Unless you unequivocally admitted requests 53-54, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing correspondence you received from Shellpoint after February 1, 2020 related to the loan.

Response:

56. Request for admission. Admit Bayview sent you the mortgage statement dated January 16, 2020 attached as **exhibit I**.

Response:

57. Request for admission. Admit Shellpoint sent you the mortgage statement dated February 16, 2020 attached as **exhibit J**.

Response:

58. Request for production. Unless you unequivocally admitted requests 56-57, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all monthly mortgage statements Bayview and Shellpoint sent you after February 11, 2016.

Response:

59. Request for production. Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint and Bayview referencing foreclosure, commencing foreclosure or referring to foreclosure sent to you after February 11, 2016.

Response:

60. Request for production. Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint, Bayview, BoNYM, or their attorneys, rescinding or abandoning prior acceleration or acts of acceleration of the loan maturity sent to you after February 11, 2016.

Response:

61. Request for admission. Admit in your petition you request to recover your attorneys' fees incurred in presenting and prosecuting your lawsuit.

Response:

62. Interrogatory. In paragraph 23 of the petition, you allege "[n]o non-judicial foreclosure sale or suit for judicial foreclosure, including any applicable tolling, occurred within four years of February 11, 2016." With respect to this allegation, please identify any "applicable tolling" you contend applies, including the tolling event, the dates it tolled limitations and the factual and legal basis supporting your contention the event tolled limitations.

Response:

63. Request for production. Produce for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any "applicable tolling" you contend

applies, including documents evidencing the tolling event, the dates it tolled limitations and supporting the factual and legal basis of your contention the event tolled limitations.

Response:

64. Request for admission.  In paragraph 24 of the petition, you allege "[t]he February 11, 2016 acceleration was never waived or abandoned."  With respect to this allegation, please admit the acceleration was waived or abandoned.

Response:

65. Interrogatory.  Unless you unequivocally admitted request 64, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

Response:

66. Request for production.  Unless you unequivocally admitted request 64, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

Response:

67. Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Shellpoint during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

68. Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Shellpoint you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

69. Request for production.  Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with BoNYM during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

70. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with BoNYM you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

71. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Bayview during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

72. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Bayview you rely upon in support of the allegations and/or defenses made by you in the petition.

Response:

73. Request for production. If your claims rely, in whole or in part, upon any other promise that is not contained in the written loan agreement, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all of the terms and conditions of the agreement of which the promise is a part, including but not limited to, the consideration provided by you in exchange for the promise.

Response:

74. Request for production. Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all diaries, calendars and/or other lists or notes kept by you regarding or relating in any way to the incident made the basis of this lawsuit and/or events thereafter.

Response:

75. Request for production. If you contend you are entitled to recover attorneys' fees in this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all agreements you have with your attorney regarding how your attorney is to be compensated for the work performed by your attorney in this lawsuit.

Response:

76. Request for production.  If you contend you are entitled to recover attorneys' fees this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all time incurred by your attorney(s) or other persons working at his or her direction, a description of the activities for which the time was incurred and the hourly rate charged for the time incurred.

Response:

77. Request for production.  If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing any manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

Response:

78. Request for production.  If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, then for each manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing all healthcare treatment you sought or received during the relevant time period due to mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

Response:

79. Interrogatory:  If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, identify the name, address and telephone number of each healthcare provider who examined you, provided you with a diagnosis, provided you with a prognosis, or provided you with prescribed treatment, including medicine, for the manifestation or symptom.

Response:

Date: May 29, 2020

Respectfully submitted,

 s/ Walter McInnis
C. Charles Townsend, SBN: 24028053
charles.townsend@akerman.com
Walter McInnis, SBN: 24046394
walter.mcinnis@akerman.com
 --Attorney in Charge
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: 214.720.4300
Facsimile:  214.981.9339

Monica Summers, SBN: 24083594
monica.summers@akerman.com
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
Telephone: 210.582.0220
Facsimile: 210.582.0231

**ATTORNEYS FOR SHELLPOINT
AND BONYM**

<u>**CERTIFICATE OF SERVICE**</u>

I certify I served this document on May 29, 2020 as follows:

<u>**VIA EMAIL**</u>
Jeffrey C. Jackson
Scott C. Shearouse
Jeffrey Jackson & Associates, PLLC
2200 North Loop West, Suite 108
Houston, Texas 77018
jeff@jjacksonllp.com
scott@jjacksonllp.com

*Attorney for plaintiff*

   s/ Monica Summers
Monica Summers

# EXHIBIT A

**NOTE**

Loan Number: ___9599

7834087

NOVEMBER 2, 2004
[Date]
CROSS-FARRC(City) HOUSTON 78340487 TEXAS
[State]

16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 255,440.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is NEW HORIZON FINANCIAL LTD.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.000 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payment on the 1st day of each month beginning on DECEMBER 1, 2004. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ 1,531.49.

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of     15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
    5 . 0 0 0 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: _A_M_M_  _____  _____  _____  _____  _____

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.


_____ (Seal)          _____ (Seal)
DEBORAH CROSS-FARRON       -Borrower                                                      -Borrower


_____ (Seal)          _____ (Seal)
                                          -Borrower                                                      -Borrower


_____ (Seal)          _____ (Seal)
                                          -Borrower                                                      -Borrower


PAY TO THE ORDER OF:
COUNTRYWIDE DOCUMENT CUSTODY SERVICES, A DIVISION OF
TREASURY BANK N.A. WITHOUT RECOURSE

NEW HORIZON FINANCIAL LTD.

BY: _____                              *[Sign Original Only]*

       JOHN SCOTT
       CONTROLLER
ITS: _____

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200 1/01                    Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

PAY TO THE ORDER OF

COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY_____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY_____
David A. Spector
Managing Director

# EXHIBIT B

TX04 1365157AH

Y058359
11/12/04 200696692                    $52.00

After Recording Return To:
NEW HORIZON FINANCIAL LTD.
11931 WICKCHESTER #400J
HOUSTON, TEXAS 77043
Loan Number: ████9599

**FILED FOR RECORD**
**8:00 AM**

**AFTER RECORDING RETURN TO:**
**ALLEGIANCE TITLE COMPANY** √√
**14201 MEMORIAL DRIVE**
**SUITE 101**
**HOUSTON, TEXAS 77079**

NOV 1 2 2004

*Beverly L. Kaufman*

County Clerk, Harris County, Texas

———————————— [Space Above This Line For Recording Data] ————————————

# DEED OF TRUST

MIN:XXXXXXXXXXXXXXXXXXX9599-7

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION FROM THIS
INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11,
13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 2, 2004       , together
with all Riders to this document.
(B) "Borrower" is  DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE
AND SEPARATE PROPERTY

Borrower is the grantor under this Security Instrument.
(C) "Lender" is  NEW HORIZON FINANCIAL LTD.

Lender is a  LIMITED LIABILITY COMPANY                              organized
and existing under the laws of  TEXAS
Lender's address is  11931 WICKCHESTER #400J, HOUSTON, TEXAS 77043

Lender includes any holder of the Note who is entitled to receive payments under the Note.
(D) "Trustee" is ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON,
2611 JONES ROAD, SUITE 200 HOUSTON, TEXAS 77070

Trustee's address is

Borrower Initials: ____



TEXAS--Single Family--Fannie Mae/Freddi
Form 3044 1/01

0487  D2  001  001

DOCMAGIC 800-649-1362
rw.docmagic.com

SHELLPOINT/CROSS 000001

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated  NOVEMBER 2, 2004 .
The Note states that Borrower owes Lender  TWO HUNDRED FIFTY-FIVE THOUSAND FOUR HUNDRED FORTY AND 00/100  Dollars (U.S. $255,440.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than NOVEMBER 1, 2034 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☒ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials: _____ _____ _____ _____ _____

DocMagic *eFarms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000002

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY        of HARRIS        :
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]

LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

which currently has the address of 16515 OBSIDIAN DRIVE
[Street]

HOUSTON        , Texas      77095   ("Property Address"):
[City]        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,

Borrower Initials:

SHELLPOINT/CROSS 000003

treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Borrower Initials: _____ _____ _____ _____ _____

SHELLPOINT/CROSS 000004

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount

Borrower Initials:

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000005

of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient

Borrower Initials: _____  _____  _____  _____  _____  _____

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000006

to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic* *800-649-1362*
*www.docmagic.com*

SHELLPOINT/CROSS 000007

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000008

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower Initials:

SHELLPOINT/CROSS 000009

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Borrower Initials: _____  _____  _____  _____  _____

*DocMagic* ℰℱⓇ𝓶𝓼 800-849-1362
*www.docmagic.com*

SHELLPOINT/CROSS 000010

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Borrower Initials: _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000011

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public vendue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights,

Borrower Initials: _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000012

superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property.**
Check box as applicable:

☒ **Purchase Money.**
    The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**
    The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**
    The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**
    The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

Borrower Initials: _____ _____ _____ _____ _____ _____

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000013

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
DEBORAH CROSS-FARRON        -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                                                            -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
                                                            -Borrower                                              -Borrower

Witness:                                        Witness:

_____              _____

*DocMagic* *eFarma* 800-649-1362
*www.docmagic.com*

SHELLPOINT/CROSS 000014

The State of Texas
County of HARRIS

Before me, *A Notary Public* ,
on this day personally appeared DEBORAH CROSS-FARRON

known to me (or proved to me on the oath of )
or through *Texas*
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed
the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this *2* day of *NOVEMBER* , *2004*



J. K. HOROWITZ
NOTARY PUBLIC STATE OF TEXAS
COMMISSION EXPIRES:
JUNE 26, 2006

_____
Notary Public Signature

(Seal)                          My commission expires:

---

TEXAS--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3044 1/01                    Page 15 of 15

DocMagic *eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000015

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

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this     **2nd**     day of **NOVEMBER, 2004**    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to   NEW HORIZON FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095**
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS OF RECORD

(the "Declaration"). The Property is a part of a planned unit development known as

STONE GATE
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

Borrower Initials: _____  _____  _____  _____  _____

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01            Page 1 of 3

*DocMagic* €Ғℜ℩℩℩℗℗ *800-649-1362*
*www.docmagic.com*

SHELLPOINT/CROSS 000016

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: _____  _____  _____  _____  _____  _____

SHELLPOINT/CROSS 000017

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_Deborah Cross Farron_ (Seal)
DEBORAH CROSS-FARRON      -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

MULTISTATE PUD RIDER--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01                          Page 3 of 3

*DocMagic eForms* 800-649-1362
www.docmagic.com

SHELLPOINT/CROSS 000018

# SECOND HOME RIDER

THIS SECOND HOME RIDER is made this 2nd day of NOVEMBER 2004 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower,"
whether there are one or more persons undersigned) to secure Borrower's Note to NEW HORIZON
FINANCIAL LTD.
(the "Lender") of the same date and covering the Property described in the Security Instrument (the
"Property"), which is located at:

### 16515 OBSIDIAN DRIVE, HOUSTON, TEXAS 77095
[Property Address]

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender
further covenant and agree that Sections 6 and 8 of the Security Instrument are deleted and are replaced by
the following:

**6. Occupancy.** Borrower shall occupy, and shall only use, the Property as Borrower's second
home. Borrower shall keep the Property available for Borrower's exclusive use and enjoyment at
all times, and shall not subject the Property to any timesharing or other shared ownership
arrangement or to any rental pool or agreement that requires Borrower either to rent the Property
or give a management firm or any other person any control over the occupancy or use of the
Property.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan
application process, Borrower or any persons or entities acting at the direction of Borrower or with
Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or
statements to Lender (or failed to provide Lender with material information) in connection with the
Loan. Material representations include, but are not limited to, representations concerning
Borrower's occupancy of the Property as Borrower's second home.

SHELLPOINT/CROSS 000019

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Second Home Rider.

_____ (Seal)
DEBORAH CROSS-FARRON    -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

NOV 1 2 2004



Beverly B. Kaufman
COUNTY CLERK
HARRIS COUNTY, TEXAS

SHELLPOINT/CROSS 000020

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

# EXHIBIT C



This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST

DocID# 2577834048717291

| | Recording Requested By: | When recorded mail to: |
|---|---|---|
| | Bank of America | CoreLogic |
| | **Prepared By:** | 450 E. Boundary St. |
| | **Danilo Cuenca** | Attn: Release Dept. |
| | **888-603-9011** | Chapin, SC 29036 |
| **Property Address:** | **450 E. Boundary St.** | |
| **16515 Obsidian Dr** | **Chapin, SC 29036** | |
| **Houston, TX 77095-4981** | | |
| TXO-ADT 14252271      9/12/2011 | | |

MIN #: 1002123-0005009599-7          MERS Phone #: 888-679-6377

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST  2004-30CB, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2004-30CB** whose address is 101 BARCLAY ST - 4W, NEW YORK, NY  10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **NEW HORIZON FINANCIAL LTD.** |
| Borrower(s): | **DEBORAH CROSS-FARRON, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** |
| Original Trustee: | **ROBERT J. ADAM, STEHEN W. BING OR LEIGH ANN THOMPSON** |
| Date of Deed of Trust: | **11/2/2004** |
| Original Loan Amount: | **$255,440.00** |

Recorded in Harris County, TX on: 11/12/2004, book 59558, page 2232 and instrument number Y058359

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on

9|15|11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Jane Martorana, Assistant Secretary

State of California
County of Ventura

On 09|15|11 before me, Lillian J. Ellison, Notary Public, personally appeared Jane Martorana
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


LILLIAN J. ELLISON
Commission # 1925617
Notary Public - California
Los Angeles County
My Comm. Expires Mar 13, 2015

Notary Public: _____
My Commission Expires: _____          (Seal)

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE RENTAL OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in file Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas

FILED FOR RECORD
8:00 AM

NOV 23 2011

Stan Stanart
County Clerk, Harris County, Texas

NOV 23 2011

Stan Stanart
COUNTY CLERK
HARRIS COUNTY, TEXAS

SHELLPOINT/CROSS 000021

# EXHIBIT D

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.877.422.1761

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] DEBORAH CROSS-FARRON

Original Lender/Beneficiary Lender or Servicer ("Lender"): Bank of America, N.A.
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
November 01, 2004
Loan Number: ██████████7095
Property Address *(See Exhibit A for Legal Description if applicable) "Property":*
16515 Obsidian Drive, Houston, TX 77095
*See Exhibit B for assignments of record if applicable*     

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

78340487+CHLGENHMF_05022013

C3_5154-3

1. **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.  Either I have not been displaced and one of the borrowers signing this Agreement lives in the Property as a principal residence or lived in the Property as a principal residence immediately prior to being displaced; or I am currently displaced and (i) I intend to re-occupy the Property as a principal residence in the future, (ii) I do not own any single-family real estate other than the subject Property, and (iii) the Property has not been condemned.

C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

G.  I have made or will make all payments required under a trial period plan.



2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on June 01, 2013 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on June 01, 2013.

    A.  The Maturity Date will be: November 01, 2034.

    B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $238,299.22 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

    C.  Interest at the rate of 3.625% will begin to accrue on the New Principal Balance as of May 01, 2013 and the first new monthly payment on the New Principal Balance will be due on June 01, 2013. My payment schedule for the modified Loan is as follows:



78340487+CHLGENHMF_05022013

C3_5154-3

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| Years 1-22 | 3.625% | 5/01/2013 | $1,331.18 | $787.41 May adjust periodically | $2,118.59 May adjust periodically | 6/01/2013 | 258 |

* The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.



D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3C.

4.    **Additional Agreements**. I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one

(Page 5 of 13)

78340487+CHLGENHMF_05022013

C3_5154-3

spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such



C3_5154-3

revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.   That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be

78340487+CHLGENHMF_05022013

C3_5154-3

understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property. 

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I also agree to allow Lender to attach an Exhibit A to this loan modification which will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

(Page 8 of 13)

K.     That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.     That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.     That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.     If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances



78340487+CHLGENHMF_05022013

C3_5154-3

may be obtained.)

O.  **BORROWERS PROTECTION PLAN** If I have a Loan with Borrowers Protection Plan®
("BPP") under my Loan Documents, then I understand and agree that, unless I notify
Lender of my request to cancel BPP or my BPP has already been cancelled or
terminated in accordance with its terms, my BPP will remain on my Loan, as modified in
accordance with this Agreement, and will continue to be governed by the terms of my
Borrowers Protection Plan Addendum, which is the contract containing the terms and
conditions of BPP that I received at the closing of my original Loan.

