United States District Court
Southern District of Texas

**ENTERED**

June 23, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEBORAH CROSS, §
§
               Plaintiff, §
§
v. § CIVIL ACTION NO. H-20-1322
§
THE BANK OF NEW YORK MELLON, §
et al., §
§
               Defendants. §

## MEMORANDUM OPINION AND ORDER

Plaintiff Deborah Cross ("Plaintiff") sued the Bank of
New York Mellon ("BONYM") and NewRez LLC d/b/a Shellpoint Mortgage
Servicing ("Shellpoint") (collectively, "Defendants") in the 11th
Judicial District of Harris County, Texas, alleging that Defendants
violated the statute of limitations to foreclose on her property
located at 16515 Obsidian Drive, Houston, TX 77095 (the
"Property").[1]  Defendants claim power of sale over the Property
under a Deed of Trust.[2]  Plaintiff requests a declaration that any
foreclosure sale under the Deed of Trust is void as time-barred and
that title is quieted in her name.[3]  BONYM asserts counterclaims

---

[1]Plaintiff's Original Petition, Exhibit 1 to Defendants'
Removal Notice, Docket Entry No. 1-2, p. 2 ¶ 1; p. 3 ¶ 8.  For
purposes of identification all page citations refer to the page
number imprinted at the top of the page by the court's electronic
filing system, CM/ECF.

[2]Defendants Shellpoint and BONYM's Summary Judgment Motion
("Defendants' MSJ"), Docket Entry No. 27, p. 9.

[3]Plaintiff's Original Petition, Exhibit 1 to Defendants'
Removal Notice, Docket Entry No. 1-2, pp. 5-6 ¶¶ 16-31.

for (1) breach of contract, (2) foreclosure, (3) in the alternative, equitable subrogation, and (4) in the alternative, contractual subrogation.[4]

Both parties seek summary judgment on Plaintiff's claims and BONYM's counterclaims. Pending before the court are Defendants' MSJ (Docket Entry No. 27) and Plaintiff's Motion for Partial Summary Judgment ("Plaintiff's MPSJ") (Docket Entry No. 28). For the reasons set forth below, Plaintiff's MPSJ will be denied, and Defendants' MSJ will be granted as to BONYM and denied as moot as to Shellpoint.

## I. **Factual and Procedural Background**

On November 2, 2004, Plaintiff executed a note (the "Note") promising to repay a loan from New Horizon Financial, Ltd. ("New Horizon") in the principal amount of $255,440, plus interest.[5] Plaintiff secured her obligation to repay the Note by executing a Deed of Trust that granted New Horizon a lien against the Property with a power of sale.[6] The Note required Plaintiff to pay monthly installments beginning December 1, 2004, and continuing until

---

[4]BONYM's Second Amended Counterclaims, Docket Entry No. 21, pp. 3-7 ¶¶ 15-29.

[5]Oral Deposition of Deborah Cross ("Cross Depo"), Exhibit A to Defendants' MSJ, Docket Entry No. 27, p. 30 lines 19-25; p. 31 lines 1-19; Note, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 27, p. 37.

[6]Cross Depo, Exhibit A to Defendants' MSJ, Docket Entry No. 27, p. 31 lines 20-25 through p. 33 line 1; Deed of Trust, Exhibit A-4 to Defendants' MSJ, Docket Entry No. 27, pp. 41-43.

-2-

November 1, 2034.[7]  On September 15, 2011, the Deed of Trust was assigned to BONYM, which remains the Deed's beneficiary.[8]

Plaintiff defaulted by failing to make a payment on January 1, 2015.[9]  On October 21, 2015, Bayview Loan Servicing, LLC ("Bayview"), acting as mortgage servicer for BONYM, sent Plaintiff a letter entitled "Notice of Default and Intent to Accelerate," which warned her that if she did not cure a $22,885.06 default by November 20, 2015, Bayview would "take steps to terminate [her] ownership in the property by a foreclosure proceeding or other action to seize the property."[10]  Plaintiff did not cure the default.[11]  On February 11, 2016, Bayview's attorney sent Plaintiff a notice stating that Bayview had "accelerated" the maturity of the loan, meaning that the entire balance of the loan was immediately

---

[7]Note, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 27, p. 37 ¶ 3(A).

[8]Declaration of Jean Knowles ("Knowles Declaration"), Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 140 ¶ 6; Assignment of Deed of Trust, Exhibit D to Defendants' MSJ, Docket Entry No. 27, p. 146; Plaintiff's Responses to Defendant Shellpoint's First Discovery Requests ("Plaintiff's Responses"), Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 406 ¶¶ 9-10.

[9]Knowles Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 140 ¶ 8; Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 411 ¶¶ 35-36.

[10]Notice of Default and Intent to Accelerate, Exhibit B-7 to Defendants' MSJ, Docket Entry No. 27, p. 121; Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 409 ¶¶ 24-28.

[11]Knowles Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 140 ¶ 8; Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 411 ¶¶ 35-36.

due and payable in full.[12]  Enclosed with the letter was a notice advising that the foreclosure sale of the Property would take place on April 5, 2016.[13]  This scheduled foreclosure did not take place.

On April 18, 2018, a second notice of acceleration and notice of sale was sent to Plaintiff.[14]  BONYM and Bayview again sought to foreclose on the Property, this time scheduling the foreclosure sale for June 5, 2018.[15]  On May 31, 2018, Plaintiff sued to stop foreclosure, and the 55th Judicial District Court of Harris County, Texas, entered a Temporary Restraining Order ("TRO") enjoining BONYM and Bayview from foreclosing.[16]  The TRO expired twelve days later, on June 11, 2018.[17]  BONYM and Bayview removed the case to

---

[12]Videoconferencing Deposition of Jean Knowles, Corporate Representative of BONY-MELLON ("Knowles Depo"), Exhibit B to Defendants' MSJ, Docket Entry No. 27, p. 90 lines 7-25 through p. 91 lines 1-16; Notice of Maturity/Acceleration of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale dated February 11, 2016 ("2016 Notice of Maturity/Acceleration"), Exhibit B-8 to Defendants' MSJ, Docket Entry No. 27, p. 125; Plaintiff's Responses to Defendants' Discovery Requests, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 411 ¶¶ 39-40.

[13]2016 Notice of Maturity/Acceleration, Exhibit B-8 to Defendants' MSJ, Docket Entry No. 27, p. 125 ¶ 3.

[14]Notice of Maturity/Acceleration of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale, dated April 18, 2018 ("2018 Notice of Maturity/Acceleration"), Exhibit 8 to Plaintiff's Combined Response to Defendants' Motion for Summary Judgment and Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Plaintiff's Combined Response"), Docket Entry No. 34-1, p. 50.

[15]Id.