I understand that I may cancel BPP at any time by calling 1.866.554.2676. If I notify the
Lender of my request to cancel BPP within sixty (60) days after the Modification Effective
Date, I will receive a refund of any BPP fees I pay with respect to any period after the
Modification Effective Date. I further understand that BPP on my Loan may have already
been cancelled or terminated by its terms, such as if any monthly fee for BPP has
remained unpaid 90 days after its due date.

For purposes of my modified Loan, the "Monthly Payment" under the Borrowers
Protection Plan Addendum will be the monthly payment of principal and/or interest as
modified under this Agreement. With the exception of BPP benefits based on the
outstanding balance of my Loan (if any), benefits under the BPP on my modified Loan will
be calculated based on this new Monthly Payment amount, subject to the terms of the
Borrowers Protection Plan Addendum. 

For purposes of my modified Loan, the monthly fee for BPP, which is the monthly amount
charged to me for BPP, will be recalculated based on the percentage set forth in my
Borrowers Protection Plan Addendum (or Borrowers Protection Plan Confirmation Letter,
as applicable). I understand that the monthly fee for BPP, as a percentage of my monthly
payment of principal and/or interest as modified under this Agreement, may be higher if
the monthly payment under my modified Loan is or becomes higher than the monthly
payment that was due on my Loan prior to modification under this Agreement. The
monthly fee for BPP will be payable at the same time and place as payments of principal
and/or interest under my modified Loan. The "Protection Date" under the Borrowers
Protection Plan Addendum, which is the date upon which my BPP became effective, and
the "Expiration Date" under the Borrowers Protection Plan Addendum, which is the date
upon which my BPP will automatically expire, will not be changed by this Agreement. I
will refer to my Borrowers Protection Plan Addendum for complete terms and conditions
of my BPP.

78340487+CHLGENHMF_05022013

If I have experienced a qualifying event that is eligible for benefits under BPP, I should contact Bank of America immediately by calling 1.866.317.5116.

P.     OPTIONAL PRODUCTS PURCHASED AFTER CLOSING I understand and agree that any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment: (a) will remain in force so long as I add the amount due and owing to my Total Monthly Payment each month; and (b) will continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless (i) I notify the provider of the optional product of my request to cancel; or (ii) I fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the terms of the Governing Documents. I understand that if I have questions regarding any optional product(s) I may have purchased, I should contact Bank of America by calling 1.800.641.5298.



C3_5154-3

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

 May 10, 2013

Borrower Deborah Cross-Farron
(Must Be Signed Exactly As Printed)

Date

_____

_____

Borrower
(Must Be Signed Exactly As Printed)

Date

78340487+CHLGENHMF_05022013

C3_5154-3

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Stewart Lender Services, Inc., its attorney in fact

By: _____     _____

                                                             Date



_____, Stewart Lender Services, Inc.

78340487+CHLGENHMF_05022013

C3_5154-3

# EXHIBIT E

Bayview Loan Servicing
P. O. Box # 9112
Temecula, CA 92589



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 7100 1170 0835 8785 97

Send Payments to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL  33146

Send Correspondence to:
Bayview Loan Servicing
4425 Ponce de Leon Boulevard
5th Floor
Coral Gables, FL  33146

20151023-187

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



SHELLPOINT/CROSS 000022

SHELLPOINT/CROSS 000023



10/21/2015

Sent Via Certified Mail
9314 7100 1170 0835 8785 97

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981

Loan Number: ██████5846
Property Address:  16515  OBSIDIAN DR
                   HOUSTON, TX 77095

## NOTICE OF DEFAULT AND INTENT TO ACCELERATE

Dear DEBORAH CROSS-FARRON:

This letter is formal notice by Bayview Loan Servicing, LLC (herein as "BLS") that you are in default under the terms of the documents creating and securing your Loan described above, including the Note and Deed of Trust/Mortgage/Security Deed ("Security Instrument"), for failure to pay the amounts due.

The loan is due for 01/01/2015 and subsequent payments, plus late charges, fees and costs. As of today, the total delinquency and reinstatement amount is $22,885.06 which consists of the following:

| | | |
|---|---|---:|
| Next Payment Due Date: | | 01/01/2015 |
| Total Monthly Payments Due: | | $22,776.06 |
| Late Charges: | | $0.00 |
| Other Charges: | Uncollected NSF Fees: | $0.00 |
| | Other Fees: | $0.00 |
| | Corporate Advance Balance: | $109.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$22,885.06** |

**It is possible that after payment of the amounts detailed above there may be other fees still due and owing, including but not limited to other fees, escrow advances or corporate advances that BLS paid on your behalf or advanced to your account.**

This letter is a formal demand to pay $22,885.06. If the default, together with additional payments that subsequently become due, is not cured by 11/20/2015, BLS will take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the property.



BR024

9314 7100 1170 0835 8785 97
SHELLPOINT/CROSS 000024

IF YOU ARE UNABLE TO BRING YOUR ACCOUNT CURRENT, BLS offers consumer assistance programs designed to help resolve delinquencies and avoid FORECLOSURE. These services are provided without cost to our customers. You may be eligible for a loan workout plan or other similar alternative. If you would like to learn more about these programs, you may contact the Loss Mitigation Department at1-877-205-9958, 9:00 a.m. - 6:00 p.m., Monday - Friday, Eastern Time. WE ARE VERY INTERESTED IN ASSISTING YOU.

The default above can be cured by payment of the total delinquency and reinstatement amount plus any additional payments and fees that become due by 11/20/2015. Note that in addition to the regular monthly payments, additional charges, costs and fees may become due during the period between today's date and the date the aforementioned payments are due. You may contact our Loan Counseling Department at 1-800-771-0299 to obtain updated payment information.

Please include your loan number and property address with your payment and send to:

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146

If you wish to dispute the delinquency, or if you dispute the calculation of amount of the delinquency and reinstatement amount, you may contact us by calling 1-800-771-0299.

You have the right to reinstate the loan after acceleration, and to bring a court action to assert the non-existence of a default or any other defense to acceleration or foreclosure sale. Failure to respond to this letter may result in the loss of your property. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy case, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect a debt as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address and telephone number.

BLS is the mortgage servicer for the mortgagee of the Deed of Trust and the parties have entered into an agreement granting BLS authority to service the mortgage and represent the mortgagee (the "Servicing Agreement"). Pursuant to the Servicing Agreement, BLS is granted authority to collect and service debt associated with the Deed of Trust. Under §51.0025 of the Texas Property Code, BLS, as mortgage servicer, is authorized to administer any resulting foreclosure of the property covered by the Deed of Trust on behalf of the Mortgagee. All communication about your mortgage should be made through the Mortgage Servicing Department of BLS at 4425 Ponce De Leon Blvd, 5th Floor, Miami, FL 33146.

**Attention Servicemembers and dependents**: **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately**. The Federal Servicemembers' Civil Relief Act ("SCRA") and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last nine (9) months, **AND** joined after signing the Note and Security Instrument now in default, please notify BLS immediately. When contacting BLS as to your military service, you must provide positive proof as to your

military status. If you do not provide this information, it will be assumed that you are not entitled to protection under the above-mentioned Act.

If you are experiencing financial difficulty, you should know that there are several options available to you that may help you keep your home. You may contact a government approved housing counseling agency which provides free or low-cost housing counseling. You should consider contacting one of these agencies immediately. These agencies specialize in helping homeowners who are facing financial difficulty. Housing counselors can help you assess your financial condition and work with us to explore the possibility of modifying your loan, establishing an easier payment plan for you, or even working out a period of loan forbearance. For your benefit and assistance, there are government approved homeownership counseling agencies designed to help homeowners avoid losing their homes. To obtain a list of approved counseling agencies, please call 1-800-569-4287 or visit http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You may be eligible for assistance from the Homeownership Preservation Foundation or other foreclosure counseling agency. You may call the following toll-free number to request assistance from the Homeownership Preservation Foundation: 1-888-995-HOPE(4673). If you wish, you may also contact us directly at 1-800-771-0299 and ask to discuss possible options.

If your loan was originated as a Texas Home Equity Loan under the Texas Constitution, Article XVI, Section 50(a)(6), your property will be scheduled for foreclosure in accordance with Rules 735 and 736 of the Texas Rules of Civil Procedure and the Texas Constitution, by obtaining a court order for the foreclosure.

This matter is very important. Please give it your immediate attention.

Sincerely,

Bayview Loan Servicing, LLC
4425 Ponce De Leon Blvd, 5th Floor
Miami, FL 33146

1-800-771-0299

FEDERAL LAW REQUIRES US TO ADVISE YOU THAT BAYVIEW LOAN SERVICING, LLC IS A DEBT COLLECTOR AND THAT THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE. TO THE EXTENT YOUR OBLIGATION HAS BEEN DISCHARGED OR IS SUBJECT TO THE AUTOMATIC STAY IN A BANKRUPTCY PROCEEDING, THIS NOTICE IS FOR INFORMATIONAL PURPOSES ONLY AND DOES NOT CONSTITUTE A DEMAND FOR PAYMENT OR AN ATTEMPT TO COLLECT AN INDEBTEDNESS AS YOUR PERSONAL OBLIGATION. IF YOU ARE REPRESENTED BY AN ATTORNEY, PLEASE PROVIDE US WITH THE ATTORNEY'S NAME, ADDRESS AND TELEPHONE NUMBER.



BR024

SHELLPOINT/CROSS 000026

# EXHIBIT F

Hughes Watters Askanase L.L.P.
PO Box 9064
Temecula, CA 92589-9064



2306137701

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

Send Correspondence to:
Hughes Watters Askanase L.L.P.
Total Plaza
1201 Louisiana 28th Floor
Houston, TX  77002

20160216-227

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

## NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

February 11, 2016

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095

Re:    File No: 2016-010341

Property Address: 16515 OBSIDIAN DR HOUSTON, TX 77095

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

1.      The undersigned represents BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2, 2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2, 2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to deliver this letter on its behalf.

You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

2.      Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire balance of the Loan due and payable in full

3.      In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on April 5, 2016, at the place designated by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will



be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM. **The earliest time the foreclosure sale will begin will be 10:00 AM**.

4. The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818. Payment must be in certified funds or other form of payment acceptable to our client.

5. A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.

6. Except as otherwise set out herein under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

7. This letter constitutes notice required by law and the terms of the applicable Loan documents. To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law. If you receive this notice and you are not a debtor, this notice is for informational purposes only.

Sincerely,

HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED



SHELLPOINT/CROSS 000032

<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**HARRIS County**

**Deed of Trust Dated:** November 2, 2004
**Amount:** $255,440.00
**Grantor(s):** DEBORAH CROSS-FARRON
**Original Mortgagee:** NEW HORIZON FINANCIAL LTD.

**Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

**Mortgagee Servicer and Address:** c/o BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

**Recording Information:** Document No. Y058359
**Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISON IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** April 5, 2016 between the hours of 10:00 AM and 1:00 PM.

**Earliest Time Sale Will Begin: 10:00 AM**
**Place of Sale:** The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID POSTON, MEGAN RANDLE-BENDER, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**



SARAH ROBBINS, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2016-010341

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY
SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY
ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE
WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG
WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID
POSTON, MEGAN RANDLE-BENDER, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL,
HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER
c/o AUCTION.COM, LLC
1 Mauchly
Irvine, California 92618



SHELLPOINT/CROSS 000034

Hughes Watters Askanase L.L.P.
PO Box 9064
Temecula, CA 92589-9064



PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

9314 8100 1170 0854 5927 16

**RETURN RECEIPT (ELECTRONIC)**

20160216-227

Send Correspondence to:
Hughes Watters Askanase L.L.P.
Total Plaza
1201 Louisiana 28th Floor
Houston, TX 77002

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095-4981



SHELLPOINT/CROSS 000035

# HUGHES, WATTERS & ASKANASE, L.L.P.

ATTORNEYS AT LAW
1201 LOUISIANA, SUITE 2800
HOUSTON, TEXAS 77002
TELEPHONE: (713) 759-0818
FACSIMILE: (713) 759-6834

### NOTICE OF MATURITY/ACCELERATION OF TEXAS RECOURSE LOAN AND ENCLOSING NOTICE OF SUBSTITUTE TRUSTEE'S SALE

February 11, 2016

DEBORAH CROSS-FARRON
16515 OBSIDIAN DR
HOUSTON, TX 77095

Re:    File No: 2016-010341

Property Address: 16515 OBSIDIAN DR HOUSTON, TX 77095

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

    1.    The undersigned represents BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY (sometimes referred to as 'client'), the owner and/or holder and/or mortgage servicer for the owner and/or holder with regard to the note ('Note'), dated November 2, 2004, secured by the Deed of Trust ("Deed of Trust") encumbering the Property, dated November 2, 2004 the Note and Deed of Trust being collectively referred to as the ("Loan") and is authorized to deliver this letter on its behalf.

    You are further notified that THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB) is the Mortgagee. BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, as Mortgage Servicer, is representing the Mortgagee, whose address is whose address is 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL 33134. The Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the servicing agreement and Texas Property Code Sec. 51.0025, the Mortgage Servicer is authorized to administer any foreclosure of the property secured by the above referenced loan.

    2.    Our client has informed us that despite the sending of written notice of default and notice of intent to accelerate the maturity of the Loan, the default was not timely cured. As a consequence, our Client hereby accelerates the maturity of the Loan, and declares the entire balance of the Loan due and payable in full

    3.    In accordance with Section 51.002(b) of the Texas Property Code, enclosed is a copy of the Notice of the Substitute Trustee's Sale that advises the foreclosure sale of the Property authorized by the Deed of Trust will take place on April 5, 2016, at the place designated by the HARRIS County Commissioners Court pursuant to Section 51.002, and the Property will



931481001170085459271<sup></sup>6 SHELLPOINT/CROSS 000036

be sold to the highest bidder for cash. The foreclosure sale will be conducted between the hours of 10:00 AM and 1:00 PM.**The earliest time the foreclosure sale will begin will be 10:00 AM**.

      4.      The amount necessary prevent this foreclosure sale may be determined by contacting: the firm's Foreclosure Department at the within stated address or by telephone at 713.759.0818. Payment must be in certified funds or other form of payment acceptable to our client.

      5.      A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. <u>Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately.</u>

      6.      Except as otherwise set out herein under Texas law and the terms of the applicable Loan documents, you may be liable for any deficiency owing on the Loan after the foreclosure sale.

      7.      This letter constitutes notice required by law and the terms of the applicable Loan documents. To the extent that you have received a discharge in bankruptcy of the Loan and the Loan was not reaffirmed and/or you are not an obligor on the debt secured by the Loan, this notice does not constitute an attempt to collect a debt from you personally and/or in violation of the discharge injunction of 11 U.S.C. § 523, but rather serves as notice that our client is exercising its in rem rights only (the right to enforce the lien on the property securing the debt) under applicable law. If you receive this notice and you are not a debtor, this notice is for informational purposes only.

                                       Sincerely,

                                       HUGHES, WATTERS & ASKANASE, L.L.P.

VIA U.S. FIRST CLASS MAIL AND
CERTIFIED MAIL RETURN
RECEIPT REQUESTED



<u>NOTICE OF SUBSTITUTE TRUSTEE'S SALE</u>

**HARRIS County**

**Deed of Trust Dated:** November 2, 2004
**Amount:** $255,440.00
**Grantor(s):** DEBORAH CROSS-FARRON
**Original Mortgagee:** NEW HORIZON FINANCIAL LTD.

**Current Mortgagee:** THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE (CWALT 2004-30CB)

**Mortgagee Servicer and Address:** c/o  BAYVIEW LOAN SERVICING, LLC., A DELAWARE LIMITED LIABILITY COMPANY, 4425 Ponce de Leon Blvd., Suite 500, Coral Gables, FL  33134
Pursuant to a Servicing Agreement between the Mortgage Servicer and Mortgagee, the Mortgage Servicer is authorized to represent the Mortgagee. Pursuant to the Servicing Agreement and Section 51.0025 of the Texas Property Code, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the referenced property

**Recording Information:** Document No. Y058359
**Legal Description:** LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION NINE (9), A SUBDIVISON IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE MAP RECORDS OF HARRIS COUNTY, TEXAS.