[16]Temporary Restraining Order and Order Setting Hearing for Temporary Injunction, Exhibit E to Defendants' MSJ, Docket Entry No. 27, pp. 147-48.

[17]Id.

this court and moved to dismiss Plaintiff's suit for failure to state a claim.   <u>Cross v. Bank of New York Mellon as Trustee CWALT 2004-30B,</u> 790 F. App'x 647 (mem.) (5th Cir. 2020).   The court granted the motion to dismiss, and Plaintiff appealed.   <u>Id.</u>   On January 22, 2020, the Fifth Circuit upheld the dismissal.   <u>Id.</u>

On May 13, 2019, a third notice of acceleration and notice of sale was sent to Plaintiff.[18]   On August 1, 2019, while the 2018 appeal was still pending, agents for Bayview sent Plaintiff a notice stating that a foreclosure sale was scheduled for September 3, 2019.[19]   On August 29, 2019, Plaintiff filed an application with the 164th Judicial District Court of Harris County, Texas, seeking an emergency temporary injunction and restraining order against Hughes, Watters & Askanse, LLP on behalf of Bayview Loan Servicing, LLC to prevent foreclosure.[20]   The court granted Plaintiff's application, finding that Plaintiff was entitled to a temporary injunction and restraining order forbidding

---

[18]Notice of Maturity/Acceleration of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale, dated May 13, 2019 ("May 2019 Notice of Maturity/Acceleration"), Exhibit 9 to Plaintiff's Combined Response, Docket Entry No. 34-1, p. 69.

[19]Notice of Maturity/Acceleration of Texas Recourse Loan and Enclosing Notice of Substitute Trustee's Sale, dated August 1, 2019, attached to Exhibit F to Defendants' MSJ, Docket Entry No. 27, p. 183.

[20]Plaintiff's Original Petition, Application for Emergency Ex Parte Temporary Injunction and Restraining Order, Exhibit F to Defendants' MSJ, Docket Entry No. 27, p. 149.

Bayview's agents from foreclosing on the Property.[21]    On September 11, 2019, the court extended the temporary injunction and restraining order.[22]    Plaintiff non-suited her claims without prejudice on September 23, 2019.[23]

Servicing of the loan transferred from Bayview to Shellpoint effective February 1, 2020.[24]  On February 13, 2020, Shellpoint's litigation department reviewed Plaintiff's loan and changed the coding of the loan in Shellpoint's data system from "foreclosure" to "litigation."[25]  This change in coding stopped the foreclosure process and prevented Shellpoint from sending foreclosure letters or making calls to Plaintiff related to foreclosure.[26]  Shellpoint has since confirmed that it did not treat Plaintiff's loan as

---

[21]Temporary Injunction and Restraining Order and Order Setting Hearing for Temporary Orders, attached to Exhibit F to Defendants' MSJ, Docket Entry No. 27, p. 194.

[22]Extended Temporary Injunction and Restraining Order and Order Setting Hearing for Temporary Orders, Exhibit G to Defendants' MSJ, Docket Entry No. 27, p. 200.

[23]Plaintiff's Notice of Nonsuit Without Prejudice, Exhibit H to Defendants' MSJ, Docket Entry No. 27, p. 203.

[24]Defendants' MSJ, Docket Entry No. 27, p. 11; Letter from Shellpoint Mortgage Servicing to Deborah Cross-Farron (the "Shellpoint Hello Letter"), Exhibit B-4 to Defendants' MSJ, Docket Entry No. 27, p. 107; Knowles Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 140 ¶ 10; Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, pp. 406-07 ¶¶ 12-13.

[25]Knowles Depo, Exhibit B to Defendants' MSJ, Docket Entry No. 27, p. 75 lines 14-23; p. 79 lines 1-3.

[26]Id.

accelerated and that the "acceleration tab" in Shellpoint's data system had never been checked.[27]

On February 14, 2020, Shellpoint sent Plaintiff a letter stating that Shellpoint was now servicing her loan and requesting that she "use the attached coupon to mail us a check for your first payment."[28]  The coupon listed $2,238.51 as the monthly payment amount, and the letter promised that Shellpoint would send "regular monthly statements[.]"[29] Attached to the letter was a page entitled "Helping You Manage Your Mortgage," which stated that the term of the mortgage was 360 months and that the loan's maturity date was November 1, 2034.[30]

Two days later Shellpoint notified Plaintiff that the total amount due was $231,949.74.[31]  Unlike Bayview's previous monthly statement, Shellpoint's statement did not indicate the accelerated amount owed.[32]  Bayview's mortgage statement also warned Plaintiff that Bayview had "made the first notice or filing required by

---

[27]Id. at p. 76 lines 1-8; p. 82 lines 11-25; p. 86 lines 7-15.

[28]Shellpoint Hello Letter, Exhibit B-4 to Defendants' MSJ, Docket Entry No. 27, p. 107.

[29]Id.

[30]Id. at 109.

[31]Shellpoint Mortgage Statement, Exhibit B-13 to Defendants' MSJ, Docket Entry No. 27, p. 132.

[32]Bayview Mortgage Statement, Exhibit B-14 to Defendants' MSJ, Docket Entry No. 27, p. 136 (listing $389,846.52 as accelerated amount).

applicable law to start the judicial or non-judicial foreclosure process[,]"[33] while Shellpoint's statement contained no such warning.[34]

On February 17, 2020, Shellpoint sent Plaintiff two letters. The first was a loss mitigation solicitation letter notifying Plaintiff of available assistance given her default.[35] This letter stated that the "total amount due is $229,184.76" and that Shellpoint "[had] a right to invoke foreclosure based on the terms of [Plaintiff's] mortgage contract."[36] A second letter warned Plaintiff that her loan was in default and stated that because she had "not taken steps to resolve the delinquency," Shellpoint had been instructed by the owner of her mortgage loan to commence foreclosure.[37]

On March 19, 2020, Plaintiff sued Defendants in the 11th Judicial District Court of Harris County, Texas, seeking to quiet

---

[33]Bayview Mortgage Statement, Exhibit B-14 to Defendants' MSJ, Docket Entry No. 27, p. 136.

[34]See Shellpoint Mortgage Statement, Exhibit B-13 to Defendants' MSJ, Docket Entry No. 27, p. 132.

[35]Knowles Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 141 ¶ 12; Letter from Shellpoint Mortgage Servicing to Deborah Cross-Farron, Exhibit C-1 to Defendants' MSJ, Docket Entry No. 27, p. 142.

[36]Letter from Shellpoint Mortgage Servicing to Deborah Cross-Farron dated February 17, 2020, Exhibit C-1 to Defendants' MSJ, Docket Entry No. 27, p. 142.