**Date of Sale:** April 5, 2016 between the hours of 10:00 AM and 1:00 PM.

**Earliest Time Sale Will Begin: 10:00 AM**
**Place of Sale:**  The foreclosure sale will be conducted at public venue in the area designated by the HARRIS County Commissioners Court pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, or if no place is designated by the Commissioners Court, the sale will be conducted at the place where the Notice of Trustee's Sale was posted.

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID POSTON, MEGAN RANDLE-BENDER, ANNA SEWART, DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL, HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER have been appointed as Substitute Trustee(s), ('Substitute Trustee') each empowered to act independently, in the place of said original Trustee, upon the contingency and in the manner authorized by said Deed of Trust.

The Substitute Trustee will sell the Property by public auction to the highest bidder for cash at the place and date specified. The sale will begin at the earliest time stated above or within three (3) hours after that time.

If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the funds paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee or the Mortgagee's attorney.

**NOTICE IS FURTHER GIVEN** that, except to the extent that the Substitute Trustee(s) may bind and obligate the Mortgagors to warrant title to the Property under the terms of the Deed of Trust, conveyance of the Property shall be made 'AS IS' 'WHERE IS' without any representations and warranties whatsoever, express or implied, and subject to all matters of record affecting the Property.

A debtor who is serving on active military duty may have special rights or relief related to this notice under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), and state law, including Section 51.015 Texas Property Code. **Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice.**

**THIS INSTRUMENT APPOINTS THE SUBSTITUTE TRUSTEE(S) IDENTIFIED TO SELL THE PROPERTY DESCRIBED IN THE SECURITY INSTRUMENT IDENTIFIED IN THIS NOTICE OF SALE THE PERSON SIGNING THIS NOTICE IS THE ATTORNEY AUTHORIZED AGENT OF THE MORTGAGEE OR MORTGAGE SERVICER.**



SARAH ROBBINS, ATTORNEY AT LAW
HUGHES, WATTERS & ASKANASE, L.L.P.
1201 Louisiana, SUITE 2800
Houston, Texas 77002
Reference: 2016-010341

CARL MEYERS ORLEB KEMP, MARK BULEZIUK, KENNY
SHIREY, JOHN SISK, BRETT BAUGH, CLAY GOLDEN, TROY
ROBINETT, STEPHEN MAYERS, ROBERT AGUILAR, WAYNE
WHEAT, RICK KIGAR, WES WHEAT, BRADLEY ROSS, DOUG
WOODARD, FREDERICK BRITTON, JEFF LEVA, SANDY
DASIGENIS, LILLIAN POELKER, PATRICIA POSTON, DAVID
POSTON, MEGAN RANDLE-BENDER, ANNA SEWART,
DAVID BARRY, BYRON SEWART, KEITH WOLFSHOHL,
HELEN HENDERSON, TYLER MARTIN OR CHAD RAUSCHER
c/o AUCTION.COM, LLC
1 Mauchly
Irvine, California 92618



SHELLPOINT/CROSS 000039

# EXHIBIT G





P.O. Box 10826
Greenville, SC 29603-0826

Phone: 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com

Hours of operation
Mon - Thur: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

February 14, 2020

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

Account Number: ████5158
Principal Balance: $222,613.72
Property Address: 16515 OBSIDIAN DR
HOUSTON, TX 77095

Dear Homeowner:

**Shellpoint Mortgage Servicing ("Shellpoint")** welcomes you! We're pleased that the owner of your mortgage loan has entrusted us to service your account.

**The servicing of your mortgage is being transferred.** Effective 02/01/2020, the **servicing** of your mortgage loan (collecting payments, paying taxes and insurance, etc.) transfers from Bayview Loan Servicing, LLC to Shellpoint.

**Making your payments.** Starting on 02/01/2020, make your mortgage payments payable to **Shellpoint Mortgage Servicing** at the address shown on the attached payment coupon. Your prior servicer, Bayview Loan Servicing, LLC, will stop accepting payments on 02/01/2020. Shellpoint will start accepting mortgage payments on 02/01/2020. **Please use the attached coupon to mail us a check for your first payment. Starting with your next payment, we will send you regular monthly statements that include payment coupons.**

**Other payment options.** Don't want to write monthly checks? Our other payment options include:

- **Free automatic withdrawal** from your bank account (also called "ACH").
- **Online payments** (via our website).
- **Pay by phone** (using either our automated phone system or by speaking with a live Customer Care representative).

**Manage your mortgage online.** To help you manage your mortgage account, we've created a set of easy-to-use online **tools**. Just use your computer, tablet, or phone to visit our website at **www.shellpointmtg.com**. If you haven't already done so, select the **Setup Your Account** option from the **Tools** menu and create an account with us. After you've set up your account, you can make payments, view and print statements, get answers to common questions, chat with a live representative, and more.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

L-10-M                                    P I000002  A-0579475158 020830000

✂ Detach Temporary Payment Coupon And Return With Payment ✂

## PAYMENT COUPON

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754

| Loan Number | ████5158 |
|---|---|
| First Payment Due Date: | 01/01/2015 |
| Monthly Payment Amount | $ 2,238.51 |
| **Amount Enclosed:** | $ |

**Enter the amount enclosed, and mail your payment check with this coupon to:**

⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿⸿
SHELLPOINT MORTGAGE SERVICING
P.O. BOX 740039
CINCINNATI, OH 45274-0039

NT/CROSS 000210
5158

**Call us if you need to** at **866-316-4706**. Our **automated phone system** gives you 24-hour access to your account, so you can make payments, check payment status, get answers to common questions, and access a wide range of account information. If you need to speak with someone, our Customer Care Team is available Monday through Friday 8:00AM-10:00PM, and Saturday 8:00AM-3:00PM EST.

**Were you working on a loss mitigation plan?** If you were engaged in a loss mitigation plan or evaluation with your previous servicer – or if you applied for such a plan – please call us right away. Dial 866-825-2174 so we can make sure your plan information has been properly transferred to us. If necessary, we will contact your previous servicer to obtain missing documents.

**¿Hablas Español?** Esta carta contiene información importante sobre su préstamo hipotecario. Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al numero **866-316-4706**.

*Welcome to Shellpoint!* We look forward to serving you, and we're committed to providing you with an excellent mortgage-servicing experience.

Sincerely,

*Customer Care Team*
**Shellpoint Mortgage Servicing**
P.O. Box 10826
Greenville, SC 29603-0826
**866-316-4706**



# Helping You Manage Your Mortgage

Please review the following important information regarding your loan payments. Our records indicate that your 01/01/2015 payment is due. As of the date of this letter, the principal balance is $222,613.72 and your escrow balance is $-73,728.80. You will receive a billing statement from Shellpoint each month. Effective 02/01/2020, please begin sending your mortgage payments to Shellpoint using one of the options below.

## Easy Ways to Pay

**FREE Automatic Withdrawal (ACH):** Sign up online at www.shellpointmtg.com. Our ACH options are:
- **Monthly** – Choose your date (1st - 15th)
- **Bi-weekly** – Draft half every other Monday

**Online:** You can make one-time payments using our website when you sign up at www.shellpointmtg.com.

**Mail:**

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**Phone:** You can make payments over the phone using our automated system or with a Customer Care representative at 866-316-4706.

## Loan Information

To help simplify the management of your mortgage, we have provided the following information.

### Terms of Your Mortgage

| | |
|---|---|
| Loan Number | ███5158 |
| Loan Origination Date | 11/02/2004 |
| Original Loan Amount | $255,440.00 |
| Current Interest Rate | 3.625% |
| Term | 360 months |
| Maturity Date | 11/01/2034 |

### Current Balances

| | |
|---|---|
| Principal Balance | $222,613.72 |
| Escrow Balance | $-73,728.80 |

### Payment Details

| | |
|---|---|
| Contractual Due Date | 01/01/2015 |
| Principal and Interest | $1,331.18 |
| Escrow | $907.33 |
| Total Monthly Payment | $2,238.51 |

## Reach Out to Us



Call
866-316-4706



Live Chat
www.shellpointmtg.com



Secure Email
www.shellpointmtg.com

SHELLPOINT/CROSS 000212

# *FAQs*



| | |
|---|---|
| **Will my previous servicer still accept my payments?** | The date that your previous servicer will stop accepting payments from you is 1/31/2020. We will begin accepting payments from you on 02/01/2020. Please send all payments due on or after that date. |
| **What if I make a payment to my previous servicer?** | Your previous servicer will forward your payment to us and it will be applied towards the date due. |
| **How can I make payments to you?** | You can pay by check, online, with a Customer Care representative, through our automated IVR (phone system), wire transfer, or by setting up a monthly or bi-weekly ACH. |
| **What if my payment is due during this transfer?** | Continue to make your payments during the first 60 days of transfer. During the first 60 days we will not treat your payments as late and will not apply late fees. |
| **Will the terms of my mortgage loan be affected by this servicing transfer?** | No. The terms of your mortgage are not affected by this transfer, other than those directly related to the servicing of your loan. |
| **What if I have more than one loan?** | This letter refers only to loan number 0579475158. If more than one loan is transferring to Shellpoint, we will send you a Welcome Letter and information for each loan. When making payments, please send the correct loan amounts separately, referencing each account. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

If you pay by check, you are authorizing Shellpoint Mortgage Servicing to use the check information to make a one-time electronic debit for each check presented from the account at the financial institution designated on the check. This electronic debit will be for the exact amount indicated on the check.

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan. Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is explained in more detail in Section 6 and Section 12 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605, 12 CFR Sections 1024.35 and 1024.36).

RESPA Section 6 and Section 12 give you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within five (5) business days of receiving your request. A "qualified written request" is a written correspondence—other than writing on a payment coupon or other payment-related documents supplied by your servicer—that includes your name, account number, and reasons for the request. Send all qualified written requests to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826; or you can call 866-316-4706.

No later than thirty (30) days (not including weekends and legal public holidays) after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a consumer-reporting agency concerning any overdue payment related to the 30-day period or your qualified written request. However, the servicer may still begin foreclosure proceedings if proper grounds exist under the mortgage documents.

SHELLPOINT/CROSS 000213

A "business day" is a day on which the offices of the business are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals if servicers are shown to have violated the requirements of that Section. Seek legal advice if you believe your rights have been violated.

If you have any questions for your previous servicer, Bayview Loan Servicing, LLC, about your mortgage loan or this transfer, please contact their Customer Service department:

Bayview Loan Servicing, LLC
4425 Ponce de Leon Blvd., 5th floor
Coral Gables, FL 33146
(855) 813-6597

**Please read the following important notices as they may affect your rights.**



NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-316-4706 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-316-4706，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:

COMPLAINTS REGARDING A LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATOR SHOULD BE SENT TO THE TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 1-877-276-5550.
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:

QUEJAS ACERCA DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES DEBEN ENVIARSE AL TEXAS DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TEXAS 78705. UNA LÍNEA TELEFÓNICA AL CONSUMIDOR GRATUITA ESTÁ DISPONIBLE EN 1-877-276-5550.
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.

SHELLPOINT/CROSS 000216

# FEE SCHEDULE

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for the processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.

[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.

[3] Recording fees vary by state and county. Shellpoint will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.



| FACTS | **WHAT DOES SHELLPOINT MORTGAGE SERVICING DO WITH YOUR PERSONAL INFORMATION?** |
|---|---|

| WHY? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| WHAT? | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Social Security number and income <br> • credit history and credit scores <br> • account balances and payment history |
|---|---|

| HOW? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Shellpoint Mortgage Servicing chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Shellpoint Mortgage Servicing share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes -** <br> such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes -** <br> to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | No | We do not share |
| **For our affiliates' everyday business purposes -** <br> information about your transactions and experiences | No | We do not share |
| **For our affiliates' everyday business purposes -** <br> information about your creditworthiness | No | We do not share |
| **For our affiliates to market to you** | No | We do not share |
| **For nonaffiliates to market to you** | No | We do not share |

| Questions? | Call toll-free 866-316-4706 or visit to www.shellpointmtg.com |
|---|---|

004880708D0000

| What we do | |
|---|---|
| **How does Shellpoint Mortgage Servicing protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Shellpoint Mortgage Servicing collect my personal information?** | We collect your personal information, for example, when you<br>• apply for a loan or give us your income information<br>• provide account information or provide employment information<br>• show your driver's license<br>We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only<br>• sharing for affiliates' everyday business purposes - information about your creditworthiness<br>• affiliates from using your information to market to you<br>• sharing for nonaffiliates to market to you<br>State laws and individual companies may give you additional rights to limit sharing. |

| Definitions | |
|---|---|
| **Affiliates** | Companies related by common ownership or control. They can be financial and nonfinancial companies. Our affiliates include:<br>• NewRez LLC<br>• Shellpoint Partners, LLC<br>• Avenue 365 Lender Services, LLC<br>• Rate 30<br>• eStreet Appraisal Management Company |
| **Nonaffiliates** | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• *We do not share your information with nonaffiliates* |
| **Joint marketing** | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• *We do not have any joint marketing agreements with nonaffiliated companies* |

| Other important information |
|---|

Shellpoint Mortgage Servicing is a division of NewRez LLC

Shellpoint Mortgage Servicing                                         Toll Free Phone:866-316-4706
P.O. Box 10826                                                               Toll Free Fax: 866-467-1137
Greenville, SC 29603-0826                                  Contact us online: www.shellpointmtg.com

Main Office NMLS ID#3013                              Hours: Monday - Friday: 8:00AM-10:00PM EST
Houston TX Branch Office NMLS                                  Saturday: 8:00AM-3:00PM EST
ID#1105392

This privacy notice was provided to our customer with account number ████5158 on 02/14/2020.

# AUTOMATIC PAYMENT ENROLLMENT FORM

Your monthly payments can be automatically drafted from your checking or savings account. Proof of payment will appear on your bank statement. To take advantage of this offer, visit our website at **www.shellpointmtg.com** and click on *Sign Up for Automatic Payments*. This method is quick, easy, and more secure. You may also complete the form below, attach a voided check, and mail it to our office:



Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

**Borrower Information**

| | |
|---|---|
| Account Number | █████5158 |
| Borrower | DEBORAH CROSS-FARRON |
| Mailing Street Address | 3454 IRWIN AVE |
| Mailing City, State, Zip | MIMS FL 32754 |
| Home/Cell Phone Number | |
| Work Phone Number | |
| Email Address | |

**Payment Information**

| | |
|---|---|
| Automatic Draft Start Date (mm/dd/yyyy) (must be between the 1st and 15th) | _____/_____/_____ |

**Note: Your payment will be drafted on the same day every month.**

| | |
|---|---|
| Current Monthly Payment Amount (Principal, Interest, Taxes and Insurance)* | $2,238.51 |
| Additional Draft Amount** | $ |
| **Total Monthly Draft Amount** | $ |

**Banking Information**

| | |
|---|---|
| ABA Transit Number (Routing Number) | |
| Bank Account Number | |
| Bank Name | |
| Account Type | ☐ CHECKING    ☐ SAVINGS |

* Your Current Monthly Payment Amount may vary due to interest rate and/or escrow changes, if applicable. You will be notified of any change in payment amount.

** Funds drafted in excess of your regular payment amount will first be used to satisfy amounts that are past due. If no amounts are past due, excess funds will be posted to reduce your principal balance. Any funds remaining on your account after loan is paid off will be returned to your bank account.

### Authorization to Begin Automated Payment Option

I/We authorize Shellpoint Mortgage Servicing ("Shellpoint") to debit my/our account each month. I/We understand that if the drafting day should fall on a non-business day, the draft will take place on the next business day. In order to cancel the draft, I/we must make a request in writing to Shellpoint 14 days in advance of the scheduled drafting date. Insufficient funds ("NSF") charges will apply to my/our account if the funds are not available at the time of debit. If my/our regularly scheduled draft is returned, a second draft may be attempted. In the event three of my/our scheduled drafts are returned, the automated payment service will be terminated. Each NSF transaction will result in an NSF fee. I/We further authorize Shellpoint to adjust the amount debited from my/our account to correspond to periodic changes in my/our payment due each month under the terms of my/our loan.

I/We acknowledge that I/we have read, understand, and agree to the terms set forth for the automated payment service.