[37]Letter from Shellpoint Mortgage Servicing to Deborah Cross-Farron, dated February 17, 2020, Exhibit B-12 to Defendants' MSJ, Docket Entry No. 27, p. 129.

title and to obtain a declaratory judgment that the statute of limitations to foreclose had expired.[38]    On April 13, 2020, Defendants answered, BONYM counterclaimed against Plaintiff for breach of contract and foreclosure, and Defendants removed the case to this court.[39]

Discovery closed on February 25, 2021.[40]    Defendants filed Defendants' MSJ on March 9, 2021.[41]    Plaintiff filed Plaintiff's MPSJ the same day.[42]    Defendants responded to Plaintiff's MPSJ on March 30, 2021.[43]    Plaintiff filed her response to Defendants' MSJ on April 7, 2021.[44]    Defendants replied on April 21, 2021.[45]

## II.  <u>Standard of Review</u>

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant

---

[38]Plaintiff's Original Petition, Exhibit 1 to Defendants' Removal Notice, Docket Entry No. 1-2, pp. 3-4 ¶ 8.

[39]Defendants' Answer and Counterclaims, Exhibit 4 to Defendants' Removal Notice, Docket Entry No. 1-5.

[40]Order on Joint Motion for Continuance and Amendment of Scheduling Order, Docket Entry No. 26.

[41]Defendants' MSJ, Docket Entry No. 27.

[42]Plaintiff's MPSJ, Docket Entry No. 28.

[43]Defendants Shellpoint and BONYM's Response to Plaintiff's Partial Motion for Summary Judgment ("Defendants' Response"), Docket Entry No. 31.

[44]Plaintiff's Combined Response, Docket Entry No. 34.

[45]Defendants Shellpoint and BONYM's Reply in Support of Summary Judgment Motion ("Defendants' Reply"), Docket Entry No. 37.

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Disputes about material facts are genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510
(1986).  The moving party is entitled to judgment as a matter of
law if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has
the burden of proof."  Celotex Corp. v. Catrett, 106 S. Ct. 2548,
2552 (1986).

A party moving for summary judgment "must 'demonstrate the
absence of a genuine issue of material fact,' but need not negate
the elements of the nonmovant's case."  Little v. Liquid Air Corp.,
37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting
Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet
this initial burden, the motion must be denied, regardless of the
nonmovant's response."  Id.  If the moving party meets this burden,
Rule 56© requires the nonmovant to go beyond the pleadings and show
by affidavits, depositions, answers to interrogatories, admissions
on file, or other admissible evidence that specific facts exist
over which there is a genuine issue for trial.  Id.  The nonmovant
"must do more than simply show that there is some metaphysical
doubt as to the material facts."  Matsushita Electric Industrial
Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable
inferences in favor of the nonmoving party, and it may not make

credibility determinations or weigh the evidence." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

### III.   <u>Plaintiff's Quiet Title and Declaratory Judgment Claims</u>

Plaintiff argues that she is entitled to judgment as a matter of law on her claims for quiet title and declaratory relief.[46]

### A.   Plaintiff's Declaratory Judgment Claim Is Redundant

Plaintiff alleged in her Original Petition that title should be quieted in her name because Defendants' claim to the Property is "invalid and void due to the expiration of the statute of limitations to foreclose."[47]   Plaintiff also sought a declaratory judgment that "any foreclosure sale under the Deed of Trust would be void as time-barred and that the Deed of Trust is void and is removed from the title record for the Property."[48]   Plaintiff argues that "[q]uiet title and declaratory judgment are both appropriate causes of action to void a mortgage Deed of Trust for violation of

---

[46]Plaintiff's MPSJ, Docket Entry No. 28, p. 4 ¶ 6.

[47]Plaintiff's Original Petition, Exhibit 1 to Defendants' Removal Notice, Docket Entry No. 1-2, p. 6 ¶ 29.

[48]<u>Id.</u>

the statute of limitations."[49]  Defendants argue that Plaintiff's declaratory judgment claim is redundant of her quiet title claim.[50]

A suit to quiet title exists "'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'"  Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 388 (Tex. App. -- Houston [1st Dist.] 2012, pet. denied) (quoting Bell v. Ott, 606 S.W.2d 942, 952 (Tex. Civ. App. -- Waco 1980, writ ref'd n.r.e.)).  The plaintiff has the burden of proof to establish his superior equity and right to relief.  Id.  To do so "the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable."  Vernon v. Perrien, 390 S.W.3d 47, 61-62 (Tex. App. -- El Paso 2012, no pet.) (citation omitted).

"When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act [(the "DJA")], 28 U.S.C. §§ 2201, 2202."  Redwood Resort Properties, LLC v. Holmes Co. Limited, Civil Action No. 3:06-CV-1022-D, 2007 WL 1266060, at *4 (N.D. Tex. April 30, 2007) (citing i2 Technologies US, Inc. v. Lanell, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002)).  The DJA authorizes federal courts to "declare

---

[49]Plaintiff's MPSJ, Docket Entry No. 28, p. 4 ¶ 7.

[50]Defendants' Response, Docket Entry No. 31, p. 13.

the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The DJA "is merely a procedural device and does not create any substantive rights or causes of action." Smitherman v. Bayview Loan Servicing, LLC, 727 F. App'x 787, 792 (5th Cir. 2018) (citing cases). Accordingly, when a plaintiff brings an independent cause of action "along with" a request for declaratory judgment, "'the latter ground is merely a theory of recovery for the former.'" Id. (quoting Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd., 99 F.3d 746, 752 n.3 (5th Cir. 1996)).

Plaintiff's request for a declaratory judgment was converted into an action under the DJA when Defendants removed the case to federal court. See Redwood Resort Properties, 2007 WL 1266060, at *4. The request rests on the same argument as Plaintiff's quiet title claim: limitations has expired and it is too late for Defendants to foreclose. The court will therefore treat Plaintiff's request for declaratory judgment as "merely a theory of recovery" for her quiet title claim. See Smitherman, 727 F. App'x at 792.

B.   **Plaintiff's Lawsuits and TROs Tolled Limitations**

Plaintiff argues that title should be quieted in her name because the running of limitations on foreclosure has voided the mortgage lien encumbering the Property.[51] Defendants argue that

---

[51]Plaintiff's MPSJ, Docket Entry No. 28, p. 2 ¶ 2.