Signature: _____
**DEBORAH CROSS-FARRON**

Date: _____

**Please don't forget to attach a voided check when returning this form.**

SHELLPOINT/CROSS 000220

SHELLPOINT/CROSS 000221

# EXHIBIT H



P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED

# Shellpoint
## Mortgage Servicing

**Phone Number:** 866-825-2174
**Fax:** 866-467-1187
**Email:** Lossmitigation@shellpointmtg.com
**Mon - Thurs:** 8:00AM-6:00PM
**Fri:** 8:00AM-5:00PM



ⁿⁿⁱⁱ|ⁿ|ⁱ|ⁱ|ⁱ|||ⁿⁿⁱⁱ|ⁿ|ⁱ|ⁱ|ⁿ|ⁱ||ⁿⁱ|ⁱ|ⁱ|ⁿⁱ||ⁿ|ⁱ|
S-SFRECS20  L-1303  R-106
PBMQR300206638 - 612578972 I26550
DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

| Loan Number: | ████5158 |
|---|---|
| Principal Balance: | $222,613.72 |
| Property: | 16515 OBSIDIAN DR HOUSTON, TX 77095 |

02/17/2020

 Dear DEBORAH CROSS-FARRON:

The above referenced  mortgage loan, serviced by Shellpoint Mortgage Servicing ("Shellpoint"), on the above referenced property is in default and foreclosure proceedings have or may soon commence. Because you have not taken steps to resolve the delinquency, we have been instructed by the owner of your mortgage loan to commence foreclosure.

In addition to foreclosing on the property, the owner of the mortgage loan may seek a deficiency judgment against you if the proceeds from the foreclosure sale do not pay off the amount you owe on the mortgage loan.

**Foreclosure Alternatives**

If you are unable to pay your mortgage loan  because of a financial hardship, there are options that may be available to you such as a loan modification, short sale, deed-in-lieu of foreclosure or another  foreclosure alternative.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS**

SHELLPOINT/CROSS 000228

P I000001  A-0579475158 0102J0400

| OPTIONS TO STAY IN YOUR HOME | OVERVIEW | BENEFIT |
|---|---|---|
| **Reinstatement** | Pay the total delinquent amount you owe, both in a lump sum payment and by a specific date, or pay less than the total amount owed followed by a forbearance plan as described below. | Allows you to avoid foreclosure by bringing your mortgage current if you can show you have funds that will become available at a specific date in the future. |
| **Repayment Plan** | Pay back your past-due payments together with your regular payments over an extended period of time. | Allows you time to catch up on late payments without having to come up with a lump sum. |
| **Forbearance Plan** | Make reduced mortgage payments or no mortgage payments for a specific period of time. | Gives you time to improve your financial situation and possibly qualify for a better option than would be available right now. |
| **Modification** | Receive modified mortgage terms to make it more affordable or manageable after successfully making payments during a "trial period" (e.g., completing a three-month trial period plan) that requires payment of the approximate amount of the modified payment. | Permanently modifies your mortgage so that your payments or terms are more manageable as a permanent solution to a long-term or permanent hardship. |
| OPTIONS TO LEAVE YOUR HOME | OVERVIEW | BENEFIT |
| **Short Sale** | Sell your home and pay off a portion of your mortgage balance when you owe more on the home than it is worth. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |
| **Deed-in-Lieu of Foreclosure** | Transfer the ownership of your property to us. | Allows you to transition out of your home without going through foreclosure. In some cases, relocation assistance may be available. |

You may have received a Solicitation Package. It is not too late for you to be evaluated for an alternative to foreclosure even if you previously expressed that you were not interested in a workout. Please contact your Single Point of Contact, Diana Baez , at 844-265-8876 to request a copy of the Solicitation Package and to discuss workout options that may be available.

Your Borrower Response Package must be completed and sent to Shellpoint in order to be considered for alternatives to foreclosure. Shellpoint's contact information for submitting a complete Borrower Response Package is below:

Shellpoint Mortgage Servicing
ATTN: Loss Mitigation Department
P.O. Box 10826
MS: 157
Greenville, SC 29603-0826
Telephone: 844-265-8876 ext. 4907

For your convenience, a Borrower Portal is available at www.shellpointmtg.com to help you access your workout status in real time, download forms, make payments, upload documents, and even conduct a self-evaluation.

If you have been previously denied a loan modification, and you are contemplating an appeal or have a pending appeal of this denial, you may submit a loan modification application in lieu of this appeal within 30 days after the date of this notice.

Contact HUD-approved counselors who are available to provide you with the information and assistance you may need. You can use the search tool at http://www.hud.gov/offices/hsg/sfh/hcc/fc/ and https://www.consumerfinance.gov/find-a-housing-counselor/ or call 1-800-569-4287 to find a counseling agency in your area. Additionally, the Homeowner's HOPE™ Hotline offers free HUD-certified counseling services and is available 24/7 in English and Spanish. Other languages are available by appointment. Certified counselors can be reached by calling 888-995-HOPE ™ (4673) or 800-877-8339 with TTY device.

Sincerely,
Shellpoint Mortgage Servicing

**Please read the following important notices as they may affect your rights.**



NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents: The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.**

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

**Our system of record has your preferred language as English.**

**If you prefer to receive communication in a language other than English, please contact us at 866-825-2174 to speak with a translator in your preferred language about the servicing of your loan or a document you received.**

**Si prefiere recibir las comunicaciones en otro idioma que no sea el inglés, por favor, contáctenos en el 866-825-2174 para hablar con un traductor en el idioma de su preferencia sobre la gestión de su préstamo o cualquier documento que haya recibido.**

**如果您要使用英语以外的其他语言进行交流，请致电** 866-825-2174，**我们将根据您首选的语言安排相应的译员，与您就贷款服务事项或您所接收的文件进行商讨。**

Please note that we operate as NewRez Mortgage LLC dba Shellpoint Mortgage Servicing in Arkansas and Texas.

**Texas**
Attention Texas Residents:
PURSUANT TO THE REQUIREMENTS OF SECTION 157.007 OF THE TEXAS MORTGAGE BANKER ACT, CHAPTER 157, TEXAS FINANCE CODE, YOU ARE HEREBY NOTIFIED OF THE FOLLOWING:
THE DEPARTMENT MAINTAINS A RECOVERY FUND TO MAKE PAYMENTS OF CERTAIN ACTUAL OUT OF POCKET DAMAGES SUSTAINED BY BORROWERS CAUSED BY ACTS OF LICENSED RESIDENTIAL MORTGAGE LOAN ORIGINATORS. A WRITTEN APPLICATION FOR REIMBURSEMENT FROM THE RECOVERY FUND MUST BE FILED WITH AND INVESTIGATED BY THE DEPARTMENT PRIOR TO THE PAYMENT OF A CLAIM. FOR MORE INFORMATION ABOUT THE RECOVERY FUND, PLEASE CONSULT THE DEPARTMENT'S WEB SITE AT WWW.SML.TEXAS.GOV.

**Texas**
Atención Residentes de Texas:
DE CONFORMIDAD CON LOS REQUISITOS DE LA SECCIÓN 157.007 DE LA LEY HIPOTECARIA DE BANQUERO DE TEXAS, CAPÍTULO 157, CÓDIGO DE FINANZAS DE TEXAS, LE INFORMAMOS DE LO SIGUIENTE:
EL DEPARTAMENTO MANTIENE UN FONDO DE RECUPERACIÓN PARA REALIZAR LOS PAGOS DE CIERTOS DAÑOS REAL DE BOLSILLO SOSTENIDOS POR LOS PRESTATARIOS CAUSADOS POR ACTOS DE UN ORIGINADOR LICENCIADO DE PRÉSTAMOS HIPOTECARIOS RESIDENCIALES. UNA SOLICITUD ESCRITA PARA REEMBOLSO DEL FONDO DE RECUPERACIÓN NECESITA SER PRESENTADA E INVESTIGADA POR EL DEPARTAMENTO ANTES DEL PAGO DE UNA RECLAMACIÓN. PARA OBTENER MÁS INFORMACIÓN SOBRE EL FONDO DE RECUPERACIÓN, CONSULTE AL SITIO WEB DEL DEPARTAMENTO EN WWW.SML.TEXAS.GOV.

# EXHIBIT I



**Bayview Loan Servicing, LLC**
P.O. Box 740410
Cincinnati, OH 45274-0410
www.bayviewloanservicing.com

# Mortgage Statement
Statement Date: 01/16/20

1.877.251.0990

11059

Deborah Cross-Farron
C/O Sahar Shirazi
Locke Lord Llp
2800 Jp Morgan Chase
600 Travis
Houston, TX 77002

| Account Number | ▮5846 |
|---|---|
| Payment Date | 02/01/20 |
| **Total Amount** | **$204,507.06** |

*If payment is received after 2/16/20, a $66.56 late fee will be charged. Please note, after 01/16/2020 this amount may not be sufficient to bring your loan current as additional fees, charges, or attorney fees/costs may have been incurred but not yet invoiced or processed as of the Statement Date, or may have been incurred after the Statement Date. Please contact us at the number above to obtain the current amount due.*

## Account Information

| | |
|---|---|
| Outstanding Principal Balance †‡ | $222,613.72 |
| Interest Rate | 3.625% |
| Escrow Balance | -$73,728.80 |
| Late Charge Balance | $865.28 |
| Rec Corp Advance Balance | $51,285.81 |
| Prepayment Penalty | N |
| Property Address | 16515 OBSIDIAN DR HOUSTON TX 77095 |

## Explanation of Payment Amount

| | |
|---|---|
| Fees & Charges Assessed* | $3,272.00 |
| Unpaid Past Payments** | $201,235.06 |
| **Reinstatement Amount** (as of 01/16/2020) | **$204,507.06** |
| **Accelerated Amount** (as of 01/16/2020) | **$389,846.52** |

‡Payments will be applied in order that they become due (oldest first) unless bankruptcy or other court ordered payment plan is in place.
*Fees and Charges Assessed are comprised of Recoverable Corporate Advances, Late Fee and NSF Fees assessed since the last billing cycle.
**Unpaid Past Payments is the sum of the unpaid balances for Principal and Interest, Escrow and Fees & Charges.

## Transaction Activity (12/17/19 to 01/16/20)

| Date | Description | DEBITS | CREDITS |
|---|---|---|---|
| 12/30 | Litigation Fees | 2044.00 | |
| 12/30 | Litigation Fees | 1228.00 | |

## Past Payments Breakdown

| | Paid Last Bill | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Fees & Charges | $0.00 | $0.00 |
| Partial Payment (Unapplied)‡‡ | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Important Messages

‡‡ **Partial Payments**: Any partial payment that is made is not applied to the mortgage payment, but instead is held in a separate suspense account. If the balance of a partial payment is paid, the funds will then be applied to your mortgage.

Your Point of Contact is ERICA ROSS and can be reached on 1.833.656.7411.

## **Account History**

The payments on this mortgage are late. Failure to bring the loan current may result in fees and foreclosure & the loss of the home. As of 01/16/20 the loan is 1841 days delinquent on the mortgage.

*Recent Account History:*
Payment due: 08/01/19: Unpaid balance of $2,607.25
Payment due: 09/01/19: Unpaid balance of $2,607.25
Payment due: 10/01/19: Unpaid balance of $2,764.98
Payment due: 11/01/19: Unpaid balance of $2,764.98
Payment due: 12/01/19: Unpaid balance of $2,764.98
Payment due: 01/01/20: Unpaid balance of $2,764.98
Current payment due 02/01/20: $2,764.98
**Total: $204,507.06 due. This is the amount needed to bring the loan current.**

**If you are experiencing Financial Difficulty: See Back for information about mortgage counseling or assistance.**

Please be advised, we have made the first notice or filing required by applicable law to start the judicial or non-judicial foreclosure process.

†This is your Principal Balance only, not the amount required to pay your loan in full. Please contact Customer Service for your exact payoff balance. In the event you are in default or foreclosure, you must contact 1.877.251.0990 for payoff information.

The 2019 year end forms will be mailed by January 31, 2020. If you have not received the year end form by February 9, 2020, then please log onto www.bayviewloanservicing.com to obtain a copy.

Our records indicate your Supplemental Modification Program status is Eligible.

Texas Property Owners- COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550. A complaint form and instructions may be downloaded and printed from the Department's website at www.sml.texas.gov or obtained from the Department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

- - - - - - - - - - - - - - - - - - - - - - - - - - FPO - - - - - - - - - - - - - - - - - - - - - - - - -

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please include the loan number on your check. If you cannot clearly associate the check with a single loan, it may delay or prohibit us from crediting your account.

| | |
|---|---|
| **Borrower** | **DEBORAH CROSS-FARRON** |
| Loan Number | ▮5846 |
| Reinstatement Amount | $204,507.06 |

| Due By: 02/01/20 | Accelerated Amount: 389,846.52 |
|---|---|

*If payment is received after 2/16/20, a $66.56 late fee will be charged.*

BAYVIEW LOAN SERVICING, LLC
PO BOX 740410
CINCINNATI, OH 45274-0410

Please indicate additional funds. Excess funds received by BLS without explicit application instructions, will be posted based on BLS internal payment hierarchy, which is driven by your loan documents and/or applicable law.

| | | |
|---|---|---|
| Additional Principal | $ | . |
| Additional Escrow | $ | . |
| Other | $ | . |
| **Total Amount Sent** (Please do not send cash) | $ | . |

☐ Check here if your address/telephone number has changed and fill out form on reverse side.

Please do not write below this line.   Servicing Code: MSP

Make check payable to Bayview Loan Servicing.

▮5846 MSP 0020450706 0038 SHELLPOINT/CROSS 000222

## How to contact us

www.bayviewloanservicing.com

***The below mailing address must be used for all
Error Notices and Information Requests:***

**Bayview Loan Servicing, LLC
ATTN:  Customer Support
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL  33146**

**Customer Service**
Mon – Fri 8:00 am to 9:00 pm ET
Telephone: 1.877.251.0990
**Fax: 305.631.5660**

**Mail payments to:**
Bayview Loan Servicing, LLC
PO Box 740410
Cincinnati, Ohio 45274-0410

**Payoff Request:**
Bayview Loan Servicing
Payoff Department
4425 Ponce De Leon Blvd., 5th Floor
Coral Gables, FL  33146
Fax: 305.644.8102

**Real Estate Tax Bills:**
Bayview Loan Servicing, LLC
Tax Department
P.O. Box 331409
Miami, FL  33233-1409
Fax: 305.644.8104

**Bayview Loan Servicing LLC**
Billing Statement Opt In/Opt Out
PO BOX 331409
MIAMI FL 33233-1409

**Customer Relations**
Mon – Fri 8:00 am to 9:00 pm ET
**Telephone: 1.888.326.7191**

**Homeowner's Insurance Inquiries**
Mon – Fri 8:00 AM – 7:00 PM ET
**Telephone: 877.826.4419**
**Fax: 248-824-7960**

**Insurance or Binder:**
Bayview Loan Servicing, LLC, its successors
and/or assigns
PO Box 5933
Troy, MI  48007-5933
Telephone: 877.826.4419
Fax: 248.824.7960

**For hearing/speech impaired accessibility
(TTY):**
Mon – Fri 8:00 am to 9:00 pm ET
Toll Free #877-676-1565
DID #305-646-6440

**Loss Mitigation or Workout Documents:**
Email:
LossMitDocs@bayviewloanservicing.com
**Fax: 855.330.8077**

**When Making Calls from Outside the U.S.:**
Mon – Fri 8:00 am to 9:00 pm ET
**Phone Number: 305.646.3980**

## Additional Payment Methods
Please include the Bayview Loan number on all remittances.

**\*Western Union Quick Collect:**   Code City: BFTG Code State: FL
(Locate the agent nearest you by calling
1.800.525.6313, or visiting www.westernunion.com)

**\*MoneyGram:**   Receive Code: 13910
1-800-555-3133; 7 days a week, 24 hours a day

**\*Wire:**   JP Morgan Chase New York, NY
ABA #: 021000021 Account No.: 447450847

**Overnight Payment or**   Bayview Loan Servicing LLC
**Certified Payoff Funds:**   ATTN: Cashiering
4425 Ponce De Leon Blvd. 5th Floor
Coral Gables, FL 33145

**\*\*By Phone:**   1.877.251.0990

**\*\*Online:**   www.bayviewloanservicing.com

*\*Fees may be imposed by money transmitter.
\*\*Fees may be imposed by money transmitter;  to the extent a fee is imposed, the fee will
be $0.25.*

For your convenience, you may have the payment automatically debited every month
from the checking or savings account of your choice.  To participate in Auto Pay,
Bayview's automatic debit program, visit www.bayviewloanservicing.com/autopay.