Plaintiff's lawsuits and the resulting TROs tolled limitations to March 12, 2020.[52]

In Texas a person must bring suit for the foreclosure of a real property lien not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.035(a). "On the expiration of the four-year limitations period, the real property lien and a power of sale to enforce [it] become void." Tex. Civ. Prac. & Rem. Code § 16.035(d). "Ordinarily, 'the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment.'" Stewart v. United States Bank National Association, 107 F. Supp. 3d 705, 708 (S.D. Tex. 2015) (quoting Tex. Civ. Prac. & Rem. Code § 16.035(e)). "However, if the noteholder accelerates payment according to an optional acceleration clause in the note, the limitations period begins to run on the date the note is accelerated." Id. (citing Callan v. Deutsche Bank Trust Co. Americas, 11 F. Supp. 3d 761, 767 (S.D. Tex. 2014)). Acceleration requires (1) notice of intent to accelerate and (2) notice of acceleration. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). Both notices must be "'clear and unequivocal.'" Id. (quoting Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 893 (Tex. 1991)).

Bayview gave Plaintiff notice of intent to accelerate on October 21, 2015,[53] and notice of acceleration on February 11,

_____

[52]Defendants' MSJ, Docket Entry No. 27, p. 14.

[53]Notice of Default and Intent to Accelerate, Exhibit B-7 to Defendants' MSJ, Docket Entry No. 27, p. 121.

2016.[54] Defendants' right to seek judicial foreclosure thus accrued on February 11, 2016. <u>See Stewart,</u> 107 F. Supp. 3d at 708. Without any tolling or abandonment limitations would have expired four years later on February 11, 2020. <u>See</u> Tex. Civ. Prac. & Rem. Code § 16.035.

"'[W]here the exercise of a lawful right is restrained by an injunction, the statute of limitations is tolled during the period of such restraint[.]'" <u>Jorrie v. Bank of New York Mellon Trust Co., N.A.,</u> No. 5:16-CV-490-DAE, 2017 WL 6403054, at *7 (W.D. Tex. Sept. 11, 2017), aff'd, 740 F. App'x 809 (5th Cir. 2018). Plaintiff sued and obtained a TRO to prevent foreclosure in 2018 and again in 2019.[55] The 2018 TRO lasted eleven days (May 31 to June 11, 2018),[56] and the 2019 TRO lasted nineteen days (August 30 to September 18, 2019).[57] During this cumulative thirty-day period, "the exercise of [Defendants'] lawful right" to foreclose on the Property was "restrained by [an] injunction," and thus the statute

---

[54]2016 Notice of Maturity/Acceleration, Exhibit B-8 to Defendants' MSJ, Docket Entry No. 27, p. 125.

[55]Temporary Restraining Order and Order Setting Hearing for Temporary Injunction, Exhibit E to Defendants' MSJ, Docket Entry No. 27, pp. 147-48; Temporary Injunction and Restraining Order and Order Setting Hearing for Temporary Orders, attached to Exhibit F to Defendants' MSJ, Docket Entry No. 27, p. 194.

[56]Temporary Restraining Order and Order Setting Hearing for Temporary Injunction, Exhibit E to Defendants' MSJ, Docket Entry No. 27, pp. 147-48.

[57]Extended Temporary Injunction and Restraining Order and Order Setting Hearing for Temporary Orders, Exhibit G to Defendants' MSJ, Docket Entry No. 27, pp. 200-201.

of limitations was tolled during the period of restraint.  See
Jorrie, 2017 WL 6403054, at *7.

The court concludes as a matter of law that the TROs tolled
limitations on foreclosure by thirty days.  Adding thirty days
extends the four-year limitations deadline from February 11, 2020,
to March 12, 2020.  That deadline applied to Defendants'
foreclosure action.

## C.  Shellpoint's Deceleration Reset Limitations Before Limitations Had Run

Plaintiff argues that "Defendants had to conduct a non-
judicial foreclosure or sue for judicial foreclosure [before the
limitations deadline] to avoid the application of limitations."[58]
In other words, Plaintiff argues that even if limitations were
tolled by thirty days, Defendants' counterclaims for foreclosure
would still be time-barred because Defendants failed to conduct a
sale or sue for judicial foreclosure before March 12, 2020.
Defendants respond that (1) Shellpoint abandoned acceleration (or
"decelerated") before limitations expired, thus restoring the loan
to its original maturity date and resetting the clock on
limitations,[59] and (2) even if Shellpoint had not effectively
decelerated before the deadline of March 12, 2020, the Texas
counterclaim savings statute would still preserve BONYM's right to

---

[58]Plaintiff's MPSJ, Docket Entry No. 28, p. 6 ¶ 13.

[59]Defendants' Response, Docket Entry No. 31, p. 16.

seek foreclosure via counterclaim.[60]   The court will address the deceleration argument here and address the counterclaim savings statute argument in Part IV, _infra_.

"'Abandonment of acceleration has the effect of restoring the contract to its original condition,' thereby 'restoring the note's original maturity date' for purposes of accrual." Boren v. U.S. National Bank Association, 807 F.3d 99, 104 (5th Cir. 2015) (quoting Khan v. GBAK Properties, 371 S.W.3d 347, 353 (Tex. App. -- Houston [1st Dist.] 2012, no pet.)).   "If abandonment is effective, the noteholder is no longer required to foreclose within four years of the date of the acceleration." Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C., 755 F. App'x 354, 356 (5th Cir. 2018).

The effectiveness of a purported abandonment can be determined by reference to traditional principles of waiver, which include "(1) an existing right, benefit, or advantage held by a party; (2) the party's actual knowledge of its existence; and (3) the party's actual intent to relinquish the right, or intentional conduct inconsistent with the right." See Boren, 807 F.3d at 105 (citing Thompson v. Bank of America National Association, 783 F.3d 1022, 1025 (5th Cir. 2015)).   "Waiver . . . can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct inconsistent with a claim to the right." G.T. Leach Builders, LLC v. Sapphire V.P., LP, 458 S.W.3d 502, 511 (Tex.

---

[60]Defendants' MSJ, Docket Entry No. 27, p. 20.

2015).  Although waiver is ordinarily a question of fact, it is a question of law "when the facts that are relevant to a party's relinquishment of an existing right are undisputed."  Boren, 807 F.3d at 106 (citing G.T. Leach Builders, 458 S.W.3d at 511).

The "central element" of waiver is intent, which must be "unequivocally manifested."  Thompson, 783 F.3d at 1025.  "To accomplish a unilateral abandonment, the lender must 'so act as to justify the [borrower] in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default.'"  Swoboda v. Ocwen Loan Servicing, LLC, 579 S.W.3d 628, 636 (Tex. App. -- Houston [14th Dist.] 2019, no pet.) (quoting San Antonio Real Estate Building & Loan Association v. Stewart, 61 S.W. 386, 389 (Tex. 1901)).  "A lender waives its earlier acceleration when it puts the debtor on notice of its abandonment . . . by requesting payment on less than the full amount of the loan."  Boren, 807 F.3d at 106 (internal quotations and citations omitted).  Such a notice "unequivocally manifest[s] an intent to abandon the previous acceleration and provide[] the [borrower] with an opportunity to avoid foreclosure if they cure[] their arrearage."  Id.