---

**Payment Handling**
We reserve the right to electronically collect your eligible payment checks, at first
presentment and any additional presentment, from the bank account on which the check
was drawn.  Our receipt of your payment check is authorization for us to collect the
amount of the check electronically, or if needed by draft drawn against  the bank account.
Checks will be collected electronically by sending the check amount along with the
check, routing and account numbers to your bank.  Your bank account may be debited
as early as the same day we receive your payment.  The original check will be destroyed
and an image maintained for our records.

**Housing Counselor Information**
If you would like counseling or assistance, for a list of homeownership counselors or
counseling organizations in your area, you can contact the: U.S. Department of
Housing and Urban Development (HUD), go to
http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287.

If you are a confirmed successor in interest of the account, unless you assume the
mortgage loan obligation under state law, you are not personally liable for the mortgage
debt and cannot be required to use your own assets to pay the mortgage debt.

© 2011 Bayview Loan Servicing, LLC all rights reserved

## National Schedule of Fees

| FEE DESCRIPTION | FEE AMOUNT |
|---|---|
| **Appraisal** – An expense charged to the loan to determine the value of the property, which includes an interior inspection of the property. | $400.00 – $675.00, unless prohibited by state law. |
| **Assumption** – Charge for the work involved with processing a new buyer that is assuming the terms of an existing loan. | $0.00 – 1% of the UPB or $250, whichever is greater. |
| **Bankruptcy Fees and Costs\*** | $0 – $5,000 |
| **Bankruptcy Attorney Fees\*** – Fees charged by local counsel as a result of a bankruptcy.  Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **BPO** – An expense charged to the loan in which a broker's price opinion will be used to determine the value of a property on a delinquent loan. | $81.00 – $160.00, unless prohibited by state law. |
| **Foreclosure Attorney Fees\*** – Fees charged by local counsel as a result of a foreclosure.  Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $50,000 |
| **Foreclosure Fees and Costs\*** | $0 – $5,000 |
| **Late Charge** – Assessed for payments received after the due date and expiration of any applicable grace period per the loan documents. | As stated in the loan documents, subject to state law requirements. |
| **Litigation Fees and Costs\*** – Varies depending on the circumstances and is not always charged to the customer's loan. | $0 – $60,000.00 |
| **Non-Sufficient Funds Fee** – Fee assessed on payments/checks received that are not honored due to insufficient funds. | $0 – $50, or maximum permitted by state law. |
| **Partial Release** – Charge for the processing the release of a portion of the mortgaged property. | Loan balance $300,000 or less – $0; loan balances between $300,000 and $750,000 – $500; loan balance greater than $750,000 – $1,000 |
| **Pay-by-Phone, Web and IVR Payment Fee** | $0 – $0.25, subject to state law and requirements. |
| **Pre-Foreclosure Notice Registration Fee** | $0 – $75, subject to state law requirements. |
| **Priority Processing (Overnight Delivery)** – Fee charged if customer requests expedited service. | $0 – $15 |
| **Property Inspection** | $10 – $15 |
| **Property Preservation Fee** – An expense charged to the loan to ensure that the condition an appearance of the property are maintained satisfactorily. | $0 – $2,500 and $0 – $110 for grass cuts. |
| **Title Search** – An expense charged to the loan for a detailed examination of the historical records concerning the property. | $0 – $500 |

**Other Fees Charged (And fees not included above)**
Currently, no fees are assessed for the following: Amortization Schedule, Deed of Trust Copy,
Document Copy, Loan History, Release Recording-Residential, Subordination and Verification
of Mortgage for Third Party Requests. A prepayment penalty may be assessed against your
loan under the terms of the Note.

The above contains a list of common servicing fees. You may incur additional fees if, for
example, your loan becomes delinquent or is subject to litigation (e.g. condemnation
proceeding).

**\*These fees will vary depending on the circumstances and is not charged to the
customer's loan if not permitted by contract or applicable law.** Such fees may include, but
are not limited to, court costs and attorney fees. These fees will vary with the circumstances of
the case and the nature of the work performed.
**Bayview Loan Servicing, LLC. NMLS #2469**

**Mortgage Scams Relief Programs**
Be cautious of any notices you receive that advise you that you have been approved for a loan
modification or trial plan. These may be deceptive scams from persons pretending to be us. For
your protection, please verify any such information received by contacting your assigned Asset
Manager or Customer Service immediately to confirm that any offer or decision comes from us.

**Mortgage Loan Scam Alert**
Beware of home loan rescue scams. Facing the possibility of not being able to make your
mortgage payments is an unsettling time. Unfortunately, con artists often attempt to take
advantage of vulnerable homeowners and may try deceptive scams where they pretend to
represent Bayview Loan Servicing, LLC ("Bayview") and allege to have your best interest in
mind. You should know that loss mitigation options and counseling do not require fees when
working directly with Bayview or a HUD approved housing counselor. For your protection, if you
are unsure if the person communicating with you about a modification or other settlement
agreement or requiring you to make payments is from Bayview or a legitimate counseling
resource, please contact the Customer Relations Department at 1.877.251.0990 or at
customerservice@bayviewloanservicing.com and tell us about your situation.

**Know your Rights**
The FTC's Mortgage Assistance Relief Services (MARS) Rule is establish to protect distressed
homeowners from mortgage relief scams that have sprung up during the mortgage crisis.
Bogus operations falsely claim that, for a fee, they will negotiate with the consumer's mortgage
lender or servicer to obtain a loan modification, a short sale, or other relief from foreclosure.

**Servicemembers Civil Relief Act**
The Service members Civil Relief Act (SCRA) may offer protection or relief to members of the
military who have been called to active duty. If either you have been called to active duty, or
you are the spouse, registered domestic partner, partner in a civil union, or financial dependent
of a person who has been called to active duty, and you haven't yet made us aware of your
status, please contact our Customer Relations Department toll-free at 1.877.251.0990, Monday
– Friday 8am – 5pm ET. As your loan servicer, we are here to help you understand your
options.

**Credit Reporting**
We may report information about your account to credit bureaus.  Late payments, missed
payments, or other defaults on your account may be reflected in your credit report.

Bayview Loan Servicing, LLC, is a debt collector. This letter is an attempt to collect a debt, and
any information obtained will be used for that purpose. To the extent that your obligation has
been discharged or is subject to an automatic stay in bankruptcy this notice is for information
purposes only and does not constitute a demand of payment or any attempt to collect such
obligation.

---

**Has any of your contact information changed?**
If so, please complete this and check the box on the front of the coupon.

**Mailing Address:** _____

**City:** _____   **State:** _____   **Zip:** _____

**Home Phone:** (      ) _____   **Business Phone:** (      ) _____

**Customer Name:** _____
*Please Print*

**Email Address:** _____

**Customer Name:** _____
*Please Print*

**Email Address:** _____

**Customer
Signature:** _____

**Customer
Signature:** _____

**Date:** _____   **Date:** _____

Please be advised that Bayview Loan Servicing, LLC, ("Bayview"), may employ the use of automated technology to place calls, prerecorded messages and text messages to
any wireless numbers provided by you in regards to the servicing of your mortgage loan.  This is not a condition for Bayview to service your account. You may revoke your
consent to this form of contact at any time by notifying Bayview.

# EXHIBIT J

# Shellpoint
## Mortgage Servicing

**DO NOT SEND MAIL OR PAYMENTS TO THIS ADDRESS**
P.O. Box 619063 • Dallas, TX 75261-9063

8-811-09406-0144125-015-100-010-000-000

DEBORAH CROSS-FARRON
3454 IRWIN AVE
MIMS FL 32754-5523

# MORTGAGE STATEMENT
Statement Date: 02/16/2020

| Account Number | ▇▇▇5158 |
|---|---|
| Next Due Date | 03/01/2020 |
| **Amount Due** | **$231,949.74** |

*If payment is received after 03/16/2020, $0.00 late fee may be assessed.*

| Phone: | 866-316-4706 |
|---|---|
| Website: | www.shellpointmtg.com |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $794.16 |
| Interest | $537.02 |
| Escrow (Taxes and Insurance) | $1,433.80 |
| **Regular Monthly Payment** | **$2,764.98** |
| Total Fees and Charges | $1,566.40 |
| Overdue Payment | $227,618.36 |
| **Total Amount Due** | **$231,949.74** |

## Account Information

| | |
|---|---|
| Outstanding Principal | $222,613.72 |
| Interest Rate | 3.6250% |
| Prepayment Penalty | None |
| Property Address: | 16515 OBSIDIAN DR |
| | HOUSTON TX 77095 |
| Contractual Due Date: | January 1, 2015 |
| Current Escrow Balance: | -$73,728.80 |

## Past Payments Breakdown

| | Paid Last Month | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow | $0.00 | $0.00 |
| Fees/Late Charges | $865.28 | $865.28 |
| **Total** | **$865.28** | **$865.28** |

## Transaction Activity (01/18/2020 - 02/15/2020)

| Date | Description | Charges | Payments |
|---|---|---|---|
| 01/20/2020 | Attorney Cost Assess | $1,261.00 | $0.00 |
| 01/28/2020 | Register Vacant Prop Assess | $12.40 | $0.00 |
| 01/28/2020 | Attorney Cost Assess | $293.00 | $0.00 |
| 02/03/2020 | Late Charge Payment | $0.00 | $865.28 |

## Important Messages

**\*Partial Payments:** Any partial payments that you make are not applied to your mortgage, but instead are held in a separate suspense account according to applicable state law. If you pay the balance of a partial payment, the funds will be applied to your mortgage.

## Additional Messages

Federal law requires us to tell you how we collect, share, and protect your personal information. Our Privacy Policy has not changed. You can review our policy and practices with respect to your personal information at www.shellpointmtg.com or request a copy to be mailed to you by calling us at 866-316-4706.

**For questions regarding the servicing of your loan, please contact customer care at 866-316-4706.**

Repayment options may be available to you. **Call 866-316-4706** to discuss payment arrangements. Failure to act on this matter may result in us exercising our legal rights as permitted by the contract and applicable state laws.

**For information about your payments, total amount due, and any additional payment history, see reverse side.**

## \*\*Delinquency Notice\*\*

**You are late on your mortgage payments.** Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 02/16/2020, you are 1,872 days delinquent on your mortgage loan.

**Recent Account History**
o Payment due 09/01/19: unpaid balance of $186,941.54
o Payment due 10/01/19: unpaid balance of $4,131.28
o Payment due 11/01/19: unpaid balance of $2,764.98
o Payment due 12/01/19: unpaid balance of $7,904.28
o Payment due 01/01/20: unpaid balance of $24,677.70
o Payment due 02/01/20: unpaid balance of $2,764.98
o Payment due 03/01/20: current payment due

o **Total: $231,949.74 due. You must pay this amount to bring your loan current.**

If You Are Experiencing Difficulty: Please refer to the back of this statement for additional messages about mortgage counseling and assistance.

005-0814-1100F

---

Detach and return with payment.

---



Loan Number: ▇▇▇5158
DEBORAH CROSS-FARRON

Property Address:
16515 OBSIDIAN DR
HOUSTON TX 77095

SHELLPOINT MORTGAGE SERVICING
PO BOX 740039
CINCINNATI OH 45274-0039

## Amount Due

| Payment Due Date | 03/01/2020 |
|---|---|
| Total Amount Due | $231,949.74 |

*$0.00 late fee may be charged after 03/16/2020*

Please write clearly inside space provided

| | |
|---|---|
| Payment Amount | $ |
| Additional Principal | $ |
| Late / Other Charges | $ |
| Additional Escrow | $ |
| **Total Amount Enclosed** (Please do not send cash) | $ |

INTERNET REPRINT

SHELLPOINT/CROSS 000224

**Important Notice:** NewRez LLC dba Shellpoint Mortgage Servicing is a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. NewRez LLC dba Shellpoint Mortgage Servicing's NMLS ID is 3013.

**Amount Due on Accounts in Foreclosure or Bankruptcy:** If your account is in foreclosure or bankruptcy the amount listed as the Amount Due may not be the full amount necessary to bring your account current. To obtain up-to-date amount due information, please contact us at the number listed on the statement.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Notice of Error or Information Request Address**
You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603

For budget advice and credit counseling assistance please call the U.S. Department of Housing and Urban Development (HUD) at 800-569-4287 or at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

Amounts paid in excess of your payment amount will first be used to satisfy any delinquency. If there are no past due amounts then excess funds paid will be posted to your principal balance. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

Shellpoint Mortgage Servicing may assess a returned check fee consistent with the laws for your state and your loan documents on all checks returned by your financial institution. Additionally, Shellpoint may charge a fee for processing payoff requests.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan Español al número 866-316-4706.

If you prefer to receive communication in a language other than English, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

A successor in interest is someone who acquires an ownership interest in a property secured by a mortgage loan by transfer upon the death of a relative, as a result of a divorce or legal separation, through certain trusts, between spouses, from a parent to a child, or when a borrower who is a joint tenant or tenant by the entirety dies. If you are a successor in interest, or you think you might be, please contact by phone, mail or email to start the confirmation process.

--- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- --- ---

## Address, Phone, and Name Changes

**\*\*Please remember:**
Name changes require a signature and a copy of a legal document noting the new name. Examples of legal documents are marriage licenses and divorce decrees.

Type of change (check all that apply)

_____ Address _____Phone _____Name** _____Email Address

Your Account # _____   Social Security Number: _____

Old Borrower Name: _____   New Borrower Name: _____

Old Co-Borrower Name: _____   New Co-Borrower Name: _____

Borrower Signature: _____   Co-Borrower Signature: _____

New Mailing Address: _____

_____

_____

_____

New Phone Number: Day ( _ _ _ ) _ _ _ - _ _ _ _   Evening ( _ _ _ ) _ _ _ - _ _ _ _   Email Address _____   SHELLPOINT/CROSS 000225

INTERNET REPRINT



**FEE SCHEDULE**

The following list provides general information on common non-state specific costs that could be associated with servicing your mortgage loan. It is not a complete list of all costs that could be assessed to such an account. This schedule is provided for informational purposes only.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Late Charge Fee | Assessed for payments received after the due date and expiration of any applicable grace period | Up to 5%[1] | |
| NSF or Returned Check Fee | Fee assessed when a payment is rejected by your bank upon second presentment | $0 | $50[1] |
| Prepayment Fee | A fee that may be required, based on your loan documents, if you prepay the loan | See Loan Documents[2] | |
| Property Valuation Fee | Fee charged if we are required to determine the condition and value of your home; may be in the form of a Broker Price Opinion, appraisal, or other Valuation of Property | $80 | $450 |
| Property Inspection Fee | Fee charged if we are required to determine the condition of your property | $0 | $50 |
| Appraisal Fee | Fee charge to conduct an appraisal of fair market value based on an inspection of the interior and/or exterior of a property. | $95 | $1,000 |
| Property Preservation Fee | If the property is vacant and/or abandoned services may be provided to treat and prevent damages to the property per service needed | $5 | $3,000 |
| Field Visit Fee | Fee charged if we are required to send a field agent to deliver a notice and determine the occupancy status of the property | $40 | $60 |
| Partial Release Fee | Fee charged for preparing the documents to modify the outstanding lien on your property | $0 | $250 |
| Lien Release Fee | Fee charged at payoff for preparing the documents to release the lien on your property | $0 | $100 |
| Recording Fee | Fee charged by the county clerk to record the release or satisfaction of lien at payoff | $0 | $100[3] |
| Subordination Fee | Charge for making a lien on a property subject or junior to a priority lien | $0 | $300 |
| Breach Letter Fees | Fee charged to send letters because of a default on your loan | $0 | $35 |
| Bankruptcy Fees and Costs | Fee charged once a bankruptcy is filed, attorney costs may be incurred as part of the bankruptcy process per action needed | $0 | $2,000 |
| Litigation Fees and Costs | Fee charged as a result of litigating a claim against borrower | $350 | $20,000 |
| Attorney Fees and Costs | Fee charges to compensate attorney for services rendered | $30 | $35,000 |

The frequency of the costs will depend on how often services are requested or required, your payment status, and both investor and legal requirements.