Defendants assert, and Plaintiff does not dispute, that Shellpoint knew at the time of transfer that Bayview had characterized the loan as accelerated.[61]  The undisputed evidence

---

[61]Defendants' MSJ, Docket Entry No. 27, p. 16.

in the record indicates that when the loan was transferred from Bayview to Shellpoint, it was coded as being in "foreclosure" status.[62]  Shellpoint therefore had "actual knowledge" of its "existing right" to demand immediate payment of the full balance. See Thompson, 783 F.3d at 1025.  On February 13, 2020, Shellpoint engaged in "intentional conduct inconsistent with" its right to continue acceleration:  it changed the loan's coding from "foreclosure" to "litigation" and refrained from checking the box that would have designated the loan as "accelerated" in its data system,[63] thus satisfying Texas waiver principles.  See id.

Plaintiff argues that evidence about Shellpoint's internal conduct is irrelevant because "[t]here is no evidence that Cross was informed that these acts and omissions had taken place . . . ."[64]  This argument misses the point.  Shellpoint's internal conduct demonstrates that it knew it had a right to treat the loan as accelerated and deliberately did not do so, thus waiving the right.  Plaintiff's subjective awareness or expectations are not relevant to the question of waiver.

Moreover, Plaintiff received unequivocal notice of Shellpoint's intent to decelerate on February 14, 2020, when Shellpoint sent Plaintiff its "Hello Letter."  The letter included

---

[62]Knowles Depo, Exhibit B to Defendants' MSJ, Docket Entry No. 27, p. 78 line 25; p. 79 lines 1-4; p. 84 lines 17-24.

[63]Id. at p. 75 lines 14-23; p. 79 lines 1-3.

[64]Plaintiff's Combined Response, Docket Entry No. 34, p. 24.

-19-

a coupon listing $2,238.51 as the monthly payment amount, a request that Plaintiff use the coupon to mail Shellpoint a check for her "first payment," and instructions to make future monthly payments.[65] An attached page advised that Plaintiff's January 1, 2015, payment was due and that the loan's principal balance was $222,613.72, but it, too, asked only that Plaintiff begin sending monthly payments of $2,238.51.[66]  The attached page listed the loan's original, pre-acceleration maturity date of November 1, 2034.[67]  Shellpoint also sent Plaintiff a mortgage statement which, unlike the mortgage statement that Plaintiff received from Bayview, did not warn that the foreclosure process had begun and did not mention the accelerated amount of the loan.[68]

Plaintiff argues that her case is analogous to several cases in which courts applying Texas law found genuine fact issues surrounding a lender's intent to decelerate.[69]  Plaintiff argues that the Shellpoint Hello Letter "does not actually request a payment" and thus resembles the mortgage statement sent by the lender in Swoboda.[70]  But the court in Swoboda found a fact issue

---

[65]Shellpoint Hello Letter, Exhibit B-4 to Defendants' MSJ, Docket Entry No. 27, p. 107.

[66]Id. at 109.

[67]Id.

[68]Id.; Bayview Mortgage Statement, Exhibit B-14 to Defendants' MSJ, Docket Entry No. 27, p. 136.

[69]Plaintiff's Combined Response, Docket Entry No. 34, pp. 20-22.

[70]Id. at 22.

surrounding the lender's intent to decelerate in large part because the lender did not attach a payment coupon to the statement that it sent to the borrower.  <u>Swoboda</u>, 579 S.W.3d at 635.  Unlike the lender in <u>Swoboda</u>, Shellpoint attached a payment coupon to its Hello Letter, along with this instruction:  "Please use the attached coupon to mail us a check for your first payment."[71]  The court cannot read this as anything other than a request for payment.  The facts of <u>Swoboda</u> are therefore distinguished from this case.

Other cases Plaintiff cites are also inapposite.  In <u>Deutsche Bank National Trust Company As Trustee, In Trust for Registered Holders of Long Beach Mortgage Loan Trust 2003-1, Asset-Backed Certificates, Series 2003-1 v. Gladle</u>, Cause No. A-19-CV-00613-SS, 2020 WL 6379281, at *8 (W.D. Tex. July 30, 2020), the court found that although the lender sent the borrower a "reinstatement quote" asking for less than the total amount owed, there was a genuine fact issue on the lender's intent to abandon acceleration because the reinstatement quote warned that the lender "would continue with foreclosure proceedings" if the borrower failed to pay the entire reinstatement amount.  Similarly, in <u>Pitts v. Bank of NY Mellon Trust Co.</u>, 583 S.W.3d 258, 266 (Tex. App. -- Dallas 2018, no pet.), the court found a genuine fact issue on intent to abandon because the lender sent a statement that stated:  "Our records indicate that your loan is in foreclosure."

---

[71]Shellpoint Hello Letter, Exhibit B-4 to Defendants' MSJ, Docket Entry No. 27, p. 107.

But Shellpoint's mortgage statement did not state that it would "continue with foreclosure proceedings" or that Plaintiff's loan was in foreclosure.   Instead, it warned Plaintiff that "[f]ailure to bring your loan current may result in fees and foreclosure — the loss of your home."[72]   Shellpoint's use of the word "may" establishes that the loan was not yet in foreclosure.

The effectiveness of Shellpoint's deceleration is a question of law because the facts relevant to Shellpoint's waiver of acceleration are not in dispute.   G.T. Leach Builders, 458 S.W.3d at 511.   The court resolves factual controversies in a motion for summary judgment in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."   Little, 37 F.3d at 1075. Plaintiff raises arguments about the intent behind Shellpoint's internal conduct but does not dispute that the conduct took place, i.e., Plaintiff does not argue that Shellpoint never changed the coding of the loan from "foreclosure" to "litigation" or that Shellpoint checked the "accelerated" tab.   Plaintiff raises arguments about what the Shellpoint Hello Letter meant, but does not dispute what it literally says.   She does not establish an actual controversy on any issue of fact.

The court concludes that the correspondence Shellpoint sent Plaintiff would have justified Plaintiff in "believing and acting

_____

[72]Shellpoint Mortgage Statement, Exhibit C-2 to Defendants' MSJ, Docket Entry No. 27, p. 144.

upon the belief that the effect of the failure to pay [the January 2015] installment was to be disregarded, and that the contract should stand as if there had been no default." See Swoboda, 579 S.W.3d at 636 (internal quotations and citation omitted). "[B]y requesting payment on less than the full amount of the loan," Shellpoint "unequivocally manifested an intent to abandon the previous acceleration and provided [Plaintiff] with an opportunity to avoid foreclosure if [she] cured [her] arrearage." See Boren, 807 F.3d at 106. As a matter of law, Shellpoint effectively decelerated Plaintiff's loan on February 14, 2020, thus resetting the clock on limitations before they ran on March 12, 2020.