The fees below will be imposed for services you request. You will be asked to agree to pay these charges at the time you request the service.

| Type of Fee | Description | From | To[1] |
|---|---|---|---|
| Convenience Fee | Fee charged for making a payment by phone with an agent or over the internet | $0 | $20 |
| Loan Document Fee | Fee charged for documentation that is an over burdensome volume of document copy request for loan documents. | $0 | $5 per doc |
| Deed of Trust Copy Fee | Fee charged for a copy of the Deed of Trust or Mortgage | $0 | $8 |
| Amortization Schedule | Fee charged for a copy of the Amortization Schedule. (Please note that we are unable to provide an amortization schedule on daily simple interest loans and option ARM loans) | $0 | $10 |
| Recasting Fee | Fee charged for recasting (or re-amortize) the loan after an additional sum of money to substantially reduce the UPB of the loan and lower the monthly payment | $0 | $300 |
| 3rd Party Verification Fee | Fee charged to provide a verification of mortgage to a third party | $0 | $10 |
| Title Search Fee | Fee charged as a result of performing a title search | $125 | $150 |
| Expedited Payoff Fee (Does not apply to Hawaii) | An expedited payoff service fee is charged for receiving a written payoff demand by fax or other expedited means, if allowable by state law. Standard payoff statements via USPS standard mail will not incur a fee. | $0 | $60 |
| Expedited Payoff Fee (Hawaii only) | Payoff requests of any type will not incur a fee. | $0 | $0 |
| Expedited Document Fee | Charged when a document is prepared and sent via fax or certified mail to the borrower or an authorized third party. | $0 | $10 |
| Assumption Fee | Fee charged for processing of a loan assumption. | $0 | $2,000 |

[1] The maximum fee allowable varies according to state law and will not exceed state allowable limits.
[2] The prepayment fee, if applicable, is dictated by state law, is usually calculated based on a percentage of your loan amount, and can vary widely. Accordingly, a more accurate prepayment fee estimate can be found in your loan documents.
[3] Recording fees vary by state and county. Current Servicer will follow the fee schedule, adopted by the county and state you reside in, which applies to your loan.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is for informational purposes only. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code.

811-4026-0519F

SHELLPOINT/CROSS 000226

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.
Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de  Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes**: La Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio.  Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

811-4027-0519B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBORAH CROSS F.K.A. DEBORAH CROSS-FARRON,** | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:20-cv-01322** |
| | § | |
| **THE BANK OF NEW YORK MELLON** | § | |
| **F.K.A. THE BANK OF NEW YORK, AS** | § | |
| **TRUSTEE FOR THE** | § | |
| **CERTIFICATEHOLDERS OF CWALT,** | § | |
| **INC., ALTERNATIVE LOAN TRUST** | § | |
| **2004-30CB; AND NEWREZ LLC D.B.A.** | § | |
| **SHELLPOINT MORTGAGE** | § | |
| **SERVICING,** | § | |
| | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S RESPONSES TO DEFENDANT SHELLPOINT'S
## FIRST DISCOVERY REQUESTS

---

To:     Defendant, Shellpoint Mortgage Servicing, by and through their attorneys of record, Walter McInnis, Monica Summers, and C. Charles Townsend, AKERMAN LLP, 2001 Ross Avenue, Suite 3600, Dallas, Texas 75201.

COMES NOW, Plaintiff Deborah Cross f.k.a Deborah Cross-Farron and serves this, her Responses to Defendant Shellpoint Mortgage Servicing's First Discovery Requests to Plaintiff pursuant to the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement any and all of these Responses under the Federal Rules of Civil Procedure as information becomes available.

EXHIBIT I-3

**DATED:**    **July 13, 2020**            Respectfully submitted,

**JEFFREY JACKSON & ASSOCIATES, PLLC**

_____

**JEFFREY C. JACKSON**
Texas State Bar No. 24065485
Southern District No. 1024221
2200 North Loop West, Suite 108
Houston, Texas 77018
713-861-8833 (T)
713-682-8866 (F)
jeff@jjacksonllp.com

ATTORNEYS FOR PLAINTIFF
DEBORAH CROSS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via Certified Mail, Return Receipt Requested, Facsimile and/or the Court's CM/ECF system on July 13, 2020.

**Walter McInnis**
walter.mcinnis@akerman.com
**C. Charles Townsend**
charles.townsend@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
214-720-4300 (T)
214-981-9339 (F)

**Monica Summers**
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
210-582-0220 (T)
210-582-0231 (F)
monica.summers@akerman.com
*Attorneys for Defendants The Bank of New York fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB and NewRez LLC dba Shellpoint Mortgage Servicing*

_____
**JEFFREY C. JACKSON**

## RESPONSES TO DISCOVERY REQUESTS

1.      Request for Admission:      Admit you have not been damaged by any act or omission of Shellpoint.

**RESPONSE:** Denied.

2.      Interrogatory: Unless you unequivocally admitted request 1, describe both the economic and non-economic damages you seek to recover from Shellpoint in detail. Your description should state the total amount of both economic and non-economic damages you seek to recover from Shellpoint as well as each category, element or type of damage which is included in the total amount of economic and non-economic damages you seek to recover from Shellpoint, the dollar amount that you attribute for each category, element or type of both economic and non-economic damages you seek to recover from Shellpoint and how the dollar amount attributed to each category, element or type of both economic and non-economic damages was calculated.

**ANSWER:** Plaintiff objects to this interrogatory as premature. Trial is not until January 2021. Plaintiff objects to this interrogatory as overly broad and unduly burdensome.

3.      Request for Production:      Unless you unequivocally admitted request, please produce for inspection and copying all written documents and tangible things, including data or information that exists in electronic or magnetic form, which underlie or support the economic and non-economic damage calculations you set out in response to interrogatory 2, including, but not limited to, all economic and non-economic damage calculations or summaries which you prepared. If you are claiming an economic or non-economic damage this request is designed to compel the production of documents evidencing the alleged economic or non-economic damage.

**RESPONSE:** Plaintiff objects to this request as premature. Trial is not until January 2021. Plaintiff objects to this request as overly broad and unduly burdensome.

4.      Request for Admission:      Admit the document attached as **exhibit A** is a true, correct and complete copy of the note.

**RESPONSE:** Denied.

5.      Request for Admission:      Admit the document attached as **exhibit B** is a true, correct and complete copy of the deed of trust.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

6.      Request for Admission:      Admit the document attached as **exhibit C** is a true, correct and complete copy of the assignment of deed of trust.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

7.    **Request for Admission:**    Admit the document attached as **exhibit D** is a true, correct and complete copy of the loan modification.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

8.    **Request for Production:**    Unless you unequivocally admitted requests 4-7 please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing the note, deed of trust, modifications or any other document executed by you, granting an interest in the property.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome, particularly its call for "data or information that exists in electronic or magnetic form." Plaintiff objects to this request as not proportional to the needs of the case in its call for "any and all written documents and tangible things." Plaintiff objects to this request as seeking documents already in the possession of BoNYM and Shellpoint.

9.    **Request for Admission:**    Admit BoNYM is the current mortgagee of the deed of trust.

**RESPONSE:** Admit.

10.    **Request for Admission:**    Admit BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011.

**RESPONSE:** Admit.

11.    **Request for Production:**    Unless you unequivocally admitted requests 9 and 10, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011 and/or is the current mortgagee of the deed of trust, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was a mortgagee of the deed of trust during the relevant time period and the dates on which each such person and/or entity was a mortgagee of the deed of trust, and for the person and/or entity you claim is a current mortgagee, documents identifying the date you contend the person and/or entity became a mortgagee of the deed of trust.

**RESPONSE:** n/a

12.    **Request for Admission:**    Admit Shellpoint is the current mortgage servicer of the loan.

**RESPONSE:** Admit.

13.     Request for Admission:      Admit Shellpoint has been the mortgage server of the loan at all times since February 1, 2020.

**RESPONSE:** Admit (see exhibit G).

14.     Request for Admission:      Admit Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020.

**RESPONSE:** Denied. However, Plaintiff admits that Bayview was the mortgage servicer of the loan from May 16, 2015 to January 31, 2020.

15.     Request for Production:      Unless you unequivocally admitted requests 12-14, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting Shellpoint is the current mortgage server, has been the mortgage server of the loan at all times since February 1, 2020, and Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was or is a mortgage servicer of the loan during the relevant time period and the dates on which each such person and/or entity was a mortgage servicer of the loan, and for the person and/or entity you claim is the current mortgage servicer of the loan, documents identifying the date you contend the person and/or entity became the current mortgage servicer of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not properly limited in scope.

Subject to the above objections, see the response to Request for Admission #14.

16.     Request for Admission:      Admit the loan is in default.

**RESPONSE:** Denied.

17.     Request for Production:      Unless you unequivocally admitted request 16, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan, including, but not limited to, the front and back of each payment and each bank statement for each financial account maintained by you on which you have had access to funding during that period of time.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome, particularly its call for "data or information that exists in electronic or magnetic form." Plaintiff objects to this request as not properly limited in time. Plaintiff objects to this request as not

proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

18.     Request for Admission:     Admit all payments tendered on the loan were applied in accordance with the terms of the loan.

**RESPONSE:** Denied. Plaintiff cannot admit request 18 because plaintiff does not know how the various mortgage servicers applied the payments that Plaintiff has tendered on the loan.

19.     Interrogatory: Unless you unequivocally admitted request 18, please identify (by date, amount and payee) each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory as seeking information already in the possession of BONYM and Shellpoint.

Subject to the above objections, please see the response to Request for Admission #18.

20.     Request for Production:     Unless you unequivocally admitted request 18, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as seeking information already in the possession of BONYM and Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #18.

21.     Request for Admission:     Admit all charges, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan were applied in accordance with the terms of the loan.

**RESPONSE:** Denied. Plaintiff cannot admit request 21 because plaintiff does not know how the various mortgage servicers applied the various charges listed above.

22.     Interrogatory: Unless you unequivocally admitted request 21, please identify, by date and amount, each and every charge, including but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such charge should have been applied.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory as seeking information already in the possession of BONYM and Shellpoint.

Subject to the above objections, please see the response to Request for Admission #21.

23.     Request for Production:     Unless you have unequivocally admitted request 21, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as seeking information already in the possession of BONYM and Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #21.

24.     Request for Admission:     Admit you were sent notice the loan was in default.

**RESPONSE:** Admit (see Exhibit E).

25.     Request for Admission:     Admit you were sent notice you had at least thirty (30) days to cure the default of the loan.

**RESPONSE:** Admit (see Exhibit E).

26.     Request for Admission:     Admit you were sent notice that, if you did not cure the default, the maturity of the loan would be accelerated.

**RESPONSE:** Admit (see Exhibit E).

27.     Request for Admission:     Admit the document attached as **exhibit E** is a true, correct and complete copy of the notice Bayview sent you informing you the loan was in default, specifying the amount required to cure the default, giving you 30 days to cure the default and advising you that, if you did not cure the default within 30 days, the loan maturity would be accelerated.

**RESPONSE:** Admit.

28.     Request for Admission:     Admit the notice attached as **exhibit E** was mailed via certified mail.

**RESPONSE:** Admit.

29.     Request for Admission:     Admit the notice attached as **exhibit E** was deposited with the United States Postal Service, postage pre-paid.

**RESPONSE:** Denied. Exhibit E does not say this.

30.     Request for Admission:     Admit the notices attached as **exhibit E** were addressed to you at your last known address according to Bayview's records.

**RESPONSE:** Denied. Plaintiff does not know what address "your last known address according to Bayview's records" refers to.

31.     Interrogatory: Unless you unequivocally admitted requests 24-30, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notice attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome.

Subject to the above objections, please see the responses to Request for Admission #29 and Request for Admission #30. Plaintiff has no responsive documents.

32.     Request for Production:     Unless you have unequivocally admitted requests 24-30, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notices attached as **exhibit E** via certified mail, deposited with the United States Postal Services, postage pre-paid and addressed to you at your last known address according to Bayview's records.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome.

Subject to the above objections, please see the responses to Request for Admission #29 and Request for Admission #30. Plaintiff has no responsive documents.

33.     Request for Admission:     Admit you did not cure the default of the loan in the time and manner specified in the notices attached as **exhibit E.**

**RESPONSE:** Admit.

34.     Request for Production:     Unless you have unequivocally admitted request 33, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan in the time and manner specified in **exhibit E.**

**RESPONSE:** n/a

35.     Request for Admission:     Admit the loan is due for January 1, 2015 payment.

**RESPONSE:** Admit.

36.     Request for Admission:     Admit no payment have been made on the loan after the payment satisfying the monthly obligation due December 1, 2014.

**RESPONSE:** Admit.

37.     Request for Admission:     Admit to the date the default has not been cured.

**RESPONSE:** Plaintiff objects to this request as vague and ambiguous because "to date" is not defined. As a result, Plaintiff can neither admit nor deny.

38.     Request for Production:     Unless you have unequivocally admitted request 37, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as vague and ambiguous; "the default of the loan" is not defined. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #37. Plaintiff has no documents responsive to this request.

39.     Request for Admission:     Admit you were sent notice the maturity of the loan was accelerated on February 11, 2016.

**RESPONSE:** Admit.

40.     Request for Admission:     Please admit the notices attached as **exhibit F** are true, correct and complete copies of the February 11, 2016 notices advising you the maturity of the loan was accelerated.

**RESPONSE:** Admit.

41.     Interrogatory: Unless you unequivocally admitted requests 39 and 40, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting you were sent the notices attached as **exhibit F** advising you the maturity of the loan was accelerated.

**ANSWER:** n/a

42.     Request for Production:      Please produce all notices of default and notices of acceleration concerning the loan that you received after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as unduly burdensome. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, Plaintiff is producing all documents in her possession, if any.

43.     Request for Admission:      Admit the statute of limitations to foreclose the deed of trust has not expired.

**RESPONSE:** Denied.

44.     Interrogatory: Unless you unequivocally admitted request 43, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including identifying the date you allege limitations ran, each date you contend that the loan was accelerated and the factual bases supporting the identified acceleration date (i.e. the loan was accelerated on x date because a notice of default was sent on y date and a notice of acceleration was sent on z date).

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory because it asks for information already contained in the original petition (paragraphs 13-24).

45.     Request for Production:      Unless you unequivocally admitted request 43, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including documents identifying the date you allege limitations ran and each date you contend the loan was accelerated, including documents evidencing a notice of default and notice of acceleration.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it asks for information already contained in the original petition (paragraphs 13-24).

46.     Request for Admission:      Admit on May 31, 2018, the court entered a temporary restraining order (**TRO 1**) in the case styled *Deborah Cross v. The Bank of New York Mellon, as trustee, et al.,* No. 2018-36182 (55th Judicial Dist. Ct.).

**RESPONSE:** Admit.

47.      Request for Admission:      Admit TRO 1 expired on June 14, 2018.

**RESPONSE:** Denied.

48.      Request for Production:      Unless you unequivocally admitted requests 46-47, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 1 and it expired on June 14, 2018, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents that are publicly available through the Harris County District Clerk's website.

Subject to the above objections, Plaintiff will produce a copy of "TRO 1."

49.      Request for Admission:      Admit on August 30, 2019, the court entered a temporary restraining order (**TRO 2**) in the case styled *Deborah Cross v. Hughes, Watters & Askanse, LLP, et al.,* No. 2019-61332 (164th Judicial Dist. Ct.).

**RESPONSE:** Admit.

50.      Request for Admission:      Admit on September 11, 2019, the court extended TRO 2.

**RESPONSE:** Admit.

51.      Request for Admission:      Admit TRO 2 expired on September 25, 2019.

**RESPONSE:** Denied.

52.      Request for Production:      Unless you unequivocally admitted requests 49-51, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 2, extended it and and it expired on September 25, 2019, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents that are publicly available through the Harris County District Clerk's website.

Subject to the above objections, Plaintiff will produce a copy of "TRO 2."