**D.   BONYM Is Entitled to Summary Judgment on Plaintiff's Claims**

Plaintiff's quiet title claim relies on her argument that the lien on her Property was no longer valid because limitations to foreclose had run. But Defendants have shown that Plaintiff's litigation and TROs tolled limitations to a new deadline, that Defendants decelerated before that deadline, and that limitations were thus reset before they ran. Plaintiff's quiet title claim therefore fails as a matter of law. Her claim for declaratory judgment must also fail because it is merely a theory of recovery for her quiet title claim. See Smitherman v. Bayview Loan Servicing, LLC, 727 F. App'x 787, 792 (5th Cir. 2018). Defendants are entitled to summary judgment on all of Plaintiff's claims. Plaintiff's MPSJ as to those claims will be denied.

IV.   **BONYM's Counterclaims for Breach**
**of Contract and Foreclosure**

BONYM brings counterclaims for (1) breach of contract, (2) foreclosure, (3) in the alternative, equitable subrogation, and (4) in the alternative, contractual subrogation.[73]   Both parties have moved for summary judgment on these counterclaims.

A.   **BONYM's Contract and Foreclosure Claims Are Not Time-Barred**

1.   **BONYM's Right to Pursue Non-Judicial Foreclosure Was Tolled**

Plaintiff argues that BONYM's counterclaim for judicial foreclosure fails as a matter of law "because the TROs from the prior lawsuit did not enjoin Defendants from counterclaiming for judicial foreclosure or counterclaiming with causes of action to preserve their right to non-judicial foreclosure."[74]   Because BONYM did not counterclaim for judicial foreclosure when Plaintiff secured TROs in 2018 and 2019, Plaintiff argues that "litigation tolling would apply to Defendants' action for nonjudicial foreclosure but not to judicial foreclosure."[75]

"[A] suit for an injunction against nonjudicial foreclosure does not toll the statute of limitations, because it is no impediment to the lender's ability to sue on the note or seek

---

[73]BONYM's Second Amended Counterclaims, Docket Entry No. 21, pp. 3-7 ¶¶ 15-29.

[74]Plaintiff's Combined Response, Docket Entry No. 34, p. 16.

[75]Id.

judicial foreclosure of the property." <u>Deutsche Bank National</u> <u>Trust Co. v. Ra Surasak Ketmayura,</u> 2015 WL 3899050, at *9 (W.D. Tex. June 11, 2015) (citing <u>Davis v. Andrews,</u> 30 S.W. 432, 529 (Tex. 1895)). In <u>Landers v. Nationstar Mortgage, LLC,</u> 461 S.W.3d 923, 925 (Tex. App. -- Tyler 2015, no pet.), a lender sued for judicial foreclosure, and the borrowers argued that the suit was time-barred because limitations had expired. The lender argued that its suit was timely because limitations were tolled by a TRO and a temporary injunction. <u>Id.</u> The borrowers argued that the TRO and injunction applied only to the limitations period for non-judicial foreclosure, not to the limitations period for judicial foreclosure. <u>Id.</u> The Tyler Court of Appeals agreed with the borrowers, holding that the TRO and injunction did not toll limitations on judicial foreclosure because they did not restrain the lender from filing suit for judicial foreclosure, and thus the limitations period expired four years after acceleration. <u>Id.</u> at 927.

Plaintiff argues that this case is analogous to <u>Landers</u> in that (1) BONYM is pursuing a foreclosure remedy (judicial foreclosure) that is barred by limitations, (2) BONYM is arguing that limitations were tolled by a TRO, but (3) the TRO in question only prevented BONYM from seeking non-judicial foreclosure and did not prevent BONYM from counterclaiming for judicial foreclosure.[76]

---

[76]Plaintiff's Combined Response, Docket Entry No. 34, pp. 16-17.

Plaintiff argues that, like the lender in <u>Landers,</u> BONYM should not be allowed to seek judicial foreclosure because it effectively waived its right to do so when the TROs were first issued.

For reasons explained in subsection 2 below, the court concludes that the Texas counterclaim savings statute preserves BONYM's right to seek both judicial and non-judicial foreclosure via counterclaim. But even if BONYM's failure to seek judicial foreclosure in 2018 and 2019 prevented it from doing so now, BONYM would still prevail on its counterclaim for non-judicial foreclosure, which is BONYM's preferred form of relief. BONYM's foreclosure counterclaim "seeks a judgment allowing it to foreclose its lien on the property in accordance with the deed of trust and Texas property code section 51.00" (non-judicial foreclosure), "or <u>alternatively,</u> a judgment for judicial foreclosure."[77] Plaintiff's TROs enjoined BONYM from seeking non-judicial foreclosure for thirty days, extending the deadline for a non-judicial sale of the Property to March 12, 2020. As explained above, Shellpoint decelerated before that date, resetting limitations. The fact that BONYM did not counterclaim for judicial foreclosure does not mean that it waived its right to pursue non-judicial foreclosure. BONYM never waived that right, but instead was prevented from exercising it by Plaintiff's litigation and TROs. Plaintiff's argument is without merit.

---

[77]BONYM's Second Amended Counterclaims, Docket Entry No. 21, p. 4 ¶ 23 (emphasis added).

2.   <u>The Counterclaim Savings Statute Applies</u>

The counterclaim savings statute, Tex. Civ. Prac. & Rem. Code § 16.069, preserves BONYM's right to counterclaim for both judicial and non-judicial foreclosure.  "If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation[.]"  Tex. Civ. Prac. & Rem. Code § 16.069(a).  "The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required."  Tex. Civ. Prac. & Rem. Code § 16.069(b).

"Where the requirements of the statute are met, section 16.069 allows those who are already parties to the action to assert claims against one another that would otherwise be time-barred." <u>J.M.K. 6, Inc. v. Gregg & Gregg, P.C.</u>, 192 S.W.3d 189, 199 (Tex. App. -- Houston [14th Dist.] 2006, no pet.).  "The statute is a savings clause, 'intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitations before asserting his own claim.'" <u>Pitts & Collard, L.L.P. v. Schechter,</u> 369 S.W.3d 301, 323-24 (Tex. App. -- Houston [1st Dist.] 2011, no pet.) (quoting <u>Hobbs Trailers v. J.T. Arnett Grain Co.,</u> 560 S.W.2d 85, 88 (Tex. 1997) (interpreting predecessor statute substantially similar to section 16.069)).