53.  Request for Admission:   Admit Shellpoint sent you the letter dated February 14, 2020 attached as **exhibit G.**

**RESPONSE:** Denied.

54.  Request for Admission:   Admit Shellpoint sent you the February 17, 2020 letter attached as **exhibit H.**

**RESPONSE:** Denied.

55.  Request for Production:   Unless you unequivocally admitted requests 53-54, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing correspondence you received from Shellpoint after February 1, 2020 related to the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents already in the possession of Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

56.  Request for Admission:   Admit Bayview sent you the mortgage statement dated January 16, 2020 attached as **exhibit I.**

**RESPONSE:** Denied. The mortgage statement was clearly sent to Sahar Shirazi.

57.  Request for Admission:   Admit Shellpoint sent you the mortgage statement dated February 16, 2020 attached as **exhibit J.**

**RESPONSE:** Denied.

58.  Request for Production:   Unless you unequivocally admitted requests 56-57, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all monthly mortgage statements Bayview and Shellpoint sent you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as directed to the wrong entity – it should be directed to Bayview. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint. Please see the response to Request for Admission #56.

59.  Request for Production:   Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint and Bayview referencing foreclosure, commencing foreclosure or referring to foreclosure sent to you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not properly limited in scope. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, Plaintiff will produce responsive documents in her possession.

60.    Request for Production:    Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint, Bayview, BoNYM, or their attorneys, rescinding or abandoning prior acceleration or acts of acceleration of the loan maturity sent to you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as vague and ambiguous regarding the terms "rescinding" and "abandoning." Documents may be interpreted in different ways. Plaintiff objects to this request as unduly burdensome. Plaintiff objects to this request as assuming facts not in evidence. Plaintiff objects to this request as seeking documents already in the possession of Shellpoint and BoNYM. Plaintiff objects to this request as not proportional to the needs of the case; Shellpoint's ability to obtain responsive documents is greater than Plaintiff's ability.

61.    Request for Admission:    Admit in your petition you request to recover your attorneys' fees incurred in presenting and prosecuting your lawsuit.

**RESPONSE:** Admit.

62.    Interrogatory: In paragraph 23 of the petition, you allege "[n]o non-judicial foreclosure sale or suit for judicial foreclosure, including any applicable tolling, occurred within four years of February 11, 2016." With respect to this allegation, please identify any "applicable tolling" you contend applies, including the tolling event, the dates it tolled limitations and the factual and legal basis supporting your contention the event tolled limitations.

**ANSWER:** Plaintiff objects to this interrogatory because it cannot be answered. Plaintiff objects to this interrogatory because it assumes facts not in evidence. Plaintiff alleges that limitations has *not* been tolled and that there is no applicable tolling.

63.    Request for Production:    Produce for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any "applicable tolling" you contend applies, including documents evidencing the tolling event, the dates it tolled limitations and supporting the factual and legal basis of your contention the event tolled limitations.

**RESPONSE:** See response to interrogatory #62. There are no responsive documents.

64.    Request for Admission:        In paragraph 24 of the petition, you allege "[t]he February 11, 2016 acceleration was never waived or abandoned." With respect to this allegation, please admit the acceleration was waived or abandoned.

**RESPONSE:** Denied.

65.    Interrogatory: Unless you unequivocally admitted request 64, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory because it asks for information already contained in the original petition (paragraphs 13-24). Plaintiff objects to this interrogatory as duplicative.

66.    Request for Production:        Unless you unequivocally admitted request 64, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it asks for information already contained in the original petition (paragraphs 13-24). Plaintiff objects to this request because it seeks documents attached to the original petition. Plaintiff objects to this request as duplicative.

67.    Request for Production:        Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Shellpoint during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with Shellpoint are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint.

68.    Request for Production:        Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Shellpoint you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with Shellpoint are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint.

69.     Request for Production:      Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with BoNYM during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with BoNYM are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of BoNYM.

70.     Request for Production:      Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with BoNYM you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with BoNYM are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of BoNYM.

71.     Request for Production:      Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Bayview during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with Bayview are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are in the possession of Bayview.

72.     Request for Production:      Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Bayview you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with Bayview are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are in the possession of Bayview.

73.     Request for Production:      If your claims rely, in whole or in part, upon any other promise that is not contained in the written loan agreement, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all of the terms and conditions of the agreement of which the promise is a part, including but not limited to, the consideration provided by you in exchange for the promise.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as vague and ambiguous – in particular, the request does not define "promise". Plaintiff objects to this request as a fishing expedition.

74.     Request for Production:      Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all diaries, calendars and/or other lists or notes kept by you regarding or relating in any way to the incident made the basis of this lawsuit and/or events thereafter.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this request as a fishing expedition.

75.     Request for Production:      If you contend you are entitled to recover attorneys' fees in this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all agreements you have with your attorney regarding how your attorney is to be compensated for the work performed by your attorney in this lawsuit.

**RESPONSE:** Plaintiff will produce responsive documents.

76. Request for Production: If you contend you are entitled to recover attorneys' fees this lawsuit, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all time incurred by your attorney(s) or other persons working at his or her direction, a description of the activities for which the time was incurred and the hourly rate charged for the time incurred.

**RESPONSE:** Plaintiff will produce responsive documents.

77. Request for Production: If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing any manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

**RESPONSE:** Plaintiff objects to this request because Plaintiff is not alleging mental anguish or emotional distress.

78. Request for Production: If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, then for each manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing all healthcare treatment you sought or received during the relevant time period due to mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

**RESPONSE:** Plaintiff objects to this request because Plaintiff is not alleging mental anguish or emotional distress.

79. Interrogatory: If you contend you suffered mental anguish or emotional distress as a result  of any act or omission of Shellpoint, identify the name, address and telephone number of each healthcare provider who examined you, provided you with a diagnosis, provided you with a prognosis, or provided you with prescribed treatment, including medicine, for the manifestation or symptom.

**ANSWER:** Plaintiff objects to this interrogatory because Plaintiff is not alleging mental anguish or emotional distress.

## VERIFICATION

STATE OF FLORIDA      §
                          §

COUNTY OF BREVARD     §

BEFORE ME, the undersigned authority, on this day personally appeared **DEBORAH CROSS**, her identity proved to me by valid state issued ID card, who under oath stated that she is the named Plaintiff in the above entitled and numbered cause on whose behalf the foregoing answers to **BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-30CB AND SHELLPOINT MORTGAGE SERVICING** interrogatories are served, that she is legally competent to make this Verification, which is based on her personal knowledge, and that the factual statements contained in the answers are true and correct.

Deborah Cross

SUBSCRIBED AND SWORN TO BEFORE ME on this the 7-10-2020 day of by Deborah Lynn Cross , 2020, to certify which witness my hand and seal of office.
FLDL provided -

Notary Public, State of Florida     Tavish Clawson

Notary Public State of Florida
Tavish Kay Clawson
My Commission GG 354997
Expires 07/19/2023

Commission Expiration

[SEAL]

| | | |
|---|---|---|
| DEBORAH CROSS F.K.A. DEBORAH CROSS-FARRON, | § § § | |
| Plaintiff, | § § | |
| v. | § § § | CIVIL ACTION NO. 4:20-cv-01322 |
| THE BANK OF NEW YORK MELLON F.K.A. THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-30CB; AND NEWREZ LLC D.B.A. SHELLPOINT MORTGAGE SERVICING, | § § § § § § § § § § | |
| Defendants. | § § | |

---

## PLAINTIFF'S RESPONSES TO DEFENDANT BONYM'S
## FIRST DISCOVERY REQUESTS

---

To:  Defendant, Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB, by and through their attorneys of record, Walter McInnis, Monica Summers, and C. Charles Townsend, AKERMAN LLP, 2001 Ross Avenue, Suite 3600, Dallas, Texas 75201.

COMES NOW, Plaintiff Deborah Cross f.k.a Deborah Cross-Farron and serves this, her Responses to Defendant Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB's First Discovery Requests to Plaintiff pursuant to the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement any and all of these Responses under the Federal Rules of Civil Procedure as information becomes available.

EXHIBIT I-4

**DATED:**     **July 13, 2020**                    Respectfully submitted,

**J**EFFREY **J**ACKSON **&** **A**SSOCIATES**, PLLC**

_____
**JEFFREY C. JACKSON**
Texas State Bar No. 24065485
Southern District No. 1024221
2200 North Loop West, Suite 108
Houston, Texas 77018
713-861-8833 (T)
713-682-8866 (F)
jeff@jjacksonllp.com

ATTORNEYS FOR PLAINTIFF
DEBORAH CROSS

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon all counsel of record via Certified Mail, Return Receipt Requested, Facsimile and/or the Court's CM/ECF system on July 13, 2020.

**Walter McInnis**
walter.mcinnis@akerman.com
**C. Charles Townsend**
charles.townsend@akerman.com
AKERMAN LLP
2001 Ross Avenue, Suite 3600
Dallas, Texas 75201
214-720-4300 (T)
214-981-9339 (F)

**Monica Summers**
AKERMAN LLP
112 East Pecan Street, Suite 2750
San Antonio, Texas 78205
210-582-0220 (T)
210-582-0231 (F)
monica.summers@akerman.com

*Attorneys for Defendants The Bank of New York fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB and NewRez LLC dba Shellpoint Mortgage Servicing*

_____
**JEFFREY C. JACKSON**

## RESPONSES TO DISCOVERY REQUESTS

1.  Request for Admission:     Admit you have not been damaged by any act or omission of BoNYM.

**RESPONSE:** Denied.

2.  Interrogatory: Unless you unequivocally admitted request 1, describe both the economic and non-economic damages you seek to recover from BoNYM in detail. Your description should state the total amount of both economic and non-economic damages you seek to recover from BoNYM as well as each category, element or type of damage which is included in the total amount of economic and non-economic damages you seek to recover from BoNYM, the dollar amount that you attribute for each category, element or type of both economic and non-economic damages you seek to recover from BoNYM and how the dollar amount attributed to each category, element or type of both economic and non-economic damages was calculated.

**ANSWER:** Plaintiff objects to this interrogatory as premature. Trial is not until January 2021. Plaintiff objects to this interrogatory as overly broad and unduly burdensome.

3.  Request for Production:     Unless you unequivocally admitted request, please produce for inspection and copying all written documents and tangible things, including data or information that exists in electronic or magnetic form, which underlie or support the economic and non-economic damage calculations you set out in response to interrogatory 2, including, but not limited to, all economic and non-economic damage calculations or summaries which you prepared.  If you are claiming an economic or non-economic damage this request is designed to compel the production of documents evidencing the alleged economic or non-economic damage.

**RESPONSE:** Plaintiff objects to this request as premature. Trial is not until January 2021. Plaintiff objects to this request as overly broad and unduly burdensome.

4.  Request for Admission:     Admit the document attached as **exhibit A** is a true, correct and complete copy of the note.

**RESPONSE:** Denied.

5.  Request for Admission:     Admit the document attached as **exhibit B** is a true, correct and complete copy of the deed of trust.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

6.  Request for Admission:     Admit the document attached as **exhibit C** is a true, correct and complete copy of the assignment of deed of trust.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

7.  Request for Admission:    Admit the document attached as **exhibit D** is a true, correct and complete copy of the loan modification.

**RESPONSE:** Denied to the extent that there are redactions. Otherwise, admit.

8.  Request for Production:    Unless you unequivocally admitted requests 4-7 please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing the note, deed of trust, modifications or any other document executed by you, granting an interest in the property.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome, particularly its call for "data or information that exists in electronic or magnetic form." Plaintiff objects to this request as not proportional to the needs of the case in its call for "any and all written documents and tangible things." Plaintiff objects to this request as seeking documents already in the possession of BoNYM and Shellpoint.

9.  Request for Admission:    Admit BoNYM is the current mortgagee of the deed of trust.

**RESPONSE:** Admit.

10. Request for Admission:    Admit BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011.

**RESPONSE:** Admit.

11. Request for Production:    Unless you unequivocally admitted requests 9 and 10, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting BoNYM was the mortgagee of the deed of trust at all times since September 15, 2011 and/or is the current mortgagee of the deed of trust, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was a mortgagee of the deed of trust during the relevant time period and the dates on which each such person and/or entity was a mortgagee of the deed of trust, and for the person and/or entity you claim is a current mortgagee, documents identifying the date you contend the person and/or entity became a mortgagee of the deed of trust.

**RESPONSE:** n/a

12. Request for Admission:    Admit Shellpoint is the current mortgage servicer of the loan.

**RESPONSE:** Admit.

13.    Request for Admission:     Admit Shellpoint has been the mortgage server of the loan at all times since February 1, 2020.

**RESPONSE:** Admit (see exhibit G).

14.    Request for Admission:     Admit Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020.

**RESPONSE:** Denied. However, Plaintiff admits that Bayview was the mortgage servicer of the loan from May 16, 2015 to January 31, 2020.

15.    Request for Production:     Unless you unequivocally admitted requests 12-14, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and factual bases supporting your reason(s) for not unequivocally admitting Shellpoint is the current mortgage server, has been the mortgage server of the loan at all times since February 1, 2020, and Bayview was the mortgage servicer of the loan from May 15, 2015 to January 31, 2020, including, but not limited to, documents identifying (by name, address and telephone number) each person and/or entity whom you contend was or is a mortgage servicer of the loan during the relevant time period and the dates on which each such person and/or entity was a mortgage servicer of the loan, and for the person and/or entity you claim is the current mortgage servicer of the loan, documents identifying the date you contend the person and/or entity became the current mortgage servicer of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not properly limited in scope.

Subject to the above objections, see the response to Request for Admission #14.

16.    Request for Admission:     Admit the loan is in default.

**RESPONSE:** Denied.

17.    Request for Production:     Unless you unequivocally admitted request 16, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan, including, but not limited to, the front and back of each payment and each bank statement for each financial account maintained by you on which you have had access to funding during that period of time.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome, particularly its call for "data or information that exists in electronic or magnetic form." Plaintiff objects to this request as not properly limited in time. Plaintiff objects to this request as not

proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

18.     Request for Admission:     Admit all payments tendered on the loan were applied in accordance with the terms of the loan.

**RESPONSE:** Denied. Plaintiff cannot admit request 18 because plaintiff does not know how the various mortgage servicers applied the payments that Plaintiff has tendered on the loan.

19.     Interrogatory: Unless you unequivocally admitted request 18, please identify (by date, amount and payee) each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory as seeking information already in the possession of BONYM and Shellpoint.

Subject to the above objections, please see the response to Request for Admission #18.

20.     Request for Production:     Unless you unequivocally admitted request 18, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered as payment on the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such payment should have been applied.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as seeking information already in the possession of BONYM and Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #18.

21.     Request for Admission:     Admit all charges, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan were applied in accordance with the terms of the loan.

**RESPONSE:** Denied. Plaintiff cannot admit request 21 because plaintiff does not know how the various mortgage servicers applied the various charges listed above.

22.     Interrogatory: Unless you unequivocally admitted request 21, please identify, by date and amount, each and every charge, including but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan, including, but not limited to, how you contend each such charge should have been applied.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory as seeking information already in the possession of BONYM and Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #21.

23.     Request for Production:     Unless you have unequivocally admitted request 21, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every charge, including, but not limited to, late charges, inspection charges, escrow charges, and the accrual of unpaid interest, against the loan that was not applied in accordance with the terms of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as seeking information already in the possession of BONYM and Shellpoint.

Subject to the above objections, please see the response to Request for Admission #21.

24.     Request for Admission:     Admit you were sent notice the loan was in default.

**RESPONSE:** Admit (see Exhibit E).

25.     Request for Admission:     Admit you were sent notice you had at least thirty (30) days to cure the default of the loan.

**RESPONSE:**  Admit (see Exhibit E).

26.     Request for Admission:     Admit you were sent notice that, if you did not cure the default, the maturity of the loan would be accelerated.

**RESPONSE:** Admit (see Exhibit E).

27.     Request for Admission:     Admit the document attached as **exhibit E** is a true, correct and complete copy of the notice Bayview sent you informing you the loan was in default, specifying the amount required to cure the default, giving you 30 days to cure the default and advising you that, if you did not cure the default within 30 days, the loan maturity would be accelerated.

**RESPONSE:** Admit.

28.     Request for Admission:     Admit the notice attached as **exhibit E** was mailed via certified mail.

**RESPONSE:** Admit.

29.	Request for Admission:	Admit the notice attached as **exhibit E** was deposited with the United States Postal Service, postage pre-paid.

**RESPONSE:** Denied. Exhibit E does not say this.

30.	Request for Admission:	Admit the notices attached as **exhibit E** were addressed to you at your last known address according to Bayview's records.

**RESPONSE:** Denied. Plaintiff does not know what address "your last known address according to Bayview's records" refers to.