There is no dispute that BONYM filed its counterclaims within thirty days of when its original answer was due.  Plaintiff served

-27-

BONYM on April 3, 2020,[78] and BONYM asserted its counterclaims on April 13, 2020.[79]  $\underline{\text{See}}$ Tex. Civ. Prac. & Rem. Code § 16.069(b). Nor is there any dispute that BONYM's counterclaims "arise[] out of the same transaction or occurrence that is the basis of [Plaintiff's] action" for declaratory judgment, i.e., BONYM and Shellpoint's efforts to enforce the Deed of Trust and Plaintiff's failure to make payments required under the Note.  $\underline{\text{See}}$ Tex. Civ. Prac. & Rem. Code § 16.069(a); $\underline{\text{see also Rodriguez v. CitiMortgage,}}$ $\underline{\text{Inc.,}}$ No. 5-14-CV-380 RP, 2015 WL 12552026, at *4 (W.D. Tex. Feb. 4, 2015) (holding that a lender's claims for breach of contract and judicial foreclosure arose from the same transaction as borrower's quiet title action).

Plaintiff argues that the counterclaim savings statute is inapplicable when a plaintiff seeks a declaration that the claims are barred by limitations as a matter of law.[80]  Although Plaintiff cites two cases to support this argument,[81] the cases do not

---

[78]Affidavit of Service, Exhibit 2 to Defendants' Removal Notice, Docket Entry No. 1-3, p. 4.

[79]Defendants' Answer and Counterclaims, Exhibit 4 to Defendants' Removal Notice, Docket Entry No. 1-5, p. 7.

[80]Plaintiff's Combined Response, Docket Entry No. 34, pp. 26-27.

[81]$\underline{\text{Id.}}$ (citing $\underline{\text{Bitterroot Holdings, LLC v. Bank of New York}}$ $\underline{\text{Mellon,}}$ No. 14-cv-804, 2017 WL 10181041, at *12 (W.D. Tex. Aug. 4, 2017) ("A party cannot fail to foreclose on a lien, lose the lien, and then revive the lien by filing a counterclaim in a trespass to try title lawsuit.  Such an interpretation of the effect of section 16.069 would allow virtually any party to revive a void
(continued...)

establish that § 16.069 is inapplicable in every case where the plaintiff seeks a declaration that a claim is time-barred. Instead, Texas courts hold that § 16.069 is inapplicable when declaratory relief is the only kind of relief that the plaintiff seeks, but that the statute applies when the plaintiff seeks some form of "affirmative relief" beyond the declaration. See, e.g., Havins v. CitiMortgage, Inc., Civil Action No. 4:15-cv-899-O, 2016 WL 6304809, at *3 (N.D. Tex. Feb. 17, 2016) ("Texas courts have interpreted § 16.069 to revive time-barred claims when a plaintiff seeks affirmative relief, but not to those claims only seeking a declaratory judgment.") (emphasis in original); Murphree v. Godshall, Civil Action No. H-13-0453, 2014 WL 4782936, *5 (S.D. Tex. Sept. 24, 2014) (construing Ball as holding that "if a plaintiff files an action seeking only a declaration that the defendant would be barred by a statute of limitations if it chose to bring a particular cause of action, the defendant could not use § 16.069 to then bring the otherwise time-barred cause of action.") (emphasis added) (internal quotations and citation omitted); Holman Street Baptist Church v. Jefferson, 317 S.W.3d 540, 545-46 (Tex. App. -- Houston [14th Dist.] 2010, pet. denied) ("Courts have

_____

(...continued)
lien . . . ."); Ball v. SBC Communications, Inc., No. 04-02-00702-CV, 2003 WL 21467219, at *4 (Tex. App. -- San Antonio June 25, 2003) ("[W]ere we to hold that section 16.069 revives claims which are absolutely barred by limitations as a matter of law, we would be reading into the Uniform Declaratory Judgments Act a provision that would make such actions fruitless.").

interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than <u>just</u> a declaration on a dispute between the parties.") (emphasis added) (listing cases).

Plaintiff is not merely seeking a declaration on the statute of limitations, but is also seeking affirmative relief in the form of attorney's fees.[82]  "[A] claim for attorney's fees constitutes a claim for affirmative relief, thus allowing a counterclaim to proceed where the plaintiff sought attorney's fees in addition to a declaratory judgment." <u>Hacienda Records, LP v. Ramos</u>, Civil Action No. 2:14-CV-19, 2015 WL 6680597, at *4 (S.D. Tex. Nov. 2, 2015), <u>aff'd sub nom. Hacienda Records, LP v. Ramos</u>, 718 F. App'x 223 (5th Cir. 2018).  In <u>Havins</u> a plaintiff sought a declaratory judgment that the defendants could not foreclose on her home because the limitations period had run.  2016 WL 6304809, at *1. The plaintiff also sought damages, forgiveness of debt, attorney's fees, and costs.  <u>Id.</u> at *3.  The defendants counterclaimed, arguing that § 16.069 preserved their otherwise time-barred claims. <u>Id.</u>  The plaintiff responded that all her claims for affirmative relief were "subsumed" into her request for declaratory judgment, and therefore she was not seeking the kind of affirmative relief that would trigger application of § 16.069.  <u>Id.</u>  The court held

---

[82]Plaintiff's Original Petition, Exhibit 1 to Defendants' Removal Notice, Docket Entry No. 1-2, p. 7.

that "[e]ven if these claims are 'subsumed' into the declaratory judgment, as Plaintiff argues, she seeks attorney's fees in connection with her request for declaratory relief . . . . Seeking attorney's fees is affirmative relief to which § 16.069 applies." <u>Id.</u>

Because Plaintiff is seeking attorney's fees in connection with her request for declaratory relief, § 16.069 applies. The court concludes that § 16.069 therefore saves BONYM's counterclaims from being barred by limitations.

**B.   BONYM Is Entitled to Summary Judgment for Breach of Contract**

To maintain a claim for breach of contract, BONYM must show that (1) a valid contract exists, (2) BONYM performed or tendered performance, (3) Plaintiff breached the contract, and (4) BONYM sustained damages as a result of the breach. <u>See May v. Ticor Title Insurance Co.,</u> 422 S.W.3d 93, 100 (Tex. App. -- Houston [14th Dist.] 2014, no pet.) (citing <u>Rice v. Metropolitan Life Insurance Co.,</u> 324 S.W.3d 660, 665 (Tex. App. -- Fort Worth 2010, no pet.). "Whether a party has breached a contract is a question of law for the court, not a question of fact for the jury, when the facts of the parties' conduct are undisputed or conclusively established." <u>Grohman v. Kahliq,</u> 318 S.W.3d 882, 887 (Tex. 2010) (citing <u>Sullivan v. Barnett,</u> 471 S.W.2d 39, 44 (Tex. 1971)).