31.	Interrogatory: Unless you unequivocally admitted requests 24-30, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notice attached as **exhibit E** via certified mail, deposited with the United States Postal Service, postage pre-paid and addressed to you at your last known address according to Bayview's records.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome.

Subject to the above objections, please see the responses to Request for Admission #29 and Request for Admission #30. Plaintiff has no responsive documents.

32.	Request for Production:	Unless you have unequivocally admitted requests 24-30, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the factual bases supporting your reasons for not unequivocally admitting Bayview sent you the notices attached as **exhibit E** via certified mail, deposited with the United States Postal Services, postage pre-paid and addressed to you at your last known address according to Bayview's records.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome.

Subject to the above objections, please see the responses to Request for Admission #29 and Request for Admission #30. Plaintiff has no responsive documents.

33.	Request for Admission:	Admit you did not cure the default of the loan in the time and manner specified in the notices attached as **exhibit E.**

**RESPONSE:** Admit.

34.	Request for Production:	Unless you have unequivocally admitted request 33, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan in the time and manner specified in **exhibit E.**

**RESPONSE:** n/a

35.     Request for Admission:        Admit the loan is due for January 1, 2015 payment.

**RESPONSE:** Admit.

36.     Request for Admission:        Admit no payment have been made on the loan after the payment satisfying the monthly obligation due December 1, 2014.

**RESPONSE:** Admit.

37.     Request for Admission:        Admit to date the default has not been cured.

**RESPONSE:** Plaintiff objects to this request as vague and ambiguous because "to date" is not defined. As a result, Plaintiff can neither admit nor deny.

38.     Request for Production:        Unless you have unequivocally admitted request 37, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each and every payment tendered on the loan to cure the default of the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as vague and ambiguous; "the default of the loan" is not defined. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, please see the response to Request for Admission #37. Plaintiff has no documents responsive to this request.

39.     Request for Admission:        Admit you were sent notice the maturity of the loan was accelerated on February 11, 2016.

**RESPONSE:** Admit.

40.     Request for Admission:        Please admit the notices attached as **exhibit F** are true, correct and complete copies of the February 11, 2016 notices advising you the maturity of the loan was accelerated.

**RESPONSE:** Admit.

41.     Interrogatory: Unless you unequivocally admitted requests 39 and 40, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting you were sent the notices attached as **exhibit F** advising you the maturity of the loan was accelerated.

**ANSWER:** n/a

42.   Request for Production:      Please produce all notices of default and notices of acceleration concerning the loan that you received after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as unduly burdensome. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, Plaintiff is producing all documents in her possession, if any.

43.   Request for Admission:      Admit the statute of limitations to foreclose the deed of trust has not expired.

**RESPONSE:** Denied.

44.   Interrogatory: Unless you unequivocally admitted request 43, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including identifying the date you allege limitations ran, each date you contend that the loan was accelerated and the factual bases supporting the identified acceleration date (i.e. the loan was accelerated on x date because a notice of default was sent on y date and a notice of acceleration was sent on z date).

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory because it asks for information already contained in the original petition (paragraphs 13-24).

45.   Request for Production:      Unless you unequivocally admitted request 43, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the statute of limitations has not expired, including documents identifying the date you allege limitations ran and each date you contend the loan was accelerated, including documents evidencing a notice of default and notice of acceleration.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it asks for information already contained in the original petition (paragraphs 13-24).

46.   Request for Admission:      Admit on May 31, 2018, the court entered a temporary restraining order (**TRO 1**) in the case styled *Deborah Cross v. The Bank of New York Mellon, as trustee, et al.,* No. 2018-36182 (55th Judicial Dist. Ct.).

**RESPONSE:** Admit.

47.     Request for Admission:          Admit TRO 1 expired on June 14, 2018.

**RESPONSE:** Denied.

48.     Request for Production:        Unless you unequivocally admitted requests 46-47, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 1 and it expired on June 14, 2018, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents that are publicly available through the Harris County District Clerk's website.

Subject to the above objections, Plaintiff will produce a copy of "TRO 1."

49.     Request for Admission:          Admit on August 30, 2019, the court entered a temporary restraining order (**TRO 2**) in the case styled *Deborah Cross v. Hughes, Watters & Askanse, LLP, et al.,* No. 2019-61332 (164th Judicial Dist. Ct.).

**RESPONSE:** Admit.

50.     Request for Admission:          Admit on September 11, 2019, the court extended TRO 2.

**RESPONSE:** Admit.

51.     Request for Admission:          Admit TRO 2 expired on September 25, 2019.

**RESPONSE:** Denied.

52.     Request for Production:        Unless you unequivocally admitted requests 49-51, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the court entered TRO 2, extended it and and it expired on September 25, 2019, including all orders entered by any court referring to the mortgagee's or servicer's ability or right to foreclose the deed of trust.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents that are publicly available through the Harris County District Clerk's website.

Subject to the above objections, Plaintiff will produce a copy of "TRO 2."

53. Request for Admission: Admit Shellpoint sent you the letter dated February 14, 2020 attached as **exhibit G.**

**RESPONSE:** Denied.

54. Request for Admission: Admit Shellpoint sent you the February 17, 2020 letter attached as **exhibit H.**

**RESPONSE:** Denied.

55. Request for Production: Unless you unequivocally admitted requests 53-54, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing correspondence you received from Shellpoint after February 1, 2020 related to the loan.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it seeks documents already in the possession of Shellpoint. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

56. Request for Admission: Admit Bayview sent you the mortgage statement dated January 16, 2020 attached as **exhibit I.**

**RESPONSE:** Denied. The mortgage statement was clearly sent to Sahar Shirazi.

57. Request for Admission: Admit Shellpoint sent you the mortgage statement dated February 16, 2020 attached as **exhibit J.**

**RESPONSE:** Denied.

58. Request for Production: Unless you unequivocally admitted requests 56-57, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all monthly mortgage statements Bayview and Shellpoint sent you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as directed to the wrong entity – it should be directed to Bayview. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint. Please see the response to Request for Admission #56.

59. Request for Production: Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint and Bayview referencing foreclosure, commencing foreclosure or referring to foreclosure sent to you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not properly limited in scope. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

Subject to the above objections, Plaintiff will produce responsive documents in her possession.

60.     Request for Production:     Produce, for inspection and copying, true, correct and complete copies of letters from Shellpoint, Bayview, BoNYM, or their attorneys, rescinding or abandoning prior acceleration or acts of acceleration of the loan maturity sent to you after February 11, 2016.

**RESPONSE:** Plaintiff objects to this request as vague and ambiguous regarding the terms "rescinding" and "abandoning." Documents may be interpreted in different ways. Plaintiff objects to this request as unduly burdensome. Plaintiff objects to this request as assuming facts not in evidence. Plaintiff objects to this request as seeking documents already in the possession of Shellpoint and BoNYM. Plaintiff objects to this request as not proportional to the needs of the case; BoNYM's ability to obtain responsive documents is greater than Plaintiff's ability.

61.     Request for Admission:     Admit in your petition you request to recover your attorneys' fees incurred in presenting and prosecuting your lawsuit.

**RESPONSE:** Admit.

62.     Interrogatory: In paragraph 23 of the petition, you allege "[n]o non-judicial foreclosure sale or suit for judicial foreclosure, including any applicable tolling, occurred within four years of February 11, 2016." With respect to this allegation, please identify any "applicable tolling" you contend applies, including the tolling event, the dates it tolled limitations and the factual and legal basis supporting your contention the event tolled limitations.

**ANSWER:** Plaintiff objects to this interrogatory because it cannot be answered. Plaintiff objects to this interrogatory because it assumes facts not in evidence. Plaintiff alleges that limitations has *not* been tolled and that there is no applicable tolling.

63.     Request for Production:     Produce for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any "applicable tolling" you contend applies, including documents evidencing the tolling event, the dates it tolled limitations and supporting the factual and legal basis of your contention the event tolled limitations.

**RESPONSE:** See response to interrogatory #62. There are no responsive documents.

64. **Request for Admission:** In paragraph 24 of the petition, you allege "[t]he February 11, 2016 acceleration was never waived or abandoned." With respect to this allegation, please admit the acceleration was waived or abandoned.

**RESPONSE:** Denied.

65. **Interrogatory:** Unless you unequivocally admitted request 64, please state the legal theories and describe, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

**ANSWER:** Plaintiff objects to this interrogatory as overly broad and unduly burdensome. Plaintiff objects to this interrogatory because it asks for information already contained in the original petition (paragraphs 13-24). Plaintiff objects to this interrogatory as duplicative.

66. **Request for Production:** Unless you unequivocally admitted request 64, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing the legal theories and describing, in general, the factual bases supporting your reasons for not unequivocally admitting the acceleration was waived or abandoned.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request because it asks for information already contained in the original petition (paragraphs 13-24). Plaintiff objects to this request because it seeks documents attached to the original petition. Plaintiff objects to this request as duplicative.

67. **Request for Production:** Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Shellpoint during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with Shellpoint are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint.

68. **Request for Production:** Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Shellpoint you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with Shellpoint are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of Shellpoint.

69. Request for Production: Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with BoNYM during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with BoNYM are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of BoNYM.

70. Request for Production: Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with BoNYM you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with BoNYM are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are already in the possession of BoNYM.

71. Request for Production: Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each communication you had with Bayview during the relevant time period you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's communications with Bayview are open to interpretation – any given communication may, or may not, support the allegations and defenses that Plaintiff made in the petition. Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are in the possession of Bayview.

72.    Request for Production:    Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing each contract, agreement or understanding you had with Bayview you rely upon in support of the allegations and/or defenses made by you in the petition.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as ambiguous. Plaintiff's agreements or understandings with Bayview are open to interpretation – any given agreement or understanding may, or may not, support the allegations and defenses that Plaintiff made in the petition.  Plaintiff objects to this request as a fishing expedition. Plaintiff objects to this request because responsive documents are in the possession of Bayview.

73.    Request for Production:    If your claims rely, in whole or in part, upon any other promise that is not contained in the written loan agreement, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing all of the terms and conditions of the agreement of which the promise is a part, including but not limited to, the consideration provided by you in exchange for the promise.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as vague and ambiguous – in particular, the request does not define "promise". Plaintiff objects to this request as a fishing expedition.

74.    Request for Production:    Please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all diaries, calendars and/or other lists or notes kept by you regarding or relating in any way to the incident made the basis of this lawsuit and/or events thereafter.

**RESPONSE:** Plaintiff objects to this request as overly broad and unduly burdensome. Plaintiff objects to this request as not limited in time or scope. Plaintiff objects to this request as vague and ambiguous. Plaintiff objects to this request as a fishing expedition.

75.    Request for Production:    If you contend you are entitled to recover attorneys' fees in this lawsuit, please produce, for inspection and copying, true, correct, and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all agreements you have with your attorney regarding how your attorney is to be compensated for the work performed by your attorney in this lawsuit.

**RESPONSE:** Plaintiff will produce responsive documents.

76. **Request for Production:** If you contend you are entitled to recover attorneys' fees this lawsuit, please produce, for inspection and copying, true, correct and complete copies of any and all written documents and/or tangible things, including data or information that exists in electronic or magnetic form, evidencing any and all time incurred by your attorney(s) or other persons working at his or her direction, a description of the activities for which the time was incurred and the hourly rate charged for the time incurred.

**RESPONSE:** Plaintiff will produce responsive documents.

77. **Request for Production:** If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing any manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

**RESPONSE:** Plaintiff objects to this request because Plaintiff is not alleging mental anguish or emotional distress.

78. **Request for Production:** If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, then for each manifestation or symptom of mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint, produce all documents and tangible things evidencing all healthcare treatment you sought or received during the relevant time period due to mental anguish or emotional distress you contend you suffered as a result of any act or omission of Shellpoint.

**RESPONSE:** Plaintiff objects to this request because Plaintiff is not alleging mental anguish or emotional distress.

79. **Interrogatory:** If you contend you suffered mental anguish or emotional distress as a result of any act or omission of Shellpoint, identify the name, address and telephone number of each healthcare provider who examined you, provided you with a diagnosis, provided you with a prognosis, or provided you with prescribed treatment, including medicine, for the manifestation or symptom.

**ANSWER:** Plaintiff objects to this interrogatory because Plaintiff is not alleging mental anguish or emotional distress.

## VERIFICATION

STATE OF FLORIDA       §
                        §

COUNTY OF BREVARD    §

BEFORE ME, the undersigned authority, on this day personally appeared **DEBORAH CROSS**, her identity proved to me by valid state issued ID card, who under oath stated that she is the named Plaintiff in the above entitled and numbered cause on whose behalf the foregoing answers to **BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2004-30CB AND SHELLPOINT MORTGAGE SERVICING** interrogatories are served, that she is legally competent to make this Verification, which is based on her personal knowledge, and that the factual statements contained in the answers are true and correct.

_Deborah Cross_

Deborah Cross

SUBSCRIBED AND SWORN TO BEFORE ME on this the 7-10-2020 day of by Deborah Lynn Cross , 2020, to certify which witness my hand and seal of office.
FLDL provided-

_Tavish Clawson_

Notary Public, State of Florida     Tavish Clawson

Notary Public State of Florida
Tavish Kay Clawson
My Commission GG 354997
Expires 07/18/2023

Commission Expiration

[SEAL]



Monica Summers

Akerman LLP
112 East Pecan Street
Suite 2750
San Antonio, TX  78205

T: 210 582 0220
F: 210 582 0231

April 7, 2020

**VIA EMAIL**
**AND CERTIFIED MAIL / RRR**
**NO. 9414 7266 9904 2166 2146 61**
Deborah Cross
c/o Jeffrey C. Jackson
Jeffrey Jackson & Associates, PLLC
2200 North Loop West, Suite 108
Houston, Texas 77018

Re:    **Loan No:**    **XXXXXX5158**
        **Property:**    **16515 Obsidian Drive, Houston, Texas 77095**

### RESCISSION OF ACCELERATION OF LOAN MATURITY

Akerman represents NewRez LLC dba Shellpoint Mortgage Servicing (**Shellpoint**) and The Bank of New York Mellon fka The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2004-30CB (**BoNYM**) in connection with the above-referenced loan. Our clients authorized us to send this rescission of acceleration of loan maturity on their behalf.

Shellpoint is the mortgage servicer for BoNYM, mortgagee of the deed of trust dated November 2, 2004 executed by Deborah Cross-Farron and recorded in the official public records of Harris County, Texas on November 12, 2004 as instrument Y058359, granting a lien against the property at 16515 Obsidian Drive, Houston, Texas 77095, and more particularly described as:

```
LOT THIRTY-SEVEN (37), IN BLOCK ONE (1), OF STONE GATE, SECTION
NINE (9), A SUBDIVISION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE
MAP OR PLAT THEREOF RECORDED UNDER FILM CODE NO. 494103 OF THE
MAP RECORDS OF HARRIS COUNTY, TEXAS.
```

The deed of trust secures repayment of the note dated November 2, 2004 executed by Deborah Cross-Farron reflecting an agreement to repay the original amount of $255,440, plus interest.

The purpose of this letter is to provide you formal notice our client, on behalf of BoNYM and Shellpoint's predecessors including but not limited to Bayview Loan Servicing, LLC and all other prior servicers, rescinds and abandons any prior acceleration or act of acceleration of the loan, including but not limited to any notices of acceleration served upon Ms. Cross prior to today's date.

akerman.com

EXHIBIT I-5

In accordance with Texas Civil Practice and Remedies Code section 16.038, any cause of action that accrued prior to this letter is extinguished and the running of the related limitations period is terminated.  Any prior acceleration of the note's maturity is hereby rescinded as if no acceleration had ever occurred.  This notice does not affect the rights of our clients or their successors or assigns to accelerate the maturity date of the loan in the future.

This rescission should not be interpreted, and is intended in no way to act, as a waiver of any rights our clients have, or their respective successors or assigns may have, in the loan, including the right to accelerate the maturity of indebtedness or foreclose the security instrument securing the indebtedness in the future.  This rescission should not be interpreted, and is intended in no way to act, as a statement regarding the status of the loan as accelerated or not prior to the date of this letter, and merely reflects that to the extent the loan was accelerated, the acceleration is hereby rescinded and abandoned.  Our clients expressly reserve the right to accelerate the maturity of the indebtedness or to foreclose the security instrument securing the indebtedness in the future.

Sincerely,

Monica Summers