Plaintiff argues that BONYM's counterclaim for breach of contract must fail because "Defendants cannot sue upon an instrument that is void due to the expiration of the statute of

limitations."[83]   As explained above, the Deed of Trust was not voided by the running of limitations because Shellpoint decelerated the maturity of the loan before limitations ran.  The existence of a valid contract is therefore established.  See Grohman, 318 S.W.3d at 887.

The Note required Plaintiff to pay in monthly installments.[84] Plaintiff does not dispute that BONYM performed its obligations under the Note, nor does she dispute that she breached by failing to pay the required monthly installments.[85]  She does not dispute that her breach damaged BONYM in that it deprived BONYM of money that was due and forced BONYM to incur attorney's fees and other expenses to enforce the loan.  The court concludes that BONYM has satisfied all the elements of a breach of contract claim.  See May, 422 S.W.3d at 100.  There is no dispute over the parties' relevant conduct.  See Grohman, 318 S.W.3d at 887.  BONYM is entitled to summary judgment on its counterclaim for breach of contract.

## C.   BONYM Is Entitled to Non-Judicial Foreclosure

To foreclose under a security instrument in Texas with a power of sale, the lender must demonstrate that (1) a debt exists;

---

[83]Plaintiff's MPSJ, Docket Entry No. 28, p. 7 ¶ 14.

[84]Note, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 27, p. 37 ¶ 3(A).

[85]See Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 411 ¶¶ 35-36 (Plaintiff admits that the loan is due for the January 1, 2015, payment and admits that no payments have been made on the loan after the payment satisfying the monthly obligation due December 1, 2014).

(2) the debt is secured by a lien created under Art. 16, § 50(a)(6)
of the Texas Constitution; (3) the borrowers are in default under
the note and security instrument; and (4) the borrowers received
notice of default and acceleration.  Bracken v. Wells Fargo Bank,
N.A., No. 05-16-01334-CV, 2018 WL 1026268, at *5 (Tex. App. --
Dallas Feb. 23, 2018, pet. denied), reh'g denied (Apr. 12, 2018)
(citing Huston v. United States Bank National Association, 988
F. Supp. 2d 732, 740 (S.D. Tex. 2013), aff'd, 583 F. App'x 306 (5th
Cir. 2014)).

Plaintiff does not deny that she executed the Note promising
to repay the original principal amount of $255,440, plus interest;[86]
nor that she executed the Deed of Trust granting a lien against the
Property to secure her obligation to repay the Note.[87]  Plaintiff
does not deny that she defaulted on the Note by failing to make
required payments.  She admits that Bayview sent her a notice of
default with an opportunity to cure the default and a warning that
the loan would be accelerated if she did not cure within thirty
days.[88]  Plaintiff does not claim to have ever cured the default.
She admits that Bayview sent her a notice of acceleration on

---

[86]Note, Exhibit A-3 to Defendants' MSJ, Docket Entry No. 27,
p. 37 ¶ 1.

[87]Deed of Trust, Exhibit A-4 to Defendants' MSJ, Docket Entry
No. 27, p. 54.

[88]Notice of Default and Intent to Accelerate, Exhibit B-7 to
Defendants' MSJ, Docket Entry No. 27, p. 121; Plaintiff's
Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27,
p. 409 ¶¶ 24-27.

February 11, 2016.[89]  There is thus no factual controversy that a debt exists, that it is secured by a lien, that Plaintiff is in default, and that Plaintiff received notice of default and acceleration.  <u>See Bracken</u>, 2018 WL 1026268, at *5.  BONYM has demonstrated everything necessary to foreclose under the Deed of Trust.

BONYM is the current legal owner and holder of the Note and the Deed of Trust, and it has the right to enforce both instruments.[90]  Plaintiff's only argument to the contrary is that the Note and the Deed of Trust are invalid and unenforceable due to the running of limitations, and the court has rejected that argument.  BONYM is entitled as a matter of law to a judgment allowing it to foreclose its lien on the Property in accordance with the Deed of Trust and Texas Property Code § 51.002.

BONYM has established that there is no genuine dispute about any material fact regarding its counterclaims for breach of contract and non-judicial foreclosure, and it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(a).  Defendants' MSJ on BONYM's counterclaims will be granted as to BONYM.  Because BONYM is currently the sole beneficiary of the Deed

---

[89]Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 411 ¶ 39.

[90]Knowles Declaration, Exhibit C to Defendants' MSJ, Docket Entry No. 27, p. 140 ¶ 6; Assignment of Deed of Trust, Exhibit D to Defendants' MSJ, Docket Entry No. 27, p. 146; Plaintiff's Responses, Exhibit I-3 to Defendants' MSJ, Docket Entry No. 27, p. 406 ¶¶ 9-10.

of Trust and Shellpoint does not claim right to title or ownership
of the Property, Defendants' MSJ will be denied as moot as to
Shellpoint.   Plaintiff's MPSJ as to BONYM's counterclaims will be
denied.

## V.   Conclusion and Order

For the reasons explained above, Plaintiff has failed to
present evidence supporting its claim to quiet title against
Defendants.   Defendants have satisfied their burden to show that
there are no issues of material fact with respect to Plaintiff's
claim to quiet title and that Defendants are entitled to summary
judgment on that claim.

Plaintiff has also requested a declaratory judgment on her
quiet title claim.[91]  When all substantive underlying claims have
been dismissed, a claim for declaratory judgment cannot survive.
Ayers v. Aurora Loan Services, LLC, 787 F. Supp. 2d 451, 457 (E.D.
Tex. 2011).  Because the court will grant summary judgment for
Defendants on Plaintiff's substantive claim, the court will also
grant summary judgment for Defendants on Plaintiff's claim for
declaratory relief.   Defendants Shellpoint and BONYM's Summary
Judgment Motion (Docket Entry No. 27) is **GRANTED** with respect to
Plaintiff's claims; and Plaintiff's Motion for Partial Summary
Judgment (Docket Entry No. 28) is **DENIED**.

---

[91]Plaintiff's Original Complaint, Docket Entry No. 1-2, p. 6
¶ 31.

For the reasons explained above, BONYM has established that it is entitled as a matter of law to prevail on its counterclaims for breach of contract and non-judicial foreclosure.   Defendants Shellpoint and BONYM's Summary Judgment Motion (Docket Entry No. 27) is therefore **GRANTED** as to BONYM.   Because Shellpoint does not claim right to title or ownership of the Property, Defendants Shellpoint and BONYM's Summary Judgment Motion (Docket Entry No. 27) is **DENIED AS MOOT** as to Shellpoint.

**SIGNED** at Houston, Texas, on this the 23rd day of June, 2021.

_____
                    SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE